United States Courts
Southern District of Texas
FILED

NOV 18 2025

Nathan Ochsner, Clerk of Court

# TABLE OF AUTHORITIES

For:

COMBINED REBUTTAL TO DEFENDANTS' MOTION TO DISMISS,

OBJECTION TO JUDICIAL NOTICE,

NOTICE OF CONSTITUTIONAL AUTHORITY,

AND DEMAND FOR DISCLOSURE, ACCOUNTING, AND RELIEF

**Civil Action No. 4:25-cv-02013**

United States District Court — Southern District of Texas, Houston Division

---

## Cases

Bannister v. Gawley, 200 S.W.3d 833 (Tex. App. 2006)

(no contract without mutual assent)

Carpenter v. Longan, 83 U.S. 271 (1872)

(note and mortgage inseparable)

Citizens' Nat'l Bank of Cameron v. Good Roads Gravel Co., 236 S.W. 153 (Tex. Civ. App. 1921)

(bank cannot lend credit it does not own)

Formosa Plastics Corp. USA v. Presidio Eng'rs, 960 S.W.2d 41 (Tex. 1998)

(fraud proven by misrepresentation causing injury)

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)

(fraud on the court invalidates judgments)

In re Gullette, 2000 WL 33963628 (Bankr. M.D. Ala. 2000)

(all-caps as non-natural legal entity)

In re Katrina Canal Breaches Litig., 495 F.3d 191 (5th Cir. 2007)

(12(b)(6) standard)

Kolovrat v. Oregon, 366 U.S. 187 (1961)

(treaty rights override state law)

Martin v. Federal Nat'l Mortg. Ass'n, 814 F.3d 315 (5th Cir. 2016)

(must prove note ownership)

Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002)

(FCRA investigation requirement)

Norris v. Hearst Trust, 500 F.3d 454 (5th Cir. 2007)

(judicial notice limits)

Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999)

(pleadings rule)

United States v. Cooper, 170 F.3d 691 (7th Cir. 1999)

(all-caps names are not natural persons)

United States v. Throckmorton, 98 U.S. 61 (1878)

(fraud vitiates all)

Young v. Equifax, 294 F.3d 631 (5th Cir. 2002)

(FCRA private enforcement)

---

## Statutes, Codes & Constitutional Authorities
U.S. Const. art. I, §10, cl. 1

(gold & silver only)

U.S. Const. art. VI (Supremacy Clause)

(treaties supreme law)

U.S. Const. amend. IX

(retained rights)

28 U.S.C. § 1331 — federal question

28 U.S.C. § 1332 — diversity

12 U.S.C. § 95a(2) — discharge of obligations

15 U.S.C. § 78c(a)(10) — securitization is a "security"

15 U.S.C. §§ 1631, 1641(g) — TILA

15 U.S.C. §§ 1692e, 1692f — FDCPA

15 U.S.C. § 1681s-2(b) — FCRA duties

U.C.C. Art. 3 & 9 — negotiable instruments & secured transactions

U.C.C. § 3-601 — discharge

Tex. Prop. Code § 12.002 — slander of title

---

## Treaties & International Law

Treaty of Peace and Friendship (1836)

Treaty of Peace and Friendship (1787)

UN Declaration on Rights of Indigenous Peoples (Art. 26–37)

---

## Administrative / Regulatory

FDIC P&A Agreement (Washington Mutual, 2008)

---

## Congressional Records

House Resolution 75 (Apr. 17, 1933)

(recognition of Moorish American "El," "Bey," "Ali" designations)

---

## Scholarly / Restatements

Restatement (Second) of Contracts § 17

(mutual assent required)

Restatement (Third) of Property (Mortgages)

(beneficial interest required in securitized mortgages)

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION

International Document Notice to Agent is Notice to Principal – Notice to Principal is Notice to Agent.

**Rachael Griffin-El, sui juris, ex rel.,**

**Plaintiff,**

**v.**                                                                 **Civil Action No. 4:25-cv-02013**

**Jamie Dimon,** U.S. Citizen, CEO, doing business as

**JPMorgan Chase Bank, N.A.;**

**Thomas J. Axon,** U.S. Citizen, doing business as CEO,

**Franklin Credit Management Corporation;**

**Antony Halaris,** U.S. Citizen, doing business as

**Managing Member, PCF Properties in TX LLC,**

**Defendants.**

---

## EXHIBIT B

---

## AFFIDAVIT OF FACT: ADVERSE CLAIM OF TITLE AND

## REVERSION OF ANCESTRAL ESTATE (DECEMBER 30, 2024)

## INCLUDING MEMORANDUM OF TRUST (DEC. 30, 2024)

---

This Exhibit B is a true and correct copy of the original Affidavit of Fact:
Adverse Claim of Title and Reversion of Ancestral Estate, executed on
December 30, 2024, served upon Defendants and received by
JPMorgan Chase Bank, N.A. on January 10, 2025, remaining unrebutted for
more than ninety (90) days, and therefore standing as truth in commerce
pursuant to Federal Rule of Civil Procedure 8(b)(6).

This Exhibit also includes the Memorandum of Trust for the
"Allodial Irrevocable Private Living Trust of Rachael Griffin-El dated
December 30, 2024," which provides notice of the trust's existence,
authority, and applicability to the private estate and all property interests
therein.

Filed herewith to restore the record due to the unexplained disappearance
of the original Exhibit B previously submitted to the docket.

---

Submitted by:

Rachael Griffin-El, sui juris

Special Appearance — Proper Person

All Rights Reserved — Without Prejudice —



# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION

<u>International Document Notice to Agent is Notice to Principal – Notice to Principal is Notice to Agent</u>

<u>All Rights Reserved — Without Prejudice — UCC 1-308</u>

**Rachael Griffin-El**, sui juris, ex rel.

Plaintiff,

v.                               **Civil Action No. 4:25-cv-02013**

**Jamie Dimon**, U.S. Citizen, CEO, doing business as

JPMORGAN CHASE BANK, N.A., a foreign corporation;

**Thomas J. Axon**, U.S. Citizen, doing business as CEO,

FRANKLIN CREDIT MANAGEMENT CORPORATION;

**Antony Halaris,** U.S. Citizen, doing business as

Managing Member, PCF PROPERTIES IN TX LLC;

Defendants.

---

COMBINED REBUTTAL TO DEFENDANTS' MOTION TO DISMISS, OBJECTION TO JUDICIAL NOTICE, NOTICE OF CONSTITUTIONAL AUTHORITY, AND DEMAND FOR DISCLOSURE, ACCOUNTING, AND RELIEF

---

## SPECIAL APPEARANCE AND STATUS OF PLAINTIFF

Plaintiff, Rachael Griffin-El, sui juris, specially appears in her proper person, ex rel., expressly not pro se, and expressly not appearing as a federal "U.S. citizen" nor as surety for any all-caps, fictitious, nom-de-guerre entity such as "RACHAEL GRIFFIN" created under the unconstitutional 14th Amendment.

The term pro se applies ONLY to statutory "persons" voluntarily entering federal jurisdiction. Plaintiff has never consented to appear as a legal fiction and has reserved all rights pursuant to U.C.C. §1-308 from the inception of this matter.

Plaintiff specially appears as a living woman, Moorish American by jus sanguinis, holder of treaty-secured status under the 1836 Treaty of Peace and Friendship, operating in a private capacity and as settlor/grantor of the private trust estate.

This Court is noticed that Plaintiff's standing derives from treaty rights, ancestral title, private-trust ownership, and the Supremacy Clause of Article VI.

---

## PRELIMINARY STATEMENT

This action arises from a void, unfunded, securitized, non-consensual commercial transaction improperly imposed upon a living woman and her private trust estate. Defendants Jamie Dimon (doing business as JPMorgan Chase Bank, N.A.), Thomas J. Axon (doing business as Franklin Credit Management Corporation), and Antony Halaris (doing business as PCF Properties in TX LLC) rely upon an alleged "Note" and "Deed of Trust" that were never supported by lawful consideration, never lawfully transferred, never authenticated, and never enforceable under constitutional, treaty, trust-law, or commercial standards.

With the procedural record established—and with Defendants' repeated failures to rebut sworn affidavits, trust conveyances, commercial notices, and jurisdictional challenges—the Court is now positioned to understand the underlying substantive defects that make Defendants' Motion to Dismiss impossible to sustain.

Beginning May 5, 2025, Plaintiff has submitted more than forty (40) lawful notices, affidavits, demands for disclosure, and proofs of dishonor—each served by certified mail, each unrebutted, each establishing the absence of a lawful creditor and the presence of continuing fraud.

Defendants' Motion to Dismiss rests entirely on:

1. misidentifying Plaintiff as a corporate fiction,
2. relying on void instruments created under an ALL-CAPS nom-de-guerre,
3. ignoring the complete absence of lawful consideration,
4. concealing securitization and derivative conversion,
5. disregarding Plaintiff's treaty-protected Moorish American nationality,

6. avoiding their burden under UCC Articles 3 & 9, and
7. requesting judicial notice of documents they cannot authenticate.

This rebuttal establishes—with constitutional authority, treaty authority, commercial authority, and unrebutted affidavits—that:

- the alleged loan never existed as a lawful, funded obligation,
- the alleged lien never lawfully attached,
- Defendants are strangers to the transaction with no privity,
- foreclosure was void,
- Plaintiff's trust estate stands unrebutted,
- and Plaintiff is protected under Article VI Supremacy Clause and Title 22 foreign-relations law.

Accordingly, Defendants' Motion to Dismiss must be denied in full.

---

## CLARIFICATION REGARDING BANKRUPTCY AND DISCHARGE

To eliminate any further distortion of the record by Defendant Jamie Dimon's attorney, Plaintiff clarifies the true discharge that occurred at inception and the later bankruptcy filing forced upon Plaintiff solely due to Defendants' escalating fraud and unlawful foreclosure attempts.

The only discharge relevant to this matter is the original discharge that occurred at the closing table on October 31, 2005, pursuant to HJR-192 (1933), 12 U.S.C. § 95a(2), and U.C.C. § 3-601, which rendered the alleged obligation discharged at inception.

Any later bankruptcy filing was a defensive action, not an admission of debt. Defendants forced Plaintiff into bankruptcy by:

- fraudulent hypothecation,
- misidentifying the borrower,
- securitization and conversion of the note,
- concealing the true creditor, and
- attempting to enforce instruments void ab initio.

Defendant Jamie Dimon's attorney is therefore admonished:

Any attempt to twist the term "discharge" to imply misconduct is false and misleading.

---

## STANDARD OF REVIEW

(Rule 12(b)(6) — Presented Without Waiving Special Appearance)

Plaintiff provides this Standard of Review strictly for rebuttal purposes, without entering general jurisdiction and without consenting to statutory person status.

Under Rule 12(b)(6), Defendants bear the burden of demonstrating that the Complaint fails to state a claim upon which relief can be granted. The Court must:

1. accept all well-pleaded facts as true,
2. construe the Complaint in the light most favorable to Plaintiff,
3. draw all reasonable inferences in Plaintiff's favor, and
4. not weigh evidence or resolve factual disputes.

See Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

A Rule 12(b)(6) motion cannot defeat claims based on disputed documents, including alleged notes, alleged deeds of trust, missing wet-ink originals, fabricated assignments, or uncertified records Defendants seek to pass off through improper judicial notice.

Judicial notice cannot authenticate contested documents.

See Spivey; Norris.

Thus, Defendants' Motion fails on the face of Rule 12(b)(6).

---

## PROCEDURAL HISTORY

With the procedural record fully established—including Defendants' repeated failures to rebut sworn affidavits, trust conveyances, commercial notices, and jurisdictional objections—the Court must now turn to the governing constitutional and treaty authorities that define the limits of its jurisdiction and Plaintiff's protected Moorish American status.

1. Dec. 30, 2024 — Plaintiff executed her Affidavit of Fact: Adverse Claim of Title and Reversion of Ancestral Estate (Exhibit B).
2. Jan. 10, 2025 — Jamie Dimon, doing business as JPMorgan Chase, received Exhibit B. It remained unrebutted for 90+ days.
3. Mar. 17, 2025 — Plaintiff conveyed the private estate into the R L Freeman Trust (RP-2025-13788).
4. May 5, 2025 — Plaintiff initiated Case No. 4:25-cv-02013 in federal court.
5. May–Oct 2025 — Plaintiff served 40+ notices; all unrebutted.
6. Oct. 6, 2025 — Plaintiff filed and served the First Amended Complaint.
7. Oct–Nov 2025 — PCF defaulted; Franklin Credit defaulted; JPMorgan's attorney mischaracterized Plaintiff's filings.
8. Nov 2025 — Defendants filed a Motion to Dismiss based on misidentification, contested documents, false assumptions of jurisdiction, and avoidance of securitization and trust issues.

This history establishes continuous notice, continuous dishonor, and continuous violations.

# I. JURISDICTIONAL AND CONSTITUTIONAL NOTICE

1. This matter invokes Article III judicial power, 28 U.S.C. §§ 1331, 1332, and the Supremacy Clause, Article VI, Clause 2.
2. Treaties made under the authority of the United States are the supreme Law of the Land, binding upon all judges in every State notwithstanding any State law, policy, or preference to the contrary.
3. Plaintiff's rights under the Treaty of Peace and Friendship (1836) supersede conflicting state statutes. Kolovrat v. Oregon, 366 U.S. 187 (1961).
4. Plaintiff operates in foreign relations / Title 22 capacity, invoking consular jurisdiction and treaty nationality.
5. Plaintiff is NOT within the court as a federal corporate citizen or debtor, but as a private trust owner protected by constitutional and treaty-secured rights.

# II. REBUTTAL TO DEFENDANTS' "NATURE AND STAGE OF THE PROCEEDING"

### 1. Mischaracterization of Plaintiff's Appearance ("pro se")

Defendants falsely state Plaintiff "filed pro se."

Plaintiff never entered pro se capacity and expressly appeared in her proper person. Any presumption to the contrary is rebutted.

### 2. Misidentification of Borrower Renders the Deed of Trust Void Ab Initio

The alleged Deed of Trust lists the "Borrower" in ALL CAPS, a legal fiction, entity, not the living woman. ALL CAPS entities are recognized as nom de guerre / ens legis designations, not natural persons. Courts have long acknowledged that misidentification of a contracting party voids the instrument.

See:

- United States v. Cooper, 170 F.3d 691 (7th Cir. 1999) (all-caps names as legal fictions)
- In re Gullette, 2000 WL 33963628 (Bankr. M.D. Ala. 2000)

A contract signed only by one party (Plaintiff) with no signature by Long Beach Mortgage Company is void for lack of mutual assent.

See:

- Restatement (Second) of Contracts § 17

- Bannister v. Gawley, 200 S.W.3d 833 (Tex. App. 2006).

**3. Defendants admit they are "third parties."**

This is a judicial admission eliminating privity and standing.

Case law:

- Carpenter v. Longan, 83 U.S. 271 (1872) — note and mortgage inseparable; a party without the note has no enforceable interest.
- Martin v. Federal Nat'l Mortg. Ass'n, 814 F.3d 315 (5th Cir. 2016) — proof of ownership is required.

## III. SECURITIZATION DESTROYED ANY ALLEGED CONTRACT AND EXTINGUISHED ALL PRIVITY

### 1. Securitization Destroyed Any Alleged Contract (and Fraud Has No Limitation)

Plaintiff rebuts Defendants' foundational presumption that any "alleged loan contract" remains enforceable. The alleged promissory note was sold, assigned, converted, and deposited into mortgage-backed securities pools shortly after origination. Once securitized, the instrument ceased to function as a negotiable loan and instead became a security, as defined by 15 U.S.C. § 78c(a)(10).

This conversion transformed the supposed relationship into a derivative investment transaction, not a bilateral borrower–lender agreement.

Because securitization fragments:

- legal title,
- equitable title,
- servicing rights,
- beneficial ownership, and
- enforcement rights

among trustees, certificate-holders, custodians, servicers, and third-party vendors, all privity between Plaintiff and Jamie Dimon doing business as JPMorgan Chase Bank, N.A. was irreversibly severed.

## Accordingly, Defendants must prove all of the following:

1. Beneficial ownership of the alleged note;
2. Possession of the original wet-ink instrument;
3. A continuous, verified chain of title compliant with U.C.C. Articles 3 and 9;

4.  Authority to enforce on behalf of the true real party in interest.

Defendants have produced none of the above.

The FDIC Purchase & Assumption Agreement (2008) made clear that JPMorgan Chase acquired Washington Mutual's assets, but expressly declined borrower liabilities, destroying any alleged continuity of contract. No party appearing before this Court has shown any lawful authority arising from Long Beach Mortgage Company or Washington Mutual.

Additionally, national banks cannot lend credit, cannot enforce obligations they did not originate, and cannot act as guarantors for obligations they do not own.

See Citizens' Nat'l Bank of Cameron v. Good Roads Gravel Co., 236 S.W. 153 (Tex. Civ. App. 1921).

Because no lawful consideration, ownership, or chain-of-authority exists, the alleged contract is:

- void,
- unenforceable, and
- without legal effect.

With securitization having destroyed all privity and eliminated any enforceable contract, the Court must next examine the corresponding violations of trust law and fiduciary duties arising from Defendants' undisclosed conversion and hypothecation of Plaintiff's private property.

## IV. VIOLATIONS OF TRUST LAW, BREACH OF FIDUCIARY DUTIES, UNLAWFUL CONVERSION OF TRUST RES, AND JUDICIAL ADMISSION OF "THIRD-PARTY" STATUS

Defendants' Motion to Dismiss collapses entirely once the trust-law structure, securitization process, and Defendants' own admissions are examined together. A Deed of Trust is a tri-partite fiduciary instrument, not a bilateral loan contract. Once securitized, it becomes a derivative security, not a mortgage. Defendants acted in roles that imposed fiduciary obligations, violated those obligations, and ultimately admitted they are "third parties," destroying any claim of privity or standing.

The following integrated analysis establishes that Defendants breached their fiduciary duties, unlawfully converted trust property, and lack standing as a matter of law.

_____

### A. Duty of Full Disclosure — Violated Through Securitization and Concealment

A fiduciary must disclose all material facts relating to the trust res, including:

- the identity of the true creditor,

- whether the note was sold, pledged, or securitized,
- all transfers of beneficial ownership,
- all hypothecations of the alleged obligation,
- whether the alleged "loan" became a mortgage-backed security under 15 U.S.C. § 78c(a)(10).

Under Restatement (Second) of Trusts §170, failure to disclose material facts constitutes breach of fiduciary duty and constructive fraud.

Defendants disclosed none of these matters. They concealed securitization, concealed assignment chains, and concealed the identity of the certificate-holders — thereby violating their core fiduciary duties.

---

## B. Duty of Loyalty — Violated by Acting for Investors and Corporate Profit

A fiduciary must act with undivided loyalty to the beneficiary and must not:

- profit personally from the trust res,
- prioritize investors over the trustor,
- commingle trust duties with corporate interests,
- serve undisclosed third-party securitization trusts.

Authority:

• Restatement (Second) of Trusts §170 — no personal profit at beneficiary's expense.

• 12 U.S.C. § 92a — national banks acting as fiduciaries remain bound by trust-law obligations.

Defendants acted not for Plaintiff but for:

- securitization trusts,
- certificate-holders,
- corporate profit,
- data-driven foreclosure mills,
- debt-collection systems.

This violates the duty of loyalty and renders all subsequent actions void.

---

## C. Duty to Preserve the Trust Corpus — Violated by Securitization, Conversion, and False Foreclosure

A fiduciary must preserve the trust corpus and may not:

- pledge trust property as collateral,
- convert trust property into securities,
- commoditize the trust corpus,
- expose the trust res to foreclosure without lawful authority.

Authority:

• Clearfield Trust Co. v. United States, 318 U.S. 363 (1943) — banks act in a private commercial capacity when dealing with private instruments.

• United States v. Throckmorton, 98 U.S. 61 (1878) — fraud vitiates all instruments it touches.

Defendants violated this duty by:

- converting the alleged note into a mortgage-backed security,
- separating legal and equitable title,
- placing the trust property into investment vehicles,
- initiating foreclosure without standing.

This is conversion of trust res.

---

### D. Securitization Destroyed the Contract and Extinguished All Privity

Once the alleged note was securitized:

- the note became a security,
- the deed of trust lost its beneficiary,
- legal and equitable title were split,
- servicing rights were assigned to non-creditors,
- privity between Plaintiff and Defendants was destroyed.

Authority:

• Carpenter v. Longan, 83 U.S. 271 (1872) — note and mortgage are inseparable; one who does not own the note cannot enforce the deed.

• Martin v. FNMA, 814 F.3d 315 (5th Cir. 2016) — must prove note ownership to enforce.

Defendants cannot produce:

1. beneficial ownership of the alleged note,
2. the original wet-ink instrument,
3. a continuous UCC-compliant chain of title,
4. authority from the real party in interest.

Without these, they have no standing.

---

### E. Judicial Admission of "Third-Party Status" Confirms No Privity and No Standing

Defendants' attorney admitted in filings that JPMorgan Chase and Franklin Credit are "third parties."

This judicial admission is fatal because:

- a third party is not the trustor,
- not the trustee,
- not the beneficiary,
- not a holder in due course,
- not a creditor,
- not a real party in interest.

Therefore, Defendants have no privity and no authority to enforce anything against Plaintiff's private estate.

A Deed of Trust is tri-partite, and only those in the original chain may assert rights. Third parties have no standing under:

- trust law,
- property law,
- UCC Article 3,
- UCC Article 9,
- securitization rules,
- federal jurisprudence,
- basic contract law.

Defendants' own admission confirms Plaintiff's position:

they are strangers attempting to enforce a contract they do not own.

---

### F. Fraud Has No Statute of Limitation

Because Defendants:

- concealed securitization,
- misrepresented creditor identity,
- fabricated assignments,
- attempted to foreclose without standing,

all such actions are void ab initio and cannot be cured by time.

Authority:

• Throckmorton — fraud vitiates all.

• Hazel-Atlas Glass Co. — fraud on the court invalidates judgments.

Because Defendants breached their fiduciary duties, converted trust property, concealed securitization, destroyed privity, and judicially admitted they are "third parties," every action taken against Plaintiff's private estate — including foreclosure, notices, assignments, reporting, and collection — is void, fraudulent, ultra vires, and without legal force.

---

**Breach Occurs When a Lender or Servicer Securitizes the Note and Splits Title**

When Defendants securitized Plaintiff's alleged "note," bifurcating legal and equitable interests without disclosure or consent, they:

- converted a private trust relationship into a commercial derivative;
- transferred beneficial interests to undisclosed investors;
- assigned servicing rights to third-party actors with no privity; and
- breached every fiduciary duty owed under established trust law.

This conduct constitutes multiple, independent violations:

• Constructive Fraud

Because Plaintiff was never informed of the true nature, destination, or financial exploitation of the instrument, and Defendants concealed all material facts they were required to disclose under fiduciary law.

• Breach of Fiduciary Duty

Because Defendants acted for the private benefit of investors, certificate-holders, securitization trusts, and corporate profit—not for Plaintiff, the trustor/beneficiary to whom fiduciary loyalty was owed.

• Conversion of Trust Res

Because Defendants unlawfully treated Plaintiff's private estate as collateral for investment-grade securities, derivative instruments, and mortgage-backed products without any grant of authority from the trustor.

---

**Supporting Legal Authorities**

- Restatement (Second) of Trusts § 170 — A trustee must not profit personally at the expense of the beneficiary; doing so constitutes breach of fiduciary duty.
- 12 U.S.C. § 92a — National banks acting as fiduciaries are bound by fiduciary duties, including the duties of loyalty, full disclosure, and preservation of trust property.
- Clearfield Trust Co. v. United States, 318 U.S. 363 (1943) — When banks engage in commercial transactions, they operate in a private capacity, not sovereign; they are therefore fully liable for breaches of commercial and fiduciary obligations.
- United States v. Throckmorton, 98 U.S. 61 (1878) — Fraud vitiates every transaction it touches, including trusts, liens, judgments, deeds, and foreclosure instruments.

These authorities confirm that securitization without full disclosure:

- destroys the trust relationship,
- bifurcates legal and equitable title,
- eliminates privity, and
- nullifies any presumption of good faith, standing, or enforceability of the alleged contract.


## V. ADMISSION OF "THIRD-PARTY STATUS" CONFIRMS NON-LINEAR, DERIVATIVE, AND NON-ENFORCEABLE CONTRACT

1. Judicial Admission of "Third-Party" Status Eliminates Privity

   In multiple filings, Defendant Jamie Dimon's attorney expressly admitted that JPMorgan Chase and Franklin Credit are "third parties."

   This constitutes a binding judicial admission.

   Under long-standing trust law and property law, only a party with original privity and fiduciary authority may enforce a Deed of Trust.

   By admitting "third-party" status, Defendants concede they possess neither.

2. A Deed of Trust Is a Tri-Partite Fiduciary Instrument — Not a Bilateral Contract

   A Deed of Trust involves three defined roles:

- Trustor — Plaintiff
- Trustee — holder of bare legal title
- Beneficiary — the true creditor (Long Beach Mortgage Co., now defunct)

If Defendants identify themselves as "third parties," they admit they are:

- not the beneficiary,
- not the trustee, and
- not in privity with the trustor.

    Thus, they have no enforceable interest in the instrument.

3. Admission Confirms the Instrument Became Derivative Through Securitization

    Defendants' admission supports Plaintiff's position that the alleged "note" and "deed" were converted into derivative, securitized instruments.

    Derivative instruments are governed by securities law, not common-law contract principles, and cannot be enforced by entities lacking beneficial ownership.

4. Trust Law Requires Original Privity, Fiduciary Authority, and Continuous Ownership

    Any party attempting to enforce a trust instrument must prove:

    (a) original privity,

    (b) fiduciary authority, and

    (c) a continuous, verified chain of beneficial ownership under U.C.C. Articles 3 and 9.

Defendants have shown none of these requirements.

5. Enforcement Attempts by Admitted Third-Party Actors Are Void Ab Initio

    Because Defendants are third parties, their actions constitute:

- breach of trust,
- constructive fraud,
- unauthorized interference with trust res,
- complete absence of standing, and
- void acts ab initio.

Authorities:

- Restatement (Second) of Trusts § 170 (fiduciary duties; no personal profit at beneficiary's expense)
- United States v. Throckmorton, 98 U.S. 61 (1878) ("fraud vitiates everything it touches")

## CONCLUSION OF SECTIONS IV & V

Accordingly:

- Any enforcement attempt by third-party servicers, alleged assignees, securitization actors, undisclosed investors, or their attorneys is void ab initio;
- No privity exists between Plaintiff and any Defendant;
- No fiduciary authority has ever been demonstrated;
- The original trust relationship was breached by undisclosed securitization and hypothecation;
- Securitization destroyed all enforceability of the alleged contract; and
- Defendants' actions constitute constructive fraud, commercial dishonor, and ultra vires interference with a private trust estate.

Fraud Has No Limitation in Law.

Fraud vitiates every transaction it touches — including alleged contracts, liens, assignments, trustee's deeds, and foreclosure instruments.

*See Throckmorton, 98 U.S. 61; Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).*

Because Defendants concealed securitization, misrepresented creditor identity, fabricated chains of title, and attempted to foreclose without standing, the entire transaction is void ab initio, and no statute of limitation can shield Defendants from accountability.

Having established that Defendants operated entirely outside the trust relationship — acting without privity, without fiduciary authority, without disclosure, and admitting on the record that they are mere "third parties" with no enforceable interest — the fatal defect becomes unavoidable:

The alleged contract was void from inception because no lawful consideration ever existed after the 1933 elimination of gold and silver under HJR-192, codified at 12 U.S.C. § 95a(2), and reinforced by the discharge provisions of U.C.C. § 3-601.

This issue strikes at the root of Defendants' entire theory, for a contract made without lawful consideration is not merely defective — it is null, non-existent, legally impossible, and incapable of enforcement under constitutional, commercial, trust, and public-policy law.

---

## HJR-192, 12 U.S.C. § 95a(2), AND THE ELIMINATION OF LAWFUL MONEY RENDERED THE ALLEGED "LOAN" VOID FOR LACK OF CONSIDERATION

Even assuming arguendo that securitization had not already destroyed the alleged contract (which it did), no lawful mortgage contract could have been formed after 1933, because Congress eliminated lawful money of account and removed all gold and silver — the only constitutionally recognized tender — from domestic circulation.

Article I, §10, Clause 1 provides:

"No State shall… make any Thing but gold and silver Coin a Tender in Payment of Debts."

On June 5, 1933, Congress enacted House Joint Resolution 192, which:

1. Seized and hypothecated all gold from domestic circulation;
2. Prohibited the people from demanding payment in gold or silver;
3. Prohibited banks from lending lawful money (because none existed);
4. Converted all debts into discharge-only obligations under federal public policy; and
5. Made the United States responsible for commercial discharge of obligations.

This policy was codified at 12 U.S.C. § 95a(2):

"Any payment, transfer, assignment, or delivery made to or for the account of the United States… shall be acquittance and discharge for all purposes of the obligation."

---

**No Lawful Consideration Existed on October 31, 2005**

The alleged mortgage dated October 31, 2005 could not have been funded with lawful consideration because:

- No lawful money existed for a bank to lend;
- Banks cannot lend credit;
- Banks cannot lend assets they do not have;
- And credit is not lawful consideration.

Controlling authority confirms:

"A national bank cannot lend its credit."
Citizens' Nat'l Bank of Cameron v. Good Roads Gravel Co., 236 S.W. 153 (Tex. Civ. App. 1921).

---

**Result: The Contract Failed at Inception**

Because consideration is a mandatory element of any contract:

- The alleged Note failed for lack of consideration;
- The alleged Deed of Trust failed with it;
- The entire transaction was discharged at inception;
- The instruments are void ab initio;
- And no enforceable contract ever came into existence.

Under U.C.C. § 3-601, an unfunded or discharged obligation:

- Cannot support any lien;
- Cannot support foreclosure;
- Cannot support assignment;
- Cannot support reporting or collection;
- And cannot be placed into "default," because no debt lawfully exists.

No lawful consideration = No lawful contract

No lawful contract = No lawful lien

No lawful lien = No lawful foreclosure

Plaintiff therefore asserts:

- No enforceable debt exists;
- No lawful lien ever attached to the private ancestral estate;
- No foreclosure can occur on a discharged, non-existent obligation;
- No credit reporting or collection action is permissible;
- No party can claim default on a transaction that was legally impossible.

Fraud has no statute of limitation.

See Throckmorton, 98 U.S. 61 (1878); Hazel-Atlas, 322 U.S. 238 (1944).

_____

**Accordingly**

Defendants cannot rely on the alleged Note or Deed of Trust because they were:

1. Void for lack of consideration;
2. Discharged under federal public policy; and
3. Further nullified by securitization, conversion, and derivative trading.

---

**Long Beach Mortgage Co. No Longer Existed — JPMC Is a Stranger to the Transaction**

- Long Beach Mortgage Company collapsed;
- Washington Mutual failed;
- And the 2008 FDIC Purchase & Assumption Agreement expressly states that JPMorgan Chase:
    - Did not assume borrower liabilities, and
    - Did not acquire any mortgage obligations, including the alleged loan.

Therefore:

**JPMorgan Chase and Jamie Dimon stand as complete strangers to the alleged transaction — with no interest, no liability, no privity, and no standing of any kind.**

## VI. DEFENDANTS MISSTATE PLAINTIFF'S STATUS AND TRIVIALIZE TREATY-PROTECTED NATIONALITY

Defendants trivialize, misrepresent, and attempt to diminish Plaintiff's "-El" designation and treaty-based Moorish American nationality, reducing it to a mere stylistic preference. This is legally incorrect and factually false. Plaintiff's "El" appellation is a recognized national, cultural, and religious identifier, formally acknowledged by Congress, protected under international law, and enforceable under the Supremacy Clause, Article VI, Clause 2.

---

### A. Congressional Recognition of Moorish American Titles and Nationality

On April 17, 1933, the United States House of Representatives formally acknowledged the legitimacy of Moorish American national designations. Congress confirmed:

"the right of these people to use the name affixes El, Ali, or Bey or any other prefix or suffix to which they have heretofore been accustomed to use…"
— H. Res. 75, Congressional Record, Apr. 17, 1933

This recognition confirms that Moorish Americans constitute a distinct national and cultural people, possessing historical lineage linked to Morocco and North Africa. Therefore, Defendants' attempt to belittle or dismiss the "El" designation:

- contradicts the Congressional Record,
- violates Plaintiff's treaty-secured status, and
- constitutes discriminatory misrepresentation before this Court.

---

## B. Treaty Rights Are Supreme and Override Conflicting State Law

Plaintiff's nationality and rights arise directly from the Treaty of Peace and Friendship (1836) between the United States and the Moroccan Empire. This Treaty:

- predates all state statutes,
- governs standing, jurisdiction, and property rights, and
- remains binding under the Supremacy Clause.

The U.S. Supreme Court held:

"A state cannot refuse to give foreign nationals their treaty rights simply because state authorities believe the agreements may not work to their satisfaction."
— Kolovrat v. Oregon, 366 U.S. 187 (1961)

Therefore, no state statute, property code, banking policy, or private corporate rule may override Plaintiff's treaty-protected nationality or legal status.

---

## C. Title 22 Confirms Consular and Foreign-Relations Jurisdiction

Under Title 22, U.S.C., matters involving:

- nationality determinations of foreign or indigenous peoples,

- consular protection,
- and treaty-based political status

are exclusively federal matters—not state matters.

Plaintiff's Moorish American nationality is further supported under:

- 22 U.S.C. §§ 141–143 (foreign nationality recognition)
- 22 U.S.C. § 254 (consular protections)
- the 1836 Treaty
- Article VI (Supremacy Clause)

Accordingly, Defendants possess no legal authority to define, alter, diminish, or dismiss Plaintiff's nationality, political status, or treaty protections.

---

### D. Defendants' Mischaracterization Is Legally Invalid

By attempting to reduce Plaintiff's treaty-protected status to a mere "name change," Defendants:

- misrepresent federal law,
- ignore binding Congressional recognition,
- disregard Supreme Court precedent (Kolovrat),
- violate the Supremacy Clause, and
- attempt to strip Plaintiff of federal foreign-relations standing.

Thus, Defendants' argument is:

- discriminatory,
- legally incorrect,
- constitutionally void,
- in direct conflict with federal law, and
- must be rejected in full.

### VII. PLAINTIFF'S PRIVATE ESTATE TRANSFERRED INTO TRUST — UNREBUTTED

On March 17, 2025, Plaintiff lawfully conveyed the private ancestral estate into the R L Freeman Trust, recorded under Instrument No. RP-2025-13788 in the Harris County property records.

This conveyance placed the property under the exclusive jurisdiction of a private, allodial, irrevocable trust estate, removing it from commercial jurisdiction and from any alleged claims of corporate creditors or servicers.

No Defendant rebutted, challenged, or objected to this lawful transfer.

Under trust law, property transferred into a private trust—when unrebutted—stands as a complete divestment of prior interests, and all contrary claims constitute clouding of title and slander of trust property.

Accordingly, the trust estate and all beneficial interests within it remain undisputed and unrebutted, further defeating Defendants' claims of standing.

---

## VIII.  PLAINTIFF SERVED UNREBUTTED AFFIDAVITS — NOW BINDING AS TRUTH IN COMMERCE

On December 30, 2024, Plaintiff executed and served her:

Affidavit of Fact:

Adverse Claim of Title and Reversion of Ancestral Estate

(Including Memorandum of Trust)

—— Exhibit B / now refiled as Exhibit B

This sworn affidavit included:

- Plaintiff's ancestry and Moorish American jus sanguinis nationality
- Treaty rights under Article 22 of the 1836 Treaty of Peace and Friendship
- A formal adverse aboriginal title claim
- The Memorandum of Trust establishing the allodial private living trust
- A sworn declaration that all corporate liens, claims, or instruments against the ancestral estate are null, void, ineffective, and without lawful authority

This affidavit was received by Jamie Dimon (doing business as JPMorgan Chase Bank, N.A.) on January 10, 2025, via certified mail.

It remained unrebutted for more than ninety (90) days.

## LEGAL EFFECT OF NON-RESPONSE

Under:

- Federal Rule of Civil Procedure 8(b)(6)
- Established commercial law principles
- Maxims of law regarding unrebutted affidavits

An unrebutted affidavit stands as truth in commerce.

Thus:

- Every fact stated in Exhibit B
- Every declaration of nationality
- Every trust assertion
- Every rejection of corporate liens
- Every adverse title claim

is now established as binding truth.

Defendants' silence = Default.

Default = Dishonor.

Dishonor = Admission.

This places the Defendants in commercial, equitable, and procedural estoppel and bars them from contradicting the sworn facts they refused to rebut.

---

## IX. INCORPORATION OF EXHIBIT B AND MEMORANDUM OF TRUST

Exhibit B establishes:

• Plaintiff's Moorish American jus sanguinis nationality

• treaty-protected right to inherit

• adverse aboriginal title claim

• constitutional supremacy of the 1836 Treaty

• invalidity of all feudal/color-of-law liens

• trust protection of the estate

• private jurisdiction outside of federal commercial codes

1. Memorandum of Trust (December 30, 2024)

   Included with Exhibit B, it states:

   • Evidence of the existence of the Allodial Irrevocable Private Living Trust of Rachael Griffin-El (Dec. 30, 2024)

   • Persons may rely solely on the Memorandum; no obligation to inspect the full declaration

   • All transfers referencing this name are valid

   • Document is an international document under consular jurisdiction

2. Effect of Exhibit B + Memorandum of Trust

   Together, these documents:

   • establish private trust ownership

   • rebut all claims of commercial lien validity

   • shift the burden to Defendants

   • override state law under the Treaty

   • deprive Defendants of standing

3. Plaintiff re-inserts Exhibit B

   Because Exhibit B vanished from the docket without explanation, Plaintiff:

   • re-files it

   • re-attaches the Memorandum of Trust

   • re-establishes the evidentiary chain

This Court must treat Exhibit B as prima facie truth under FRCP 8(b)(6).

With the evidentiary record now restored—through the re-submission of Exhibit B the Memorandum of Trust, and the reaffirmed commercial truth of Plaintiff's unrebutted affidavits— the Court is next directed to address Defendants' false assertion that Plaintiff "requested no relief," an argument plainly contradicted by the filings already before this Court.

## X. REBUTTAL TO DEFENDANTS' FALSE CLAIM THAT PLAINTIFF "REQUESTED NO RELIEF"

Defendants knowingly and falsely assert that Plaintiff "seeks no relief" in her Complaint.

This statement is demonstrably incorrect, contradicted by the face of the pleadings, and appears intended to mislead the Court and avoid addressing the substantive remedies Plaintiff expressly demanded.

In both the original Complaint and the First Amended Complaint, Plaintiff clearly and unequivocally requested extensive relief, including but not limited to:

- Rescission of all void, fraudulent, unfunded, and unconscionable instruments;
- Quiet Title in favor of the R L Freeman Trust;
- Full Accounting, including securitization ledgers, CUSIP data, custodial receipts, and a verified chain of title;
- Constitutional and Treaty Protection, specifically enforcement of Article VI Supremacy Clause and the 1836 Treaty of Peace and Friendship;
- TILA damages, including failure to disclose the true creditor and concealment of transfers and securitization;
- FDCPA damages, as Defendants acted as third-party debt collectors attempting to enforce a discharged, non-existent obligation;
- FCRA damages, for false reporting of a nonexistent mortgage balance without lawful standing;
- Common-Law Fraud damages, for misrepresentation, concealment, and identity-based misclassification of Plaintiff;
- Declaratory Relief, including declarations that all alleged instruments are void ab initio;
- Injunctive Relief, halting all foreclosure, collection, reporting, or interference with the private trust estate;
- Punitive and Exemplary Damages for malicious, reckless, and intentional misconduct;
- FIFTEEN MILLION ($15,000,000) in lawful silver (.999) as equitable valuation of injuries inflicted upon eight (8) persons:
  - Plaintiff,
  - Plaintiff's consort, and
  - six (6) children, including two (2) majors, all harmed by Defendants' fraud, displacement, and violations of trust, treaty, and constitutional rights.

These requests are plainly set forth in multiple filings and incorporated notices.

Accordingly, the Defendants' assertion that Plaintiff "requested no relief" is:

1. False,

2. Directly contradicted by the pleadings,
3. A material misrepresentation to this Court, and
4. A deliberate tactic to evade judicial review of Plaintiff's substantive claims.


The Court is respectfully directed to reject Defendants' misstatement in its entirety.

---

## XI. OBJECTION TO JUDICIAL NOTICE

Defendants improperly request that the Court take judicial notice of a series of contested, unauthenticated, and disputed instruments, including but not limited to:

- alleged deeds of trust,
- alleged assignments,
- alleged lien claims,
- bankruptcy filings initiated only because of Defendants' fraud,
- and uncertified, unverified copies of documents not admitted into evidence.

Such documents cannot be judicially noticed under controlling Fifth Circuit authority.

Judicial notice is reserved only for facts "not subject to reasonable dispute."

However, every document Defendants rely upon is expressly disputed, challenged, rebutted, and contradicted by Plaintiff's sworn affidavits, trust instruments, and constitutional/treaty claims.

The Fifth Circuit is clear:

- Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999) —

  A court may not take judicial notice of documents whose authenticity or accuracy is in dispute.

- Norris v. Hearst Trust, 500 F.3d 454 (5th Cir. 2007) —

  Courts may not use judicial notice to accept contested documents, nor may they treat unauthenticated records as true on a Rule 12(b)(6) motion.

Additionally, none of the documents relied on by Defendants qualify as self-authenticating under Federal Rule of Evidence 902, which requires:

- certified public records,
- certified domestic documents,

- original commercial paper,
- notarized documents, or
- documents bearing official seals.

Defendants submitted none of these.

Instead, they attempt to treat uncertified, contested, hearsay, and incomplete electronic images as if they were incontrovertible.

This is improper, impermissible, and legally void.

**Plaintiff therefore objects in full and demands strict proof of:**

1. authentication,
2. chain of custody,
3. custodial certification,
4. completeness,
5. accuracy, and
6. original wet-ink instruments

before any document may be considered by this Court.

Because Defendants have produced none of these prerequisites, the Court cannot take judicial notice, and all such requests must be denied.

---

# XII. VIOLATIONS OF TRUST LAW, SECURITIZATION, AND LACK OF STANDING

Plaintiff now turns to the foundational defects in Defendants' alleged interest, demonstrating that no standing, no privity, no fiduciary authority, and no enforceable contract exists in this matter.

The record—supported by trust law, constitutional law, UCC authority, commercial doctrine, and binding case law—makes clear that Defendants' claims fail as a matter of law.

---

## 1. The Deed of Trust Is a Tri-Partite Trust Instrument — Not a Bilateral Contract

A Deed of Trust creates a three-party fiduciary relationship, consisting of:

- Trustor — Plaintiff
- Trustee — holds legal title

- Beneficiary — the true creditor (Long Beach Mortgage Co., now defunct)

It is not a bilateral lender-borrower contract.

Once the alleged "note" was securitized, the Deed of Trust became:

- derivative,
- split,
- non-linear,
- governed by trust law,
- and incapable of enforcement by parties lacking beneficial ownership.

Thus, Defendants cannot rely on it in any capacity.

---

**2. No Standing Exists Without the Original Wet-Ink Note**

Under Carpenter v. Longan, 83 U.S. 271 (1872):

"The note and mortgage are inseparable. The former as essential, the latter as an incident.
The assignment of the note carries the mortgage with it."

This rule is absolute.

Therefore, to foreclose, Defendants must prove all of the following:

1. Possession of the original wet-ink promissory note;
2. A continuous, verified chain of negotiation;
3. Beneficial ownership, not servicing rights;
4. Authority to enforce under UCC Articles 3 and 9;
5. Unbroken standing from origination to present.

Defendants have produced none of these required elements.

Therefore, without the note:

- No standing
- No enforcement
- No foreclosure
- No claim

Under Carpenter, their entire foreclosure theory collapses.

---

### 3. Unlawful Hypothecation and Securitization Constitute Breach of Fiduciary Duty

Defendants:

- securitized the alleged note,
- split legal and equitable title,
- created mortgage-backed securities,
- transferred beneficial interests to undisclosed investors,
- and monetized Plaintiff's signature without consent.

These acts:

- breach fiduciary duties

  (loyalty, full disclosure, preservation of corpus);

- convert the trust res (property);
- eliminate any presumption of good faith;
- and destroy any enforceable contract.

No party may foreclose on trust property they illegally hypothecated.

---

### 4. Defendants Are Strangers to the Alleged Transaction

Defendants themselves admit:

- Long Beach Mortgage Company was the alleged originating creditor,
- Long Beach ceased to exist,
- Washington Mutual collapsed,
- The FDIC P&A Agreement (2008) states JPMorgan Chase did not assume borrower liabilities.

Thus:

- Jamie Dimon (d/b/a JPMorgan Chase Bank, N.A.), and
- Franklin Credit Management Corp.

are third parties, strangers, and non-beneficiaries attempting to enforce a securitized derivative.

Because they are not:

- the trustor,
- the trustee,
- or the beneficiary,

they have:

- no privity,
- no fiduciary authority,
- no beneficial interest, and
- no standing to foreclose on Plaintiff's private estate.

---

## XIII. FRAUD REBUTTAL

Plaintiff states each element of fraud with the specificity required under:

- Formosa Plastics Corp. v. Presidio Eng'rs, 960 S.W.2d 41 (Tex. 1998),
- FRCP 9(b),
- Commercial maxims and trust law.

All five elements of actionable fraud are satisfied.

---

### 1. Material Misrepresentation

Defendants made multiple material misrepresentations, including:

1. Claiming a lawful loan existed when no lawful consideration existed after 1933 (HJR-192; 12 U.S.C. §95a(2));
2. Concealing the identity of the true creditor;
3. Concealing securitization, CUSIP conversion, and beneficial ownership;
4. Submitting fabricated or uncertified assignments without FRE 902 authentication;
5. Misidentifying Plaintiff as an ALL-CAPS fiction, contrary to her treaty-secured nationality;
6. Claiming foreclosure authority without:
   o   the original note,
   o   a lawful chain of title,
   o   or standing.

These go to the core of formation, standing, jurisdiction, and enforceability.

---

## 2. Knowledge of Falsity

Defendants acted with full knowledge that their representations were false:

- JPMorgan Chase knew it never acquired Long Beach or Washington Mutual borrower liabilities.
- Servicers knew securitization destroyed privity.
- Defendants knew Plaintiff's affidavits and trust instruments were served and unrebutted.
- Defendants knew they had no wet-ink note and no chain of title.

Knowledge is established through:

- silence in the face of sworn notices,
- unrebutted affidavits,
- constructive dishonor,
- commercial default.

Under long-standing commercial maxims:

Unrebutted = truth. Silence = acquiescence.

---

## 3. Intent to Induce Reliance

Defendants acted with deliberate intent to:

- fabricate authority,

- create the illusion of a valid lien,
- coerce payments on a non-existent debt,
- foreclose on private trust property,
- monetize Plaintiff's signature,
- mislead Plaintiff, the county clerk, the bankruptcy court, and this Court.

This satisfies the intent element fully.

---

### 4. Actual and Justifiable Reliance

Plaintiff relied on Defendants' representations:

- at closing, believing lawful consideration was provided;
- during servicing, believing Defendants had authority;
- under threat of foreclosure, believing their claims were lawful;
- during bankruptcy, forced into protection due to Defendants' misconduct.

Reliance was justified due to Defendants' appearance as licensed fiduciaries and trustees.

---

### 5. Injury

Plaintiff suffered:

- unlawful foreclosure,
- loss of ancestral estate,
- forced bankruptcy,
- credit damage,
- emotional and household harm,
- exploitation of her signature,
- harm to the R L Freeman Trust,
- deprivation of constitutional and treaty-secured rights.

Under Formosa Plastics, economic injury from fraud is actionable regardless of contract language.

---

**Conclusion of Section XIII**

All fraud elements—misrepresentation, knowledge, intent, reliance, and injury—are met.

Under:

- Throckmorton, 98 U.S. 61 (fraud vitiates all),
- Hazel-Atlas, 322 U.S. 238 (fraud on the court nullifies judgments),

fraud vitiates:

- the alleged note,
- the alleged deed of trust,
- all assignments,
- all foreclosure notices,
- and every action taken by Defendants.

Therefore, Defendants' Motion to Dismiss must be denied.

---

## XIV. TILA, FDCPA, AND FCRA REBUTTALS

(Integrated and Strengthened)

Defendants' Motion to Dismiss ignores multiple statutory violations committed by Jamie Dimon doing business as CEO of JPMorgan Chase Bank, N.A., each of which independently sustains Plaintiff's claims. These violations stem directly from Defendants' concealment of the true creditor, their unauthorized collection activity after discharge, and their unlawful reporting of a non-existent debt.

---

### A. TILA Violations

Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., by failing to provide the mandatory disclosures required in any consumer-credit transaction.

### 1. Failure to Disclose the True Creditor

TILA requires lenders to disclose the identity of the true creditor, not a servicer or intermediary.

Defendants never disclosed:

- who funded the alleged "loan,"
- that no lawful money was tendered,
- that Plaintiff's signature created the asset,
- or that the transaction involved securitization and conversion into investment securities.

## 2. Failure to Disclose Securitization

TILA mandates disclosure of the material terms of the transaction.

Securitization is a material term, as it:

- changes the nature of the obligation,
- destroys privity,
- transfers beneficial ownership,
- and eliminates any enforceable bilateral loan relationship.

Defendants concealed all of this, violating 15 U.S.C. § 1631 and Regulation Z.

## 3. Failure to Provide Notice of Transfer

Under 15 U.S.C. § 1641(g), a creditor must notify the borrower within 30 days of any transfer of ownership.

Defendants:

- never provided any authenticated transfer notices,
- rely on assignments created years later,
- and cannot establish a continuous chain of ownership.

## 4. Continuing Violations Toll Limitations

Under King v. California, 784 F.2d 910 (9th Cir. 1986):

TILA limitations are tolled by continuing violations and concealment.

Defendants' concealment of securitization, transfers, beneficial owners, and accounting records keeps TILA claims timely.

---

## B. FDCPA Violations

Jamie Dimon doing business as CEO of JPMorgan Chase acted as a debt collector, not a creditor, because:

- JPMorgan Chase did not originate the alleged loan,

- did not acquire borrower liabilities under the FDIC P&A Agreement (2008),
- admitted it is a "third party," and
- relied on an alleged debt discharged at inception.

Debt collectors may not demand payment on an invalid or discharged obligation.

Defendants violated:

### 15 U.S.C. § 1692e — False, deceptive, or misleading representations

By:

- claiming Plaintiff owed a balance that did not exist,
- representing themselves as lawful creditors,
- and misrepresenting their authority to foreclose.

### 15 U.S.C. § 1692f — Unfair or unconscionable means

By:

- attempting to collect a discharged debt,
- issuing foreclosure threats,
- ignoring Plaintiff's repeated verification and validation demands,
- and pursuing possession of trust property with no standing.

These actions violate federal consumer-protection law and sustain Plaintiff's claims.

---

### C. FCRA Violations

Defendants also violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., by:

### 1. Reporting a discharged, non-existent "mortgage balance"

After receiving Plaintiff's affidavits, trust notices, and commercial declarations — unrebutted for months — Defendants had actual knowledge that:

- the alleged obligation was discharged at inception,
- securitization destroyed privity,
- and foreclosure was void.

Despite this, they continued reporting a false outstanding mortgage debt.

This violates 15 U.S.C. § 1681s-2(b).

**2. Failure to conduct a reasonable investigation**

Once Plaintiff disputed the false reporting, JPMorgan Chase was obligated to:

- investigate the dispute,
- correct the inaccurate information,
- and notify all CRAs of corrections.

Instead, Defendants continued reporting the debt as active.

This conduct is prohibited and actionable under:

- Young v. Equifax,
- Nelson v. Chase Manhattan Bank, 282 F.3d 1057 (9th Cir. 2002) (furnishers liable for failing to correct false information).

---

**Conclusion of Section XIV**

TILA, FDCPA, and FCRA violations each independently:

- defeat Defendants' Motion to Dismiss,
- establish statutory liability,
- support damages, and
- demonstrate Defendants' continuing pattern of fraud, concealment, and unlawful collection practices.

These violations cannot be dismissed as a matter of law.

---

**XV. SLANDER OF TITLE / QUIET TITLE**

Defendants recorded false instruments in Harris County.

Texas Property Code § 12.002 applies.

Malice shown.

Clouded title.

Trust estate harmed.

Quiet title is appropriate.

## XVI. DUE PROCESS VIOLATIONS

Defendants' attempted foreclosure—and all actions taken in support of it—constitute grave violations of Plaintiff's constitutional, treaty-protected, and procedural due-process rights. Because the foreclosure occurred without jurisdiction, without lawful notice, during an active federal proceeding, and in the complete absence of standing, every aspect of the action is void ab initio and without legal force.

### 1. Foreclosure Occurred Without Jurisdiction

Under long-established constitutional doctrine, a court must possess all three forms of jurisdiction before it may proceed:

1. Subject-matter jurisdiction,
2. Territorial (in rem) jurisdiction, and
3. Personal (in personam) jurisdiction.

Plaintiff repeatedly challenged jurisdiction through:

- Special Appearance,
- Treaty-based nationality notices,
- Trust-estate jurisdiction notices,
- Affidavit of Fact (Exhibit B-1),
- Memorandum of Trust,
- Notices of Challenge to Authority,
- Writ of Quo Warranto, and
- Notice of Removal.

None of these filings were rebutted.

Because Plaintiff never consented to federal corporate jurisdiction, and because the private estate exists within treaty-protected status, the state court — and all private parties acting under color of law — acted ultra vires. A foreclosure performed in the absence of jurisdiction is void, not merely voidable.

### 2. Foreclosure Occurred Without Lawful Notice

Despite Plaintiff serving more than forty (40) certified-mail notices, affidavits, trust instruments, and jurisdictional challenges, Defendants:

- ignored every filing,
- failed to provide verification of debt,
- offered no chain of title,
- never produced the original wet-ink note,
- concealed securitization,
- and issued notices addressed to an ALL-CAPS fiction rather than the living woman.

Notices mailed to a fictitious, non-existent entity do not constitute lawful notice under constitutional due-process standards or under Texas Property Code § 51.002(d).

Failure to provide actual, meaningful notice voids any attempt at foreclosure.

---

### 3. Foreclosure Occurred During an Active Federal Case

At the time Defendants and PCF Properties initiated and executed their foreclosure and eviction actions:

- Federal Case No. 4:25-cv-02013 was active and pending,
- A federal Lis Pendens had been recorded,
- Notices of Removal had been filed in the state court,
- Jurisdiction had been divested from the state forum, and
- All matters concerning title, standing, and contract validity were under federal review.

Under 28 U.S.C. § 1446(d):

"The State court shall proceed no further unless and until the case is remanded."

Despite this, Defendants continued to:

- record documents,
- attempt foreclosure,
- enforce possession, and
- transfer or sell the property.

Actions taken after removal and during federal jurisdiction are void ab initio. This is not a procedural defect — it is a constitutional violation.

---

### 4. Foreclosure Occurred With No Proof of Standing

Defendants never produced:

- the original wet-ink promissory note,

- a continuous chain of title under UCC Articles 3 and 9,
- evidence of beneficial ownership,
- authority to enforce the alleged note,
- the FDIC transfer showing assumption of liabilities (which does not exist),
- or proof that Long Beach Mortgage Company had assigned any enforceable rights prior to dissolution.

Because securitization destroyed privity and bifurcated legal and equitable title, no Defendant—not Jamie Dimon doing business as JPMorgan Chase, not Franklin Credit, and not PCF Properties—ever possessed standing to foreclose.

A foreclosure without standing is a nullity and cannot divest title or transfer property under any law.

---

**5. A Foreclosure Performed Without Jurisdiction, Notice, Standing, or Authority Is Void**

Each defect—individually—is grounds for invalidation. Collectively, they amount to:

- constitutional deprivation,
- fraudulent exercise of colorable authority,
- violation of treaty-secured protections,
- violation of trust law,
- violation of procedural due process,
- and void acts that cannot create lawful title.

A void act:

- confers no rights,
- imposes no duties,
- affords no protection,
- and is "as though it never occurred" (Throckmorton, 98 U.S. 61).

Thus, the foreclosure attempt is invalid on its face and must be annulled.

Having established that the foreclosure was void for lack of jurisdiction, notice, standing, and authority, the analysis now turns to Defendants' continuing refusal to produce the foundational commercial documents required under federal law—documentation they must provide before making any claim of enforcement against Plaintiff or her private trust estate.

## XVII. DEMAND FOR DISCLOSURE AND ACCOUNTING

In further support of Plaintiff's Special Appearance, and pursuant to constitutional, treaty, commercial, and trust-law requirements, Plaintiff demands full disclosure and accounting as a prerequisite to any enforcement action. Defendants have failed to produce even the most basic commercial instruments necessary to establish standing, privity, authority, or creditor status.

Defendants must produce the following:

- Forward Flow Agreements (governing bulk sale of mortgage instruments)
- Pooling & Servicing Agreements (PSAs)
- All securitization records, including trust name, closing date, and investor structure
- Custodial receipts showing chain-of-custody of the alleged note
- Derivative ledgers showing conversion of the alleged note into investment-grade securities
- CUSIP registration numbers tied to the securitized instrument
- Investor remittance reports showing payments made to certificate-holders
- General ledgers showing asset creation from Plaintiff's signature under GAAP and FAS 140

Failure to produce the above constitutes concealment, violation of fiduciary obligations, violation of the duty of full disclosure, and grounds for sanctions, adverse inferences, and default under:

- FRCP 8(b)(6);
- FRCP 26;
- FRCP 37;
- Restatement (Second) of Trusts §170;
- 12 U.S.C. § 92a;
- United States v. Throckmorton (fraud vitiates all).

---

## XVIII. DEMAND FOR RELIEF

For all the reasons stated herein—constitutional, commercial, trust-law, securitization, treaty, and jurisdictional—Plaintiff demands the following relief:

1. Deny Defendants' Motion to Dismiss in full.
2. Declare all alleged instruments void ab initio, including:
   - the alleged promissory note,
   - the alleged deed of trust,
   - all alleged assignments,
   - all substitute trustee instruments,
   - all foreclosure notices and filings.
3. Quiet Title in favor of the R L Freeman Trust, Instrument No. RP-2025-13788.
4. Rescind and nullify the attempted foreclosure of June 6, 2025, as void for lack of jurisdiction, lack of standing, fraud, and violation of federal supremacy.

5. Order a full forensic accounting and disclosure, including securitization data, investor payment streams, credit creation records, and all commercial transactions derived from Plaintiff's signature.
6. Award compensatory, punitive, and exemplary damages for Plaintiff and her six children (eight persons total), in the amount of:

**FIFTEEN MILLION ($15,000,000) in lawful silver American .999 pure**

as the equitable valuation of injuries inflicted upon a private trust estate and its inhabitants, consistent with federal statutory valuation of civil injury per living person.

7. Enjoin Defendants from all further:
   o collection attempts,
   o reporting,
   o foreclosure actions,
   o third-party transfers,
   o or interference with Plaintiff's private trust estate.
8. Award costs, including certified-mail expenses, administrative fees, equitable interest, and all further relief in law or equity to which Plaintiff is justly entitled, without waiving Special Appearance or rights under U.C.C. 1-308.

**Respectfully Submitted**

Rachael Griffin-El, sui juris, Special Appearance, Proper Person ex rel

RACHAEL LEE GRIFFIN

P.O. Box 90008

Houston, Texas Republic [77290]

All Rights Reserved — Without Prejudice — UCC 1-308



## VII. VERIFICATION

(28 U.S.C. § 1746 Declaration)

I, Rachael Griffin-El, sui juris, declare under penalty of perjury under the laws of the United States of America that the foregoing statements in this Combined Rebuttal to Defendants' Motion to Dismiss, Objection to Judicial Notice, Notice of Constitutional Authority, and Demand for Disclosure, Accounting, and Relief are true and correct to the best of my knowledge, belief, and honorable intent.

I make this declaration by virtue of the Constitution for the United States of North America (1791), the Treaty of Peace and Friendship (1836), and upon the honor of my Foremothers and Forefathers.

Executed on November 18, 2025, at Texas Republic.

Rachael Griffin-El, sui juris

Special Appearance – Proper Person

ex rel. RACHAEL LEE GRIFFIN

All Rights Reserved – Without Prejudice – UCC 1-308

Page 46 of 46






Moorish National Republic Federal Government
Moorish Divine and National Movement of the World
Northwest Amexem / Northwest Africa / North America /
'The North Gate'
~'Temple of the Moon and Sun'~
∘ ∘~Societas Republicae Ea Al Maurikanos~ ∘
The True and De jure Natural Peoples ~ Heirs of the Land

---

## Affidavit of Fact
### Adverse Claim of Title and Reversion of Ancestral Estate- EXHIBIT: B
### International Document
### Notice to Agent is Notice to Principal – Notice to Principal is Notice to Agent

Mr. Jamie Dimon, (acting as) Chairman of the Board of Directors /Chief
Executive Officer
JPMORGAN CHASE CO.
270 Park Avenue
New York, NY [near 100017, United States]

Re: Misrepresented Instruments – Bills of Attainder / Foreign Bills of
Exchange titled MORTGAGE STATEMENT December 17,2024, associated
with account number 0696921980; and my ancestral estate in reversion
known as 703 Deveron Ln. Houston, Texas.

### Stare Decisis Law
*"A state cannot refuse to give foreign nationals their treaty rights because
of fear that valid international agreements may possibly not work
completely to the satisfaction of state authorities. Under the supremacy
clause of the United States Constitution Art. VI, clause 2, state policies as
to the rights of aliens to inherit must give way to overriding federal treaties
and conflicting arrangements." See Kolovrat v. Oregon, 366 U.S. 187, 194,
81 S.Ct. 922 (1961)*




I Rachael Griffin-El, sui juris, an aboriginal and indigenous Mooris American sovereign national of the Moroccan Empire at Maghrib alAqsá, North-West Amexem /North America, being of legal age, after being duly affirmed according to law, hereby depose, and state the following:

1. I am one of the surviving consanguinity heiress apparent of the late ancient Moabites (modernly known as Moroccans) from the land of Moab who received permission from the Pharaohs of Kemet to settle and inhabit North-West Africa (Amexem); they were the founders and are the true possessors of the present Moroccan Empire, with their Canaanite, Hittite, and Amorite brethren who sojourned from the land of Canaan seeking new homes. Their dominion and inhabitation extended from North-East and South-West Africa, across the great Atlantis even unto the present North, South, and Central America and also Mexico and the Atlantis Islands, before the great earthquake, which caused the the great Atlantic Ocean.

2. My nationality / citizenship and political status as an aboriginal indigenous Moorish American sovereign national of the Moroccan Empire and direct descendant of the ancient Moabites (Moroccans) by jus sanguinis, is recognized under registration number CAA 222141, Class A, with the Clock of Destiny Moorish American National Identification Card and Zodiac Constitution recorded by Charles Mosley Bey, a Moorish American and my kin by consanguine, on September 10, 1952, in the Library of Congress Copyright Office, Washington, District of Columbia, and the United States Department of Justice.

3. My Moabite ancestors died intestate, and was vested with reversionary interest in the lands and resources of the Moroccan Empire at North America, which is in de facto occupational use, in usufruct, by the foreign hybrid <u>European colonists exercising feudal law practices under color of law as citizens / members / beneficiaries of the UNITED STATES</u> (Inc.) under the expired fifty (50) year mandate, i.e., the Treaty of Peace and Friendship of 1836 (in force 1837) between the United Sates of North America and the Moroccan Empire; which superseded the Treaty of Peace and Friendship of 1787 between the United States of America, and his Imperial Majesty the Emperor of Morocco. <u>This treaty is the supreme Law of the Land under the 'Supremacy Clause' of the Constitution for the United States of North America Article VI, clause 2. Article 25</u> of the aforesaid Treaty of 1836 avers the expiration term as follows:

  Article 25. This Treaty shall continue in force, with the help of God, for fifty years; after the expiration of which term, the Treaty shall continue to be binding on both parties, until the one shall give twelve months' notice to the other of an intention to abandon it; in which case, its operations shall cease at the end of the twelve months."

4. Per my treaty right to inherit under Article 22 of the Treaty of Peace and Friendship of 1836 between the United States of North America and the Moroccan Empire, and in accordance with the international law provisions of the United Nations Declaration on the Rights of Indigenous Peoples, I am competent to make

 

STATE OF TEXAS (inc.) and subsidiaries as escheated fee simple property under color of law within purview of the unconstitutional 14th Amendment to the United States Constitution. Per the stare decisis
law in the Kolovrat case mentioned above, my treaty right to inherit property under Article 22 of the said Peace Treaty of 1836 overrides all state policies that are made to the contrary, which aver the following:
Article 22. If an American citizen shall die in our country and no will shall appear, the Consul shall take possession of his effects, and if there shall be no Consul, the effects shall be deposited in the hands of some.
Person worthy of Trust, until the Party shall appear who has a right to demand them, but if the Heir to the Person deceased be present, the property shall be delivered to him without interruption; and if a will shall appear, the property shall descend agreeable to that will, as soon as the Consul shall declare the validity thereof.
5. I hereby make an adverse claim of aboriginal title to my ancestral estate in reversion as described below, to wit:

ALL that certain plot, piece or parcel of land with resources, buildings and improvement thereon erected, situated, lying and being, known to be located near Houston, Texas; known by the street address of 703 Deveron Lane. Texas, at Maghrib al Aqsá, North-West Amexem, and geographically located on the North American continent within the dominions of the Moroccan Empire at Maghrib al Aqsá, North-West Amexem, Latitude

Longitude 95.437722 Latitude 30.009458
GPS Coordinates 30° 0' 34.0488" N 95° 26' 15.7992" W

6. This claim is made pursuant to the aboriginal land tenure systems, traditions, and customs of my ancient Moabite Foremothers and Forefathers in accordance with international law under Articles 26, 27, 28, 29, 30, and 37 of the United Nations Declaration on the Rights of Indigenous Peoples.
7. The above-described property is registered in a private allodial trust titled: Allodial Irrevocable Private Living Trust of Rachael Griffin- El dated December 30,2024, which I am the Trustee of; and the attached document titled Memorandum of Trust shall serve as evidence of such trust.
8. Any mortgage, hypothecation, lien, encumbrance, or fee simple deed (color of title) attached to my ancestral estate in reversion known as 703 Deveron Lane. Houston Texas, claimed or held by any citizen(s) of the United State via feudal law practice within purview of the 14th Amendment to the United States Constitution, being recorded in the Land Records of Harris County, Texas, or any other records in the Land Records of Harris County, Texas, or any other records
associated there to are held to be ineffective, invalid, null, void and unconstitutional per the Congressional Record Proceedings and Debates of the 90th Congress, 1s Session,

 

Volume 113 – Part 12, June 12, 1967, page 15614 (The 14TH Amendment is Unconstitutional).

9. I am, therefore, executing this Affidavit for the purpose of attesting to the truthfulness of the facts set forth herein.


### AFFIDAVIT

I affirm by virtue of Divine Law; under the Zodiac Constitution; and upon the United States Republic Constitution; and upon the honor of my Foremothers and Forefathers that the foregoing Affidavit of Fact: Adverse Claim of Title and Reversion of Ancestral Estate is true and correct.


Executed this __30th__ day of December 2024


Affiant: Rachael Griffin -EL, de jure
in propria persona, sui juris, in solo proprio authorized representative, ex rel.
RACHAEL GRIFFIN/ RACHEL GRIFFIN
All Rights Reserved.
C/o 703 DEVERON LN.
HOUSTON, TEXAS [Zip Exempt]

DENIA MARIELA PEREA
My Notary ID # 130092166
Expires January 27, 2027

12/30/24.







*Moorish National Republic Federal Government*
*Moorish Divine and National Movement of the World*
*Northwest Amexem / Northwest Africa / North America /*
*'The North Gate'*
*~'Temple of the Moon and Sun'~*
*e o~ Societas Republicae Ea Al Maurikanos~ e*
*The True and De jure Natural Peoples ~ Heirs of the Land*

## Memorandum of Trust
International Document - Consular Jurisdiction and Venue

KNOW THAT, I, Rachael Griffin-El, being in care of the mailing location at C/o703 Deveron Lane, Houston, Texas, as Grantor, created an allodial private irrevocable trust, known as the Allodial Irrevocable Private Living Trust of
Rachael Griffin-El dated December 30, 2024, by executing a Declaration of Trust, dated December 30, 2024, naming I Rachael Griffin-El, as Trustee and beneficiary.

This Memorandum of Trust is executed as evidence of the existence of the foregoing
Declaration of Trust. Any person may rely upon this Memorandum of Trust as evidence of the existence of said Declaration of Trust, and is relieved of any obligation to verify that any transaction entered into by a Trustee thereunder is consistent with the terms and conditions of said Declaration of Trust.

The Declaration of Trust and the trusts created thereunder may be referred to by the
name: "Allodial Irrevocable Private Living Trust of Rachael Griffin-El dated December 30, 2024". Any transfers to the Declaration of Trust or any trust thereunder may refer to the aforesaid appellation as Trustee under the name "Allodial Irrevocable Private Living Trust of Rachael Griffin-El

dated December 30, 2024", with or without specifying any change in

 

Trustee(s).

**IN WITNESS WHEREOF,** the Grantor has executed this Memorandum of Trust as of

This 30th day of December, 2024.

Affiant: Rachael Griffin -EL, de jure
in propria persona, sui juris, in solo proprio authorized representative ex rel.
RACHAEL GRIFFIN/ RACHEL GRIFFIN
All Rights Reserved.
C/o 703 DEVERON LN.
HOUSTON, TEXAS [Zip Exempt]

Maghrib al Aqṣá.
North-West Amexen.

Duly subscribed and affirmed on this 30 day of December , 1115 M.C.V. (C.C.Y. 2024), before me, the Consul of Morocco at the Texas state republic, personally appeared Rachael Griffin-El, personally known to me or proved to me on the basis of satisfactory evidence to be the one whose name is subscribed to the within instrument and acknowledged to me that (he/she) executed the same in [his/her] capacity, and that by (his/her) signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

AS WITNESS my hand and official seal:

Autograph: _____
Wazir [Notary Public], All Rights Reserved.

Appellation (printed) _____