**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **RACHAEL GRIFFIN-EL,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:25-cv-02013** |
| | § | |
| **JPMORGAN CHASE BANK, N.A.,** | § | |
| **and** | § | |
| **JAMIE DIMON,** | § | |
| *Defendants* | § | |

---

**DEFENDANTS JPMORGAN CHASE BANK, N.A. AND JAMIE DIMON'S
MOTION FOR SUMMARY JUDGMENT**

---

WM. LANCE LEWIS
Texas Bar No. 12314560
S.D. Bar No. 28635
ERIC G. CARLSON
Texas Bar No. 24100076
S.D. Bar No. 3076490
**QUILLING, SELANDER, LOWNDS,
 WINSLETT & MOSER, P.C.**
2200 Ross Avenue, Suite 2400
Dallas, Texas 75201
(214) 871-2100 (Phone)
(214) 871-2111 (Fax)
llewis@qslwm.com
ecarlson@qslwm.com

**ATTORNEYS FOR DEFENDANTS
JPMORGAN CHASE BANK, N.A. AND JAMIE
DIMON**

**TABLE OF CONTENTS**

I.     Introduction.................................................................................................................1

II.    Summary Judgment Evidence.....................................................................................3

III.   Statement of Material Facts .......................................................................................4

IV.    Legal Standard ..........................................................................................................10

V.     Argument and Authorities.........................................................................................11

       A.     Plaintiff Cannot Raise a Genuine Dispute That the Debt Is Valid and That
              Chase May Enforce It. .....................................................................................11

              1.     Plaintiff's own admissions and bankruptcy filings establish the
                     debt.......................................................................................................11

              2.     The "show-me-the-note" and "split-the-note" theories fail under
                     Texas law. ...........................................................................................11

              3.     Plaintiff lacks standing to challenge the assignment or
                     securitization. .....................................................................................12

       B.     Plaintiff's FDCPA Claim Fails Because Chase Is Not a Debt Collector...............12

       C.     Plaintiff's TILA Claim Is Time-Barred and Otherwise Fails. ...............................13

       D.     Plaintiff's FCRA Claim Fails for Lack of a Private Right of Action and
              Any CRA-Notice Trigger. .................................................................................14

       E.     Plaintiff's Fraud, Mail-Fraud, and Identity Claims Fail. ......................................14

       F.     Plaintiff's Slander-of-Title and Quiet-Title Claims Fail.........................................16

       G.     Plaintiff's Constitutional Claims Fail. .................................................................17

       H.     Plaintiff's Remaining Theories Fail as a Matter of Law.........................................18

       I.     Defendant Jamie Dimon Must Be Dismissed for Lack of Personal
              Jurisdiction..........................................................................................................19

VI.    Conclusion ................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

Allen-Pieroni v. Pieroni
    535 S.W.3d 887 (Tex. 2017)..................................................................... 16

Anderson v. CitiMortgage, Inc.
    No. 4:10-CV-398, 2011 WL 1113494 (E.D. Tex. Mar. 24, 2011) ................................... 14

Bagwell v. Countrywide Home Loans Servicing, LP
    No. 3:09-CV-1358-P, 2011 WL 1120261 (N.D. Tex. Mar. 24, 2011) ............................. 18

Barrera v. Sec. Bldg. & Inv. Corp.
    519 F.2d 1166 (5th Cir. 1975) .................................................................. 17

Batiste v. Lewis
    976 F.3d 493 (5th Cir. 2020) ..................................................................... 10

Beaner v. United States
    361 F. Supp. 2d 1063 (D.S.D. 2005) .................................................................. 19

Bell v. Health-Mor, Inc.
    549 F.2d 342 (5th Cir. 1977) ....................................................................... 14

Bendeck v. U.S. Bank Nat'l Ass'n
    No. CV 17-00180 JMS-RLP, 2017 WL 2726692 (D. Haw. June 23, 2017) ..................... 16

Brown v. Morris
    243 F. App'x 31 (5th Cir. 2007)..................................................................... 13

Celotex Corp. v. Catrett
    477 U.S. 317 (1986)..................................................................................... 10

Coker v. Gore
    618 F. Supp. 3d 591 (S.D. Tex. 2022) ............................................................. 11

Conrad v. Barclays Bank Del.
    No. 4:17-CV-1045, 2017 WL 7796344 (S.D. Tex. July 27, 2017) ................................. 14

Costell v. Bank of New York Mellon
    No. 12-CV-15063, 2013 WL 317746 (E.D. Mich. Jan. 28, 2013) ................................. 11

D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.
    754 F.2d 542 (5th Cir. 1985) ....................................................................... 20

Davis v. Countrywide Home Loans, Inc.
    1 F. Supp. 3d 638 (S.D. Tex. 2014) ....................................................... 14, 17

DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Tr. Co.
  958 F. Supp. 2d 738 (W.D. Tex. 2013)................................................................. 19

Ellini v. Ameriprise Fin., Inc.
  881 F. Supp. 2d 813 (S.D. Tex. 2012) ................................................................ 10

Ferguson v. Bank of N.Y. Mellon Corp.
  802 F.3d 777 (5th Cir. 2015) ............................................................................. 12

Foret v. Wilson
  725 F.2d 254 (5th Cir. 1984) ............................................................................. 19

Gooden-El v. Tarrant Cnty., Tex.
  No. 4:20-CV-116-O, 2021 WL 793758 (N.D. Tex. Mar. 2, 2021)............................... 1, 19

Harris v. First Franklin Fin. Corp.
  No. 4:09-CV-3698, 2010 WL 4226449 (S.D. Tex. Oct. 20, 2010) ................................... 13

Holden v. Holiday Inn Club Vacations Inc.
  98 F.4th 1359 (11th Cir. 2024) .......................................................................... 14

In re Coastal Plains, Inc.
  179 F.3d 197 (5th Cir. 1999) ............................................................................. 11

King v. Trump
  No. H-20-1600, 2020 WL 3542778 (S.D. Tex. June 30, 2020)......................................... 1

Martinez v. DISA, Inc.
  435 F. Supp. 3d 747 (W.D. Tex. 2020).................................................................. 18

Martins v. BAC Home Loans Servicing, L.P.
  722 F.3d 249 (5th Cir. 2013) ........................................................................ 11, 12

Naumov v. Shellpoint Mortg. Servicing
  No. 3:23-CV-01120-JR, 2024 WL 1991547 (D. Or. Apr. 2, 2024)................................... 17

Perry v. Stewart Title Co.
  756 F.2d 1197 (5th Cir. 1985) ....................................................................... 12, 13

Preston v. Seterus, Inc.
  931 F. Supp. 2d 743 (N.D. Tex. 2013) ................................................................. 12

Reinagel v. Deutsche Bank Nat'l Trust Co.
  735 F.3d 220 (5th Cir. 2013) ............................................................................. 12

Rendell-Baker v. Kohn
  457 U.S. 830 (1982)........................................................................................ 18

Rivera v. Recontrust Co., N.A.
    No. 2:11-CV-01695-KJD, 2012 WL 2190710 (D. Nev. June 14, 2012),
    aff'd, 594 Fed. Appx. 412 (9th Cir. 2015)................................................................ 11

Tilley v. Glob. Payments, Inc.
    603 F. Supp. 2d 1314 (D. Kan. 2009)..................................................................... 14

U.S. Bank N.A. v. Edwards
    2017 WL 1396047 (D. Or. Feb. 23, 2017).............................................................. 16

Warren v. Bank of Am., N.A.
    566 Fed. App'x 379 (5th Cir. 2014) ....................................................................... 16

Wilson v. Bayview Loan Servicing LLC
    No. 5:19-CV-616-DAE, 2020 WL 10965116 (W.D. Tex. Oct. 19, 2020) ................. 14, 17

Wise v. Conklin
    No. 01-13-00840-CV, 2015 WL 1778612 (Tex. App.-Houston [1st Dist.]
    Apr. 16, 2015, no pet.) ........................................................................................... 16

## STATUTES                                                                   Page(s)

15 U.S.C. § 1635(f)................................................................................................. 13

15 U.S.C. § 1638(a) ................................................................................................ 13

15 U.S.C. § 1640(e) ................................................................................................ 13

15 U.S.C. § 1681s-2(a) ........................................................................................... 13

15 U.S.C. § 1681s-2(b) ........................................................................................... 13

15 U.S.C. § 1681s-2(c) ........................................................................................... 13

15 U.S.C. § 1692a(6) .............................................................................................. 12

15 U.S.C. § 1692a(6)(F)(iii) ................................................................................... 12

31 U.S.C. § 5103..................................................................................................... 18

Tex. Prop. Code § 51.002(b)(3)............................................................................... 19

**RULES**                                                                    **Page(s)**

Fed. R. Civ. P. 56(a) ........................................................................................ 10

Fed. R. Civ. P. 9(b) .......................................................................................... 14

**CONSTITUTIONAL PROVISIONS**                                                **Page(s)**

U.S. Const. amends. V, XIV .............................................................................. 18

U.S. Const. art. I, § 10...................................................................................... 17

U.S. Const. art. VI............................................................................................. 18

## I.    <u>INTRODUCTION</u>

Defendants JPMorgan Chase Bank, N.A. and Jamie Dimon move for summary judgment on all of Plaintiff's claims under Federal Rule of Civil Procedure 56 and, in support, respectfully show the following.

Plaintiff Rachael Griffin-El, a self-described Moorish American who propounds many oft-discredited and rejected Moorish American legal theories in this case, asks this Court to erase a mortgage she signed in 2005, lived under for two decades, and listed as a valid secured debt in bankruptcy. Discovery—principally Plaintiff's own sworn admissions—confirms that no genuine dispute of material fact supports any claim against Defendants JPMorgan Chase Bank, N.A. ("Chase") and Jamie Dimon ("Dimon"). Courts have routinely and repeatedly rejected the Moorish American and sovereign citizen claims Plaintiff brings in this case, often also finding them frivolous and not credible. *See e.g. Gooden-El v. Tarrant Cnty., Tex.*, No. 4:20-CV-116-O, 2021 WL 793758, at *2 (N.D. Tex. Mar. 2, 2021) (citing *King v. Trump*, CA No. H-20-1600, 2020 WL 3542778, *2 (S.D. Tex. June 30, 2020)). Plaintiff's claims are similarly frivolous.

Plaintiff admitted in her deposition that she attended the October 2005 closing for a mortgage she now disavows, signed the Note and Deed of Trust, took possession of the home, and listed the Chase mortgage as an undisputed secured claim in her 2016 bankruptcy. Ex. B, 188:12 – 189:20 (App. 99-100) (attended closing and signed the closing documents), 311:19 – 312:4 (App. 113-14) (admitting she signed Note and Deed of Trust and ex-husband signed only the Deed of Trust), 227:22 – 228:3 (App. 107-08) (received the keys and lived in home for twenty years), 75:16 – 77:20 ) (App. 64-66) (listed mortgage on bankruptcy schedules without indicating it was disputed). Her ex-husband, also a signatory on the Deed of Trust, confirmed they both signed the

1

Deed of Trust and that Plaintiff signed the Note. Ex. C, 17:14-16 (App. 131) (Plaintiff signed the note), 19:6-10 (App. 133) (both signed Deed of Trust). Plaintiff further admitted that she paid nothing and lost nothing in reliance on the December 2024 statement on which she premises this entire suit, sought no medical treatment for her claimed emotional distress, and did not develop her securitization, split-the-note, and "Moorish American" theories until 2021—years after the loan originated and several years after both of her bankruptcies. Ex. B, 123:25 – 124:2 (App. 77-78) (no payments made), 176:8-25 (App. 98) (no reliance), 241:5-8 (App. 111) (no medical treatment), 150:25 – 151:11 (App. 84-85) (learned about the theories propounded in this case in 2021). She testified that the entire case is premised on the fact that in 2024 Chase sent her a mortgage statement. Ex. B, 173:20-24 (App. 96) (**Q**: This whole lawsuit is about the mortgage statement? **A**: Yes. **Q:** Just the mortgage statement? **A**: Yes. **Q**: So your sole complaint in this lawsuit is that Chase mailed you a mortgage statement? **A**: Yes, trying to defraud me out of my estate.).

Every claim Plaintiff asserts against Chase in her original Complaint and her First Amended Complaint[1]—under the FDCPA, TILA, and FCRA, and for fraud, mail fraud, slander of title, and quiet title—fails on settled Fifth Circuit and Texas authority and on her own admissions. Chase is not a "debt collector"; her TILA claim is time-barred; the FCRA affords her no private action on these facts; and her fraud and title claims lack reliance, damages, malice, a lost sale, and superior title. Dimon is not subject to personal jurisdiction. The Court should grant summary judgment and dismiss all claims against Chase and Dimon with prejudice.

---

[1] Plaintiff filed a First Amended Complaint, which primarily targets the third-party purchaser from the foreclosure sale of the Property, who Plaintiff has not properly served and who has not appeared. While procedurally, Plaintiff's First Amended Complaint does and should replace her Original Complaint, Chase assumes Plaintiff meant for the First Amended Complaint to merely supplement her Original Complaint, and therefore for purposes of this motion only, assumes the First Amended Complaint is supplemental and therefore addresses causes of action asserted in each.

## II.   SUMMARY JUDGMENT EVIDENCE

In support of this Motion for Summary Judgment, Chase and Dimon rely on and incorporate by reference the following evidence, included in the Appendix filed contemporaneously herewith[2]:

Exhibit A –   Declaration of JPMorgan Chase Bank, N.A., with the following business records: [App. 1-3]

Exhibit A-1 –   October 31, 2005 Note; [App. 4-9]

Exhibit A-2 –   October 31, 2005 Deed of Trust; [App. 10-25]

Exhibit A-3 –   November 17, 2012 Assignment of the Deed of Trust; [App. 26-27]

Exhibit A-4 –   Notice of Default and Acceleration Warning; [App. 28-37]

Exhibit A-5 –   Notice of Acceleration and Notice of Substitute Trustee's Sale; [App. 38-39]

Exhibit A-6 –   December 2024 Mortgage Statement; [App. 40-45]

Exhibit B –   Excerpts from the May 7, 2026 deposition of Rachael Griffin-El (highlighted for ease of review); [App. 46-124]

Exhibit C –   Excerpts from the May 8, 2026 deposition of Terrence Tremayne Griffin (highlighted for ease of review); [App. 125-139]

Exhibit D –   Certified copies of Plaintiff's 2010 and 2016 bankruptcy petitions, schedules, and February 23, 2022 discharge; [App. 140-239]

Exhibit E –   Certified copy of October 31, 2005 Deed of Trust, recorded in the real property records of Harris County as Instrument No. Y886750; [App. 240-249]

Exhibit F –   Certified copy of November 17, 2012 Assignment of Deed of Trust, recorded in the real property records of Harris County as Instrument No. 20120543726; [App. 250-252]

Exhibit G –   Certified copy of  June 3, 2025 Substitute Trustee's Deed, recorded in the real property records of Harris County as Instrument No. RP-2025-225256; [App. 253-260].

---

[2] Some exhibits have been partially redacted to protect confidential or personally identifying information.

### III.    STATEMENT OF MATERIAL FACTS

In October 2005, Plaintiff purchased the real property located at 703 Deveron Lane, Houston, Texas (the "Property"), a new Perry Homes construction, and at an October 31, 2005 closing executed a promissory note (the "Note") as the sole borrower and, with her then-husband Terrence Griffin, a deed of trust (the "Deed of Trust" together with the Note, the "Loan") and a second-lien security instrument; the loans originated with Long Beach Mortgage Company. Ex. B, 319:18-21 (App. 119); Ex. A-1 (App. 4-9); Ex. A-2 (App. 10-25).

During her deposition, Plaintiff admitted that she attended the closing, signed a "stack" of documents, refused none, took the keys, and lived in the Property for nearly twenty years until September 2025; she acknowledged that the signature on the Note "looks like" hers, Ex. B, 27:12-30:21 (App. 56), and recognized the Deed of Trust:

**Q**:    But you definitely went to a title company on October 31st, 2005; correct?

**A**:    Yes.

**Q**:    And you definitely signed some documents that day; correct?

**A**:    Yes

…

**Q**:    And the purpose of you being at the title company that day was to obtain a loan for the purchase or to buy the estate. Correct?

**A**:    Yes.

…

**Q**:    But you definitely signed some documents that day?

**A**:    It was way more than this. It was, like, a stack of papers about this thick (indicating).

…

**Q**:    Were there any documents you refused to sign?

**A**:    None that I know of.

Ex. B, 46:5 - 47:7 (App. 60-61).

**Q:** But you showed up that day wanting a loan, correct?

**A:** I showed up that day at closing.

**Q:** Expecting that you would have a loan, correct?

**A:** Expecting that I was buying a house.

**Q:** With the money from a loan; correct?

**A:** Yes, a alleged – alleged loan.

**Q:** Well, a loan that you wanted because you wanted to buy the house; right?

**A:** Yeah, but I – I don't have no documentation of an alleged loan.

**Q:** But you ended up with the house; correct?

**A:** No, they gave me some keys.

**Q:** Right. You ended up getting to move into the house; correct?

**A:** I did go and dwell in the house, yes.

Ex. B, 142:16 – 143:7 (App. 82-83).

**Q:** Perry Homes never tried to take the property back from you; right?

**A:** I mean - -

**Q:** You dwelled in the house for 20 years; right?

**A:** Correct.

**Q:** And Perry Homes never said, hey, we never got our money for building this house, right?

**A:** I – I mean, no, they ain't come to me. Why would they come to me and say that?

**Q:** Well, they built the house for you, right?

**A:** Yeah, they built the house.

**Q:** And they expected to get paid to build the house; correct?

**A:** Correct.

5

**Q:**    And if they didn't get paid, they probably would have said, hey, we didn't get paid right?

**A:**    Correct.

**Q:**    But they never did that?

**A:**    No.

Ex. B, 157:17 – 158:11 (App. 86-87). Terrence Griffin confirmed that he watched Plaintiff sign the Note and Deed of Trust. Ex. C, 16:17 – 17:16, 18:15 – 19:15 (App. 130-33) (**Q**: And do you recall her signing this note at that closing? **A**: Yes; **Q**: And you signed this [Deed of Trust], correct? **A**: I did. **Q**: And Ms. Griffin also signed this document, correct? **A**: She did.).

Chase owned and serviced the Loan (account ending 1980) through the Long Beach–Washington Mutual–FDIC–Chase succession, and the Deed of Trust was assigned of record. Ex. A-2 (App. 10-25), Ex. A-3 (App. 26-27); Ex. F (App. 250-52). Despite complaining that the assignment of the Deed of Trust was not valid, Plaintiff admitted she does not know what a proper Texas assignment requires and it is clear from her testimony that she does not understand the difference between an assignment of a deed of trust and a deed of trust itself. Ex. B, 324:17 – 325:13, 326:4-6 (App. 120-22).

Plaintiff and Terrence Griffin filed a joint bankruptcy in 2010, and Plaintiff filed a bankruptcy again in 2016; in her 2016 bankruptcy she listed the Property as exempt and listed the Chase mortgage on Schedule D as a secured claim arising from "an agreement you made (such as mortgage)" and did not mark it disputed. Ex. B 68:3-8, 75:24 – 77:16 (App. 63-66) ; Ex. C, 26:13 - 28:11, 31:13 – 33:22 (App. 134-39); Ex. D (App. 197). The fact that Plaintiff now contends the entire United States bankruptcy and court system are fraudulent does not save her from the fact that in 2016 she admitted she had a mortgage, which she did not dispute, and that she received a discharge from that bankruptcy.

6

**Q:** My question was, did you receive a discharge in 2016, and you said that was fraudulent. So what made the discharge fraudulent?

**A:** Because it was fraud from the beginning.

**Q:** What was fraud?

**A:** The whole bankruptcy – brankruptcy setup.

**Q:** And why was the bankruptcy setup fraudulent?

**A:** Because of the hypothecation of the United States Government.

…

**Q:** So what do you mean by the whole setup?

**A:** The bankruptcy.

**Q:** The bankruptcy system that exists in the United States?

**A:** Yes.

**Q:** Right. So then my questions is, your position is that the bankruptcy system that exists in the United States –

**A:** Uh-huh.

**Q:** -- is all fraud?

**A:** Yes.

Ex. B, 82:20 - 83:4; 85:1-11 (App. 68-70).

Similarly, and confusingly, Plaintiff contends that the United States court system, including this Court in which she filed this lawsuit, lacks jurisdiction over her, lacks any authority, is fraudulent, and is unlawful:

**Q:** So it's your position that the courts lack jurisdiction over you?

**A:** Yes.

**Q:** Then why did you file a lawsuit with the courts that lack jurisdiction over you?

**A:** Because I need a referee because I can't deal with y'all directly and y'all showed that and I just did it out of good faith.

**Q:**   So when those courts have in the past rejected the arguments that you are now propounding, you claim it doesn't matter because they don't have any authority; correct?

**A:**   Correct.

**Q:**   But now you're going to the same court and asking for relief from the same court that you just told me lack authority to give that relief; correct?

**A:**   Correct.

Ex. B, 98:24 – 99:16 (App. 74-75).

**Q:**   When did you find out that federal courts were a fraud?

**A:**   Basically, when I went to – well basically when I wrapped my mind around the acts that was done in 1871 in February when they transferred the United States company over into the District of Columbia.

**Q:**   So it's now your position that the United States federal courts as a fraud?

**A:**   They are a fraud.

**Q:**   So this court that we're in right now, the Southern District of Texas, the United States District Court for the Southern District of Texas is a fraud? Is that your position?

**A:**   It's a de facto court.

**Q:**   That doesn't answer my question.

…

**Q:**   You said the courts are fraudulent; correct?

**A:**   They de facto.

**Q:**   What does that mean?

**A:**   Meaning they are not lawful.

**Q:**   So your position is that the United States District Court for the Southern District of Texas is not a lawful court?

**A:**   Correct.

Ex. B, 338:3 – 339:3 (App. 123-124).

8

Plaintiff testified that she never made a payment, Ex. B, 168:8-10 (App. 93), that she received monthly statements since 2009, and that she first disputed the debt in late 2024. Ex. B, 170:18 – 171:4 (App. 94-95). After default, the Property was sold at foreclosure to PCF Properties in TX, LLC in the summer of 2025, and constables removed Plaintiff under a writ of possession on September 23, 2025. Ex. B 22:18 – 23:14 (App. 54-55), 101:2-4 (App. 76); Ex. A-4 (App. 28-37); Ex. A-5 (App. 38-39); Ex. G (App. 253).

During her deposition, Plaintiff clarified that this suit is premised on a single December 2024 Chase mortgage statement, which she calls a "bill of attainder."

> **Q**:    So, the mortgage statement is the basis of your complaint, not the deed of trust, not the note, none of that, just the mortgage statement?
>
> **A**:    Uh-huh.
>
> **Q**:    This whole lawsuit is about the mortgage statement?
>
> **A**:    Yes.
>
> **Q**:    **So your sole complaint in this lawsuit is that Chase mailed you a mortgage statement?**
>
> **A**:    **Yes, trying to defraud me out of my estate.**

Ex. B, 173:16 – 174:2 (App. 96-97); Ex. A-6 (App. 40-45).

 Plaintiff admitted she paid nothing and lost nothing in reliance on the mortgage statement, sought no medical treatment for her claimed emotional distress, could not quantify any realistic damages, and withdrew her claim for punitive damages. Ex. B, 176:8-25 (App. 98) (no reliance), 241:5-8 (App. 111) (no medical treatment), 248:5-7 (App. 112) (withdrawing exemplary damages), 222:12 – 223:7 (App. 104-05) (claiming she was damaged $3 million by Chase writing her name in all capital letters – **Q**: Okay, how much in gold and silver would you have – were you damaged by Chase writing your name in all caps? **A**: like, 3 million. **Q**: $3 million for writing your name in all capital letters? **A**: Correct, because it affected me and my children.).

Plaintiff testified that she did not develop her split-the-note, "wet-ink," gold-and-silver-currency, and "Moorish American" treaty theories until approximately 2021, after the loan and both bankruptcies, Ex. B, 150:25 – 151:14 (App. 84-85), and in 2025 she conveyed the Property into the non-party R.L. Freeman Trust, admitting she holds no present ownership interest. Ex. B, 93:3-22 (App. 71).

Plaintiff's claims rest on beliefs she aired throughout her deposition: that the United States is not a country but a "service corporation," Ex. B, 60:18-25 (App. 62); that the bankruptcy and court systems—including this Court—are "fraud," and "not lawful"; that as a "Moorish American" she is an "heir of the land" exempt from Texas and federal law, *e.g.* Ex. B, 135:14-20 (App. 81) (claiming she is exempt from the laws of Texas); that deeds of trust are "feudal sharecropping instruments," Ex. B, 226:20 – 227:3 (App. 106-07); and that every mortgage has been "fraud" since 1871. In short, Plaintiff believes the laws don't apply to her but wants to seek relief from and benefit under the same laws she disavows.

## IV.   LEGAL STANDARD

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020); Fed. R. Civ. P. 56(a). A defendant moving for summary judgment on a claim as to which the plaintiff bears the burden of proof may satisfy its initial burden by pointing the Court to the absence of evidence on an essential element of the claim, whereupon the burden shifts to the nonmovant to produce evidence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence will not suffice. *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020); *Ellini v. Ameriprise Fin., Inc.*, 881 F. Supp.

10

2d 813, 818-19 (S.D. Tex. 2012). A pro se litigant's submissions are construed liberally, but she must still identify specific summary-judgment evidence, and the Court need not comb the record for her. *Coker v. Gore*, 618 F. Supp. 3d 591, 597-99 (S.D. Tex. 2022).

## V.   ARGUMENT AND AUTHORITIES

### A. Plaintiff Cannot Raise a Genuine Dispute That the Debt Is Valid and That Chase May Enforce It.

*1. Plaintiff's own admissions and bankruptcy filings establish the debt.*

Plaintiff's premise—that no valid debt exists—is refuted by evidence that she signed the Note and Deed of Trust and by her sworn bankruptcy schedules listing the Chase mortgage as an undisputed secured debt. Ex. B, 68:3-8, 75:24 – 77:16 (App. 63-66) (testifying that she listed the Chase mortgage as an undisputed secured debt in her Schedule D); Ex. B, 81:21-23 (App. 67) (testifying that she received a discharge in her 2016 bankruptcy); Ex. D (App. 238-39). Having acknowledged the debt in bankruptcy and obtained the benefits of those filings, she is judicially estopped from and cannot manufacture a fact dispute by disavowing it now. *In re Coastal Plains, Inc.*, 179 F.3d 197, 206-210 (5th Cir. 1999); *Costell v. Bank of New York Mellon*, No. 12-CV-15063, 2013 WL 317746, at *4 (E.D. Mich. Jan. 28, 2013); *Rivera v. Recontrust Co., N.A.*, No. 2:11-CV-01695-KJD, 2012 WL 2190710, at *2 (D. Nev. June 14, 2012), *aff'd sub nom. Rivera v. Recontrust Co., NA*, 594 Fed. Appx. 412 (9th Cir. 2015); Ex. D.

*2. The "show-me-the-note" and "split-the-note" theories fail under Texas law.*

While not clearly articulated in either complaint, it appears Plaintiff may be adopting the "show-me-the-note" and "split-the-note" theories, which courts have repeatedly rejected. To the extent Plaintiff relies on either theory, they both fail as a matter of law. A foreclosing party need not produce or possess the original note, and the note's existence may be shown by a sworn copy. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253-55 (5th Cir. 2013). A mortgage

servicer or mortgagee may foreclose even without holding the note where the deed of trust was properly assigned. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253-55 (5th Cir. 2013); *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 781-82 (5th Cir. 2015). Chase is the holder of the note, which Plaintiff signed. Ex. A (App. 1-3), Ex. A-1 (App. 4-9). The deed of trust was properly assigned. Ex. A-3 (App. 26-27), Ex. F (App. 250-52). Chase was entitled to foreclose.

### 3. Plaintiff lacks standing to challenge the assignment or securitization.

Plaintiff vaguely challenges the validity of Chase's lien based on (1) the allegation that securitization of the Note renders it invalid or extinguishes foreclosure rights of the Deed of Trust, and (2) that the Deed of Trust was not properly assigned to Chase. A borrower has standing to attack an assignment only on a ground that renders it void, not merely voidable, and is neither a party to nor an intended beneficiary of a pooling and servicing agreement. *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 225-28 (5th Cir. 2013); *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 781-82 (5th Cir. 2015). Accordingly, Plaintiff cannot challenge either the securitization or the assignment, although even if she had standing, her legal contentions are wrong. The "mere securitization" of the Note does not extinguish foreclosure rights under the deed of Trust. *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 759 (N.D. Tex. 2013). The Deed of Trust was assigned to Chase. Ex. A-3 (App. 26-27), Ex. F (App. 250-52). Plaintiff identifies no ground that would render the assignment to Chase void, and she admitted she does not know what a valid Texas assignment requires. Ex. B, 326:4-6 (App. 122). Accordingly, all of Plaintiff's claims premised on the securitization of the Note or the assignment of the Deed of Trust fail.

### B. Plaintiff's FDCPA Claim Fails Because Chase Is Not a Debt Collector.

The FDCPA imposes liability only on a "debt collector." 15 U.S.C. § 1692a(6). A creditor, mortgagee, mortgage servicer, or assignee of a debt that was not in default when it was acquired is not a debt collector. 15 U.S.C. § 1692a(6)(F)(iii); *Perry v. Stewart Title Co.*, 756 F.2d 1197,

1208 (5th Cir. 1985); *Brown v. Morris*, 243 F. App'x 31, 34–35 (5th Cir. 2007). Chase is the holder and servicer of Plaintiff's loan; it acquired and serviced the loan in its own name and did not take it for the purpose of collecting a defaulted debt owed to another, and it therefore falls outside the statutory definition as a matter of law. *Perry*, 756 F.2d at 1208; *Brown*, 243 Fed. App'x at 34–35. Plaintiff's claim rests entirely on a single mortgage statement Chase sent in 2024, and she offers no evidence that Chase regularly collects debts owed to another. Ex. B, 173:16–174:2 (App. 96-97); Ex. A-6 (App. 40-45). Because Chase is not a debt collector, Plaintiff's FDCPA claim fails as a matter of law.

### C. Plaintiff's TILA Claim Is Time-Barred and Otherwise Fails.

Plaintiff's TILA claim is untimely. A damages action must be brought within one year of the violation, and the right of rescission expires no later than three years after consummation or upon sale of the property. 15 U.S.C. § 1640(e); 15 U.S.C. § 1635(f). The loan closed in 2005. Ex. A-1 (App. 4-9), Ex. A-2 (App. 10-25). Plaintiff filed her lawsuit in 2025. *See* Doc. 1. During her deposition, she contended that the TILA violation was Chase's failure to produce documents in response to a dispute by her in 2024. Ex. B, 314:1–317:10 (App. 115-18). TILA requires a creditor to make the enumerated loan disclosures at or before consummation of the transaction (i.e. closing of the loan), 15 U.S.C. § 1638(a); *Harris v. First Franklin Fin. Corp.*, No. 4:09-CV-3698, 2010 WL 4226449, at *3 (S.D. Tex. Oct. 20, 2010); it imposes no duty to produce the "original contract" on a borrower's later demand. To the extent Plaintiff's theory rests on 2005 disclosures, it is barred by the one-year and/or three-year limitations periods, 15 U.S.C. §§ 1640(e), 1635(f); and to the extent it rests on Chase's 2024 refusal to produce documents, Plaintiff identifies no cognizable TILA violation. Plaintiff's TILA claim fails.

**D. Plaintiff's FCRA Claim Fails for Lack of a Private Right of Action and Any CRA-Notice Trigger.**

Section 1681s-2(a) affords no private right of action; those duties are enforced only by government officials. 15 U.S.C. § 1681s-2(c); *Conrad*, 2017 WL 7796344, at *2; *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1366-67 (11th Cir. 2024). A furnisher's only private exposure is under Section 1681s-2(b), triggered only after the furnisher receives notice of a dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(b); *Conrad v. Barclays Bank Del.*, No. 4:17-CV-1045, 2017 WL 7796344, at *2 (S.D. Tex. July 27, 2017); *Tilley v. Glob. Payments, Inc.*, 603 F. Supp. 2d 1314, 1321-23 (D. Kan. 2009). Plaintiff does not allege she disputed any Chase tradeline through a consumer reporting agency or that any agency notified Chase, nor does she have any evidence supporting such a theory and therefore any purported FCRA claim against Chase fails.

**E. Plaintiff's Fraud, Mail-Fraud, and Identity Claims Fail.**

Under Texas law, a fraud claim requires a material misrepresentation, made knowingly or recklessly, intended to induce reliance, followed by actual and justifiable reliance causing injury, pleaded with particularity under Rule 9(b). *Davis v. Countrywide Home Loans, Inc.*, 1 F. Supp. 3d 638, 645-46 (S.D. Tex. 2014); *Wilson v. Bayview Loan Servicing LLC*, No. 5:19-CV-616-DAE, 2020 WL 10965116, at *6 (W.D. Tex. Oct. 19, 2020); Fed. R. Civ. P. 9(b). Plaintiff admitted she neither relied on the December 2024 statement nor suffered any loss, defeating reliance and injury. Ex. B, 176:8-25 (App. 98). Her mail-fraud theory fails because the federal mail fraud statute creates no private right of action. *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977); *Anderson v. CitiMortgage, Inc.*, No. 4:10-CV-398, 2011 WL 1113494, at *4 (E.D. Tex. Mar. 24, 2011).

14

Plaintiff's "identity misrepresentation" theory is that the use of her name in capital letters created a corporate fiction:

> **Q:** To your estate. Okay. In paragraph 8, coming back to your original complaint, you say that "The statement was addressed to the artificial legal fiction." And then you have Rachael Griffin / Rachel Griffin; correct?
>
> **A:** Correct.
>
> **Q:** What do you mean by that?
>
> **A:** Its en legis, all cap name.
>
> …
>
> **Q:** Okay. So your complaint is just that it's all caps?
>
> **A:** That's not my complaint.
>
> **Q:** Why is that a misrepresentation?
>
> **A:** Because that came after the introduction of the 14th amendment.
>
> **Q:** What does the 14th amendment have to do with this being addressed to Rachael Griffin?
>
> **A:** Because it's not constitution. It don't constitute a living person.
>
> **Q:** Why not?
>
> **A:** Because its coming to the house, and it's being presented like it's a corporation, and that corporation is saying that this corporation, Rachael Griffin, owes the corporation a so-called debt.
>
> **Q:** And the reason that –
>
> **A:** So I disputed it.
>
> **Q:** And the reason that RACHAEL GRIFFIN is a corporation because the name is in all caps, correct?
>
> **A:** Correct.

Ex. B, 125:7 – 126:20 (App. 79-80). Courts have repeatedly rejected this Moorish American theory that when a person's name is written in all capital letters, a different corporate entity is referenced, not the "flesh and blood person" or that "differences in capitalization of a person's name create

15

separate legal entities." *See Bendeck v. U.S. Bank Nat'l Ass'n*, No. CV 17-00180 JMS-RLP, 2017 WL 2726692, at \*6 (D. Haw. June 23, 2017) (quoting *U.S. Bank N.A. as T'ee for Greenpoint Mortg. Funding Tr. Pass Through Certificates Series 2006-AR4 v. Edwards*, 2017 WL 1396047, at \*2 (D. Or. Feb. 23, 2017)). Plaintiff's purported identity misrepresentation claim premised on the capitalization of her name on a mortgage statement does not state a recognized cause of action.

### F. Plaintiff's Slander-of-Title and Quiet-Title Claims Fail.

To recover for slander of title, a party must prove: "(1) uttering and publishing of disparaging words; (2) falsity; (3) malice; (4) special damages; (5) possession of an estate or interest in the property disparaged; and (6) the loss of a specific sale." *Wise v. Conklin*, No. 01–13–00840–CV, 2015 WL 1778612, at \*3 (Tex. App.—Houston [1st Dist.] Apr. 16, 2015, no. pet.). "Slander of title consists of a false and malicious statement made in disparagement of a person's title to property which causes special damages." *Allen-Pieroni v. Pieroni*, 535 S.W.3d 887, 887 (Tex. 2017).

Plaintiff's slander of title claim is premised on the recordation of the Deed of Trust by Long Beach. Ex. B, 190:13-20 (App. 101). That is not disparaging, nor is it false or malicious. Plaintiff also admitted no sale was ever pending or lost, which alone is fatal to her slander of title claim. Ex. B, 191:22 – 192:8 (App. 101-02). Plaintiff cannot prevail on her slander of title claim.

To prevail on her quiet title claim, Plaintiff must prove: "(1) h[er] right, title, or ownership in real property; (2) that the defendant has asserted a 'cloud' on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid, would affect or impair the property owner's title; and (3) that the defendant's claim or encumbrance is invalid." *Warren v. Bank of Am., N.A.*, 566 Fed. App'x 379, 382 (5th Cir. 2014). Plaintiff admits she does not have any right title, or ownership in the Property because she conveyed her interest to a trust, which alone is fatal to her claim and strips her of standing in this lawsuit. Ex. B, 94:19 – 95:4 (App. 72-

16

73) (**Q**: And so at this point, then, you have no ownership interest in the property; correct? **A**: Right. **Q**: Only the trust does? **A**: Correct.). Plaintiff also has no evidence that Chase's claim to a lien on the Property is invalid – to the contrary, Chase held a valid lien as reflected by the Deed of Trust. Ex. E (App. 240-49). Plaintiff's quiet-title claim further fails because Plaintiff must recover on the strength of her own superior title, not the weakness of a defendant's, and therefore her allegation that there is no "proof of allodial or aboriginal title"[3] is meaningless. *Davis*, 1 F. Supp. 3d at 645-46; *Wilson*, 2020 WL 10965116, at \*3; *see Naumov v. Shellpoint Mortg. Servicing*, No. 3:23-CV-01120-JR, 2024 WL 1991547, at \*6 (D. Or. Apr. 2, 2024) (noting that allodial title claims to prevent foreclosure have been uniformly rejected and deemed frivolous).

Plaintiff has no evidence of a disparaging, false, or malicious statement, no lost sale, and no title of her own to quiet—having conveyed her entire interest to a trust. Her slander-of-title and quiet-title claims therefore fail as a matter of law, and Chase is entitled to summary judgment on both.

### G.  Plaintiff's Constitutional Claims Fail.

Plaintiff asserts claims for purported violations of the following portions of the United States Constitution: (1) Article I, Section 10; (2) Article VI; (3) the Fifth Amendment; and (4) the Fourteenth Amendment. These constitutional claims fail because Chase is a private party, not a state actor, and Texas's nonjudicial foreclosure does not constitute state action. *Barrera v. Sec. Bldg. & Inv. Corp.*, 519 F.2d 1166, 1170 (5th Cir. 1975).

Article I, Section 10 does not create or support a claim against private entities such as JPMC or against individuals such as Dimon. "The Contracts Clause does not provide a cause of action against private actors. As all defendants are private actors in this case, this claim is

---

[3] Doc. 1, p. 3.

17

dismissed." *Bagwell v. Countrywide Home Loans Servicing, LP*, No. 3:09-CV-1358-P, 2011 WL 1120261, at *4 (N.D. Tex. Mar. 24, 2011).

Article VI of the United States Constitution addresses the validity of debts entered into before the adoption of the Constitution, the Constitution being the supreme law of the land, and that various officeholders shall be bound by an oath or affirmation to support the Constitution. *See* U.S. Const. art. VI. Plaintiff's bare allegation that Defendants attempted to compel performance in unconstitutional tender (Federal Reserve Notes) and violated her due process rights by asserting obligations absent lawful cause have nothing to do with Article VI, and in any event Article VI, as Article I, does not create or even suggest a private right of action against private actors such as JPMC or Dimon.

"The due process clauses of the Fifth and Fourteenth Amendments protect individuals from state actions, not from actions of private entities, such as [Defendant]. Therefore, any cause of action [Plaintiff] asserts for violation of due process must fail as a matter of law[.]" *Martinez v. DISA, Inc.*, 435 F. Supp. 3d 747, 754 (W.D. Tex. 2020) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)); *Bagwell*, 2011 WL 1120261, at *4. Because the due process clauses upon which Plaintiff's claims depend apply only to state action, Plaintiff's claims for violation of the Fifth and Fourteenth Amendments fail as a matter of law.

## H.  Plaintiff's Remaining Theories Fail as a Matter of Law.

Plaintiff's "lawful money" theory—that only gold and silver can create or discharge a debt—has no legal support and is directly contradicted by statute. 31 U.S.C. § 5103. Ex. B, 162:3-166:13 (App. 88-92) (explaining that she believes "Federal Reserve Notes" are not money and that only gold and silver can be money and therefore a loan made with federal reserve notes does not need to be paid back). Courts have uniformly rejected the theory that a mortgage is void or unenforceable because the borrower received credit and currency rather than gold or silver and

have dismissed such claims for failure to state a claim. *Beaner v. United States*, 361 F. Supp. 2d 1063, 1067–68 (D.S.D. 2005) (dismissing borrowers' claim that a mortgage was fraudulent and void because they "received credit and currency, rather than gold and silver"); *see Foret v. Wilson*, 725 F.2d 254, 254–55 (5th Cir. 1984) (per curiam) (rejecting the argument that "only gold and silver coin may be constituted legal tender").

Plaintiff's "Moorish American" and treaty-based claims do not exempt her from Texas or federal law. *Gooden-El*, 2021 WL 793758, at *2. Her conveyance of the Property into a trust does not extinguish Chase's lien, which survives a transfer of the property, and strips her of standing. *DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Tr. Co.*, 958 F. Supp. 2d 738, 751 (W.D. Tex. 2013).

Finally, while Plaintiff does not assert a claim for violation of Section 51.002 of the Texas Property Code, she does suggest that Chase failed to comply with Section 51.002 by not sending notice of the sale to the trust to which she had conveyed the property: Doc. 52, p. 3 ("Texas Property Code 51.002(b) 3 requires foreclosure notices to the record title holder. RL FREEMAN TRUST received none."). Plaintiff's contention of law is incorrect. Section 51.002(b)(3) requires notice to the debtor, not title holder(s). Tex. Prop. Code § 51.002(b)(3). Chase sent the notice required by Section 51.002(b)(3) to Plaintiff, the debtor. Ex. A-5 (App. 38-39). To the extent Plaintiff bases a claim on the failure to send pre-foreclosure notices to the RL FREEMAN TRUST, such claims fail as a matter of law.

### I.   Defendant Jamie Dimon Must Be Dismissed for Lack of Personal Jurisdiction.

Plaintiff conceded that her claims against Dimon are asserted only in his corporate capacity, that she is aware of no personal contacts between Dimon and Texas, and that her sole basis for suing him is an affidavit she mailed that he did not answer. Ex. B, 228:22 – 230:16 (App. 108-10). Those admissions defeat personal jurisdiction over Dimon and confirm the absence of

19

any individual conduct on which liability could rest. *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985).

## VI.    CONCLUSION

WHEREFORE, Defendants JPMorgan Chase Bank, N.A. and Jamie Dimon request that this Court grant a take-nothing summary judgment on all of Plaintiff's claims in both the original Complaint and the First Amended Complaint, and award Defendants such other and further relief to which they may be justly entitled.

Respectfully submitted,

*/s/ Eric G. Carlson*
WM. LANCE LEWIS
Texas Bar No. 12314560
S.D. Bar No. 28635
ERIC G. CARLSON
Texas Bar No. 24100076
S.D. Bar No. 3076490
**QUILLING, SELANDER, LOWNDS,**
 **WINSLETT & MOSER, P.C.**
2200 Ross Avenue, Suite 2400
Dallas, Texas 75201
(214) 871-2100 (Phone)
(214) 871-2111 (Fax)
llewis@qslwm.com
ecarlson@qslwm.com

**ATTORNEYS FOR DEFENDANTS**
**JPMORGAN CHASE BANK, N.A. AND JAMIE**
**DIMON**

20

## CERTIFICATE OF SERVICE

This is to certify that on July 17, 2026 a true and correct copy of the foregoing pleading has been furnished to Plaintiff, pro se, via certified mail, return receipt requested, in accordance with the Federal Rules of Civil Procedure.

RACHAEL GRIFFIN-EL, PLAINTIFF PRO SE
709 DEVERON LANE
HOUSTON, TX 77090


_/s/ Eric G. Carlson_
Eric G. Carlson

21