

EXHIBIT
A

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **RACHAEL GRIFFIN-EL,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:25-cv-02013** |
| **JPMORGAN CHASE BANK, N.A.,** | § | |
| and | § | |
| **JAMIE DIMON,** | § | |
| *Defendants* | § | |

---

### DECLARATION OF JPMORGAN CHASE BANK, N.A.

---

On this day July 16, 2026, declared under the penalty of perjury and in accordance with 28 U.S.C. § 1746 as follows:

1.      "My name is Alicia Hernandez. I am over twenty-one years of age, of sound mind, and fully competent to make this Declaration. I am an authorized signer for JPMorgan Chase Bank, N.A. ("Chase"). Currently at Chase, I am responsible for executing sworn documents and reviewing, confirming, and researching facts for loans in litigation.

2.      As a result of my employment with Chase, I am familiar with its relevant business records, including those related to the subject loan (the "Loan") at issue in the above captioned matter.

3.      The attached records identified as Exhibits A-1 and A-2 (together, the "Chase Integrated Business Records") were made at or near the time of the events they record by, or from information transmitted by, a person with knowledge of those events; are kept by Chase in the regular course of its business; and it was the regular practice of Chase to make and keep such

records. The Chase Integrated Business Records originated with prior lenders or servicers of the Loan, including Washington Mutual Bank and Long Beach Mortgage Company. In the regular course of its business, Chase relied upon and integrated those documents into Chase's own records, and Chase relies upon them. The Chase Integrated Business Records are the originals or exact duplicates of the originals.

4.      The attached records identified as Exhibits A-3, A-4, A-5 and A-6 (collectively the "Chase Business Records") are kept by Chase in the regular course of business, and it was the regular course of business of Chase for an employee or representative of Chase with knowledge of the act, event, condition, opinion, or diagnosis that was recorded, to make this record or to transmit the information to be included in this record.  The records were made at or near the time or reasonably soon after the act, event, condition, opinion, or diagnosis that was recorded.  The Chase Business Records and Chase Integrated Business Records are copies of the originals or duplicates of the originals.[1]

5.      Chase was the mortgage servicer for the Loan in 2024 and 2025.

6.      Chase was the holder of the Note for the Loan in 2024 and 2025.

7.      The Loan was in default from November 2024 until the foreclosure sale which occurred June 3, 2025.

I have personal knowledge of the facts stated herein, which are all true and correct.  That knowledge is based in part on the relevant business records of Chase. I have access to Chase's business records, including the business records for and relating to the Loan. I make this

---

[1] Information such as portions of the loan number(s) have been redacted to protect Plaintiff's private information.

**DECLARATION OF JPMORGAN CHASE BANK, N.A.**                                    **PAGE 2**

Declaration based upon my review of Chase's business records and from my own personal knowledge of how they are maintained and kept.

I declare under penalty of perjury and in accordance with 28 U.S.C. § 1746 that the foregoing factual statements are true and correct, based on my review of the business records of Chase."

Executed this 16th day of July, 2026.

JPMorgan Chase Bank, N.A.

Alicia Hernandez

Authorized Signer

Loan No: [redacted]                                           Data ID:  716
Borrower:  RACHAEL GRIFFIN ●                    ●

INITIALS: _RG._  _____



# FIXED/ADJUSTABLE RATE NOTE
### (LIBOR Index — Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED RATE TO AN ADJUSTABLE INTEREST RATE.  THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October 31, 2005                    HOUSTON                         TEXAS
                                     [City]                          [State]
                              703 DEVERON LANE
                              HOUSTON, TEXAS  77090
                              [Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 131,012.00 (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is **LONG BEACH MORTGAGE COMPANY.**  I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of 8.05 %.  The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on **December 1, 2005.**  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal.  If, on **November 1, 2035,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 2441, Chatsworth, CA  91313, or at a different place if required by the Note Holder.

**TEXAS FIXED/ADJUSTABLE RATE NOTE — LIBOR INDEX — Single Family**                    11/96
                                                                    *(Page 1 of 5 Pages)*



EXHIBIT
# A-1
**App. 004**

Loan No: ▮▮▮▮▮                                                    Data ID: 716

INITIALS: *llg.* _____  _____

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 965.90. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November, 2007, and the adjustable interest rate I will pay may change on that day every 6th month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."

#### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FOUR and 99/100** percentage points (4.99 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

#### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.0500 % or less than 8.0500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.0500 %, which is called the "Maximum Rate" or less than 8.0500 %, which is called the "Minimum Rate."

#### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

#### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

*(Page 2 of 5 Pages)*

**App. 005**

Loan No: ▮▮▮▮▮▮

Data ID: 716

INITIALS: _RG._ _____

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment at any time during the first two years of the loan, I may be charged a fee as follows: If Noteholder receives a prepayment on or before the first anniversary of the date of the Note, the prepayment fee shall be equal to three percent (3%) of the original loan amount. If Noteholder receives a prepayment after the first anniversary but on or before the second anniversary of the date of the Note, the prepayment fee shall be two percent (2%) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any prepayment fee.

This prepayment penalty will be charged only if the interest rate in effect is less than 12.00% if the Property which secures this Note is owner-occupied or less than 18.00% if the Property is not owner-occupied. In no event will the prepayment penalty be charged if doing so would violate federal or state law. If a prepayment penalty and any other loan charges and interest exceed permitted limits, then the prepayment penalty shall be reduced by the amount necessary to reduce the prepayment penalty, other charges and interest to permitted limits.

When I make a full or partial prepayment, I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Acceleration

If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of principal that has not been paid and all interest that I owe on that amount.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees of 15.00% of the sums due under this Note or the amount allowable under applicable state law.

*(Page 3 of 5 Pages)*

**App. 006**

Loan No: ████    Data ID: 716

INITIALS: _PG._ _____

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a written notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive notice of intention to accelerate, except as provided in Section 7(C) above, and the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*(Page 4 of 5 Pages)*

**App. 007**

Loan No: ▆▆▆▆▆                                                                    Data ID:  716

Witness the Hand(s) and Seal(s) of the Undersigned.

........................................................................................................(Seal)

RACHAEL GRIFFIN —Borrower

*[Sign Original Only]*



Pay to the order of
Without Recourse
Long Beach Mortgage Company
Jens Almanza, Vice President
Angela Shepard, Assistant Vice President

Loan No: [redacted]
Borrower: [redacted] MICHAEL GRIFFIN

HOLD FOR
CHICAGO TITLE
GF [handwritten]
DJM/W.L.

Data ID: 716

1980

11/08/05  Y886750
200999026    $48.00

Return to:  LONG BEACH MORTGAGE COMPANY
P.O. BOX 201085
STOCKTON, CA  95202

————————— [Space Above This Line For Recording Data] —————————

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on the 31st day of October, 2005.
The grantor is RACHAEL GRIFFIN AND HUSBAND,  TERRENCE TREMAYNE GRIFFIN

("Borrower").

The trustee is MICHAEL L. RIDDLE, whose address is 717 NORTH HARWOOD, SUITE 2400, DALLAS, TEXAS 75201

("Trustee").

The beneficiary is LONG BEACH MORTGAGE COMPANY , A CORPORATION,

which is organized and existing under the laws of the State of DELAWARE,
and whose address is 1400 SOUTH DOUGLASS ROAD, SUITE 100, ANAHEIM, CA  92806

("Lender").

Borrower owes Lender the principal sum of **ONE HUNDRED THIRTY-ONE THOUSAND TWELVE and NO/100-----Dollars (U.S. $ 131,012.00)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **November 1, 2035**.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **HARRIS** County, Texas:

LOT FIVE (5) BLOCK TWO (2) OF ELLA CROSSING, SEC. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN FILM CODE NO. 583137 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

which has the address of 703 DEVERON LANE, [Street]                    HOUSTON, [City]
TEXAS          77090 [Zip Code]                    ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**TEXAS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3044    03/98    (Page 1 of 5 Pages)

EXHIBIT
A-2

App. 011

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

App. 013

Loan No:　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Data ID: 716

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any

App. 014

App. 015

notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16.  Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17.  Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18.  Borrower's Right to Reinstate.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.  Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19.  Sale of Note; Change of Loan Servicer.**  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law.  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any other information required by applicable law.

**20.  Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

**21.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty.  Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.**

**22.  Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23.  Substitute Trustee.**  Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

Form 3044   03/98        *(Page 4 of 5 Pages)*

**App. 016**

Loan No: ████████                                    Data ID:  716

24. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

25. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

26. **Waiver of Notice of Intention to Accelerate.** Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

27. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

28. **Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate] The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed conveying Property to Borrower dated or effective the same date as this Security Instrument, which Vendor's Lien has been assigned to Lender, this Security Instrument being additional security therefor.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

.....................................(Seal)   .....................................(Seal)
TERRENCE TREMAYNE GRIFFIN —Borrower    RACHAEL GRIFFIN —Borrower

─────────────────────── [Space Below This Line For Acknowledgment] ───────────────────────

State of TEXAS                               §
County of Harris                             §

This instrument was acknowledged before me on the _____31st_____ day of _October_____, 20_05_ by

RACHAEL GRIFFIN AND TERRENCE TREMAYNE GRIFFIN



                                                     _____
                                                              Notary Public

                                                     _____
                                                              (Printed Name)

My commission expires:_____

**AURORA BROOKS**
**NOTARY PUBLIC**
**STATE OF TEXAS**
My Comm. Expires 10-15-2006

Loan No: ████████                                    Data ID: 716
Borrower: RACHAEL GRIFFIN

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 31st day of October, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
LONG BEACH MORTGAGE COMPANY
(the "Lender")
of the same date and covering the Property described in the Security Instrument and located at:
703 DEVERON LANE
HOUSTON, TEXAS  77090
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
DECLARATIONS AND COVENANTS
(the "Declaration").  The Property is a part of a planned unit development known as
ELLA CROSSING, SECTION 1
[Name of Planned Unit Development]
(the "PUD").  The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations.  Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents.  The "Constituent Documents" are the:  (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association.  Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Hazard Insurance.  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender.  Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

C. Public Liability Insurance.  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

MULTISTATE PUD RIDER- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna
Form 3150    09/90
(Page 1 of 2 Pages)

App. 021

Loan No: ███████                                    Data ID: 716

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

..................................................(Seal)        ..................................................(Seal)
TERRENCE TREMAYNE GRIFFIN —Borrower          RACHAEL GRIFFIN —Borrower

Form 3150    09/90    *(Page 2 of 2 Pages)*

**App. 022**

Loan No: ███████                                              Data ID: 716
Borrower: RACHAEL GRIFFIN

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR' Index — Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 31st day of October, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to LONG BEACH MORTGAGE COMPANY (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

703 DEVERON LANE
HOUSTON, TEXAS 77090
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of **8.05** %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **November, 2007**, and the adjustable interest rate I will pay may change on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FOUR and 99/100** percentage points (**4.99** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER—LIBOR INDEX — Single Family**          6/95

**App. 023**

Loan No: ▉▉▉▉▉                                                      Data ID:  716

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.0500 %** or less than **8.0500 %**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) **(1.00 %)** from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **14.0500 %**, which is called the "Maximum Rate" or less than **8.0500 %**, which is called the "Minimum Rate."

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

......................................................(Seal)          ......................................................(Seal)
TERRENCE TREMAYNE GRIFFIN —Borrower          RACHAEL GRIFFIN —Borrower

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED. In the Official Public Records of Real Property of Harris County, Texas on

NOV - 8 2005

COUNTY CLERK
HARRIS COUNTY, TEXAS

*(Page 2 of 2 Pages)*

**App. 024**

App. 025

11/26/2012   ER   $16.00

ASSGN
X

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

Loan #:

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interests secured thereby, all liens, and any rights due or to become due thereon, to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

1EE

Said Deed of Trust dated 10/31/2005 executed by **RACHEL GRIFFIN AND TERRENCE TREMAYNE GRIFFIN** in the amount of $131,012.00 and recorded on 11/08/2005 as Instrument # Y886750, in Book n/a, Page n/a in the records of Real Property of HARRIS County, Texas.

**This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.**

**This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)**

**IN WITNESS WHEREOF**, this Assignment is executed on ___11 / 17__ /2012 (MM/DD/YYYY).
**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact**

4OR

By: _Kelly McWilliams._
**VICE PRESIDENT**

STATE OF LOUISIANA    PARISH OF OUACHITA
On ___11 / 17__ /2012    (MM/DD/YYYY),    before    me    appeared
_Kelly McWilliams_ to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Eva Reese_
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

EVA REESE NOTARY 17070 PUBLIC

**Document Prepared By: Robert E. Fletcher - c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: JPMorgan Chase Bank, NA, C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683
JPCAS 18188184 -4 WAMU  CJ43638271ER   T0912113708   [C] FRMTX1_JPCAS3

**EXHIBIT**

## A-3

**App. 026**

20120543726
# Pages 2
11/26/2012    10:36:42 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees 16.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

Chase (Mail Code LA4-6953)
700 Kansas Lane
Monroe, LA 71203
For Undeliverable Mail Only



**USPS CERTIFIED MAIL**™

**9214 8901 0754 4627 6419 85**

001020 - 1 of 3 NSP0HDLA-C7 J4860526 000000000000
RACHEL  GRIFFIN
703 DEVERON LN
HOUSTON TX 77090

**EXHIBIT**

**A-4**

**App. 028**

App. 029



**Chase (Mail Code LA4-6953)**
700 Kansas Lane
Monroe, LA 71203
For Undeliverable Mail Only

01/14/2025

RACHEL  GRIFFIN
703 DEVERON LN
HOUSTON, TX 77090

Our records indicate that you may have received a discharge of this debt in a prior bankruptcy case. If you have received a discharge, you are no longer personally obligated to repay the loan, and we are not contacting you in an attempt to collect a debt.  But, as long as we have a lien on the property, not making payments on the account can ultimately lead to foreclosure.

**Please read this important information about the status of your loan**

Account:              ▮▮▮▮▮▮▮▮ (the "loan")
Property Address:     703 DEVERON LN
                      HOUSTON, TX 77090 (the "property")

Dear RACHEL  GRIFFIN:

We want you to be aware of the next steps that will occur if your loan is not brought up to date by 02/18/2025. We understand this may be a difficult time and want you to know that we're here to help if you're having trouble making your payment. Please read this letter carefully and call us at 1-800-848-9380 if you have questions.

**Acceleration Warning (Notice of Intent to Foreclose)**

Under the terms of your loan agreement, mortgage or deed of trust (Security Instrument) securing your loan, we (JPMorgan Chase Bank, N.A. or Chase) are notifying you of the following:

1.  **Your loan is in default** because we haven't received the required monthly payments starting with the payment due 11/01/2024.

2.  **As of 01/14/2025, the total amount past due is $4,157.41.**
    This includes total past due monthly payments of principal, interest and escrow (if applicable), late fees, insufficient funds (NSF) fees, and other fees and advances due under the terms of your loan documents. The past-due amount is detailed below.
    If applicable, you may be responsible for additional escrow amounts that Chase may pay from the date of this letter. If you have questions about the amounts detailed below, please call us as soon as possible.

|  |  |
|---|---|
| Total Monthly Payments: | $4,084.17 |
| Late Fees: | $140.08 |

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Certified  Article  #: 9214 8901 0754 4627 6419 85

**App. 030**

| | |
|---|---|
| NSF Fees: | $0.00 |
| Other Fees:[1] | $0.00 |
| Advances:[1] | $40.00 |
| | |
| Amount Held in Suspense: | $106.84 |

[1] *Other Fees and Advances include those amounts assessed in accordance with your loan documents, and/or permitted by applicable law, or that were authorized for services rendered.*

You are also responsible for paying any amounts that become due from the date of this letter. This may include taxes, insurance, inspection fees, and other fees and charges, as permitted by applicable law.

If you disagree with the past-due amount listed above, or if you believe your loan is current, please call us.

3. **You have the right to cure the default. Action required to cure the default:**
   You must pay the total monthly payments minus suspense $3,977.33 by 02/18/2025 in order to cure this default. All late fees, NSF fees, and other fees and advances are still valid and will need to be paid under the terms of your loan documents.

4. **Here's what will happen if you fail to cure the default on or before 02/18/2025**
   - We will require payment of your loan balance in full (accelerate the maturity of the loan by declaring all sums secured by the Security Instrument immediately due and payable).
   - Close (terminate) your credit line if the loan provides for revolving advances.
   - Begin foreclosure proceedings and sell the property. If this happens, we may be entitled to collect expenses incurred in pursuing the remedies provided in the Security Instrument, which may include, but not be limited to, allowable foreclosure/attorney fees, and other expenses permitted by your loan documents or applicable law.

5. You have the right to reinstate after acceleration of the loan and the right to bring a court action to assert the nonexistence of a default, or any other defense to acceleration, foreclosure, and sale. However, the amount required to reinstate may be higher than what is owed under Paragraph 2 above due to additional fees and charges that we are entitled to collect under the loan, including attorney fees related to any foreclosure action we initiate.

6. Please note a foreclosure action may not be initiated until your loan is at least 121 days past due, and you have been sent this notice.

7. If your personal liability for this account has not been discharged in a bankruptcy proceeding and if permitted by law, a deficiency judgment may be pursued if your account is referred to foreclosure.

8. **Important information for Rural Housing Service - Guaranteed Loans**
   The Rural Housing Service may reimburse us (pay us a loss claim) if the default is not cured by the date referenced above and the account is referred to foreclosure. You may be responsible for repaying this claim to the Rural Housing Service. If your personal liability for this account has not been discharged in a bankruptcy, the Rural Housing Service may use all options, including those under the Debt Collection Improvement Act (DCIA) to recover the full amounts due. The DCIA provides for the collection of outstanding federal debts through the Treasury Offset Program which allows federal payments such as Social Security benefits to be reduced or "offset" in order to repay the outstanding debt.

9. **Here's information on how to make your payment of $3,977.33**
   - Visit chase.com/WaysToPay for information on making online payments

**App. 031**

- Call us to make your payment over the phone, free of charge
- Make your payment at a Chase branch
- Mail your payment to one of the addresses below.

Regular Mail:    CHASE
PO BOX 78420
PHOENIX, AZ 85062-8420

Overnight Mail:    CHASE
PO BOX 78420  3137 EAST ELWOOD STREET, SUITE 130
PHOENIX, AZ 85034-7225

If we have received six insufficient funds (NSF) payments in the last six months, certified funds are required and payments must be received by mail or in a Chase branch.

Except as required by law, we are not required to accept less than the full amount owed. If we receive less than the full amount owed, we may apply it to your loan without waiving any default or waiving our right to accelerate the loan and begin foreclosure proceedings.

10. **Assert and protect your rights as a member of the armed forces of the United States. If you or your spouse is serving on active Military duty, including active Military duty as a member of the Texas National Guard, a member of the National Guard of another state, or a member of a reserve component of the armed forces of the United States, please send written notice of the active Military service using the contact information below.**

**Mail:**    **Chase**
**Attn: SCRA Request**
**P.O. Box 183240**
**Columbus, OH 43218-3240**

**Fax:**    **1-888-890-6803; it's free from any Chase branch**

**Email:**    **Send us a secure message by signing in to your account at chase.com**

11. **Assistance options may be available to help you.** We have a variety of homeowner assistance options that might help you keep your home; however, we need to talk with you to discuss these options and determine which of them might be appropriate for your circumstances. Please call us as soon as possible at 1-800-848-9380.

12. **We may complete property inspections while the loan remains in default.** Property inspections may be done to determine the property condition, occupancy status and possibly your plans for curing the default and paying this loan on time. Any costs incurred by us may be added to the amount you now owe if permitted by your loan documents or applicable law.

JPMorgan Chase Bank, N.A. is the mortgage servicer for your loan and is the duly authorized agent for loan servicing administration for its principal and the investor of your loan, JPMorgan Chase Bank, National Association, pursuant to a written agreement. All notices, payments, correspondence, and other communications regarding your real estate loan should continue to be directed to Chase.

**Here's where to look for help**
You can find additional resources below to help you with your mortgage:
- The Homeowners HOPE Hotline can take your call anytime at 1-888-995-HOPE (1-888-995-4673).
- The U.S. Department of Housing and Urban Development (HUD) has a list of agencies that offer free mortgage-assistance counseling. For a list of agencies, call HUD at

1-800-569-4287, or 1-800-877-8339 for TTY services, or go to hud.gov and, under the "Resources" tab, select "Foreclosure Avoidance Counseling."

If you have questions, please call us; we accept operator relay calls.

Sincerely,

Chase
1-800-848-9380
chase.com

CERTIFIED MAIL: Return Receipt Requested and First Class Mail

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-848-9380.

**Important Legal Information**

**We are a debt collector**
This is an attempt to collect a debt and any information obtained will be used for that purpose. However, to the extent your original obligation is subject to the automatic stay of bankruptcy or was discharged under the United States Bankruptcy Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this notice means that you're required to repay a debt that's subject to the automatic stay or has been discharged. Any payment you make on the account is voluntary, but if the original obligation is secured by collateral, we retain the rights under any applicable security instrument.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

**Information for Servicemembers and their dependents**
If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, some states allow for a payment deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

ID NQWgm6ns3B
BR034

**App. 033**



**Chase (Mail Code LA4-6953)**
700 Kansas Lane
Monroe, LA 71203
For Undeliverable Mail Only

01/14/2025

001021 - 1 of 2 NSP0HDLA-Z7 J4860526 000000000000

RACHEL  GRIFFIN
703 DEVERON LN
HOUSTON, TX 77090

Our records indicate that you may have received a discharge of this debt in a prior bankruptcy case. If you have received a discharge, you are no longer personally obligated to repay the loan, and we are not contacting you in an attempt to collect a debt.  But, as long as we have a lien on the property, not making payments on the account can ultimately lead to foreclosure.

**Please read this important information about the status of your loan**

Account:                          ████████ (the "loan")
Property Address:      703 DEVERON LN
                                  HOUSTON, TX 77090 (the "property")

Dear RACHEL  GRIFFIN:

We want you to be aware of the next steps that will occur if your loan is not brought up to date by 02/18/2025. We understand this may be a difficult time and want you to know that we're here to help if you're having trouble making your payment. Please read this letter carefully and call us at 1-800-848-9380 if you have questions.

**Acceleration Warning (Notice of Intent to Foreclose)**
Under the terms of your loan agreement, mortgage or deed of trust (Security Instrument) securing your loan, we (JPMorgan Chase Bank, N.A. or Chase) are notifying you of the following:

1. **Your loan is in default** because we haven't received the required monthly payments starting with the payment due 11/01/2024.

2. **As of 01/14/2025, the total amount past due is $4,157.41.**
   This includes total past due monthly payments of principal, interest and escrow (if applicable), late fees, insufficient funds (NSF) fees, and other fees and advances due under the terms of your loan documents. The past-due amount is detailed below. If applicable, you may be responsible for additional escrow amounts that Chase may pay from the date of this letter. If you have questions about the amounts detailed below, please call us as soon as possible.

| | |
|---|---|
| Total Monthly Payments: | $4,084.17 |
| Late Fees: | $140.08 |

This is an attempt to collect a debt and any information obtained will be used for that purpose.

**App. 034**

NSF Fees:                                              $0.00
Other Fees:[1]                                         $0.00
Advances:[1]                                           $40.00

Amount Held in Suspense:                               $106.84

[1] *Other Fees and Advances include those amounts assessed in accordance with your loan documents, and/or permitted by applicable law, or that were authorized for services rendered.*

You are also responsible for paying any amounts that become due from the date of this letter. This may include taxes, insurance, inspection fees, and other fees and charges, as permitted by applicable law.

If you disagree with the past-due amount listed above, or if you believe your loan is current, please call us.

3. **You have the right to cure the default. Action required to cure the default:**
   You must pay the total monthly payments minus suspense $3,977.33 by 02/18/2025 in order to cure this default. All late fees, NSF fees, and other fees and advances are still valid and will need to be paid under the terms of your loan documents.

4. **Here's what will happen if you fail to cure the default on or before 02/18/2025**
   - We will require payment of your loan balance in full (accelerate the maturity of the loan by declaring all sums secured by the Security Instrument immediately due and payable).
   - Close (terminate) your credit line if the loan provides for revolving advances.
   - Begin foreclosure proceedings and sell the property. If this happens, we may be entitled to collect expenses incurred in pursuing the remedies provided in the Security Instrument, which may include, but not be limited to, allowable foreclosure/attorney fees, and other expenses permitted by your loan documents or applicable law.

5. You have the right to reinstate after acceleration of the loan and the right to bring a court action to assert the nonexistence of a default, or any other defense to acceleration, foreclosure, and sale. However, the amount required to reinstate may be higher than what is owed under Paragraph 2 above due to additional fees and charges that we are entitled to collect under the loan, including attorney fees related to any foreclosure action we initiate.

6. Please note a foreclosure action may not be initiated until your loan is at least 121 days past due, and you have been sent this notice.

7. If your personal liability for this account has not been discharged in a bankruptcy proceeding and if permitted by law, a deficiency judgment may be pursued if your account is referred to foreclosure.

8. **Important information for Rural Housing Service - Guaranteed Loans**
   The Rural Housing Service may reimburse us (pay us a loss claim) if the default is not cured by the date referenced above and the account is referred to foreclosure. You may be responsible for repaying this claim to the Rural Housing Service. If your personal liability for this account has not been discharged in a bankruptcy, the Rural Housing Service may use all options, including those under the Debt Collection Improvement Act (DCIA) to recover the full amounts due. The DCIA provides for the collection of outstanding federal debts through the Treasury Offset Program which allows federal payments such as Social Security benefits to be reduced or "offset" in order to repay the outstanding debt.

9. **Here's information on how to make your payment of $3,977.33**
   - Visit chase.com/WaysToPay for information on making online payments

App. 035

- Call us to make your payment over the phone, free of charge
- Make your payment at a Chase branch
- Mail your payment to one of the addresses below.

Regular Mail:  CHASE
PO BOX 78420
PHOENIX, AZ 85062-8420

Overnight Mail:  CHASE
PO BOX 78420  3137 EAST ELWOOD STREET, SUITE 130
PHOENIX, AZ 85034-7225

If we have received six insufficient funds (NSF) payments in the last six months, certified funds are required and payments must be received by mail or in a Chase branch.

Except as required by law, we are not required to accept less than the full amount owed. If we receive less than the full amount owed, we may apply it to your loan without waiving any default or waiving our right to accelerate the loan and begin foreclosure proceedings.

10. **Assert and protect your rights as a member of the armed forces of the United States. If you or your spouse is serving on active Military duty, including active Military duty as a member of the Texas National Guard, a member of the National Guard of another state, or a member of a reserve component of the armed forces of the United States, please send written notice of the active Military service using the contact information below.**

**Mail:**           **Chase**
**Attn: SCRA Request**
**P.O. Box 183240**
**Columbus, OH 43218-3240**

**Fax:**            **1-888-890-6803; it's free from any Chase branch**

**Email:**          **Send us a secure message by signing in to your account at chase.com**

11. **Assistance options may be available to help you.** We have a variety of homeowner assistance options that might help you keep your home; however, we need to talk with you to discuss these options and determine which of them might be appropriate for your circumstances. Please call us as soon as possible at 1-800-848-9380.

12. **We may complete property inspections while the loan remains in default.** Property inspections may be done to determine the property condition, occupancy status and possibly your plans for curing the default and paying this loan on time. Any costs incurred by us may be added to the amount you now owe if permitted by your loan documents or applicable law.

JPMorgan Chase Bank, N.A. is the mortgage servicer for your loan and is the duly authorized agent for loan servicing administration for its principal and the investor of your loan, JPMorgan Chase Bank, National Association, pursuant to a written agreement. All notices, payments, correspondence, and other communications regarding your real estate loan should continue to be directed to Chase.

**Here's where to look for help**
You can find additional resources below to help you with your mortgage:

- The Homeowners HOPE Hotline can take your call anytime at 1-888-995-HOPE (1-888-995-4673).
- The U.S. Department of Housing and Urban Development (HUD) has a list of agencies that offer free mortgage-assistance counseling. For a list of agencies, call HUD at

1-800-569-4287, or 1-800-877-8339 for TTY services, or go to hud.gov and, under the "Resources" tab, select "Foreclosure Avoidance Counseling."

If you have questions, please call us; we accept operator relay calls.

Sincerely,

Chase
1-800-848-9380
chase.com

CERTIFIED MAIL: Return Receipt Requested and First Class Mail

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-848-9380.

**Important Legal Information**

**We are a debt collector**
This is an attempt to collect a debt and any information obtained will be used for that purpose. However, to the extent your original obligation is subject to the automatic stay of bankruptcy or was discharged under the United States Bankruptcy Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this notice means that you're required to repay a debt that's subject to the automatic stay or has been discharged. Any payment you make on the account is voluntary, but if the original obligation is secured by collateral, we retain the rights under any applicable security instrument.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

**Information for Servicemembers and their dependents**
If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, some states allow for a payment deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

ID NQWgm6ns3B
BR034

**App. 037**

**NOTICE OF ACCELERATION AND
NOTICE OF POSTING & FORECLOSURE**

April 3, 2025                                                                                                              **Certified Mail**

**Rachael Griffin**
703 Deveron Ln
Houston, TX 77090

RE: C&M No. 44-25-00934 Griffin,Rachael; Loan No.xxxxxx███ / Conventional CHE

**\*\* This communication is from a debt collector and this is an attempt to collect a debt and any information obtained will be used for that purpose.\*\***

**<u>Assert and protect your rights as a member of the armed forces of the United States. If  you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is:  Codilis & Moody, P.C., 20405 State Highway 249, Suite 170, Houston, TX 77070</u>**

RE:  Promissory Note in the amount of $131,012.00 dated October 31, 2005, executed by Rachael Griffin, and Deed of Trust originated October 31, 2005, executed by Rachael Griffin and husband, Terrence Tremayne Griffin and recorded under Vol. RP 013-89, Page 0838, or Clerk's File No. Y886750 in the Deed of Trust Records of HARRIS County, Texas.

This law firm represents JPMorgan Chase Bank, National Association, the Mortgage Servicer for JPMorgan Chase Bank, National Association with respect to the above referenced indebtedness.

You have failed to pay the indebtedness when due and, as a result, have been in default under the terms of the indebtedness.

You are further notified that JPMorgan Chase Bank, National Association is acting as the Mortgage Servicer for JPMorgan Chase Bank, National Association, who is the Mortgagee. JPMorgan Chase Bank, National Association, as Mortgage Servicer, is representing the Mortgagee, whose address is C/O 3415 Vision Drive, Columbus, OH 43219-6009.  The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.

You are hereby notified that because you have not cured the default, your obligations under the Note and Deed of Trust have been matured, and that the entire principal indebtedness evidenced by the Note, together with interest thereon as provided by the terms of the Note and earned thereunder, has been accelerated.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Mortgage Servicer is exercising its *in rem* rights as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability. We are not attempting to collect money from anyone who is not a debtor of the aforementioned debt and/or anyone who has discharged the debt under the Bankruptcy laws of the United States.  If you are receiving this notice and you are not a debtor, you are receiving this notice for informational purposes only.

Also attached to this letter is a Notice of Trustee's Sale of the property described therein, as provided by the terms of the Deed of Trust and the laws of the State of Texas.  Please feel free to contact this office at 281-925-5200 if you have any questions regarding this matter.

Sincerely,

CODILIS & MOODY, P.C.
20405 State Highway 249, Suite 170
Houston, TX 77070



**EXHIBIT**

**A-5**

**App. 038**

**NOTICE OF TRUSTEE'S SALE AND APPOINTMENT OF SUBSTITUTE TRUSTEE**

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is: Codilis & Moody, P.C., 20405 State Highway 249, Suite 170, Houston, TX 77070**

**INSTRUMENT BEING FORECLOSED AND MORTGAGE SERVICER INFORMATION**

Deed of Trust dated October 31, 2005 and recorded under Vol. RP 013-89, Page 0838, or Clerk's File No. Y886750, in the real property records of HARRIS County Texas, with Rachael Griffin and husband, Terrence Tremayne Griffin as Grantor(s) and Long Beach Mortgage Company, A Corporation as Original Mortgagee.

Deed of Trust executed by Rachael Griffin and husband, Terrence Tremayne Griffin securing payment of the indebtedness in the original principal amount of $131,012.00 and obligation therein described including but not limited to the promissory note and all modifications, renewal and extensions of the promissory note (the "Note") executed by Rachael Griffin. JPMorgan Chase Bank, National Association is the current mortgagee (the "Mortgagee") of the Note and Deed of Trust or Contract Lien.

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan. JPMorgan Chase Bank, National Association is acting as the Mortgage Servicer for the Mortgagee. JPMorgan Chase Bank, National Association, is representing the Mortgagee, whose address is: 3415 Vision Drive, Columbus, OH 43219-6009.

**Legal Description:**
**LOT FIVE (5) BLOCK TWO (2) OF ELLA CROSSING, SEC. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN FILM CODE NO. 583137 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.**

**SALE INFORMATION**

**Date of Sale: 06/03/2025**                    **Earliest Time Sale Will Begin: 10:00 AM**

**Location of Sale:     The place of the sale shall be: HARRIS** County Courthouse, Texas at the following location: 11,681 Square Feet area of covered concrete, being a 13,979 Square Feet area of covered concrete under the Bayou City Event Center Pavilion, save and except a 2,298 Square Feet Concession and Restroom area under said Pavilion, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court

**TERMS OF SALE**

A default has occurred in the payment of said herein referenced indebtedness, and the same is now wholly due, and the Mortgagee and/or Mortgage Servicer has requested the hereinafter appointed Substitute Trustee to sell said property to the highest bidder for cash and to distribute or apply the proceeds of said sale in accordance with the terms of said Deed of Trust.

The Sale will be conducted as a public auction to the highest bidder for cash, except that Mortgagee's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust. Pursuant to the Deed of Trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. **Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold in "AS IS," "WHERE IS" condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the Deed of Trust.**

The sale will begin at the earliest time stated above, or within three (3) hours after that time. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

**WHEREAS,** in my capacity as attorney for the Mortgagee and/or Its Mortgage Servicer, and pursuant to Section 51.0076 of the Texas Property Code, **I HEREBY APPOINT AND DESIGNATE Jeff Leva, Sandy Dasigenis, Patricia Poston, Megan L. Randle, Ebbie Murphy, Wayne Daughtrey, Steve Leva, Nicole Durrett, Thomas Delaney, Danya Gladney, Aaron Demuth, Codilis & Moody, P.C., or ServiceLink Auction, as Substitute Trustee.**

The address for the Substitute Trustee for purposes of Section 51.0075(e) of the Texas Property Code is:
Codilis & Moody, P.C.
20405 State Highway 249, Suite 170
Houston, TX 77070
(281) 925-5200



**CHASE**

700 Kansas Lane
LA4-6633
Monroe, LA 71203

Thank you for your payment
on 12/02/2024.

**Statement date** 12/17/2024

| **Payment due** | **Amount due** |
|---|---|
| 01/01/2025 | $4,224.25 |

A late fee of $35.02 may apply if payment received after
01/16/2025.

30911 MSD  Z35224 C -  BRE
RACHEL GRIFFIN
703 DEVERON LN
HOUSTON TX  77090

## Mortgage information

| | |
|---|---|
| Account number | |
| Property address | 703 Deveron Ln Houston, TX  77090 |
| Original principal balance | $131,012.00 |
| Unpaid principal balance[1] | $118,062.84 |
| Capitalized interest balance | $12,850.38 |
| Maturity date | 09/2053 |
| Interest rate | 4.12500% |
| Escrow balance | ($4,490.75) |
| Unapplied balance | $106.84 |
| Corporate advance balance | $20.00 |

## Past payments breakdown

| | Paid since last statement | Paid year-to-date |
|---|---|---|
| Principal | $0.00 | $1,915.93 |
| Interest | $0.00 | $4,504.00 |
| Escrow | $0.00 | $8,544.00 |
| Fees/Charges | $0.00 | $525.30 |
| Unapplied funds | $0.00 | $106.84 |
| **Total** | **$0.00** | **$15,596.07** |

## Explanation of amount due

| | |
|---|---|
| Principal | $179.01 |
| Interest | $404.62 |
| Escrow | $777.76 |
| **Monthly payment** | **$1,361.39** |
| **Prior fees/charges** | **$105.06** |
| **New fees/charges** | **$35.02** |
| **Original missed payment date** | **11/01/2024** |
| **Past due amount** | **$2,722.78** |
| Total payment due on **01/01/2025** | **$4,224.25** |

## Tax statements



IRS tax
statements

Tax statements will be available online
mid-January. Paper tax statements will
be in your January billing statement or
mailed by January 31.
**www.chase.com/TaxStatement**

## Important account information

Please see the attached
Delinquency Information
page for more details on
your account status.

## Ways to pay

Convenient and free ways to make your payment:

 Enroll in automatic payments at www.chase.com or
back of statement coupon.

 Make your payment at www.chase.com

 Pay by phone with our dedicated number at
1-833-PAY-CHASE (1-833-729-2427).

 Mail your payment with the coupon below.

## Resources

www.chase.com/MyMortgage

Call customer service   1-800-848-9380
(24/7 automated line)
Monday - Friday          8 a.m. - 8 p.m. (ET)
Saturday                    9 a.m. - 6 p.m. (ET)

**Es** Si tiene alguna pregunta o necesita ayuda para traducirla,
comuníquese con nosotros llamando al 1-855-280-4198 o
visita www.chase.com/Statement

▼

Mail your payment with the coupon below

▼

To make additional principal, escrow, or fee payments, sign in to www.chase.com or detach
coupon and mail with your check.

**CHASE**

Check box and fill out the reverse side if you would
like to enroll in automatic payments.

**RACHEL GRIFFIN**
Account number
Total amount due          $4,224.25
Payment due date         01/01/2025

CHASE
PO BOX 78420
PHOENIX AZ 85062-8420

| | |
|---|---|
| Monthly payment ($1,361.39) | $ |
| Late charges ($140.08) | $ |
| Fees due ($0.00) | $ |
| Additional principal | $ |
| Additional escrow | $ |
| Total amount enclosed | $ |

**EXHIBIT**

**A-6**

**App. 040**

### Transaction activity

| Transaction date | Description | Total received | Principal | Interest | Escrow | Fees/ Advances | Unapplied funds |
|---|---|---|---|---|---|---|---|
| 12/04/2024 | COUNTY TAX PAID | | | | $1,963.68 | | |
| 12/16/2024 | UTILITY TAX PAID | | | | $1,445.98 | | |
| 12/16/2024 | HOMEOWNERS INSURANCE PAID | | | | $5,636.00 | | |
| 12/16/2024 | LATE CHARGE ASSESSMENT | | | | | $35.02 | |

### Additional information

The Corporate Advance Balance may be for funds we applied as a courtesy to make a full payment on your behalf. This may occur when we receive funds from you that are less than your payment amount.

Also, depending on the status of your account, it may cover inspections, home valuations, legal fees and costs, property maintenance, or other expenses. Your Corporate Advance Balance is listed under the Mortgage information section on this statement.

The balance of your unapplied funds account is $106.84. If this amount is less than the total amount required to make a full monthly payment, then this means that these funds will remain in your unapplied funds account until additional funds are received that equal the full payment amount. If this amount is greater than the total amount required to make a full monthly payment, then please call us at 1-800-848-9380 if you have any questions about its application to your account.

The capitalized interest balance listed in the mortgage information section of your statement is the amount of interest that has been included with your principal balance as part of a modification to your account. When the account was adjusted, the interest balance owed at that time was added to the unpaid principal to remove the delinquency. As you make payments reducing your unpaid principal balance, you are also reducing the capitalized interest balance. We report the full amount of interest paid on IRS Form 1098, including capitalized interest.

Unless you specify otherwise, we will apply funds received in excess of the payment due to additional periodic payments up to two months ahead. Any funds remaining after application of the periodic payments or any amount insufficient to make an additional payment will be applied to outstanding fees and advances, and then as a principal reduction. All principal reductions are applied after periodic payments are applied.

### Contact Information and Disclosures

For all of our ways to contact us, please visit www.chase.com/Mortgage-Contact-Us

| **Customer Service Inquiries** | **Designated Address for Notices of Error, Information Requests, and Qualified Written Requests** | **Insurance Bills & Policies** | **Overnight Payment** |
|---|---|---|---|
| Chase<br>Mail Code LA4-6475<br>700 Kansas Lane<br>Monroe, LA 71203 | Chase<br>Mail Code LA4-6911<br>700 Kansas Lane<br>Monroe, LA 71203-4774 | www.MyCoverageInfo.com/chase<br>Email: chase@mycoverageinfo.com<br>Chase<br>P.O. Box 4465<br>Springfield, OH 45501<br>Fax: 1-678-475-8799<br>(Free of charge from any Chase branch) | Chase<br>ATTN: P.O. Box 78420<br>3137 East Elwood St.<br>Suite 130<br>Phoenix, AZ 85034 |

**Account Information Reported to Credit Bureau**

We may report information about your Account to credit bureaus. Late payments, missed payments or other defaults on your Account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, please write to us at Chase Home Lending, Mail Code LA4-6945, 700 Kansas Lane, Monroe, LA 71203.

If you do not make your mortgage payment on time or request services from Chase, you may be charged fees. Those fees may include those shown in your loan documents, provided by law, or related to the services provided. The fee structure may change without notice except where prohibited by law. Other fees may be charged for services provided. Fees may not be applicable to certain products and may be limited by law.

**[1]Loan Payoff Information**

Your Unpaid Principal Balance is not a payoff quote. Learn more about the payoff process by calling the phone number in the Resources of this statement.

**Important Bankruptcy Information**

If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt.

**Homeowner Assistance**

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, or the U.S. Department of the Treasury-sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge.

You may have the ability to apply for the Department of Treasury's Homeowner Assistance Fund (HAF), if HAF is available in your jurisdiction. If your state or jurisdiction offers HAF programs, you may contact those programs directly for more information, including how to apply.

### Automatic payment enrollment form

1 Please debit my:

☐ Checking Account    ☐ Savings Account

| $1,361.39 | |
|---|---|
| Amount Due[1] | Mortgage Account Number |

Enroll for free automatic payments by checking the box on the front and mailing in this form in the envelope provided. Learn more at www.chase.com/waystopay

2 _____    _____
Financial Institution          Account Holder Name

Locate your account and routing number on your check.

_____    _____    $ _____
Routing Number          Account Number          Additional Principal per Month (optional)

3 Day of the month we should withdraw your payment: _____

We'll withdraw your payment on the due date if you leave this blank.
**Please allow 10 business days for setup; continue making your payment until you receive confirmation ACH has been setup.**

4 _____    _____
Signature of Financial Institution Account Holder    Date

```
YOUR NAME                              1234
1234 your street
city, state 12345

                                    $ [      ]
CHASE

MEMO
|:123456789    987654321    1234
   routing      checking account  check
   number       number            number
```

[1]By signing above you authorize us, any successor servicer, sub-servicer, or assignee to electronically withdraw monthly payments plus any additional principal you authorize from your personal bank account on the date specified, or on the next business day if that date falls on a non-banking day. Requests for changes or cancellations must be made 3 business days before the payment date. You authorize us to change the amount of your payment as needed if there is an increase or decrease in the payment amounts due to changes in the interest rate or escrow, or for any other reason. Automatic payments may be cancelled if automatic payments are returned or if you, a co-borrower, or anyone listed on the title of the property that secures the loan files for bankruptcy. If this should occur, please contact us at the address or telephone number listed above for instructions for making payments on the loan. We may also change terms at any time and will provide any required notice in writing. I hereby acknowledge that I have read this agreement and agree to its terms and will keep a copy for my records.

**Crediting of Payments**

Payments will be credited as of the day we receive them if the payment is received by 5:00 p.m. in the time zone in which the mailing address on your payment coupon is located and if:

(a)   the payment is received Monday through Saturday except for legal holidays
(b)   the payment is received at the address shown on your payment coupon
(c)   your payment is made with a check or money order drawn on a U.S. bank in U.S. dollars
(d)   the attached payment coupon is enclosed with your payment and
(e)   your payment is sent in the enclosed return envelope.

Credit for payments made in any other manner may be delayed for up to five (5) days. Please allow five to seven (5-7) days for payments to reach the payment address. Please do not send cash through the mail. Please include your account number and name on the front of your check or money order. Do not staple, tape or paper clip your payment to your payment coupon. If you want to change how we applied your payment to your mortgage loan, we must receive your request within 60 days of the payment date.

AUTHORIZATION TO CONVERT YOUR CHECK TO AN ELECTRONIC TRANSFER DEBIT: When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check. Your bank account may be debited as soon as the same day we receive your payments.  You may not receive your check back from your institution.

 JPMorgan Chase Bank, N.A. Member FDIC. ©2019 JPMorgan Chase & Co.

0000001 1860-14C1P 241217 Page 2 of 3   30911

**App. 042**



**This Page Intentionally Left Blank**

## Delinquency information

### Important notice

**You've missed one or more payments and your mortgage loan is in default.** This summary highlights the status of your account, your missed payments and how to get help.

We encourage you to call us at 1-800-848-9380 so we can help you apply for options that may allow you to stay in your home, such as a repayment plan, forbearance plan or loan modification, or otherwise avoid foreclosure through a short sale or deed-in-lieu of foreclosure. You can find more information on our loss mitigation options and application process at www.chase.com

### Amount due

As of 12/17/2024, $4,224.25 is required to bring your loan current. Your Corporate Advance Balance of $20.00 is also owed, but not required, to bring your loan current.
This amount may include:

- Property maintenance
- Attorney or foreclosure fees
- Insufficient funds and other fees
- Advances we've made to purchase homeowners insurance for you or pay past-due real estate taxes.

The total fees due on your account are $140.08, which includes late fees of $140.08, NSF fees of $0.00, and other fees of $0.00. These amounts are included in the total shown above. Other fees may include charges as part of the terms of your account, permitted by applicable law, and/or were authorized for services we completed.

This amount was calculated on the date referenced above and is good for 10 days from the date of this statement. This means it may change if additional fees are billed after this date. Call us at 1-800-848-9380 to confirm the full payment amount you owe to bring your account up to date.

### Delinquency status

**Your mortgage loan payment was due on 11/01/2024, and is 45 days past due. If you have already made your past-due payments, please disregard this notice.**

If you have not made past-due payments, you may be at risk of foreclosure or other fees and charges.

#### Summary of most recent missed payments

| Payment due date | Amount remaining past due |
|---|---|
| 11/01/2024 | $1,361.39 |
| 12/01/2024 | $1,361.39 |

### Other resources

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, the U.S. Department of the Treasury sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/. These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge.

### Equal credit opportunity act notice

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552.

0000001 1860-14CIP 241217 Page 3 of 3    30911

**App. 044**

**Important notice to servicemembers and their dependents**

If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, California law allows for a six-month deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RACHAEL GRIFFIN-EL,
    Plaintiff,

                                   CIVIL ACTION NO:

v.

                                      4:25-CV-02013

JPMORGAN CHASE CO., JAMIE
DIMON, FRANKLIN CREDIT
MANAGEMENT CORPORATION,
AND THOMAS J. AXON,
    Defendants.


        ORAL AND VIDEOTAPED DEPOSITION OF
               RACHAEL GRIFFIN-EL
                  MAY 7, 2026
                   10:29 a.m.




        ORAL AND VIDEOTAPED DEPOSITION of RACHAEL
GRIFFIN-EL, produced as a witness at the instance of
the Defendants, and duly sworn, was taken in the
above-styled and numbered cause on May 7, 2026, from
10:29 a.m. to 5:45 p.m., before LaRita J. Cormier,
CSR, in and for the State of Texas, reported by
machine shorthand, taken at Veritext Legal
Solutions, 811 Main Street, Suite 4675, Houston,
Texas 77002, pursuant to the Federal Rules of Civil
Procedure and the provisions stated on the record or
attached hereto.

                                        Page 1

EXHIBIT

B



App. 046

APPEARANCES OF COUNSEL:

On behalf of the Plaintiff:

RACHAEL GRIFFIN-EL, ESQUIRE

Appearing Pro Se

709 Deveron Lane

Houston, Texas   77090

Rachaelgriffin300@gmail.com

On behalf of the Defendants:

ERIC G. CARLSON, ESQUIRE

Quilling, Selander, Lownds,

Winslett & Moser, P.C.

2200 Ross Avenue, Suite 2400

Dallas, Texas   75201

Ecarlson@qslwm.com

Also present:

Darryl Bey

Sam Swain, Legal Video Specialist

Page 2

App. 047

```
                    INDEX OF EXHIBITS

    Exhibit No.         Description              PAGE

     Exhibit 1    Notice of Deposition            06

     Exhibit 2    Fixed/Adjustable Rate Note,     27

                  10/31/05

     Exhibit 3    Deed of Trust, 703 Deveron Lane  36

     Exhibit 4    Terrance & Rachael Griffin's     48

                  2010 Bankruptcy

     Exhibit 5    Schedule A - Real Property        53

     Exhibit 6    Voluntary Petition                57

     Exhibit 7    Order Dismissing Chapter 13 Case  81

     Exhibit 8    Substitute Trustee's Deed         99

     Exhibit 9    Complaint for Damages filed      104

                  5/5/26

     Exhibit 10   First Amended Complaint          110

     Exhibit 11   Chase Statement 12/17/24         120

     Exhibit 12   $10 bill                         162

     Exhibit 13   Defendant JP Morgan's First RPDs 234

                  to Plaintiff

     Exhibit 14   Plaintiff's Responses to First   235

                  RPDs

     Exhibit 15   JPMorgan's and J. Dimon's First  260

                  Set of Interrogatories

     Exhibit 16   Plaintiff's Responses to First   261

                  Interrogatories filed 4/13/26


                                              Page 3
```

Veritext Legal Solutions
800-336-4000

App. 048

INDEX OF EXHIBITS (Cont'd)

Description                                          PAGE

Exhibit 17    Corporate Assignment of Deed of         319
              Trust

Exhibit 18    Quit Claim Deed 3/1/25                  326

Exhibit 19    Affidavit in Support of Combined        333
              Rebuttal...

Exhibit 20    Writ of Quo Warranto & Demand           343
              for Proof of Authority

Exhibit 21    Judicial Notice of Default and          364
              Assertion of Allodial Claims


              I N D E X   O F   E X A M I N A T I O N

                                                    PAGE

Examination by Mr. Carlson...................    05

Veritext Legal Solutions
800-336-4000

App. 049

P R O C E E D I N G S

THE VIDEOGRAPHER:  We're on the record May 7th, 2026.  The time is 10:29 a.m.  This begins the video-recorded deposition of Rachael Griffin-El in the matter of Rachael Griffin-El versus JPMorgan Chase Co., et al., in the United States District Court for the Southern District of Texas, Houston Division, No. 4:25-cv-02013.

Will counsel please state your appearances for the record, after which the court reporter will swear in the witness.

MR. CARLSON:  Eric Carlson for defendants JPMorgan Chase and Jamie Dimon.

RACHAEL GRIFFIN-EL,

having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. CARLSON:

Q.  Good morning.  My name is Eric Carlson.  I represent JPMorgan Chase Bank, N.A., and Jamie Dimon in this matter.  Can we agree that if I refer to JPMorgan Chase Bank, N.A., as Chase, you will understand that means JPMorgan Chase Bank, N.A.?

A.  Correct.

Q.  I'm handing you what's been marked as

Page 5

App. 050

Exhibit No. 1 to this deposition.

(Defendants' Exhibit 1 marked)

BY MR. CARLSON:

Q.  Do you recognize this document?

A.  I'm not familiar with it.

Q.  You didn't receive this document from me via e-mail?

A.  I would have to check my e-mail.

Q.  Did you receive this via regular mail?

A.  I'm not sure.

Q.  Okay.  What is this document?

A.  It is the Defendant JPMorgan Chase, N.A., and Jamie Dimon Notice of -- what is this -- enter to take the original deposition of Plaintiff, all cap name RACHAEL GRIFFIN-EL.

Q.  Close.  And you contend you did not receive this or you just don't know if you received this?

A.  I don't know.

Q.  This was mailed to 709 Deveron Lane, Houston, Texas 77090.  Do you receive mail there?

A.  That's the location I get my correspondence.

Q.  So you receive mail there?

A.  Yes.

Q.  But you don't know if you received this?

Page 6

A.   No.

Q.   Do you reliably receive mail there?

A.   Yes.  I just haven't been here to receive the mail.

Q.   Where have you been?

A.   My father had a stroke, and I been traveling to Louisiana to check on.

Q.   We served you with some mail to that address, which is the address you provided to the court, and it was returned as undeliverable.  Do you know why it's been returned as undeliverable?

A.   I don't know why.  I get the rest of the mail that the -- I get that mail from the district.  I get all other mails.  Like, I just received one saying that they changed the magistrate.  Then they did another one from the vacate the order 70 -- Docket No. 73.  So yes, I get the mail.

Q.   Okay.  In any event, you're here today because your deposition was noticed for today; correct?

A.   Yes.

Q.   What is your full name?

A.   My appellation is Rachael Lee Griffin-El. I'm a Moorish American, propria persona in my proper person.

Page 7

App. 052

THE REPORTER:  I'm sorry, say that again?  Moorish America?

THE WITNESS:  Yes, Moorish American.

THE REPORTER:  Thank you.

BY MR. CARLSON:

Q.  What was that first word you used before you gave your name?

A.  My appellation.

Q.  Appellation.  Okay.  What does that mean?

A.  That's what my title is.

Q.  So appellation is just a word that means my title is?

A.  Yeah, like name.

Q.  Got you.  Are there any other names you have previously used?

A.  Like?

Q.  Any other names you've previously gone by?

A.  Not that I know of.

Q.  Do you have a maiden name you used to go by?

A.  Sure.

Q.  What was your maiden name?

A.  The maiden name was Thompson.

Q.  So you were Rachael Thompson?

A.  No.  Rachael Lee Thompson.

Page 8

App. 053

treaty, what does the State of Texas have to do with their laws coming in play if I have a constitution and a treaty that clearly says that Article VI is the supreme law of the land?

Q. Let me preface it a different way.

A. And Texas is a part of that union, so if they're a part of that union, they are bound by the same constitution.

Q. So subject to the supremacy clause, do you agree that the laws of the State of Texas apply to you to the extent they are not inconsistent with the laws of the United States?

A. Constitution.

Q. Sure.

A. I agree.

Q. Did you used to live at the estate?

A. I did dwell at the estate.

Q. When did you dwell at the estate?

A. I dwelled there from 2005 'til September the 23rd of 2025.

Q. Why on September 23rd, 2025, did you stop dwelling at the estate?

A. Because my estate was hypothecated by Chase and its agents and sold as a colorful foreclosure sale and basically came and had constables remove me

Page 22

App. 054

and my family from the estate.

Q. So you were evicted?

A. I wasn't evicted.

Q. Constables removed you from the estate?

A. I wasn't evicted.

Q. Okay. So constables removed you from the estate?

A. I was trespassed against.

Q. Did constables remove you from the estate?

A. Constables came to my estate. What's his name. Is it Derrick? I don't know because they didn't give me the proper name for him to go by, but he work for the Harmon Marks office, and they came and they trespassed against me and my family.

Q. You said you and your family. Who else was living in the -- at the estate at the time?

A. Me and my five children and my consort.

Q. And are any of your five children 18 or older?

A. Yes.

Q. How many of them?

A. Only two.

Q. And what are their names?

A. I'd rather not say.

Q. They're adults; correct?

Page 23

App. 055

never received any funds.

Q. You personally never received any funds?

A. No.

Q. But were funds paid on your behalf to the builder of the property?

A. I'm not sure.

Q. You don't know either way?

A. No.

Q. Okay. So you believe you were obtaining a mortgage for the purchase of the home; correct?

A. I'm not sure what I was obtaining.

Q. I'm going to hand you what has been marked as Exhibit 2 to your deposition.

(Defendants' Exhibit 2 marked)

BY MR. CARLSON:

Q. Do you recognize this document?

A. I'm not familiar with it.

Q. You've never seen this document in your entire life?

A. You just placed it before me.

Q. And I'm asking you if you've seen it before today.

A. Not that I know of.

Q. So you see on the top of each page where it says initials? Do you see that?

Page 27

App. 056

A.    I don't know what that is.    That's a copy.

Q.    Right.    So looking at the copy of this document, do you see at the top where it says initials?

A.    Yes, I see it.

Q.    And do you see two initials next to it?

A.    Yes, I see two letters.

Q.    And what letters do you see?

A.    R and G.

Q.    Do you believe that you made the original markings that are now copied on the paper in front of you?

A.    I'm not sure.    This just was presented before me.    I would have to examine it before I just...

Q.    You're welcome to examine it.

A.    Yeah, I'm not sure.

Q.    So you don't know whether or not you wrote the initials RG on the top of this document?

A.    No.    This my first time seeing this.

Q.    Okay.    And what -- what is this document? Do you know?

A.    No.

Q.    Can you read the title of it for me, please?

Page 28

App. 057

A.    The title of it is Fixed/Adjustable Rate Note.

Q.    And you see down a little bit lower it's got an address?   Do you see that?

A.    Yeah.   But I also see the all caps name that's in the -- that's not properly grammar.

Q.    And what's wrong with the all caps name that you see at the top?

A.    I just know that that's not a person.

Q.    Why?

A.    That's a person, per se, like a company person, but that's not a person.

Q.    Explain that to me.

A.    I just explained it to you.

Q.    Is it because it's in all caps?

A.    Yes.   It's ens legis.

Q.    What does that mean?

A.    That is -- ens legis is a 14 amendment corporate name.

Q.    Okay.   So you don't believe -- so you believe that anytime a name is written in all capital letters, it's not a real person's name?

A.    Well, when I was in school, when you write a name, you supposed to capital letter first and the rest be lower case, and then the last name would be

Page 29

App. 058

capitalized.

Q. So --

A. I just know that company names are in all caps.

Q. So it's your position that anytime a name is written in all capital letters it becomes a company name?

A. Yes.

Q. And anytime it is written with only the first letter capitalized is a person's name?

A. Yes.

Q. Okay. Now I asked you earlier but you didn't answer. You see where there's an address lifted there -- listed there?

A. I see the location on there, 703 Deveron Lane.

Q. And that's the estate; correct?

A. That's the estate.

Q. Now I'd like you to go to the last page of this document. Is that a copy of your signature?

A. That looks like my autograph.

Q. Okay. Do you recall signing a fixed/ adjustable rate note --

A. No.

Q. -- back in 2005?

Page 30

Q.  What title company was it?

A.  I'm not sure.

Q.  Do you know where it was?

A.  No.

Q.  But you definitely went to a title company on October 31st, 2005; correct?

A.  Yes.

Q.  And you definitely signed some documents that day; correct?

A.  Yes.

Q.  You just don't know which ones?

A.  Exactly.

Q.  And the purpose of you being at the title company that day was to obtain a loan for the purchase or to buy the estate.  Correct?

A.  Yes.

Q.  Okay.  But you don't recall whether you signed the note?

A.  I don't recall.

Q.  And you don't recall whether you signed the deed of trust?

A.  I don't recall.

Q.  But you definitely signed some documents that day?

A.  It was way more than this.  It was, like, a

Page 46

App. 060

stack of papers about this thick (indicating).

Q. And you signed everything they put in front of you?

A. I'm not sure.

Q. Were there any documents you refused to sign?

A. None that I know of.

Q. Okay. So you believe you signed all the documents they asked you to sign that day?

A. I'm not sure.

Q. But you don't recall not signing any documents; correct?

A. Yes.

Q. Ultimately, there was a loan with Long Beach Mortgage Company; correct?

A. Not that I know of.

Q. You never made payments to Long Beach Mortgage Company?

A. No.

Q. Did you ever make payments to Chase?

A. No.

Q. Are you aware that payments were made on this loan?

A. Never knew payments were made.

Q. Your position is no payments were ever made

Page 47

App. 061

have to.

Q. And why didn't you have to?

A. Because it's fraud.

Q. What about it is fraud?

A. Basically you have -- the fraud goes back real far. So basically when the United States went bankrupt and they basically sold they company to the bankers on Jekyll Island, they bought the United States corporation that -- so basically that company try to put the debt of the United States corporation on the heirs of the land, which are the Moorish Americans of the North America.

Q. You said the Moorish -- there's a lot to unpack there.

First of all, you said the corporation of the United States? Is that what you said?

A. Yes. The District of Columbia.

Q. So is it your position that the United States is only a corporation, not a country?

A. It's not a country.

Q. So your position is the United States of America is not a country?

A. It's not a country.

Q. What is it?

A. It's a service corporation.

Page 60

App. 062

sharecropping agreement?

A. Yes.

Q. All right. So coming back to our Exhibit 6 that you have in front of you, not your -- your Tripoli treaty, you indicated this is all fraudulent, but setting that aside for a moment, in 2016 you did file for bankruptcy; correct?

A. Yes.

Q. Under the name Rachael Lee Griffin; correct?

A. Yes.

Q. Without the El designator; correct?

A. Yes.

Q. And why is there an El designator again? I forgot.

A. Because I didn't know at the time.

Q. You didn't know what?

A. About all the hegemony stuff that y'all done done. Well, not you. I know you work for the Circle Church and Crown of London, but the United States never had the right to give anything to anybody.

Q. You said you believe I work for the what?

A. The Circle Church and Crown.

Q. You believe I work for the Circle Church

Page 68

App. 063

lot of, I don't know, personal property that -- that is listed here.  Do you see all that?

A.  Uh-huh.

Q.  And if you go forward to page 24, please.

Now at this time in December of 2016, were you married?

A.  No.

Q.  To nobody; correct?

A.  Yes.

Q.  Have you been married to anybody since you divorced Mr. Griffin?

A.  No.

Q.  Okay.  So this is just you that filed this; correct?

A.  Yes.

Q.  And if we look at Schedule D here, do you see that?  What is Schedule D?  Can you read that for me, please?  It's right -- right here.

A.  It says deed as completed and --

Q.  No, sorry, right above that.  Where it's starting with Schedule D.

A.  Creditor who has claims security by property.

Q.  Right.  So it says Schedule D is Creditors Who Have Claims Secured by Property.  Did I read

Page 75

App. 064

that correctly?

A. Uh-huh.

Q. And then down below Part 1 it asks you to list all secured claims; correct?

A. Uh-huh.

Q. And then down there 2.1, there's the first secured claim listed, and what is the creditor's name that is listed there?

A. Well, the alleged creditor say Chase Mtg.

Q. Right. So that's -- that's Chase Mortgage; correct?

A. Just Chase corporation.

Q. Right. And if we look down here it says last four digits of account number, and what are those four digits?

A. It says 1980.

Q. And that is the account number that you are now disputing; correct?

A. Yes.

Q. And right above that, do you see where it says "As of the date you filed, the claim is," and then it asks you to check all that apply?

A. No, I -- I didn't --

Q. Right here? See this?

A. I didn't check anything.

Page 76

App. 065

Q. Right. You didn't check any; right? So you didn't check that this claim is contingent; correct?

A. Yeah, I don't know.

Q. And you didn't check that it's unliquidated; correct?

A. I don't know what that means.

Q. But did you check it?

A. No.

Q. And did you check that it was disputed?

A. I don't know.

Q. Well, look at the paper in front of you and tell me if you checked that it's disputed. Sorry, we're still on page 24. That's 25. Right here.

Did you check that it was disputed?

A. It's nothing checked.

Q. Right. But then down below it says nature of lien, check all that apply, and you did check some of them; right?

A. Yes.

Q. And the first one that you did check, what does it say? It says an agreement you made such as mortgage or secured car loan; correct?

A. Yeah. But that's why I'm disputing it.

Q. Right. But you -- in 2016 you checked that

Page 77

App. 066

your bankruptcy in 2016?

A. I did see an alleged discharge.

Q. You said alleged. Do you believe you did not receive a discharge?

A. If it was fraud, it's alleged.

Q. Did the bankruptcy court enter an order dismissing your case and giving you a discharge?

A. I guess the bankruptcy court did.

Q. I'm going to hand you what's been marked as Exhibit No. 7.

(Defendants' Exhibit 7 marked)

BY MR. CARLSON:

Q. Is that the order dismissing your 2016 bankruptcy case and giving you a discharge?

A. No. This says Terrance and Rachael Griffin.

Q. Correct. That's for your 2010 bankruptcy; correct?

A. I don't know. I never had a 2010 bankruptcy.

Q. Okay. But you believe that the bankruptcy court did give you a discharge in 2016?

A. Yes.

Q. Okay.

A. But now that I know that they didn't.

Page 81

App. 067

Q.   And why do you believe that they did not give you a discharge?

A.   Because it was hypothecated and it's fraudulent.

Q.   What was hypothecated?

A.   The whole system the way it's set up and ran.

Q.   So your -- your dispute is with the way that the entire United States government and legal system works?

A.   No.  My dispute is with Jamie Dimon and JPMorgan Chase and to prove that they actually own and show me the paper trail of where they supposedly had loaned me anything.

Q.   Okay.

A.   And show me that they are the holder in due course --

Q.   But that's not my question, Ms. Griffin-El.

A.   -- of the alleged loan.

Q.   My question was, did you receive a discharge in 2016, and you said that was fraudulent.  So what made the discharge fraudulent?

A.   Because it was fraud from the beginning.

Q.   What was fraud?

A.   The whole bankruptcy -- bankruptcy setup.

Page 82

App. 068

Q.   And why was the bankruptcy setup fraudulent?

A.   Because of the hypothecation of the United States government.

Q.   Right.  And so then my question goes back to, your fraud allegation is against the whole existence of the United States government generally?

A.   No.

Q.   Well, then, why did you tell me it was because of the fraud of the United States government?

A.   I was talking about this particular paper.

Q.   Right.  And so I'm asking you about the 2016 discharge from your bankruptcy.

A.   Yes.

Q.   And you said that was fraudulent.

A.   It was fraud.

Q.   And I asked you why it was fraud.

A.   Because it was fraud from the beginning.

Q.   And what was fraud from the beginning?

A.   The whole situation dealing with bankruptcy court.

Q.   Your situation or the whole country's situation?

A.   I -- I can't speak for the whole country.

Page 83

Q.   So what do you mean by the whole setup?

A.   The bankruptcy.

Q.   The bankruptcy system that exists in the United States?

A.   Yes.

Q.   Right.   So then my question is, your position is that the bankruptcy system that exists in the United States --

A.   Uh-huh.

Q.   -- is all fraud?

A.   Yes.

Q.   Okay.   And you were represented by an attorney during that 2016 bankruptcy; correct?

A.   Yes.  I had an attorney at the time.

Q.   Now I want to go back to Schedule B of your 2016 bankruptcy.  That is going to be -- so it's Schedule A/B in your 2016 bankruptcy.  It runs from page 9 to 17 of Exhibit 6.  Do you see what page 9 is of Exhibit 6, Ms. Griffin-El?  So page 9 says Schedule A/B Property; correct?

A.   That's what it says.

Q.   And if we kind of look through here, we see you've got the estate listed; right?

A.   That's correct.

Q.   And then we've got some household goods,

Page 85

App. 070

States Secretary of State?

A.  Texas Secretary of State.

Q.  Okay.  And what is the name of the trust that you transferred or purportedly transferred ownership of the property into?

A.  R. L. Freeman Trust.

Q.  Okay.  Who's the trustee of that trust?

A.  Kawyski Smith.

Q.  And who is that?

A.  That's my son.

Q.  And how old is that son?

A.  My son is 30.

Q.  30.  Is that your oldest son?

A.  Yes.

Q.  And he's the trustee of the, you said it was the R. L. Freeman Trust?  Do I have that correct?

A.  Uh-huh.

Q.  Okay.  And you transferred it in May of 2025.  And why did you transfer it to that trust?

A.  Because it was being hypothecated and used as a feudal instrument for JPMorgan Chase company.

Q.  What had been hypothecated?

A.  The estate.

Q.  Okay.  And you said that it was put in a

Page 93

App. 071

feudal instrument?  What was that feudal instrument?

A.  The alleged mortgage statement, that bill of attainder.

Q.  What does a bill of attainder mean to you?

A.  The bill of attainder is a foreign bill of exchange.

Q.  So define bill of attainder for me, please.

A.  It's a bill of -- a foreign bill of exchange.

Q.  Okay.  And what is a foreign bill of exchange?  What does it do?

A.  It's a foufor instrument.

Q.  Right.  What does it do?  What is the function of it?

A.  To rob the people.

Q.  So you believe that it deprives people of ownership?

A.  Yes.

Q.  Okay.  So 2025 you conveyed whatever interest you had in the estate into this trust?

A.  Correct.

Q.  And so at this point, then, you have no ownership interest in the property; correct?

A.  Right.

Q.  Only the trust does?

Page 94

App. 072

A.   Yes.

Q.   The trust is not a party to this lawsuit; correct?

A.   Correct.

Q.   So how do you have standing to pursue these claims if you don't have an ownership interest in the property?

A.   Well, it went on because y'all done this before all this happened, y'all went on head and did a colorful foreclosure on the estate.

Q.   That didn't really answer my question, though.

Now that you don't have an ownership interest in the property, why are you the plaintiff and not the trust?

A.   Because I'm going forward with my complaint.

Q.   Even if you prevail, you can't own the property now.  The trust would own it; right?

A.   Yes.

Q.   So wouldn't you agree with me that the trust needs to be a party to the lawsuit?

A.   No.  He can do what he wants to when he get ready to come.

Q.   Okay.  You said there was a foreclosure

Page 95

App. 073

in the United States that's ever considered the arguments that you're making has rejected them; correct?

A. I don't care what they see.

MR. CARLSON: Objection. Nonresponsive.

BY MR. CARLSON:

Q. Are you aware that all the courts that have considered the arguments you're making have rejected them?

A. What court are you talking about?

Q. The Fifth Circuit Court of Appeals, the Northern District of Texas, the Southern District of Texas, the Eastern District of Texas, the United States Supreme Court, other circuit courts, are you aware that they've rejected the arguments you are proposing -- sorry -- not proposing -- propounding in this lawsuit?

A. Why do I need to be aware of that?

Q. I'm just asking if you are.

A. But what would I have to be aware of someone who doesn't have jurisdiction to do anything of the such that they took and they're operating as a rogue government amongst the states.

Q. So it's your position that the courts lack jurisdiction over you?

Page 98

A.   Yes.

Q.   Then why did you file a lawsuit with the courts that lack jurisdiction over you?

A.   Because I need a referee because I can't deal with y'all directly and y'all showed that and I just did it out of good faith.

Q.   So when those courts have in the past rejected the arguments that you are now propounding, you claim it doesn't matter because they don't have any authority; correct?

A.   Correct.

Q.   But now you're going to that same court and asking for relief from the same court that you just told me lacks authority to give that relief; correct?

A.   Correct.

Q.   Okay.  So this foreclosure sale occurred in the summer of 2025; correct?

A.   Yes.

(Defendants' Exhibit 8 marked)

BY MR. CARLSON:

Q.   Now this is an unofficial copy, but this is what is otherwise recorded in the property reports. Are you familiar with this document, Ms. Griffin-El?

A.   No.

Page 99

A. Uh-huh.

Q. Okay. And then eventually you were evicted by PCF Properties; correct?

A. Correct.

Q. And that's when the constables came out; correct?

A. Yes.

Q. And there was a lawsuit over that eviction; correct?

A. Yes.

Q. And did you appear in that lawsuit?

A. I didn't appear anywhere.

Q. Did you go to the courthouse for that lawsuit?

A. No, because whenever I went to the civil court thing that's on Carolina, and when I went to go look in the -- I think it's like, they call it the civil court of law building, like when I went up there on the third floor, every time I asked them was there any so-called lawsuit pending against me, they claimed it wasn't. I didn't find out anything until after they tried to issue a citation for an eviction.

Q. So you knew there was an eviction proceeding occurring, but you couldn't find out

Page 101

A.　Because it's a bill of attainder labeled mortgage statement.　Even got our account and everything on it.

Q.　And what is a bill of attainder again?

A.　It's a foufor instrument.

Q.　Right.　And what does that mean?

A.　It's to defraud someone.

Q.　So your position is that this mortgage statement is seeking to defraud you?

A.　Yes.　I allege that this alleged mortgage statement is seeking to defraud me of something.

Q.　Do you see the top right of this document it says thank you for your payment on 12/2/2024?

A.　Yeah, I'm not familiar with that.

Q.　Right at the top.　You see where it says that?　Can you read that?

A.　I see that, but I'm not familiar with it.

Q.　So you don't believe you made a payment for this loan in December of 2024?

A.　No.

Q.　So if we requested your bank statement records, there would not be any record of you making a payment on this mortgage out of that bank account?

A.　No.

Q.　And your position is you've never made a

Page 123

payment to this mortgage in your entire life?

A. Correct.

Q. Has anybody made a payment to this mortgage that you're aware of?

A. Not that I know of.

Q. So how was this mortgage paid for so many years then?

A. I don't know.

Q. It wasn't you?

A. I don't see where it was paid.

Q. And it wasn't ever anyone going by the name Rachael Griffin before you added the El designator? I don't want this to be some sort of, well, that's not who I am anymore type situation.

A. This -- this one says Rachel Griffin.

Q. Right. So in 2012, when you didn't use the El designator --

A. No. It literally says Rachel Griffin.

Q. I understand. Is that a problem?

A. That's my grandmother's name.

Q. That's your grandmother's name?

A. Yes. But that's what I'm saying.

Q. And you've never gone by Rachel Griffin?

A. I went by Rachael Griffin.

Q. So you never signed a document as Rachel

Page 124

App. 078

Griffin?

A. No.

Q. Okay. So if this isn't even you, then why do you care?

A. That's why I was disputing because it was attached to my estate.

Q. To your estate. Okay. In paragraph 8, coming back to your original complaint, you say that "The statement was addressed to the artificial legal fiction." And then you have Rachael Griffin/Rachel Griffin; correct?

A. Correct.

Q. "Which is not the name of the living plaintiff and constitutes identity misrepresentation." Correct?

A. Correct.

Q. What do you mean by that?

A. It's the ens legis, all cap name.

Q. So that's the only reason that you have an issue with that?

A. It's also on the, what you call that, the -- when they take, like, the oath to become a citizen of the United States, it's in all caps too.

Q. Okay. So your complaint is just that it's all caps?

Page 125

App. 079

A.   That's not my complaint.

Q.   Why is that a misrepresentation?

A.   Because that came after the introduction of the 14th amendment.

Q.   What does the 14th amendment have to do with this being addressed to Rachael Griffin?

A.   Because it's not constitution.   It don't constitute a living person.

Q.   Why not?

A.   Because it's coming to the house, and it's being presented like it's a corporation doing business with another corporation, and that corporation is saying that this corporation, Rachael Griffin, owes that corporation a so-called debt.

Q.   And the reason that --

A.   So I disputed it.

Q.   And the reason that RACHAEL GRIFFIN is a corporation because the name is in all caps; correct?

A.   Correct.

Q.   That's the only reason?  So then your complaint is just -- if this were not in all caps, would you have the same complaint or no?

A.   I probably would.

Q.   So then why does it matter if it's in all

Page 126

App. 080

Q. So if I -- if somebody sued you for violation of the FDCPA, you would agree that you are subject to that law of the United States of America?

A. I would not agree that I'm subject to it, but I would hear them out.

Q. Okay. So you are or are not subject to the non-constitutional laws of the United States of America?

A. If they go against the organic constitution, yes, I'm against it.

Q. So you're not subject to those laws, then? That's your position?

A. Long as they align with the Constitution.

Q. Okay. What about the laws of the state of Texas?

A. What about them?

Q. Are you subject to those laws?

A. No, because they got traffic codes and traffic laws that doesn't apply to the stopment of people moving freely upon the land.

Q. Other than the traffic code, are you subject to the laws of the state of Texas?

A. Of course. If you kill somebody you don't think that I should be brought before any to seek that, for that individual to seek justice?

Page 135

Q. That's not what I asked. If -- let me ask a different question.

If that money were sent directly to Perry Homes on your behalf by Long Beach Mortgage Company or the title company, then would you agree that you owe that money back to Long Beach for having paid it on your behalf?

A. No. I'm not familiar with that.

Q. It's a hypothetical, Ms. Griffin-El.

If Long Beach Mortgage Company or the title company had sent that $163,000 directly to Perry Homes on your behalf, would you then agree with me that it is a valid debt that you would owe back to Long Beach?

A. No. Because I'm not familiar of any loan.

Q. But you showed up that day wanting a loan; correct?

A. I showed up that day at closing.

Q. Expecting that you would have a loan; correct?

A. Expecting that I was buying a house.

Q. With the money from a loan; correct?

A. Yeah, a alleged -- alleged loan.

Q. Well, a loan that you wanted because you wanted to buy the house; right?

Page 142

App. 082

A.   Yeah, but I -- I don't have no documentation of an alleged loan.

Q.   But you ended up with the house; correct?

A.   No.   They gave me some keys.

Q.   Right.   You ended up getting to move into the house; correct?

A.   I did go and dwell in the house, yes.

Q.   And the property records reflect that you own the house; correct?

A.   No.   The property records say I was a tenant.

Q.   So you're not aware of a warranty deed that conveyed the property from Perry Homes to you in 2005?

A.   Not aware.

Q.   So you would be surprised to learn that the property records included such a deed?

A.   A deed doesn't mean ownership.

Q.   What does mean ownership to you?

A.   Allodial, clear, free perfect title.

Q.   And are you aware of those ever being filed in the property records of Harris County?

A.   I don't know.   I just don't go look up people property records.

Q.   So your position is that even if there's a

Page 143

App. 083

Homes?

A. So I can have somewhere to dwell.

Q. But I thought you already owned it.

A. I do own it.

Q. Then why do you need to buy it from Perry Homes?

A. Well, apparently I didn't buy it.

Q. Why did you think you needed to buy it?

A. Because they put me down as a tenant.

Q. Before that. Before that -- before the property records, the house didn't even exist; right?

A. Uh-huh.

Q. You go to Perry Homes and say I want you to build a house for me on this property; right?

A. Well, it's because before then, I was ignorant to the fact what was going on.

Q. When did you become learned about this?

A. It took a while, but I came into the knowledge of it in, like, 2016.

Q. So right after your bankruptcy?

A. Basically I had to do the research on it.

Q. So your bankruptcy was in 2016; correct?

A. Yes.

Q. And you said when you filed that

Page 150

App. 084

bankruptcy, you didn't know about all this?

A.　I didn't know.

Q.　So it was after 2016 then?

A.　Correct.

Q.　Okay.　So when did you find out about it?

A.　After I did all the research on it.

Q.　And when was that?

A.　Don't have a definitive timeline.

Q.　Approximately.

A.　I don't know.　It took me 'til about 2021.

Q.　2021.　So during COVID?

A.　Uh-huh.

Q.　Okay.　And how did you learn all of this?

A.　By sitting down and studying.

Q.　What did you study?

A.　I went to Congressional records and basically seen what all took place.

Q.　Where did you access these Congressional records?

A.　Online in the government website.

Q.　So you went to a .gov website and just started reading --

A.　Department of Justice website.　I went to the Library of Congress.

Q.　And what prompted you to go to those

Page 151

App. 085

Perry Homes to you.

A.   Uh-huh.  And what is convey?

Q.   Convey means, like, gave, like I'm conveying this to you.

A.   But you just said they paid for it.

Q.   Perry Homes was paid.

A.   So did they receive payment or it was gave?

Q.   Exchanged the property for payment.

A.   And I don't know anything about that.

Q.   So you have no knowledge regarding that?

A.   I don't work for Perry Homes.

Q.   So you don't know whether or not Perry Homes received $163,000 --

A.   I have no clue.

Q.   -- for you to purchase the property?

A.   I have no clue.

Q.   Perry Homes never tried to take the property back from you; right?

A.   I mean --

Q.   You dwelled in the house for 20 years; right?

A.   Correct.

Q.   And Perry Homes never said, hey, we never got our money for building this house.  Right?

A.   I -- I mean, no, they ain't come to me.

Page 157

App. 086

Why would they come to me and say that?

Q. Well, they built the house for you; right?

A. Yeah, they built the house.

Q. And they expected to get paid to build the house; correct?

A. Correct.

Q. And if they didn't get paid, they probably would have said, hey, we didn't get paid; right?

A. Correct.

Q. But they never did that?

A. No.

Q. So fair to assume they probably did get paid?

A. No. That's just an assumption.

Q. Right. Fair to assume that they probably got paid?

A. I'm not familiar with it.

Q. If they hadn't gotten paid, they probably would have said, hey, Ms. Griffin, you owe us some money; right?

A. I don't know.

Q. You don't think so?

A. (The witness shakes head.)

Q. Do you think they would not have said anything?

Page 158

App. 087

Q. Yeah.

A. Okay.

Q. If we confirm that Perry Homes actually received the money --

A. Money or money substitute?

Q. Why -- why is it a money substitute?

A. Because FRNs have been proven in the Clearfield Doctrine that, you know, that FRN --

Q. What's an FRN?

A. A federal reserve note.

Q. Okay.

A. It's not money.

Q. A federal reserve note is not money?

A. Yes.

Q. So the money that the United States government prints is not money?

A. You can't print money; you can only mint money.

Q. Okay. So just to be clear, I'm going to pass you what's been marked as Defendants' Exhibit 12?

A. Uh-huh.

(Defendants' Exhibit 12 marked)

BY MR. CARLSON:

Q. What is this?

Page 162

A.    That is a federal reserve note.

Q.    For $10; correct?

A.    This is not a dollar.

Q.    For 10 U.S. dollars; correct?

A.    That's what it states on the bottom, but that's not a dollar.  I can't give you a dollar.

Q.    So your position -- just a second.  Your position is that this 10-dollar federal reserve note is not real money?

A.    No.  This is money.

Q.    Okay.

A.    Article I, Section 10 of the Constitute, no state shall make anything for gold and silver tendered for payment, never --

Q.    No -- no state; right?

A.    -- or anything.

Q.    No state.  Is this a state?  This is a country, the United States is a country.

A.    The United States is not a country.

Q.    You believe the United States is a state?

A.    The United States is not a country.

Q.    Okay.  So going back to my question, your position is that this 10-dollar bill is not money.

A.    That is a federal reserve note.

Q.    Right.  So if I give you that 10-dollar

Page 163

App. 089

bill, do you owe me $10 back?  If I loan this to you, do you owe me $10 or no?

A.  Loan what to me?

Q.  This is not money or it is money?

A.  That's not money.

Q.  This -- so this 10-dollar bill is not money is your position?

A.  It don't say money; it says note.

Q.  Right.  So your position is that if someone loaned you a thousand of these so you could go buy a car, they give you a thousand 10-dollar bills and then you take the money to go buy a car, right, you don't owe $10,000 back because they didn't give you real money?  Is that your position?

A.  That was -- no, this is not money.

Q.  Right.  So your position would be if someone loaned you, made a loan so you could go buy a car, they gave you a thousand of those 10-dollar bills; right?  That's 10,000 whatever you want to call this; right?  $10,000 worth of federal reserve notes.

A.  Uh-huh.

Q.  We got a contract.  You have a loan and you said I'm going to borrow $10,000 to buy this car and I owe it back to you.  You're saying that if the

Page 164

payment you receive from the bank is in those bills, that that's not valid and you don't owe them any money back?

A. That's not --

Q. Do I have that right?

A. This is not money.

Q. So you would not -- so your position is, then, the bank -- you would not owe the bank any money back; correct?

A. The bank didn't loan any money.

Q. They gave you a thousand of these, and your position is you received no money?

A. That's a federal reserve note.

Q. Right. So you get a thousand of these, you take it down to the Acura dealership --

A. That's just a thousand --

Q. And they -- and you give them -- you give them that thousand --

A. -- federal reserve notes on a closed account.

Q. Sure. So -- so you give this to a car dealership. And in return --

A. An unsigned check --

Q. Sure.

A. -- on a closed account.

Page 165

App. 091

Q.   Just go with me.

A.   Uh-huh.

Q.   You give a thousand of these that you got from the bank to a car dealership; right?  They give you a used car.  Right?  That is a thing that could happen; correct?

A.   Correct.

Q.   Are you saying that you don't owe the bank anything now?

A.   They didn't give nothing of value.

Q.   That's not my question.  Do you owe the bank anything?  Yes or no?

A.   No.

Q.   Okay.  Well, it's an exhibit no.

So your position is the only legal tender in the United States is gold and silver?

A.   Coin, yes.

Q.   Coin.  Has to be coin?

A.   That's what it says in the Constitution.

Q.   Can't be a -- a block of gold, can't be anything else?  It has to be coin.  Not a bar of gold?

A.   It say in weight and measures.

Q.   So if we measure -- if we know how much the gold weighs, then does it count?

Page 166

App. 092

A.   That's private commercial paper.

Q.   When you say you never made a payment on this mortgage, is that because you don't think that money paid with federal reserve notes or U.S. dollars constitutes a payment?

A.   I don't know what kind of payment you're saying.

Q.   Well, I asked you if you ever made a payment on the loan; right?

A.   No, I haven't.

Q.   And you said no.  The loan records suggest you made many payments on the loan.  So what I'm trying to understand is, is the reason that you're saying you never made a payment on the loan because you didn't give Chase silver or gold or because you never sent them any dollars, federal reserve notes, electronic payments, et cetera?

A.   Well, the alleged loan is in dispute.

Q.   Sure.

A.   They never validate the validity of any loan.

Q.   But that's not my question.  My question is, did you ever send anything -- federal reserve notes, electronic payments, checks, cash, anything like that to Chase under this loan?

Page 168

App. 093

that loan?

A.   That's not what I'm saying.

Q.   Okay.  How did Chase violate the FDCPA?

A.   I asked them to prove that they are the holder of the course of the loan because the alleged bill of attainder styled as a mortgage statement clearly states that there is an account, and I just wanted to know who was the owner of the account and who name was on it and, like, I need to know where it come from.

Q.   Okay.  And is this mortgage statement you got in December 2024, is that the first mortgage statement you received from Chase?

A.   That's -- I don't -- I really don't know.

Q.   You don't believe you started receiving mortgage statements from Chase back in 2009?

A.   Never said that.

Q.   Okay.  Did you receive mortgage statements from Chase in 2009?

A.   I received a bill of attainders through the mail from Chase, yes.

Q.   Back as far as 2009?

A.   Yes.

Q.   Why did it take until 2024 for you to raise the issue with Chase?

Page 170

A.  Because I had to figure out what was going on first.

Q.  That took you 15 years?

A.  Yes.

Q.  So from 2009 to 2024 you never just paid those mortgage statements?

A.  No.

Q.  Did you instruct anyone to pay them on your behalf?

A.  No.

Q.  Were you aware of anyone paying it on your behalf?

A.  No.

Q.  Okay.  Your second cause of action is for mail fraud; correct?

A.  Uh-huh.

Q.  How did Chase commit mail fraud?

A.  By sending a bill of attainder through the mail to try to defraud me.

Q.  So the fact that they sent you a mortgage statement is mail fraud?

A.  Yes.

Q.  Is there any other basis for your claim that they committed mail fraud?

A.  Yes.

Page 171

App. 095

A.    That's how you feel.

Q.    You're aware that that is what the courts also feel?

A.    Well, the United States -- I mean, I'm -- that's why I brought up a dispute.  I didn't have nobody else to bring it to.

Q.    Okay.  Your third cause of action is for fraudulent misrepresentation; correct?

A.    Uh-huh.

Q.    Okay.  How did Chase commit fraudulent misrepresentation?

A.    They created a document with an entity that looks like it's me.

Q.    What document?

A.    That mortgage statement.

Q.    So the mortgage statement is the basis of your complaint, not the deed of trust, not the note, none of that, just that mortgage statement?

A.    Uh-huh.

Q.    This whole lawsuit is about the mortgage statement?

A.    Yes.

Q.    Just the mortgage statement?

A.    Yes.

Q.    So your sole complaint in this lawsuit is

Page 173

App. 096

that Chase mailed you a mortgage statement?

A. Yes, trying to defraud me out of my estate.

Q. And what fraudulent misrepresentation did Chase make?

A. This (indicating).

Q. The statement?

A. Yeah.

Q. That you owed them money?

A. Correct.

Q. And do you have any evidence that Chase knows that this purported misrepresentation was false when it made it?

A. Well, when I questioned them, they never respond.

Q. And how did you question them?

A. During the mail with an affidavit of dispute.

Q. And why did you send an affidavit of dispute? Why not just send a letter?

A. Because it say send a affidavit of dispute.

Q. Why -- why did you send an affidavit of dispute?

A. Because it was me going from my nation to JPMorgan Chase corporation to they CEO and they agents.

Page 174

App. 097

A. Federal government.

Q. You're a consul of the Moroccan federal government?

A. Yes.

Q. And the United States recognizes you as such?

A. Yes.

Q. Okay. Did you act or rely upon this mortgage statement in any way?

A. How?

Q. I don't know. Did you rely upon it?

A. Rely upon it --

Q. Or when you saw it, were you immediately like this is false, this is wrong?

A. No. Basically after I got finished doing my research, I realized it was a bill of attainder, a foreign bill of exchange. And I just asked them who's the owner of it, can you show me the living person behind it.

Q. So did you pay any money to anybody as a result of receiving this mortgage statement?

A. No.

Q. Did you lose any money in any way as a result of the mortgage statement?

A. No.

Page 176

Q.   You were going to apply through ASI?

A.   Yes.

Q.   But that's just a credit union?

A.   Yes.

Q.   Credit unions probably don't issue mortgages; right?

A.   I don't know.

Q.   Okay.  Did you know that it was going to be a Long Beach loan when you were about to close in Louisiana?

A.   No.  They never mentioned it.

Q.   Okay.  But you had submitted a mortgage application and everything?

A.   Yes.

Q.   Okay.  And that was in August?

A.   Yes.

Q.   And then you ended up closing in October on this property; correct?

A.   Correct.

Q.   So Dawn and Lou, is that what you said, Lou is his name?

A.   Uh-huh.

Q.   They helped coordinate that and told you to show up at the title company's office?

A.   Correct.

Page 188

Q.   On Halloween?

A.   Correct.

Q.   In 2005?

A.   Correct.

Q.   And you did?

A.   Correct.

Q.   With the intent of taking out a loan?

A.   Correct.

Q.   To buy the estate?

A.   Correct.

Q.   From Perry Homes?

A.   Correct.

Q.   And you signed a bunch of documents that day but you're not sure which ones; right?

A.   Not sure, yes.

Q.   But you did sign some documents that day?

A.   I did sign.

Q.   And they were the documents the title company wanted you to sign; right?

A.   Yes.

Q.   Do you remember what the title company was?

A.   I --

Q.   On the top it's Chicago --

A.   Chicago Title Company thing on the top, yeah.

Page 189

App. 100

Q.    Yeah, I know.  Do you remember where that was?

A.    No.

Q.    It was in Houston?

A.    It was in Houston.

Q.    So you signed a bunch of those documents. You walk out of there, and you went to the home. That day, the next day?

A.    Correct.

Q.    And then dwelled in that home for 20 years, more or less?

A.    Correct.

Q.    But you think that it was fraudulent that Long Beach recorded the deed of trust?

A.    Yes.  I don't remember that deed of trust.

Q.    And you believe that that was slander of title that they recorded a deed of trust on this property that you now dwelled in and that you now owned?

A.    Correct.

Q.    And you believe that it was malicious of them to do so, even though you had gone to closing that day with the intent of taking out a loan and having a lien on the property; right?  That was your whole point of going that day.  But then when they

Page 190

actually recorded the lien, you believe it was malicious; correct?

A. I don't know what you're trying to say.

Q. Well, you -- you went to closing with the point of taking a loan?

A. Correct.

Q. And you understood that if you took a loan, that it'd be secured by the property and there'd be a lien; correct?

A. Correct.

Q. But then when they recorded that lien, it was malicious?

A. Well, it was fraudulent from the beginning.

Q. Right. But -- but your position is not only that it was fraudulent, it was also done with malice; right?

A. Yes.

Q. And so that's what I'm saying. When they recorded the lien that you had intended to take out that day, it was malicious? That's your position?

A. Yes.

Q. Okay. And have you ever tried to sell the estate?

A. No.

Q. Did you ever negotiate with someone to sell

Page 191

it to them?

A.   No.

Q.   So there's never been a specific pending sale of the estate that you missed out on?

A.   No.

Q.   Because of the purported slander of title; correct?

A.   Correct.

Q.   Okay.  What do you mean when you say aboriginal title?

A.   Because that means you owned it.

Q.   So aboriginal just means you own it?

A.   Outright.

Q.   As opposed to?

A.   A deed of trust.

Q.   Well, a deed of trust is a lien.  You understand that, right?

A.   I know.

Q.   So what do -- what do you understand the deed of trust to do functionally?

A.   You -- a person supposed to give you something of value claiming that you took out an alleged loan, and they supposed to loan you that value of that alleged loan, and then they put a lien on it.

Page 192

Q.   But how did them writing your name in all capital letters --

A.   Because that's what they went by that 14 Amendment citizen.

Q.   So you're saying if they hadn't done all caps, they couldn't have removed you?  Do I have that right?

A.   No.

Q.   Well, then, I'm confused.

A.   I'm saying that them all caps, they identified me as a 14 amendment citizen.

Q.   I understand you're saying that that happened.  That's great.  How much money would they need to pay to undue the damage caused by writing your name in all caps?

A.   I don't know.

Q.   Well, you said you were damaged by it; right?

A.   Yes.

Q.   How much were you damaged?

A.   They don't have no money, so how they gone pay me?

Q.   Well, you sued for money, so I don't know.

A.   Yeah.  I sued for gold and silver.

Q.   Okay.  How much in gold and silver would

Page 222

you have -- were you damaged by Chase writing your name in all caps?

A.   Like, 3 million.

Q.   $3 million for writing your name in all capital letters?

A.   Correct, because it affected me and my children.

Q.   How did it affect you?

A.   You basically, through their actions and their corporate actors --

Q.   I want to focus just on the 14th Amendment here.

A.   You asking me how they damaged me.

Q.   Only by violating the 14th Amendment, not the 5th, not the FDCPA.  I'm talking specifically your claim for violation of the 14th Amendment.

A.   They made me a -- they put me down as a 14 Amendment corporate citizen, and I was not.

Q.   And my question is the follow-up to that is how were you damaged by that?

A.   I was --

Q.   How were you injured by that?

A.   I was injured because they made me a corporate ward.

Q.   Where is the injury falling from?

Page 223

App. 105

Q. So your reputation was harmed by Chase writing your name in all caps?

A. Exactly.

Q. Who else knew that Chase had done this?

A. I don't know.

Q. Okay. The Fifth Amendment, how were you damaged by Chase's alleged violation of the Fifth Amendment?

A. By not allowing me due -- due process of law.

Q. And how were you damaged?

A. By not being allowed due process of law.

Q. Right. How did the lack of due process cause you harm?

A. Because they just went ahead with a feudal instrument and did a color of law title change and did a color of law title change with a deed of trust when it's a feudal instrument, and basically caused me and my children to be removed from the estate.

Q. And so just to refresh my memory, you said the deed of trust is a feudal instrument; right?

A. Correct.

Q. And that's f-e-u-d-a-l; right?

A. Yes.

Q. Like long time ago in England; right?

Page 226

A. Yes.

Q. Sharecropping; right?

A. Yes. Fee simple.

Q. What does fee simple mean to you?

A. That's what that is. It's not held in -- it's held in fee simple.

Q. What does fee simple mean to you?

A. It's like sharecropping.

Q. So your position is if someone owns property fee simple, they're sharecropping?

A. Correct.

Q. And that's how the Fifth Amendment was violated?

A. Yes.

Q. Okay. What about Article I, Section 10, how were you harmed by that?

A. Well, they claiming that I owe them something, and they didn't give me anything.

Q. They gave you -- you agreed they paid Perry Homes in federal reserve notes; right?

A. I didn't agree anything.

Q. You agree that after the closing you were given the keys to a home and lived in it for 20 years; right?

A. That's all I was given was some keys.

Page 227

Q.   Some keys, and you've lived in that home for 20 years; correct?

A.   Correct.

Q.   That has quite a bit of value, I would say; right?

A.   I don't know.

Q.   You don't believe it was a value to live in that home for 20 years?

A.   No.  I just basically just wanted to, like, live there, dwell in peace with my family, and that was it.

Q.   So you lived there for 20 years?

A.   Uh-huh.

Q.   Never made a mortgage payment?

A.   No.

Q.   And you say you didn't receive anything of value?

A.   No.

Q.   You don't believe that living there for 20 years without paying to live there was of value?

A.   That's not something of value.

Q.   Jamie Dimon is the CEO of Chase; correct?

A.   That's what it says on the website.

Q.   Do you agree with me that he is?

A.   Yes.

Page 228

Q.    Do you agree with me that even though he's the CEO of Chase, he's not liable for every single thing that Chase does; right?

A.    Well, he's responsible for the company operations.

Q.    So you believe he is liable for everything that Chase does?

A.    Yes.   He responsible for the company operation.

Q.    Okay.   Are you aware of any specific incidents where Mr. Dimon personally availed himself of the benefits and protections of the state of Texas?

A.    No.

Q.    Are you aware of any continuous and systematic general business context that Mr. Dimon in his personal capacity has had with Texas?

A.    None that I know of.

Q.    What about any specific context that's he had relating to the mortgage and the estate that we've been talking about today?

A.    Oh, the affidavit of dispute that I mailed him back on -- in January, I sent that out in December.   He got it January the 10th.

Q.    That's stuff you sent to him; right?

Page 229

A.  Yes.

Q.  You're not aware of anything that he did directed back to you or the estate, though; right?

A.  Yeah.  He ignored me.

Q.  Right.  So he didn't do anything, he just didn't respond to your letter; right?

A.  He didn't respond to my affidavit of dispute.

Q.  Right.  With respect to Mr. Dimon, what specifically do you allege he has done wrong -- done wrongfully?

A.  Well, he basically didn't respond to the dispute.  He went on head with the practices of going through with colorable foreclosure and basically removing me and my children from the estate.

Q.  How many children do you have?

A.  Six.

Q.  Six children.  How many did you have with Mr. Griffin?  How many did you have with Mr. Griffin?

A.  Let me see.  It would be two.

Q.  Your two oldest?

A.  No.

Q.  Did you have children before you married

Page 230

Q. Sure. But if you've received medical treatment for that emotional distress and mental anguish, then we're entitled to that information.

A. Hmm.

Q. So my question is, have you received medical treatment for emotional distress or mental anguish resulting from the actions of Chase?

A. No.

Q. Okay. So you could have just said no responsive documents.

With respect to your name, you didn't have any -- you haven't done anything to formally change your name from Rachael Griffin to Rachael Griffin-El; correct?

A. On a fraudulent instrument.

Q. What?

A. My birth certificate.

Q. I just want to know if you've done anything with the United States or Texas to formally change your name?

A. Why would I go to the United States to change a name?

Q. I'm just asking if you have. If the answer is no, you can just say no.

A. I did say no.

Page 241

Q.   Those are not the same as exemplary damages.  So what I'm trying to understand is what is the basis for your claim for exemplary damages?

A.   I don't have one.

Q.   Okay.  So you're withdrawing your claim for exemplary damages?

A.   Correct.

Q.   Flip forward to 17, please.  For a lot of these you just said you'll produced nonprivileged documents and communications, but for this one you added a qualifier that you said "that are responsive to this request and relevant to the claims and defenses in this action."  Do you see that?

A.   Uh-huh.

Q.   Would you agree it's not your job to determine what is and is not relevant in this case?

A.   Well, I don't know how communications like from y'all agent, I don't have, I mean, that doesn't make sense to me and y'all have the recording.

Q.   So 17 asks for communications between you and Laura Porter.  Certainly Chase wouldn't have that.

So my question is:  Why do you believe it's up to you to decide what's relevant?

A.   But I don't have no communications between

Page 248

that never was spoken to me about it being used that day.

Q. It's just a yes or no question. Is it your position that if a note and deed of trust are sold to a pooling company, they're destroyed?

A. No. That's what the code says.

Q. So you believe that there is a United States law that says if a note and deed of trust are sold to a pooling company, they are destroyed?

A. Well, it's a statute.

Q. Sure. A statute is a law. So it's your position that there is a United States statute that says if a note and deed of trust are sold to a pooling company, they are destroyed?

A. Yes.

Q. But you don't know that statute that is?

A. I know it's 42 something. I can't remember the last four numbers.

Q. So help me out a little bit because I'm a little slow on this. So we have this original note and deed of trust; right?

A. Uh-huh.

Q. They're from 2005; right?

A. Uh-huh.

Q. They have your signature on them; right?

Page 311

Veritext Legal Solutions
800-336-4000

A. Correct.

Q. And they have your ex-husband's signature on the deed of trust; right?

A. Correct.

Q. And Long Beach is the beneficiary of them; correct?

A. Supposedly. I thought it was some Michael, what's his name Michael --

Q. Riddle?

A. Yeah.

Q. He was just the -- the trustee.

A. Okay.

Q. Okay. So then somehow Long Beach, you're claiming, sold them into a pooling and servicing group and agreement?

A. Correct.

Q. And that in doing so, the loan was discharged and destroyed at law?

A. It was destroyed.

Q. And that's your position?

A. The chain was broken.

Q. That's not what I asked. You're saying the loan is destroyed by doing that?

A. I'm saying the chain was broken.

Q. And what is the effect of the chain being

Page 312

Q.    But your position is those rules exist?

A.    Yes.

Q.    All right.    Let's go to interrogatory No. 18, your response.    This asks you to explain how Chase violated the Truth in Lending Act.    How did Chase violate the Truth in Lending Act?

A.    Not disclosing to me what was going to happen to the promissory note and what they were going to do with the deed of trust.

Q.    And is that based on what happened in 2005 when they first were created?

A.    I don't know what they did after 2005.

Q.    Right, but --

A.    I didn't know they was going to sell it to a pooling company.

Q.    Is your complaint based on what happened in 2005 or what happened at some later date?

A.    Basically when I found out what was going on, that's when I filed my dispute.

Q.    So when -- in what year did Chase violate the Truth in Lending Act?

A.    When I filed my dispute.

Q.    What year is that?

A.    2024, end of December.

Q.    Okay.    So your position is that in 2024,

Page 314

Chase violated the Truth in Lending Act?

A. Correct.

Q. And how did they violate it?

A. By not telling me that they were going to sell my promissory note to a pooling company.

Q. Did Chase sell your promissory note to a pooling company in 2024?

A. I don't know who done it, but they the ones claim that they had some kind of ownership in -- interest in the estate.

Q. So you believe that Chase thought it had an ownership interest in the estate?

A. No. I'm thinking that Chase agents think they had an ownership interest in the estate.

Q. And why do you think that Chase agents felt that Chase had an ownership interest in the estate?

A. Because those are the individuals who called claiming to be Chase on the phone.

Q. Not related to a deed of trust?

A. Correct.

Q. Which we've discussed does not create an ownership interest?

A. Correct.

Q. But you believed at the time it did create an ownership interest or that Chase thought it

Page 315

created an ownership interest?

A.   Well, I just asked them to prove that, basically that you had any interest of ownership of the obligation.

Q.   Which is different from ownership of the estate?

A.   Correct.

Q.   Which is kind of muddled in your response here; right?

A.   (The witness nods.)

Q.   Then you say here that Chase failed to provide required disclosures.  What disclosures was Chase required to provide that they did not provide?

A.   When I asked them to send me those documents in the affidavit of dispute.

Q.   What documents?

A.   I asked them to produce the original contract, I know, and asked them to produce that they were holder in due course.

Q.   And your position is that their failure to produce the original contract wet ink version is a violation of TILA?

A.   Yeah.  And verified the species and the loan agreement that was alleged lent or borrowed --

Q.   The species?

Page 316

A. -- and what must be returned. Yeah.

Q. What do you mean by the species?

A. What they claim that they loaned me.

Q. What does the word "species" mean to you in that sense?

A. Like what did they loan me. Like, I don't know.

Q. What does species mean, though? I don't understand.

A. Like what specific species of loan agreement that the alleged lent me, like, that part.

Q. I only understand species to mean, like, a species of animal, so I'm not sure how you're using the word.

A. I'm using it as an, like, what did you give me of value to claim that I owe you anything.

Q. And I think is it fair to say that Chase's position is we gave you federal reserve notes?

A. They didn't answer anything.

Q. Sure. But -- but --

A. They didn't answer anything. They just went on head and violated my Fifth Amendment rights.

Q. I see. So your answer to interrogatory No. 20 you state, "Plaintiff disputes the validity and enforceability of any such documents to the

Page 317

know for a document to be valid in contract law, it got to be a wet ink signature.

Q. Right. So then your position is that Chase cannot use copies?

A. Correct.

Q. Okay. Hand you what has been marked Exhibit No. 17.

(Defendants' Exhibit 17 marked)

BY MR. CARLSON:

Q. Do you recognize this document?

A. No. I never seen it.

Q. So I was trying to get to this earlier, and you kind of cut me off, I think, but my -- I wanted to understand if you understood that Long Beach was a subsidiary of Washington Mutual Bank, and you said you didn't understand that; right?

A. Uh-huh.

Q. But Long Beach Mortgage Company is the lender on that original note and deed of trust; correct?

A. That's what the paper says.

Q. Right. And then Long Beach was a subsidiary of Washington Mutual, which you did not understand. Correct?

A. Correct.

Page 319

Q.   But that's -- that's the contract itself.

A.   No.   This is a contract that somebody else did.   I have nothing to do with this.

Q.   So how does one assign a deed of trust? You said they -- they can't prove they did it.   How does one assign it?

A.   Well, they can prove that they have the original contract.

Q.   But that's not an assignment.

A.   This just saying they took over it.   Right? So if you took it over, you should still have the original contract.

Q.   That's not my question, Ms. Griffin-El. And I don't think you understand the question, and I'd appreciate if you'd listen to the question.

A.   I'm listening.

Q.   You said in your interrogatory response that Chase cannot show the proper assignment.

A.   Uh-huh.

Q.   What is the proper assignment?   Not the original deed of trust.   What is the proper assignment?

A.   I don't know.

Q.   So how is it not this?

A.   I don't know.

Page 324

Q.    Because this is how every deed of trust in Texas is assigned?

A.    Oh, I don't even know about how Texas do they business.

Q.    Then how could you possibly object that Chase can't show the proper assignment if you don't know how deeds of trust are assigned?

A.    So why they can't bring the original promissory note and the deed of trust.

Q.    But you're not talking about the promissory note and deed of trust in your answer.

A.    If they was assigned to them, they should have it.

Q.    Ms. Griffin-El, you're the one who wrote in your interrogatory answer that Chase doesn't have --

A.    Okay.  But if --

Q.    Let me finish my question.

A.    -- promissory --

Q.    Ms. Griffin-El, let me --

A.    -- (overtalking) they should be --

Q.    -- finish --

MR. CARLSON:  Let's go off the record. Let's go off the record.

THE VIDEOGRAPHER:  Off the record at 4:53.

(Off-the-record discussion.)

Page 325

THE VIDEOGRAPHER:  We're back on the record at 4:56.

BY MR. CARLSON:

Q.  Ms. Griffin-El, do you know what would be required to assign a deed of trust?

A.  No.

Q.  Thank you.  Handing you what's been marked as Exhibit 18.

(Defendants' Exhibit 18 marked)

BY MR. CARLSON:

Q.  Do you recognize this document?

A.  Yes.  It's mine.

Q.  It's your document.  You filed this in the Harris County property records; right?

A.  Yeah.  And it wasn't a copy.

Q.  And it wasn't a copy.  It's now a copy of course; right?

A.  Yeah.  You got the copy to come here and show it to me.

Q.  Sure.  Who has the original of this?

A.  The trustee.

Q.  So your son has the original of this quitclaim deed?

A.  Uh-huh.

Q.  So the Harris County property records do

Page 326

Veritext Legal Solutions
800-336-4000

A.  Well, I thought it was the federal court building, but apparently found out that was a fraud.

Q.  When did you find out that federal courts were a fraud?

A.  Basically when I went to -- well, basically when I wrapped my mind around the acts that was done in 1871 in February when they transferred the United States company over into the District of Columbia.

Q.  So it's now your position that the United States federal courts are a fraud?

A.  They are a fraud.

Q.  So this court that we're in right now, the Southern District of Texas, the United States District Court for the Southern District of Texas is a fraud?  Is that your position?

A.  It's a de facto court.

Q.  That doesn't answer my question.

MR. CARLSON:  Objection.  Nonresponsive.

BY MR. CARLSON:

Q.  You said the courts are fraudulent; correct?

A.  They de facto.

Q.  What does that men?

A.  Meaning they are not lawful.

Q.  So your position is that the United States

Page 338

App. 123

District Court for the Southern District of Texas is not a lawful court?

A. Correct.

Q. Okay. And where does this $7 million for fraud in the inducement come from?

A. From basically from all the acts that basically took place.

Q. And you were damaged $7 million for that?

A. Yes.

Q. How?

A. Because that's for, like, each one of my children.

Q. What do your children have to do with this?

A. They was affected by it.

Q. Right. So each children was, what, damaged a million dollars?

A. Yes.

Q. And then you're the other million?

A. Yes.

Q. So each of the seven of you have been damaged $1 million for fraud in the inducement of a mortgage loan for $165,000?

A. Correct.

Q. How did you reach a million dollars each?

A. That comes with all the aggravation that

Page 339

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

RACHAEL GRIFFIN-EL,                  )

Plaintiff,                           )

                                     )

v.                                   )   CIVIL ACTION NO.

                                     )   4:25-cv-02013

JPMORGAN CHASE CO., JAMIE            )

DIMON, FRANKLIN CREDIT               )

MANAGEMENT CORPORATION,              )

AND THOMAS J. AXON                   )

Defendants.                          )


ORAL VIDEOTAPED DEPOSITION

TERRENCE TREMAYNE GRIFFIN

May 8, 2026

VOLUME 1


    ORAL VIDEOTAPED DEPOSITION OF TERRENCE TREMAYNE GRIFFIN, produced as a witness at the instance of the Defendant and duly sworn, was taken in the above-styled and numbered cause on May 8, 2026, from 9:30 a.m. to 10:10 a.m., before Jill M. Vaughan, Certified Shorthand Reporter in and for the State of Texas, reported by a Texas certified machine shorthand reporter.  The witness appeared at Veritext, 811 Main Street, Suite 4600, Houston, Texas.  The deposition was taken pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Page 1


EXHIBIT
C

APPEARANCES


FOR THE DEFENDANT:

Mr. Eric Carlson

QUILLING SELANDER LOWNDS WINSLETT & MOSER

2001 Bryan Street

Suite 1800

Dallas TX 75201

Ecarlson@qslwm.com

214-871-2100


ALSO PRESENT:

Daniel Alpizar, videographer

Page 2

```
                        INDEX                    PAGE

Appearances ............................      2

TERRENCE TREMAYNE GRIFFIN

     Examination by Mr. Carlson ........      4

Signature and changes  .................     39

Reporter's Certificate .................     41


                   EXHIBIT INDEX

NO.          DESCRIPTION                      PAGE

EXHIBIT 1  Subpoena to testify ............    4

EXHIBIT 2  Fixed/Adjustable Rate Note ......   16

EXHIBIT 3  Deed of Trust ...................   18

EXHIBIT 4  Second Lien .....................   20

EXHIBIT 5  Bankruptcy Petition .............   26

EXHIBIT 6  Bankruptcy Schedules  ...........   37
```

Page 3

Veritext Legal Solutions
800-336-4000

THE VIDEOGRAPHER: Today's date is May 8, 2026. This is the video deposition of Terrance Tremayne Griffin. The time is 9:30. We're on the record. We are here in the matter of Rachael Griffin-El versus JPMorgan Chase Corporation, et al., filed in the United States District Court for the Southern District of Texas, Houston Division. The court reporter may now swear in the witness.

TERRENCE TERMAYNE GRIFFIN
having been first duly sworn, testified as follows:

EXAMINATION

BY MR. CARLSON:

Q    Mr. Griffin, my name is Eric Carlson. I represent JPMorgan Chase Bank and a man named Jamie Dimon in this lawsuit. Today when I'm asking questions, can we agree that if I refer to JPMorgan Chase Bank N.A. as just Chase, do you understand that Chase means JPMorgan Chase Bank, N.A.?

A    I do.

(Exhibit 1 marked.)

Q   (By Mr. Carlson) I'm handing you what has been marked as Exhibit No. 1 to your deposition. Do you recognize this document?

A    I do.

Page 4

Q    And what is this document?

A    A subpoena to appear today for disposition [sic].

Q    And you received it, correct?

A    I did.

Q    And that's why you're here today, correct?

A    Correct.

Q    Can you please tell me your full name.

A    Terrance Tremayne Griffin.

Q    Are there any other names that you use?

A    No.

Q    How old are you?

A    49.

Q    And what is your date of birth?

A    ████████ .

Q    Where were you born?

A    New Orleans, Louisiana.

Q    We talked about this briefly before we went on the record, but I'm going to ask that you speak up and answer all my questions verbally today.

A    Okay.

Q    If you nod or shake your head, the court reporter can't get that down.  And even uh-huh and huh-uhs are really challenging to put in the record.  So if you give a yes or no answer, verbal answer,

Page 5

Q    In any event, you moved back in 2012 for a few months?

A    For a few months.

Q    Did you and Ms. Griffin take out a mortgage for the property when you moved in?

A    She did.

Q    She took out a mortgage.

(Exhibit 2 marked.)

Q  (By Mr. Carlson) I'm going to hand to you what is going to be marked as Exhibit No. 2.  Do you recognize this document?

A    (Witness reviews document.) Yes.

Q    You can look at all the pages if you need to, but what -- what is this document?

A    This appears to be where she signed for her loan agreement.

Q    So is this the note for the mortgage that she took out?

A    It appears to be, yes.

Q    And I noticed -- and you said this, too, that only Ms. Griffin is a borrower on this note, correct?

A    Correct.

Q    Why was only Ms. Griffin a borrower on the mortgage?  Why were you not also on it?

Page 16

A     I think at the time my credit didn't permit me to be a part it at all.

Q     So your credit wasn't great.  Ms. Griffin had better credit, and so she applied for the loan by herself?

A     Correct.

Q     Do you recall going to the closing for this mortgage loan?

A     Yes.

Q     And you were present for that?

A     Correct.

Q     And Ms. Griffin was also present?

A     Yes.

Q     And do you recall her signing this note at that closing?

A     Yes.

Q     And on the last page here, is that her signature?  Are you able to recognize her signature?

A     It's been a while.  I'll try.  (Witness reviews document.) I can't really say for sure; but, yeah, it appears that it is.

Q     And you were there that day, correct?

A     I was there.

Q     And -- and she did sign this in front of you, correct?

Page 17

A    I do recall that.

(Exhibit 3 marked.)

Q  (By Mr. Carlson) I'll hand you what has been marked as Exhibit No. 3.  Do you recognize this document?

A    I don't think I ever saw this document before.

Q    If you go to the second to last page.

A    Excuse me.  I have seen it.  This is the second to last page?

Q    Yeah.  Do you see that you -- your signature and Ms. Griffin's signature are there at the end of this document?

A    Yes.

Q    And is this the deed of trust for the mortgage that Ms. Griffin took out in 2005?

A    Yes.

Q    And this document you did sign, correct?

A    Correct.

Q    Do you recall why you signed this document but not the note?

A    I don't.  I think it was -- I don't.  I can't recall.  I think it was just a sense of being I guess -- I don't know.  I can't recall.

Q    But they -- they required you to sign the

Page 18

App. 132

deed of trust but not the note, correct?

A    Yes.

Q    And that happened at closing as well back in October of 2005?

A    Yes.

Q    And you signed this document, correct?

A    I did.

Q    And Ms. Griffin also signed this document, correct?

A    She did.

Q    And you were there that day when she signed it?

A    I was.

Q    And you recall her signing it?

A    I do.

Q    When you took out -- well, when Ms. Griffin took out that mortgage, who were you buying the home from?  Do you recall?  Who was she buying the home from, I guess?

A    As far as the builder or what?

Q    Correct.

A    I think it was Perry Homes, I believe.

Q    And when she was taking out this mortgage, do you remember there being like a first mortgage, and a second mortgage, like a large amount and then

Page 19

A   I think she has a total of six.

Q   So two more after you were divorced?

A   So no.  The reason we are divorced is one between my son, which is the grown, and my daughter. So there's one of them that...

Q   So she had another child while you were still married?

A   Correct.

Q   With another man?

A   Absolutely.

Q   Understood.

(Exhibit 5 marked.)

Q   (By Mr. Carlson) I'm going to hand you what's been marked as Exhibit No. 5.  Do you recognize this document?

A   No.

Q   Did you file for bankruptcy in 2010?

A   Oh, yes.  I did, yes.

Q   Now do you recognize it?

A   I do.

Q   And is this the bankruptcy petition and schedules from your 2010 bankruptcy filing?

A   Yep.  James E. Ferguson it is.

Q   Was Mr. Ferguson your attorney for that bankruptcy?

Page 26

A    He was.

Q    Now, I noticed on this bankruptcy filing that Ms. Griffin is listed as joint debtor and spouse; is that correct?

A    Where is that?

Q    On the first page here.  So it's got you -- it's got your name --

A    Okay.

Q    -- here as the debtor, right?

A    Uh-huh.

Q    And then right here it says name of joint debtor spouse titled Rachael Griffin?

A    Yes, yes.

Q    So this is in 2010, right?

A    I don't see the date on here -- oh, yeah, yeah.

Q    On the second page, if you look, it's got Mr. Ferguson's signature and then it's dated -- if you look at the date there --

A    December 8, 2020 -- yeah, 2010.

Q    So that's after you were divorced, right?

A    I -- no.  I don't -- it was, yes.

Q    So I'm just trying to understand why Ms. -- Ms. Griffin was listed as your spouse and joint debtor if you were divorced at the time.

Page 27

A    I don't think this document was -- I see the date, but I don't recall this being after we were divorced.

Q    Okay.  But you're sure you were divorced in 2009?

A    Absolutely.

Q    We -- was Ms. Griffin involved in this bankruptcy filing?

A    Yeah, yes.

Q    Did she speak to Mr. Ferguson about this bankruptcy?

A    Yes.

Q    Did you ever have to go to court or anything for this bankruptcy?

A    No.

Q    Mr. Ferguson handled that for you?

A    Yes.

Q    Did you just give him all the information and then he handled it for you?

A    If I can recall, yes.

Q    And what led to y'all needing to file for bankruptcy in 2010 or whenever it was?

A    I don't recall.  Actually I do not recall.

Q    Was the Chase mortgage part of the reason?

A    I don't recall.

Page 28

A    Probably -- I think it was after my daughter was born.  She was born in 2009.  So it had to be 2010.

Q    So you went to New York for a year and then came back?

A    Uh-huh.

Q    And this daughter that was born, was that with Ms. Griffin or with another person?

A    Yes, it was -- yes.

Q    Was she pregnant when you were divorced?

A    No.

(Exhibit 6 marked.)

Q  (By Mr. Carlson) I'm handing you what's been marked as Exhibit No. 6.  Do you recognize this document?

A    I think it's maybe the first time I've actually saw this document.  I don't know.

Q    Do you recognize this as the schedules from your bankruptcy?

A    Oh, okay.  Yeah, yeah, yeah.

Q    So this is the schedules that were filed in your bankruptcy, correct?

A    I don't -- I can't -- I can't -- I don't know.  I mean, as far as this date, Eric, I -- I just -- I -- I see the schedule, but the date is

Page 31

something just different for me for this.  But yeah.

Q    Okay.  And if we go to Schedule D, it's page 9.  The page number is there at the top.  It's page 9 of 25.

A    This one?

Q    Yeah.  It gives the page number.  They're not at the bottom.  They're at the top.  If you go to 9 --

A    Yes.

Q    -- you see that Schedule D there?

A    Schedule D.

Q    And this is -- can you read that?  What is this indicating?

A    It says:  "Creditors holding secured claims."

Q    Okay.  And then it looks like there's an auto loan there at the top.  Do you recall having that auto loan on that Toyota Camry?

A    I do.

Q    And then the next one, what's the second one down there?

A    It says Chase.

Q    And if you go to the kind of middle, largest column there, does it reflect what this is with Chase?

Page 32

Veritext Legal Solutions
800-336-4000

A    Conventional real -- real estate mortgage.

Q    And this is the loan that Ms. Griffin had taken out, correct?

A    Yes.

Q    And then if you kind of look here, it's got some skinny columns that you could check if -- if the debt was contingent or unmitigated or disputed.  Do you see that?

A    I do.

Q    And did you guys indicate that the mortgage was disputed in any way?

A    I don't see that it is.

Q    Did you ever dispute that you -- well, that Ms. Griffin owed the money to Chase?

A    Do I dispute that she owed money?

Q    Yeah.  Did you and Ms. Griffin as a married couple ever dispute that y'all owed the money to Chase?

A    That we -- no, I never owed money to Chase.

Q    But Ms. Griffin did, correct?

A    Yes.

Q    And you were married to her?

A    Correct.

Q    And if -- if Ms. Griffin had not paid the

Page 33

B1 (Official Form 1) (4/10)

| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF TEXAS<br>HOUSTON DIVISION | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Griffin, Terrence** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**Griffin, Rachael** |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all):  **xxx-xx**▮ | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all):  **xxx-xx**▮ |
| Street Address of Debtor (No. and Street, City, and State):<br>**703 Deveron LN**<br>**Houston, TX**            ZIP CODE **77090** | Street Address of Joint Debtor (No. and Street, City, and State):<br>**703 Deveron LN**<br>**Houston, TX**            ZIP CODE **77090** |
| County of Residence or of the Principal Place of Business:<br>**Harris** | County of Residence or of the Principal Place of Business:<br>**Harris** |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):            ZIP CODE | |

### Type of Debtor
(Form of Organization)
(Check one box.)

- [x] Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- [ ] Corporation (includes LLC and LLP)
- [ ] Partnership
- [ ] Other (If debtor is not one of the above entities, check this box and state type of entity below.)

### Nature of Business
(Check one box.)

- [ ] Health Care Business
- [ ] Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
- [ ] Railroad
- [ ] Stockbroker
- [ ] Commodity Broker
- [ ] Clearing Bank
- [ ] Other

**Tax-Exempt Entity**
(Check box, if applicable.)

- [ ] Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

### Chapter of Bankruptcy Code Under Which
the Petition is Filed    (Check one box.)

- [ ] Chapter 7
- [ ] Chapter 9
- [ ] Chapter 11
- [ ] Chapter 12
- [x] Chapter 13
- [ ] Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- [ ] Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

### Nature of Debts
(Check one box.)

- [x] Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- [ ] Debts are primarily business debts.

### Filing Fee    (Check one box.)

- [x] Full Filing Fee attached.
- [ ] Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- [ ] Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

### Chapter 11 Debtors
**Check one box:**
- [ ] Debtor is a small business debtor as defined by 11 U.S.C. § 101(51D).
- [ ] Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

**Check if:**
- [ ] Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300  *(amount subject to adjustment on 4/01/13 and every three years thereafter).*

**Check all applicable boxes:**
- [ ] A plan is being filed with this petition.
- [ ] Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

### Statistical/Administrative Information

- [x] Debtor estimates that funds will be available for distribution to unsecured creditors.
- [ ] Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

**Estimated Number of Creditors**

| [x] 1-49 | [ ] 50-99 | [ ] 100-199 | [ ] 200-999 | [ ] 1,000-5,000 | [ ] 5,001-10,000 | [ ] 10,001-25,000 | [ ] 25,001-50,000 | [ ] 50,001-100,000 | [ ] Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

**Estimated Assets**

| [x] $0 to $50,000 | [ ] $50,001 to $100,000 | [ ] $100,001 to $500,000 | [ ] $500,001 to $1 million | [ ] $1,000,001 to $10 million | [ ] $10,000,001 to $50 million | [ ] $50,000,001 to $100 million | [ ] $100,000,001 to $500 million | [ ] $500,000,001 to $1 billion | [ ] More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

**Estimated Liabilities**

| [ ] $0 to $50,000 | [ ] $50,001 to $100,000 | [x] $100,001 to $500,000 | [ ] $500,001 to $1 million | [ ] $1,000,001 to $10 million | [ ] $10,000,001 to $50 million | [ ] $50,000,001 to $100 million | [ ] $100,000,001 to $500 million | [ ] $500,000,001 to $1 billion | [ ] More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT D**

Computer software provided by LegalPRO Systems, Inc., San Antonio, Texas (210) 561-5300, Copyright 1996-2010 (Build 9.0.75.1, ID 3659910666)

App. 140

B1 (Official Form 1) (4/10)                                                                                                  Page 2

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): **Terrence Griffin**<br>**Rachael Griffin** |
|---|---|

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet.)

| Location Where Filed: | Case Number: | Date Filed: |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor    (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| Exhibit A<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐   Exhibit A is attached and made a part of this petition. | Exhibit B<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.  I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X   _/s/ James T Ferguson_____   12/8/2010<br>      **James T Ferguson**                                                    Date |
|---|---|

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☑   No.

### Exhibit D

(To be completed by every individual debtor.  If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

    ☑   Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

    ☑   Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box.)

☑   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence.  (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐   Debtor certifies that he/she has served the Landlord with this certification.  (11 U.S.C. § 362(l)).

*Computer software provided by LegalPRO Systems, Inc., San Antonio, Texas (210) 561-5300, Copyright 1996-2010 (Build 9.0.75.1, ID 3659910666)*

**App. 141**

B1 (Official Form 1) (4/10) Page 3

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s): **Terrence Griffin**<br>**Rachael Griffin** |
|---|---|

## Signatures

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |
| **X** /s/ Terrence Griffin<br>   **Terrence Griffin**<br><br>**X** /s/ Rachael Griffin<br>   **Rachael Griffin** | **X**_____<br>(Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative) |
| Telephone Number (If not represented by attorney)<br><br>**12/8/2010**<br>Date | _____<br>Date |

| **Signature of Attorney\*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| **X** /s/ James T Ferguson<br>   **James T Ferguson**     Bar No. **06916480**<br><br>**James T Ferguson**<br>**2425 West Loop South, Suite 200**<br>**Houston, TX 77027**<br><br>Phone No.**(713) 297-8851**    Fax No._____<br><br>  **12/8/2010**<br>  Date<br>\*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>_____<br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |
| **Signature of Debtor (Corporation/Partnership)** | |
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br><br>**X**_____<br>Signature of Authorized Individual<br><br>_____<br>Printed Name of Authorized Individual<br><br>_____<br>Title of Authorized Individual<br><br>_____<br>Date | Address<br>**X**_____<br><br>_____<br>Date<br>Signature of bankruptcy petiton preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE:   **Terrence Griffin**
             **Rachael Griffin**

CASE NO

CHAPTER    **13**

## VERIFICATION OF CREDITOR MATRIX

The above named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date  12/8/2010

Signature  **/s/ Terrence Griffin**
                   *Terrence Griffin*

Date  12/8/2010

Signature  **/s/ Rachael Griffin**
                   *Rachael Griffin*

Acs/bank Of America
C/o Acs
Utica, NY 13501


Asi Federal Credit Uni
5508 Citrus Blvd
Harahan, LA 70123


Attorney General Child Support
Attn: Bankruptcy
PO Box 12017 Credit Group
Austin, TX 78711


Central Finl Control
Po Box 66051
Anaheim, CA 92816


Chase
Po Box 1093
Northridge, CA 91328


City Ntl Bk
Attn: Bankruptcy
PO Box 785057
Orlando, FL 32878


Cmre Financial Services Inc
3075 E Imperial Hwy
Suite 200
Brea, CA 92821


Conns Credit Corp
3295 College St
Beaumont, TX 77701


Conserve
200 Cross Keys Office Pa
Fairport, NY 14450

Credit Management
4200 International Pwy
Carrolton, TX 75007


Fashion Bug
Po Box 84073
Columbus, GA 31908


Hsbc Bank
ATTN: BANKRUPTCY
PO BOX 5213
Carol Stream, IL 60197


Jefferson Financial Cu
2025 Paxton St
Harvey, LA 70058


Lvnv Funding Llc
P.o. B    10584
Greenville, SC 29603


Macys/fdsb
Attn: Bankruptcy
PO Box 8053
Mason, OH 45040


Nationcoll
2015 Vaughn Rd
Kennesaw, GA 30144


Nco Fin/09
507 Prudential Rd
Horsham, PA 19044


Nco Financial Systems
507 Prudential Rd
Horsham, PA 19044

Nco/inovision-medclr
Attn: Bankruptcy
507 Prudential Rd
Horsham, PA 19044


Portfolio Rc
Attn: Bankruptcy
PO Box 41067
Norfolk, VA 23541


Preferred Credit Inc
PO Box 1679
St Cloud, MN 56302


Rachael Griffin
703 Deveron LN
Houston, TX 77090


Receivable Recovery Se
110 Veterans Blvd
Metairie, LA 70005


Rmb Inc
409 Bearden Park Cir
Knoxville, TN 37919


Sears/cbsd
Po Box 6189
Sioux Falls, SD 57117


Tek-collect Inc
Pob 1269
Columbus, OH 43216


Terrence Griffin
703 Deveron LN
Houston, TX 77090

U S Dept Of Ed/fisl/ch
Po Box 4222
Iowa City, IA 52244

University Of Phoenix
4615 E Elwood St Fl 3
Phoenix, AZ 85040

Us Dept Of Ed/glelsi
2401 International Ln
Madison, WI 53704

Us Dept Of Education
Attn: Borrowers Service Dept
PO Box 5609
Greenville, TX 75403

Usded/glelsi
2401 International
Madison, WI 53704

Wells Fargo Auto Finance
13675 Technology Dr.  Building C
Eden Prairie, MN 55344

Wf/efs
Po Box 84712
Sioux Falls, SD 57117

TRUE COPY I CERTIFY ATTEST:
NATHAN OCHSNER, Clerk of Court
By _____
Deputy Clerk

In re  **Terrence Griffin**
     **Rachael Griffin**

Case No.  **10-41294**
         (if known)

## SCHEDULE A - REAL PROPERTY

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting Any Secured Claim or Exemption | Amount Of Secured Claim |
|---|---|---|---|---|
| 703 Deveron Lane, Houston, TX 77090 | Fee Simple | C | $167,000.00 | $211,121.00 |

TRUE COPY I CERTIFY ATTEST:
NATHAN OCHSNER, Clerk of Court
By _____
Deputy Clerk

Total: $167,000.00
(Report also on Summary of Schedules)

B6B (Official Form 6B) (12/07)

In re **Terrence Griffin**                        Case No.   **10-41294**
       **Rachael Griffin**                                      (if known)

## SCHEDULE B - PERSONAL PROPERTY

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand. | | Cadsh on Hand | C | $10.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Bank of America Checking Acct | C | $300.00 |
| | | Woodforest National Bank Checking Acct | C | $400.00 |
| | | Chase Bank Checking Acct | C | $300.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video and computer equipment. | | Stove $100<br>Refrigerator $200<br>Dishwasher $100<br>Microwave Oven $50<br>Dishes, cutlery, kitchen utensils $50<br>Breakfast table and chairs $100<br>Couch(es) $100<br>Coffee table(s) $50<br>Bed(s) $400<br>Dresser(s) $200<br>Television(s) $200<br>DVD/VCR Player(s) $50<br>Computer(s) $200<br>Printer(s) $100<br>Washer/Dryer $100<br>Household Tools $50 | C | $2,050.00 |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | | Books, pictures, photos | C | $200.00 |
| 6. Wearing apparel. | | Clothing | C | $200.00 |

App. 149

B6B (Official Form 6B) (12/07)

In re  **Terrence Griffin**                                    Case No.   **10-41294**
       **Rachael Griffin**                                                    (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 1*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 7. Furs and jewelry. | | Watches, rings, costume jewelry | C | $500.00 |
| 8. Firearms and sports, photo-graphic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities.  Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars.  (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.  Give particulars. | | TRS | C | $800.00 |
| 13. Stock and interests in incorpo-rated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |

B6B (Official Form 6B) (12/07) – Cont.

In re  **Terrence Griffin**
    **Rachael Griffin**

Case No.  **10-41294**
             (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 2*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.  Give particulars. | | Child support monthly | C | $327.00 |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercis-able for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliqui-dated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |

B6B (Official Form 6B) (12/07) - Cont.

In re  **Terrence Griffin**                                      Case No.  **10-41294**
       **Rachael Griffin**                                                              (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 3*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2005 Chevrolet LS 100,000 miles | C | $14,000.00 |
| | | 2005 Toyota Camry LE 125,000 miles | C | $8,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops – growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |

**App. 152**

B6B (Official Form 6B) (12/07)

In re  **Terrence Griffin**                                  Case No.  **10-41294**
       **Rachael Griffin**                                          (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 4*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | ___4___ continuation sheets attached | Total > | $27,087.00 |

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

In re  **Terrence Griffin**
      **Rachael Griffin**

Case No. **10-41294**

(If known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)

☑ 11 U.S.C. § 522(b)(2)
☐ 11 U.S.C. § 522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds $146,450.*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| Cadsh on Hand | 11 U.S.C. § 522(d)(5) | $10.00 | $10.00 |
| Bank of America Checking Acct | 11 U.S.C. § 522(d)(5) | $300.00 | $300.00 |
| Woodforest National Bank Checking Acct | 11 U.S.C. § 522(d)(5) | $400.00 | $400.00 |
| Chase Bank Checking Acct | 11 U.S.C. § 522(d)(5) | $300.00 | $300.00 |
| Stove $100<br>Refrigerator $200<br>Dishwasher $100<br>Microwave Oven $50<br>Dishes, cutlery, kitchen utensils $50<br>Breakfast table and chairs $100<br>Couch(es) $100<br>Coffee table(s) $50<br>Bed(s) $400<br>Dresser(s) $200<br>Television(s) $200<br>DVD/VCR Player(s) $50<br>Computer(s) $200<br>Printer(s) $100<br>Washer/Dryer $100<br>Household Tools $50 | 11 U.S.C. § 522(d)(3) | $2,050.00 | $2,050.00 |
| Books, pictures, photos | 11 U.S.C. § 522(d)(3) | $200.00 | $200.00 |
| Clothing | 11 U.S.C. § 522(d)(3) | $200.00 | $200.00 |
| Watches, rings, costume jewelry | 11 U.S.C. § 522(d)(4) | $500.00 | $500.00 |
| *Amount subject to adjustment on 4/1/13 and every three years thereafter with respect to cases commenced on or after the date of adjustment. | | $3,960.00 | $3,960.00 |

In re  **Terrence Griffin**          Case No.  **10-41294**
    **Rachael Griffin**                                    (If known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

*Continuation Sheet No. 1*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---:|---:|
| TRS | 11 U.S.C. § 522(d)(12) | $800.00 | $800.00 |
| Child support monthly | 11 U.S.C. § 522(d)(10)(D) | $327.00 | $327.00 |
| 2005 Chevrolet LS 100,000 miles | 11 U.S.C. § 522(d)(2) | $0.00 | $14,000.00 |
| 2005 Toyota Camry LE 125,000 miles | 11 U.S.C. § 522(d)(2) | $1,329.00 | $8,000.00 |
| | | $6,416.00 | $27,087.00 |

B6D (Official Form 6D) (12/07)

In re  **Terrence Griffin**  **Rachael Griffin**　　　　　　　　　　　　　Case No.　**10-41294**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCT #: xxxxxx▮▮▮<br><br>Asi Federal Credit Uni<br>5508 Citrus Blvd<br>Harahan, LA 70123 | | C | DATE INCURRED: **10/2004**<br>NATURE OF LIEN:<br>**Automobile**<br>COLLATERAL:<br>**2005 Toyota Camry LE**<br>REMARKS:<br><br>VALUE: **$8,000.00** | | | | $6,671.00 | |
| ACCT #: xxxxxxxxx▮▮▮<br><br>Chase<br>Po Box 1093<br>Northridge, CA 91328 | | C | DATE INCURRED: **10/2005**<br>NATURE OF LIEN:<br>**Conventional Real Estate Mortgage**<br>COLLATERAL:<br>**703 Deveron Lane, Houston, TX 77090**<br>REMARKS:<br><br>VALUE: **$167,000.00** | | | | $178,823.00 | $11,823.00 |
| ACCT #: xxxxxxxxx▮▮▮<br><br>Chase<br>Po Box 1093<br>Northridge, CA 91328 | | C | DATE INCURRED: **10/31/2005**<br>NATURE OF LIEN:<br>**Real Estate Mortgage without Other Collateral**<br>COLLATERAL:<br>**703 Deveron Lane, Houston, TX 77090**<br>REMARKS:<br><br>VALUE: **$167,000.00** | | | | $32,298.00 | $32,298.00 |
| ACCT #: xxxxxxxxxxxxx▮▮▮<br><br>Wells Fargo Auto Finance<br>13675 Technology Dr. Building C<br>Eden Prairie, MN 55344 | | C | DATE INCURRED: **11/18/2005**<br>NATURE OF LIEN:<br>**Automobile**<br>COLLATERAL:<br>**car**<br>REMARKS:<br><br>VALUE: **$14,000.00** | | | | $15,465.00 | $1,465.00 |
| | | | Subtotal (Total of this Page) > | | | | $233,257.00 | $45,586.00 |
| | | | Total (Use only on last page) > | | | | $233,257.00 | $45,586.00 |

_____**No**_____ continuation sheets attached

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

**App. 156**

B6E (Official Form 6E) (04/10)

In re   **Terrence Griffin**                                    Case No.   __**10-41294**__
        **Rachael Griffin**                                                         (If Known)

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**      (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic Support Obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief.  11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,600* for deposits for the purchase, lease or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(7).

☑ **Taxes and Certain Other Debts Owed to Governmental Units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507(a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance.  11 U.S.C. § 507(a)(10).

☐ **Administrative allowances under 11 U.S.C. Sec. 330**
Claims based on services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by such person as approved by the court and/or in accordance with 11 U.S.C. §§ 326, 328, 329 and 330.

*Amounts are subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

_____**1**_____continuation sheets attached

**App. 157**

B6E (Official Form 4.25)(12/4/2007)

In re  **Terrence Griffin**                                         Case No.  **10-41294**
        **Rachael Griffin**                                                      (If Known)

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

| TYPE OF PRIORITY | Taxes and Certain Other Debts Owed to Governmental Units |
|---|---|

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| ACCT #: xxxx▮▮▮<br>Attorney General Child Support<br>Attn: Bankruptcy<br>PO Box 12017 Credit Group<br>Austin, TX 78711 | | C | DATE INCURRED: **05/2010**<br>CONSIDERATION:<br>**Family Support**<br>REMARKS: | | | | $0.00 | $0.00 | $0.00 |
| ACCT #:<br>Internal Revenue Service<br>P O Box 21125<br>Philadelphia, PA 19114 | | C | DATE INCURRED:<br>CONSIDERATION:<br>**Taxes**<br>REMARKS:<br>**notice only** | | | | $0.00 | $0.00 | $0.00 |
| Representing:<br>Internal Revenue Service | | | Internal Revenue Service<br>Bankruptcy Special Procedures<br>1919 Smith St.<br>Houston, TX 77002 | | | | Notice Only | Notice Only | Notice Only |
| ACCT #:<br>James T Ferguson<br>2425 West Loop South, Ste 200<br>Houston, TX 77027 | | C | DATE INCURRED:<br>CONSIDERATION:<br>**Attorney Fees**<br>REMARKS: | | | | $2,805.00 | $2,805.00 | $0.00 |
| | | | | | | | | | |
| | | | | | | | | | |

Sheet no. __1__ of __1__ continuation sheets
attached to Schedule of Creditors Holding Priority Claims

| | | |
|---|---|---|
| Subtotals (Totals of this page) > | $2,805.00 | $2,805.00 | $0.00 |
| Total ><br>(Use only on last page of the completed Schedule E.<br>Report also on the Summary of Schedules.) | $2,805.00 | | |
| Totals ><br>(Use only on last page of the completed Schedule E.<br>If applicable, report also on the Statistical Summary<br>of Certain Liabilities and Related Data.) | | $2,805.00 | $0.00 |

B6F (Official Form 6F)

In re   **Terrence Griffin**   Case No.   **10-41294**
**Rachael Griffin**   (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  xxxxxx5241<br>**Acs/bank Of America**<br>C/o Acs<br>Utica, NY 13501 | | C | DATE INCURRED:  **02/2009**<br>CONSIDERATION:<br>**Educational**<br>REMARKS: | | | | ($1.00) |
| ACCT #:  xxxxx5077<br>**Central Finl Control**<br>Po Box 66051<br>Anaheim, CA 92816 | | C | DATE INCURRED:  **12/2009**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $3,516.00 |
| ACCT #:  xxxxx4003<br>**Central Finl Control**<br>Po Box 66051<br>Anaheim, CA 92816 | | C | DATE INCURRED:  **09/2008**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $541.00 |
| ACCT #:  xxxxx7028<br>**Central Finl Control**<br>Po Box 66051<br>Anaheim, CA 92816 | | C | DATE INCURRED:  **07/2009**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $407.00 |
| ACCT #:  xxxxx4766<br>**Central Finl Control**<br>Po Box 66051<br>Anaheim, CA 92816 | | C | DATE INCURRED:  **08/2009**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $72.00 |
| ACCT #:  xxxxx7879<br>**Central Finl Control**<br>Po Box 66051<br>Anaheim, CA 92816 | | C | DATE INCURRED:  **06/2009**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $43.00 |

Subtotal >   $4,578.00

___5___ continuation sheets attached

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

**App. 159**

B6F (Official Form 6F)

In re   **Terrence Griffin**                          Case No.   **10-41294**
**Rachael Griffin**                                              (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #: xxx<br>**City Ntl Bk**<br>**Attn: Bankruptcy**<br>**PO Box 785057**<br>**Orlando, FL 32878** | | C | DATE INCURRED: **10/31/2005**<br>CONSIDERATION:<br>**Real Estate Mortgage without Other Collateral**<br>REMARKS: | | | | $0.00 |
| ACCT #: xxxxxxxxxxxxx<br>**Cmre Financial Services Inc**<br>**3075 E Imperial Hwy**<br>**Suite 200**<br>**Brea, CA 92821** | | C | DATE INCURRED:<br>CONSIDERATION:<br>**Unknown Loan Type**<br>REMARKS: | | | | $75.00 |
| ACCT #: xxxxx<br>**Conns Credit Corp**<br>**3295 College St**<br>**Beaumont, TX 77701** | | C | DATE INCURRED: **01/21/2006**<br>CONSIDERATION:<br>**Secured**<br>REMARKS: | | | | $2,241.00 |
| ACCT #: xxx<br>**Conserve**<br>**200 Cross Keys Office Pa**<br>**Fairport, NY 14450** | | C | DATE INCURRED: **02/2009**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $0.00 |
| ACCT #: xxxx<br>**Credit Management**<br>**4200 International Pwy**<br>**Carrolton, TX 75007** | | C | DATE INCURRED: **09/2006**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $311.00 |
| ACCT #: xxxxxxxxxxx<br>**Fashion Bug**<br>**Po Box 84073**<br>**Columbus, GA 31908** | | C | DATE INCURRED: **02/04/2000**<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | $0.00 |

Sheet no. ___1___ of ___5___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal >   $2,627.00

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

App. 160

B6F (Official Form 6F) (12/07)  Case 4:25-cv-02013  Document 75-2  Filed 07/17/26 in TXSD  Page 161 of 260

In re  **Terrence Griffin**                                    Case No.  **10-41294**
       **Rachael Griffin**                                              (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  xxxxxxxxxxxx█<br>Hsbc Bank<br>ATTN: BANKRUPTCY<br>PO BOX 5213<br>Carol Stream, IL 60197 | | C | DATE INCURRED: **03/08/2006**<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | $0.00 |
| ACCT #:  x█<br>Jefferson Financial Cu<br>2025 Paxton St<br>Harvey, LA 70058 | | C | DATE INCURRED: **02/2003**<br>CONSIDERATION:<br>**Automobile**<br>REMARKS: | | | | $0.00 |
| ACCT #:  xxxxxxxxxxxx█<br>Lvnv Funding Llc<br>P.o. B  10584<br>Greenville, SC 29603 | | C | DATE INCURRED: **08/02/2007**<br>CONSIDERATION:<br>**Factoring Company Account**<br>REMARKS: | | | | $0.00 |
| ACCT #:  xxxxxxxx█<br>Macys/fdsb<br>Attn: Bankruptcy<br>PO Box 8053<br>Mason, OH 45040 | | C | DATE INCURRED: **12/2005**<br>CONSIDERATION:<br>**Charge Account**<br>REMARKS: | | | | $325.00 |
| ACCT #:  xxxx█<br>Nationcoll<br>2015 Vaughn Rd<br>Kennesaw, GA 30144 | | C | DATE INCURRED:<br>CONSIDERATION:<br>**Unknown Loan Type**<br>REMARKS: | | | | $948.00 |
| ACCT #:  xxxx█<br>Nco Fin/09<br>507 Prudential Rd<br>Horsham, PA 19044 | | C | DATE INCURRED: **06/2009**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $647.00 |

Sheet no. ___2___ of ___5___ continuation sheets attached to                     Subtotal >          $1,920.00
Schedule of Creditors Holding Unsecured Nonpriority Claims

                                                                                  Total >
                                                       (Use only on last page of the completed Schedule F.)
                                                  (Report also on Summary of Schedules and, if applicable, on the
                                                   Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F)

In re    **Terrence Griffin**                                              Case No.   **10-41294**
         **Rachael Griffin**                                                          (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  xxxxx■<br>**Nco Financial Systems**<br>**507 Prudential Rd**<br>**Horsham, PA 19044** | | C | DATE INCURRED:<br>CONSIDERATION:<br>**Unknown Loan Type**<br>REMARKS: | | | | $302.00 |
| ACCT #:  xxxx■<br>**Nco/inovision-medclr**<br>**Attn: Bankruptcy**<br>**507 Prudential Rd**<br>**Horsham, PA 19044** | | C | DATE INCURRED:  **06/2007**<br>CONSIDERATION:<br>**Factoring Company Account**<br>REMARKS: | | | | $302.00 |
| ACCT #:  xxxxxxxxxxx■<br>**Portfolio Rc**<br>**Attn: Bankruptcy**<br>**PO Box 41067**<br>**Norfolk, VA 23541** | | C | DATE INCURRED:  **09/2007**<br>CONSIDERATION:<br>**Factoring Company Account**<br>REMARKS: | | | | $710.00 |
| ACCT #:  xx■<br>**Preferred Credit Inc**<br>**PO Box 1679**<br>**St Cloud, MN 56302** | | C | DATE INCURRED:  **03/2006**<br>CONSIDERATION:<br>**Installment Sales Contract**<br>REMARKS: | | | | $1,697.00 |
| ACCT #:  xxx■<br>**Receivable Recovery Se**<br>**110 Veterans Blvd**<br>**Metairie, LA 70005** | | C | DATE INCURRED:  **06/2006**<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $490.00 |
| ACCT #:  xxx■<br>**Rmb Inc**<br>**409 Bearden Park Cir**<br>**Knoxville, TN 37919** | | C | DATE INCURRED:<br>CONSIDERATION:<br>**Unknown Loan Type**<br>REMARKS: | | | | $322.00 |

Sheet no. _____3_____ of _____5_____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

                                                                    Subtotal >    $3,823.00

                                                                       Total >
                                              (Use only on last page of the completed Schedule F.)
                                    (Report also on Summary of Schedules and, if applicable, on the
                                        Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re    **Terrence Griffin**                                    Case No.    **10-41294**
       **Rachael Griffin**                                                    (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  xxxxxxxxxxxx<br>Sears/cbsd<br>Po Box 6189<br>Sioux Falls, SD 57117 | | C | DATE INCURRED:  12/24/2002<br>CONSIDERATION:<br>**Charge Account**<br>REMARKS: | | | | $0.00 |
| ACCT #:  xxx<br>Tek-collect Inc<br>Pob 1269<br>Columbus, OH 43216 | | C | DATE INCURRED:  09/2009<br>CONSIDERATION:<br>**Collection Attorney**<br>REMARKS: | | | | $135.00 |
| ACCT #:  xxxxxxxxxxxxx<br>U S Dept Of Ed/fisl/ch<br>Po Box 4222<br>Iowa City, IA 52244 | | C | DATE INCURRED:  08/2001<br>CONSIDERATION:<br>**Educational**<br>REMARKS: | | | | $3,395.00 |
| ACCT #:  xxxxxx<br>University Of Phoenix<br>4615 E Elwood St Fl 3<br>Phoenix, AZ 85040 | | C | DATE INCURRED:  01/2009<br>CONSIDERATION:<br>**Unsecured**<br>REMARKS: | | | | $1,616.00 |
| ACCT #:  xxxxx<br>Us Dept Of Ed/glelsi<br>2401 International Ln<br>Madison, WI 53704 | | C | DATE INCURRED:  02/2009<br>CONSIDERATION:<br>**Educational**<br>REMARKS: | | | | ($1.00) |
| ACCT #:  xxxxxx<br>Us Dept Of Education<br>Attn: Borrowers Service Dept<br>PO Box 5609<br>Greenville, TX 75403 | | C | DATE INCURRED:  08/17/2001<br>CONSIDERATION:<br>**Educational**<br>REMARKS: | | | | $0.00 |

Sheet no. ____4____ of ____5____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

                                            Subtotal >    $5,145.00

Total >

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07)

In re    **Terrence Griffin**                                                    Case No.  **10-41294**
      **Rachael Griffin**                                                               (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  xxxxxxxxxxx<br>Usded/glelsi<br>2401 International<br>Madison, WI 53704 | | C | DATE INCURRED:  02/06/2009<br>CONSIDERATION:<br>**Government Secured Guarantee Loan**<br>REMARKS: | | | | $0.00 |
| ACCT #:  xxxx<br>Wf/efs<br>Po Box 84712<br>Sioux Falls, SD 57117 | | C | DATE INCURRED:  02/2009<br>CONSIDERATION:<br>**Educational**<br>REMARKS: | | | | ($1.00) |
| ACCT #:  xxxx<br>Wf/efs<br>Po Box 84712<br>Sioux Falls, SD 57117 | | C | DATE INCURRED:  02/2009<br>CONSIDERATION:<br>**Educational**<br>REMARKS: | | | | $0.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Sheet no. ___5___ of ___5___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal > ($1.00)

Total > $18,092.00
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6G (Official Form 6G) (12/07)

In re  **Terrence Griffin**                                          Case No.  __**10-41294**__
       **Rachael Griffin**                                                        (if known)

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.
State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc.  State whether debtor is the lessor or lessee of a lease.
Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to
one of the leases of contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a
minor child, by John Doe, guardian."  Do not disclose the child's name.  See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST.  STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY.  STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
|  |  |

**App. 165**

B6H (Official Form 6H) (12/07)

In re   **Terrence Griffin**                                     Case No.   **10-41294**
     **Rachael Griffin**                                                    (if known)

## SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |

In re  **Terrence Griffin**                                                                    Case No.  __10-41294__
      **Rachael Griffin**                                                                                            (if known)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.  Do not state the name of any minor child.  The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | Dependents of Debtor and Spouse | | | | |
|---|---|---|---|---|---|
| **Married** | Relationship(s): Son<br>Daughter<br>Son<br>Daughter<br>Daughter | Age(s): 15<br>12<br>9<br>2<br>1 | Relationship(s): | | Age(s): |

| Employment: | Debtor | Spouse |
|---|---|---|
| Occupation | Truck Driver | Bus Driver |
| Name of Employer | Western International Gas | Houston ISD |
| How Long Employed | 1 yr. | 2 yrs |
| Address of Employer | 7173 Hwy. 159 E<br>Bellville, TX 77418 | 4400 West 18th<br>Houston, TX 77092-8501 |

| INCOME: (Estimate of average or projected monthly income at time case filed) | **DEBTOR** | **SPOUSE** |
|---|---|---|
| 1.  Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $5,885.36 | $1,862.50 |
| 2.  Estimate monthly overtime | $0.00 | $0.00 |
| 3.  SUBTOTAL | **$5,885.36** | **$1,862.50** |
| 4.  LESS PAYROLL DEDUCTIONS | | |
|     a. Payroll taxes (includes social security tax if b. is zero) | $374.92 | $48.52 |
|     b. Social Security Tax | $327.24 | $0.00 |
|     c. Medicare | $76.54 | $25.28 |
|     d. Insurance | $346.36 | $0.00 |
|     e. Union dues | $0.00 | $0.00 |
|     f. Retirement   Voluntary   / TRS Mandatory | $117.70 | $119.20 |
|     g. Other (Specify)  Child Support | $655.00 | $0.00 |
|     h. Other (Specify)  Vision Insurance | $11.54 | $0.00 |
|     i. Other (Specify)  Health Savings Acct | $208.32 | $0.00 |
|     j. Other (Specify)  Uniforms | $7.00 | $0.00 |
|     k. Other (Specify) | $0.00 | $0.00 |
| 5.  SUBTOTAL OF PAYROLL DEDUCTIONS | **$2,124.62** | **$193.00** |
| 6.  TOTAL NET MONTHLY TAKE HOME PAY | **$3,760.74** | **$1,669.50** |
| 7.  Regular income from operation of business or profession or farm (Attach detailed stmt) | $0.00 | $0.00 |
| 8.  Income from real property | $0.00 | $0.00 |
| 9.  Interest and dividends | $0.00 | $0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $0.00 | $654.00 |
| 11. Social security or government assistance (Specify): | $0.00 | $0.00 |
| 12. Pension or retirement income | $0.00 | $0.00 |
| 13. Other monthly income (Specify): | | |
|     a. | $0.00 | $0.00 |
|     b. | $0.00 | $0.00 |
|     c. | $0.00 | $0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | **$0.00** | **$654.00** |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | **$3,760.74** | **$2,323.50** |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | **$6,084.24** | |

(Report also on Summary of Schedules and, if applicable,
on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
**None.**

B6J (Official Form 6J)

| IN RE: | Terrence Griffin | Case No. | **10-41294** |
| | Rachael Griffin | | (if known) |

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $1,596.69 |
|    a. Are real estate taxes included? ☑ Yes ☐ No | |
|    b. Is property insurance included? ☑ Yes ☐ No | |
| 2. Utilities:   a. Electricity and heating fuel | $325.00 |
|            b. Water and sewer | $60.00 |
|            c. Telephone | $160.00 |
|            d. Other: Cable | $80.00 |
| 3. Home maintenance (repairs and upkeep) | $25.00 |
| 4. Food | $1,000.00 |
| 5. Clothing | $50.00 |
| 6. Laundry and dry cleaning | $50.00 |
| 7. Medical and dental expenses | $80.00 |
| 8. Transportation (not including car payments) | $400.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $25.00 |
| 10. Charitable contributions | $70.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | |
|        a. Homeowner's or renter's | |
|        b. Life | |
|        c. Health | |
|        d. Auto | $200.00 |
|        e. Other: | |
| 12. Taxes (not deducted from wages or included in home mortgage payments) Specify: | |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | |
|        a. Auto:   Second Mortgage | $287.00 |
|        b. Other: | |
|        c. Other: | |
|        d. Other: | |
| 14. Alimony, maintenance, and support paid to others: | |
| 15. Payments for support of add'l dependents not living at your home: | |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $600.00 |
| 17.a. Other: Childcare | $500.00 |
| 17.b. Other: Personal Grooming | $50.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | **$5,558.69** |
| 19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document: **None.** | |
| 20. STATEMENT OF MONTHLY NET INCOME | |
| a. Average monthly income from Line 15 of Schedule I | $6,084.24 |
| b. Average monthly expenses from Line 18 above | $5,558.69 |
| c. Monthly net income (a. minus b.) | $525.55 |

**App. 168**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

IN RE:   **Terrence Griffin**                                     CASE NO   **10-41294**
         **Rachael Griffin**

                                                                 CHAPTER   **13**

## EXHIBIT TO SCHEDULE J

### Itemized Business Expenses
**Out of Pocket Trucking Expenses**

| Expense | Category | Amount |
|---|---|---|
| Food | Meals | $300.00 |
| Showers | Travel Expenses | $200.00 |
| Misc Supplies | Supplies | $100.00 |
|  | Total > | $600.00 |

App. 169

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

In re   **Terrence Griffin**                                        Case No.   **10-41294**
        **Rachael Griffin**

                                                                   Chapter   **13**

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.  Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | $167,000.00 | | |
| B - Personal Property | Yes | 5 | $27,087.00 | | |
| C - Property Claimed as Exempt | Yes | 2 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | $233,257.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | $2,805.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 6 | | $18,092.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | $6,084.24 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | $5,558.69 |
| | TOTAL | 22 | $194,087.00 | $254,154.00 | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

In re   **Terrence Griffin**
        **Rachael Griffin**

Case No.   **10-41294**

Chapter    **13**

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11, or 13, you must report all information requested below.

☐   Check this box if you are an individual debtor whose debts are NOT primarily consumer debts.  You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | $0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | $2,805.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | $0.00 |
| Student Loan Obligations (from Schedule F) | $0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | $0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | $0.00 |
| TOTAL | $2,805.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | $6,084.24 |
| Average Expenses (from Schedule J, Line 18) | $5,558.69 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20) | $8,128.65 |

**State the following:**

| | | |
|---|---|---|
| 1.  Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | $45,586.00 |
| 2.  Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | $2,805.00 | |
| 3.  Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | $0.00 |
| 4.  Total from Schedule F | | $18,092.00 |
| 5.  Total of non-priority unsecured debt (sum of 1, 3, and 4) | | $63,678.00 |

**App. 171**

B6 Declaration (Official Form 6 - Declaration) (12/07)

In re   **Terrence Griffin**                                                    Case No.   **10-41294**
        **Rachael Griffin**                                                                (if known)

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____**24**_____
sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date __**12/31/2010**__                              Signature __**/s/ Terrence Griffin**__
                                                                 ***Terrence Griffin***

Date __**12/31/2010**__                              Signature __**/s/ Rachael Griffin**__
                                                                 ***Rachael Griffin***
                                                     [If joint case, both spouses must sign.]

_Penalty for making a false statement or concealing property:  Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571._

**App. 172**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON  DIVISION**

IN RE:

Terrence and Rachael Griffin
703 Deveron Ln
Houston, TX  77090

**DEBTORS**

**CASE NO:** 10-41294-H5-13

**ENTERED
10/15/2012**

**CHAPTER 13**

---

**ORDER DISMISSING CHAPTER 13 CASE**

---

On the 11th day of September, 2012, a hearing was held on the motion to dismiss filed by the trustee. The debtor agreed to perform certain conditions specified on the record within a specified time. The conditions are noted on the docket of this case. The Chapter 13 trustee has filed a certificate stating that the debtor has failed to comply with the terms and conditions agreed upon at the hearing. Therefore, based upon the certification of the trustee, the Court does hereby **ORDER** that the above captioned Chapter 13 case is hereby **DISMISSED**.

It is further **ORDERED** that the deadline for filing an application for administrative expense in this case is set at 20 days following entry of this Order. The deadline for filing a motion for allowance of a claim arising under 11 U.S.C. Section 507(b) in this case is also set at 20 days following entry of this Order.

If an application for allowance of professional fees and expenses has previously been filed in this case, the applicant is not required to file a new application for allowance of an administrative expense under 11 U.S.C Section 503, if the new application only seeks allowance of the same professional fees and expenses previously requested.

Signed:  October 15, 2012

Karen K. Brown
United States Bankruptcy Judge

TRUE COPY I CERTIFY
ATTEST: July 13, 2026
NATHAN OCHSNER, Clerk of Court
By:  *s/ Kaiden Kimble*

Deputy Clerk

Printed by JMW    on 10/4/2012.

**App. 173**

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:
**SOUTHERN DISTRICT OF TEXAS**

Case number (if known): _____

Chapter you are filing under:

☐ Chapter 7
☐ Chapter 11
☐ Chapter 12
☑ Chapter 13

☐ Check if this is an
amended filing

## Official Form 101

## Voluntary Petition for Individuals Filing for Bankruptcy                    12/15

The bankruptcy forms use you and Debtor 1 to refer to a debtor filing alone. A married couple may file a bankruptcy case together--called a joint case--and in joint cases, these forms use you to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses Debtor 1 and Debtor 2 to distinguish between them. In joint cases, one of the spouses must report information as Debtor 1 and the other as Debtor 2. The same person must be Debtor 1 in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Identify Yourself

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | **Rachael**<br>First Name<br><br>**Lee**<br>Middle Name<br><br>**Griffin**<br>Last Name<br><br>_____<br>Suffix (Sr., Jr., II, III) | _____<br>First Name<br><br>_____<br>Middle Name<br><br>_____<br>Last Name<br><br>_____<br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | _____<br>First Name<br><br>_____<br>Middle Name<br><br>_____<br>Last Name | _____<br>First Name<br><br>_____<br>Middle Name<br><br>_____<br>Last Name |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – ▮  ▮  ▮  ▮<br>OR<br>9xx – xx – ____ ____ ____ ____ | xxx – xx – ____ ____ ____ ____<br>OR<br>9xx – xx – ____ ____ ____ ____ |

TRUE COPY I CERTIFY ATTEST:
NATHAN OCHSNER, Clerk of Court
By _____
Deputy Clerk

Debtor 1    **Rachael Lee Griffin**                                    Case number (if known) _____

|  | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|

**4.   Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and doing business as names

☐ I have not used any business names or EINs.

**Bona Fide Beauty Salon**
Business name

_____
Business name

_____
Business name

__ __ – __ __ __ __ __ __ __
EIN

__ __ – __ __ __ __ __ __ __
EIN

☐ I have not used any business names or EINs.

_____
Business name

_____
Business name

_____
Business name

__ __ – __ __ __ __ __ __ __
EIN

__ __ – __ __ __ __ __ __ __
EIN

**5.   Where you live**

**703 Deveron Lane**
Number    Street

_____

_____

**Houston          TX      77090**
City          State    ZIP Code

**Harris**
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

_____
Number    Street

_____
P.O. Box

_____
City          State    ZIP Code

**If Debtor 2 lives at a different address:**

_____
Number    Street

_____

_____

_____
City          State    ZIP Code

_____
County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to you at this mailing address.

_____
Number    Street

_____
P.O. Box

_____
City          State    ZIP Code

**6.   Why you are choosing this district to file for bankruptcy**

*Check one:*

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)

---

| **Part 2:** | **Tell the Court About Your Bankruptcy Case** |
|---|---|

**7.   The chapter of the Bankruptcy Code you are choosing to file under**

*Check one:* (For a brief description of each, see Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

☑ Chapter 13

Official Form 101                **Voluntary Petition for Individuals Filing for Bankruptcy**                page 2

**App. 175**

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

| 8. | How you will pay the fee | ☑ | **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address. |

☐   **I need to pay the fee in installments.** If you choose this option, sign and attach the Application for Individuals to Pay Your Filing Fee in Installments (Official Form 103A).

☐   **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the Application to Have the Chapter 7 Filing Fee Waived (Official Form 103B) and file it with your petition.

9. **Have you filed for bankruptcy within the last 8 years?**

☐   No

☑   Yes.

District **Southern District Texas/Houston Div**   When **12/08/2010**   Case number **10-41294**
               MM / DD / YYYY

District _____   When _____   Case number _____
               MM / DD / YYYY

District _____   When _____   Case number _____
               MM / DD / YYYY

10. **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑   No

☐   Yes.

Debtor _____   Relationship to you _____

District _____   When _____   Case number, _____
               MM / DD / YYYY   if known

Debtor _____   Relationship to you _____

District _____   When _____   Case number, _____
               MM / DD / YYYY   if known

11. **Do you rent your residence?**

☑   No.   Go to line 12.

☐   Yes.   Has your landlord obtained an eviction judgment against you and do you want to stay in your residence?

      ☐   No. Go to line 12.

      ☐   Yes. Fill out Initial Statement About an Eviction Judgment Against You (Form 101A) and file it with this bankruptcy petition.

Official Form 101        **Voluntary Petition for Individuals Filing for Bankruptcy**        page 3

**App. 176**

Debtor 1    **Rachael Lee Griffin**                                          Case number (if known) _____

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☐ No. Go to Part 4.

☑ Yes. Name and location of business

**Bona Fide Beauty Salon**
Name of business, if any

**1432 FM 1960, Suite 102**
Number    Street

_____

**Houston**                                    **TX**        **77090**
City                                              State        ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☑ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of small business debtor, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines.* If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ No.  I am not filing under Chapter 11.

☐ No.  I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.  I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

| **Part 4:** | **Report If You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No
☐ Yes.  What is the hazard?

If immediate attention is needed, why is it needed?

Where is the property? _____
Number       Street

_____

_____
City                                    State     ZIP Code

**App. 177**

| Debtor 1 | **Rachael Lee Griffin** | Case number (if known) |
|---|---|---|

**15. Tell the court whether you have received briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**
*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**
*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**App. 178**

Debtor 1    **Rachael Lee Griffin**                                             Case number (if known) _____

| **Part 6:** | **Answer These Questions for Reporting Purposes** |

**16. What kind of debts do you have?**

16a.  **Are your debts primarily consumer debts?**  *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐  No.  Go to line 16b.
☑  Yes.  Go to line 17.

16b.  **Are your debts primarily business debts?**  *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐  No.  Go to line 16c.
☐  Yes.  Go to line 17.

16c.  State the type of debts you owe that are not consumer or business debts.

_____

**17. Are you filing under Chapter 7?**

☑  No.   I am not filing under Chapter 7.  Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐  Yes.  I am filing under Chapter 7.  Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐  No
☐  Yes

**18. How many creditors do you estimate that you owe?**

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**19. How much do you estimate your assets to be worth?**

☐ $0-$50,000
☐ $50,001-$100,000
☑ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

**20. How much do you estimate your liabilities to be?**

☐ $0-$50,000
☐ $50,001-$100,000
☑ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

**App. 179**

Debtor 1    **Rachael Lee Griffin**                          Case number (if known) _____

| Part 7: | Sign Below |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11, 12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

X **/s/ Rachael Lee Griffin**             X _____
     Rachael Lee Griffin, Debtor 1                    Signature of Debtor 2

     Executed on **12/04/2016**                    Executed on _____
             MM / DD / YYYY                            MM / DD / YYYY

---

Official Form 101          **Voluntary Petition for Individuals Filing for Bankruptcy**          page 7

Debtor 1    **Rachael Lee Griffin**                                          Case number (if known) _____

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

X **/s/ Kyle Kenneth Payne**_____    Date **12/04/2016**_____
Signature of Attorney for Debtor                                                MM / DD / YYYY

**Kyle Kenneth Payne**_____
Printed name

**Payne & Associates, PLLC**_____
Firm Name

**5225 Katy Freeway, Suite 505**_____
Number         Street

_____

_____

**Houston**_____    **TX**_____    **77002**_____
City                                                         State          ZIP Code

Contact phone   **(713) 228-0200**_____         Email address **sughrueassocnotices2@yahoo.com**

**24083637**_____    **TX**_____
Bar number                                                   State

**App. 181**

**Fill in this information to identify your case and this filing:**

Debtor 1        **Rachael**          **Lee**          **Griffin**
                First Name           Middle Name       Last Name

Debtor 2
(Spouse, if filing)  First Name       Middle Name       Last Name

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known)

☐ Check if this is an
   amended filing

## Official Form 106A/B

## Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1.  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

    ☐ No. Go to Part 2.
    ☑ Yes. Where is the property?

1.1.

**703 Deveron Lane**
Street address, if available, or other description


**Houston**        **TX**   **77090-3827**
City               State    ZIP Code


**Harris**
County

**703 Deveron Lane, Houston, TX 77090-3827**
**Lot 5 Block 2**
**Ella Crossing Sec 1**

**What is the property?**
Check all that apply.

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?**
Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**
$122,063.00

**Current value of the portion you own?**
$122,063.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Homestead**

☐ Check if this is community property
   (see instructions)

2.  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..................................... →   | $122,063.00

### Part 2:   Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.  Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

    ☑ No
    ☐ Yes

Official Form 106A/B                          Schedule A/B: Property                                    page 1

Debtor 1    **Rachael Lee Griffin**                                                    Case number (if known) _____

4.  **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
    *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

    ☑ No
    ☐ Yes

5.  Add the dollar value of the portion you own for all of your entries from Part 2, including any
    entries for pages you have attached for Part 2.  Write that number here.......................................→  | $0.00 |

## Part 3:    Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6.  **Household goods and furnishings**
    *Examples:* Major appliances, furniture, linens, china, kitchenware

    ☐ No
    ☑ Yes. Describe..... **See continuation page(s).**                                      $3,520.00

7.  **Electronics**
    *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners;
    music collections; electronic devices including cell phones, cameras, media players, games

    ☐ No
    ☑ Yes. Describe..... **See continuation page(s).**                                      $1,450.00

8.  **Collectibles of value**
    *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects;
    stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

    ☑ No
    ☐ Yes. Describe.....

9.  **Equipment for sports and hobbies**
    *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis;
    canoes and kayaks; carpentry tools; musical instruments

    ☐ No
    ☑ Yes. Describe..... **BBQ Pit**                                                         $100.00

10.  **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

    ☐ No
    ☑ Yes. Describe..... **Firearms**                                                        $826.00
                         **Glock 27 9mm**
                         **Glock 40 .38**
                         **Ammunition**

11.  **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

    ☐ No
    ☑ Yes. Describe..... **Clothing & Shoes**                                                $600.00

12.  **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems,
    gold, silver

    ☐ No
    ☑ Yes. Describe..... **See continuation page(s).**                                      $1,200.00

13.  **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses

    ☑ No
    ☐ Yes. Describe.....

Official Form 106A/B                       **Schedule A/B: Property**                                     page 2
                                                                                                **App. 183**

| Debtor 1 | Rachael Lee Griffin | Case number (if known) |
|---|---|---|

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☑ No

☐ Yes. Give specific information.............

_____

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write the number here.......................................................................** → | $7,696.00 |

### Part 4:   Describe Your Financial Assets

**Do you own or have any legal or equitable interest in any of the following?**

Current value of the portion you own? Do not deduct secured claims or exemptions.

**16. Cash**
_Examples:_ Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No

☑ Yes...................................................................................................... Cash: .......................    $30.00

**17. Deposits of money**
_Examples:_ Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions.  If you have multiple accounts with the same institution, list each.

☐ No

☑ Yes...........................    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | Checking account: | **Chase Bank** **Checking account** | $608.63 |
| 17.2. | Checking account: | **Chase Bank** **Checking account** | $2,822.70 |
| 17.3. | Savings account: | **Chase Bank** **Savings account** | $527.50 |

**18. Bonds, mutual funds, or publicly traded stocks**
_Examples:_ Bond funds, investment accounts with brokerage firms, money market accounts

☑ No

☐ Yes...........................    Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No

☐ Yes.  Give specific information about them..........................    Name of entity:                % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
_Negotiable instruments_ include personal checks, cashiers' checks, promissory notes, and money orders.
_Non-negotiable instruments_ are those you cannot transfer to someone by signing or delivering them.

☑ No

☐ Yes.  Give specific information about them..........................    Issuer name:

**App. 184**

Debtor 1 **Rachael Lee Griffin** _____ Case number (if known) _____

**21. Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

   ☐ No
   ☑ Yes. List each
   account separately.  Type of account:  Institution name:

   Retirement account:  **Fidelity**
   **Retirement account**                                           **$100.00**

**22. Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

   ☑ No
   ☐ Yes...........................  Institution name or individual:

**23. Annuities** (A contract for a specific periodic payment of money to you, either for life or for a number of years)
   ☑ No
   ☐ Yes...........................  Issuer name and description:

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

   ☑ No
   ☐ Yes...........................  Institution name and description.  Separately file the records of any interests.  11 U.S.C. § 521(c)

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

   ☑ No
   ☐ Yes.  Give specific
   information about them                                            _____

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property;**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

   ☑ No
   ☐ Yes.  Give specific
   information about them                                            _____

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

   ☐ No
   ☑ Yes.  Give specific  **Cosmetology**
   information about them                                            **$1.00**

**Money or property owed to you?**                          **Current value of the portion you own?**
                                                           Do not deduct secured claims or exemptions.

**28. Tax refunds owed to you**

   ☑ No
   ☐ Yes.  Give specific information
   about them, including whether         Federal: _____  **$0.00**
   you already filed the returns
   and the tax years....................  State: _____  **$0.00**
                                          Local: _____  **$0.00**

Official Form 106A/B                **Schedule A/B: Property**                page 4

**App. 185**

Debtor 1    **Rachael Lee Griffin**                                                    Case number (if known) _____

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

    ☐ No

    ☑ Yes. Give specific information          Alimony: _____ **$0.00**

    **Support: Child Support arrears. Amt: $48,000.00**          Maintenance: _____ **$0.00**

    **Support: Child Support arrears. Amt: $880.00**          Support: _____ **$48,880.00**

                                                             Divorce settlement: _____ **$0.00**

                                                             Property settlement: _____ **$0.00**

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers'
    compensation, Social Security benefits; unpaid loans you made to someone else

    ☑ No

    ☐ Yes. Give specific information          _____

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

    ☑ No

    ☐ Yes. Name the insurance
    company of each policy
    and list its value................    Company name:          Beneficiary:          Surrender or refund value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently
    entitled to receive property because someone has died

    ☑ No

    ☐ Yes. Give specific information          _____

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

    ☑ No

    ☐ Yes. Describe each claim........          _____

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and
    rights to set off claims**

    ☑ No

    ☐ Yes. Describe each claim........          _____

35. **Any financial assets you did not already list**

    ☑ No

    ☐ Yes. Give specific information          _____

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have
    attached for Part 4. Write that number here.................................................................................... → | **$52,969.83** |

---

| **Part 5:** | **Describe Any Business-Related Property You Own or Have an Interest In.  List any real estate in Part 1.** |

37. **Do you own or have any legal or equitable interest in any business-related property?**

    ☐ No. Go to Part 6.

    ☑ Yes. Go to line 38.

---

Official Form 106A/B                    **Schedule A/B: Property**                    page 5

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

|  | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**38. Accounts receivable or commissions you already earned**

☑ No
☐ Yes.  Describe..                                                    _____

**39. Office equipment, furnishings, and supplies**
_Examples:_ Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☑ No
☐ Yes.  Describe..                                                    _____

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☐ No
☑ Yes.  Describe..  **Hair Dryer, Marcell Dryer, Shears, Rollers and misc supplies.**          $800.00

**41. Inventory**

☑ No
☐ Yes.  Describe..                                                    _____

**42. Interests in partnerships or joint ventures**

☑ No
☐ Yes.  Describe.....  Name of entity:                    % of ownership:

**43. Customer lists, mailing lists, or other compilations**

☑ No
☐ Yes.  **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?
　　　☐ No
　　　☐ Yes.  Describe.....                                        _____

**44. Any business-related property you did not already list**

☑ No
☐ Yes.  Give specific information.

**45.** Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5.  Write that number here......................................................................... ➔ |   $800.00   |

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** If you own or have an interest in farmland, list it in Part 1. |
|---|---|

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No.  Go to Part 7.
☐ Yes.  Go to line 47.

|  | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**47. Farm animals**
_Examples:_ Livestock, poultry, farm-raised fish

☑ No
☐ Yes....                                                            _____

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

48. **Crops--either growing or harvested**

☑ No
☐ Yes.  Give specific
   information............... _____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☑ No
☐ Yes.... _____

50. **Farm and fishing supplies, chemicals, and feed**

☑ No
☐ Yes.... _____

51. **Any farm- and commercial fishing-related property you did not already list**

☑ No
☐ Yes.  Give specific
   information............... _____

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have
attached for Part 6.  Write that number here**.................................................................➔  | $0.00 |

---

## Part 7:  Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
    *Examples:*  Season tickets, country club membership

☑ No
☐ Yes.  Give specific information.

54. **Add the dollar value of all of your entries from Part 7.  Write that number here**...........................➔  | $0.00 |

---

## Part 8:  List the Totals of Each Part of this Form

55. **Part 1: Total real estate, line 2**.................................................................➔  | $122,063.00 |

56. **Part 2: Total vehicles, line 5** | $0.00 |

57. **Part 3: Total personal and household items, line 15** | $7,696.00 |

58. **Part 4: Total financial assets, line 36** | $52,969.83 |

59. **Part 5: Total business-related property, line 45** | $800.00 |

60. **Part 6: Total farm- and fishing-related property, line 52** | $0.00 |

61. **Part 7: Total other property not listed, line 54** +| $0.00 |

62. **Total personal property.    Add lines 56 through 61**.................  | $61,465.83 |  Copy personal property total  ➔  +| $61,465.83 |

63. **Total of all property on Schedule A/B.    Add line 55 + line 62**.................................................  | $183,528.83 |

---

**App. 188**

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

6.   **Household goods and furnishings (details):**

| | |
|---|---:|
| Sofa | $200.00 |
| Love Seat | $150.00 |
| Lamp | $100.00 |
| Rug | $10.00 |
| Kitchen Table w/chairs | $200.00 |
| Dining Room Table w/chairs | $500.00 |
| China Cabinet | $400.00 |
| Flatware | $10.00 |
| Pots & Pans | $30.00 |
| Dishes & Glassware | $10.00 |
| 6 Beds | $1,000.00 |
| 3 Chests | $100.00 |
| Dresser | $25.00 |
| Nightstand | $25.00 |
| Lamp | $25.00 |
| T.V. Stand | $10.00 |
| Refrigerator | $100.00 |
| Stove | $50.00 |
| Washer & Dryer | $250.00 |
| Freezer | $10.00 |
| Vacuum Cleaner | $10.00 |
| Desks | $5.00 |
| Lawn Mower | $100.00 |
| Mirror | $200.00 |

7.   **Electronics (details):**

| | |
|---|---:|
| 3 DVD Players | $300.00 |
| 5 Televisions | $500.00 |
| Computers/Laptops | $50.00 |
| 4 Cell Phones/Tablets | $400.00 |
| Game Systems | $200.00 |

12.  **Jewelry (details):**

| | |
|---|---:|
| 3 Watches (Fossill) | $200.00 |
| Fine Jewelry - Costume jewelry and diamond earrrings | $1,000.00 |

Official Form 106A/B                    Schedule A/B: Property                    page 8

**App. 189**

Debtor 1    **Rachael Lee Griffin**                                    Case number *(if known)* _____

**App. 190**

---

**Fill in this information to identify your case:**

| Debtor 1 | Rachael | Lee | Griffin |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) First Name | | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known)

☐ Check if this is an amended filing

## Official Form 106C

## Schedule C: The Property You Claim as Exempt                                  04/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions--such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds--may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?**     *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)
   ☑ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption* | |
| Brief description:<br>**703 Deveron Lane, Houston, TX 77090-3827**<br>**Lot 5 Block 2**<br>**Ella Crossing Sec 1**<br>Line from *Schedule A/B*: __**1.1**__ | **$122,063.00** | ☑ __**$0.00**__<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(1) |
| Brief description:<br>**Sofa**<br>Line from *Schedule A/B*: __**6**__ | **$200.00** | ☑ __**$200.00**__<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☑ No
   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?
       ☐ No
       ☐ Yes

---

Official Form 106C                  Schedule C: The Property You Claim as Exempt                  page 1

Debtor 1    **Rachael Lee Griffin**                                              Case number (if known) _____

| **Part 2:** | **Additional Page** |
|---|---|

| **Brief description of the property and line on** *Schedule A/B* **that lists this property** | **Current value of the portion you own** | **Amount of the exemption you claim** | **Specific laws that allow exemption** |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption* | |
| Brief description: **Love Seat** <br> Line from *Schedule A/B*: ___6___ | $150.00 | ☑ $150.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Lamp** <br> Line from *Schedule A/B*: ___6___ | $100.00 | ☑ $100.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Rug** <br> Line from *Schedule A/B*: ___6___ | $10.00 | ☑ $10.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Kitchen Table w/chairs** <br> Line from *Schedule A/B*: ___6___ | $200.00 | ☑ $200.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Dining Room Table w/chairs** <br> Line from *Schedule A/B*: ___6___ | $500.00 | ☑ $500.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **China Cabinet** <br> Line from *Schedule A/B*: ___6___ | $400.00 | ☑ $400.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Flatware** <br> Line from *Schedule A/B*: ___6___ | $10.00 | ☑ $10.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Pots & Pans** <br> Line from *Schedule A/B*: ___6___ | $30.00 | ☑ $30.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Dishes & Glassware** <br> Line from *Schedule A/B*: ___6___ | $10.00 | ☑ $10.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |

| Debtor 1 | Rachael Lee Griffin | Case number (if known) | |
|---|---|---|---|

## Part 2: Additional Page

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description:<br>**6 Beds**<br>**(1st exemption claimed for this asset)**<br>Line from *Schedule A/B:* ___6___ | $1,000.00 | ☑ $600.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description:<br>**6 Beds**<br>**(2nd exemption claimed for this asset)**<br>Line from *Schedule A/B:* ___6___ | $1,000.00 | ☑ $400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Brief description:<br>**3 Chests**<br>Line from *Schedule A/B:* ___6___ | $100.00 | ☑ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description:<br>**Dresser**<br>Line from *Schedule A/B:* ___6___ | $25.00 | ☑ $25.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description:<br>**Nightstand**<br>Line from *Schedule A/B:* ___6___ | $25.00 | ☑ $25.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description:<br>**Lamp**<br>Line from *Schedule A/B:* ___6___ | $25.00 | ☑ $25.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description:<br>**T.V. Stand**<br>Line from *Schedule A/B:* ___6___ | $10.00 | ☑ $10.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description:<br>**Refrigerator**<br>Line from *Schedule A/B:* ___6___ | $100.00 | ☑ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description:<br>**Stove**<br>Line from *Schedule A/B:* ___6___ | $50.00 | ☑ $50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |

Official Form 106C    Schedule C: The Property You Claim as Exempt    page 3

**App. 193**

Debtor 1   **Rachael Lee Griffin**                                     Case number (if known) _____

| Part 2: | Additional Page |
|---|---|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption* | |
| Brief description: **Washer & Dryer** <br> Line from *Schedule A/B*: 6 | $250.00 | ☑ $250.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Freezer** <br> Line from *Schedule A/B*: 6 | $10.00 | ☑ $10.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Vacuum Cleaner** <br> Line from *Schedule A/B*: 6 | $10.00 | ☑ $10.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Desks** <br> Line from *Schedule A/B*: 6 | $5.00 | ☑ $5.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Lawn Mower** <br> Line from *Schedule A/B*: 6 | $100.00 | ☑ $100.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Mirror** <br> Line from *Schedule A/B*: 6 | $200.00 | ☑ $200.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **3 DVD Players** <br> Line from *Schedule A/B*: 7 | $300.00 | ☑ $300.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **5 Televisions** <br> Line from *Schedule A/B*: 7 | $500.00 | ☑ $500.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Computers/Laptops** <br> Line from *Schedule A/B*: 7 | $50.00 | ☑ $50.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |

**App. 194**

Debtor 1    **Rachael Lee Griffin**                                                    Case number (if known) _____

| Part 2: | Additional Page |
|---------|-----------------|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption* | |
| Brief description: **4 Cell Phones/Tablets** <br><br> Line from *Schedule A/B*: ___7___ | $400.00 | ☑ $400.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Game Systems** <br><br> Line from *Schedule A/B*: ___7___ | $200.00 | ☑ $200.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **BBQ Pit** <br><br> Line from *Schedule A/B*: ___9___ | $100.00 | ☑ $100.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Firearms** <br> **Glock 27 9mm** <br> **Glock 40 .38** <br> **Ammunition** <br> Line from *Schedule A/B*: ___10___ | $826.00 | ☑ $826.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Brief description: **Clothing & Shoes** <br><br> Line from *Schedule A/B*: ___11___ | $600.00 | ☑ $600.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **3 Watches (Fossill)** <br><br> Line from *Schedule A/B*: ___12___ | $200.00 | ☑ $200.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Fine Jewelry - Costume jewelry and diamond earrrings** <br> **(1st exemption claimed for this asset)** <br> Line from *Schedule A/B*: ___12___ | $1,000.00 | ☑ $600.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Brief description: **Fine Jewelry - Costume jewelry and diamond earrrings** <br> **(2nd exemption claimed for this asset)** <br> Line from *Schedule A/B*: ___12___ | $1,000.00 | ☑ $400.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Brief description: **Cash** <br><br> Line from *Schedule A/B*: ___16___ | $30.00 | ☑ $30.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |

Official Form 106C                        **Schedule C: The Property You Claim as Exempt**                        page 5

Debtor 1   **Rachael Lee Griffin**   Case number (if known) _____

| Part 2: | Additional Page |
|---------|-----------------|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption* | |
| Brief description: **Chase Bank Checking account** Line from *Schedule A/B*: __17.1__ | $608.63 | ☑ $608.63 ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Brief description: **Chase Bank Checking account** Line from *Schedule A/B*: __17.2__ | $2,822.70 | ☑ $2,822.70 ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Brief description: **Chase Bank Savings account** Line from *Schedule A/B*: __17.3__ | $527.50 | ☑ $527.50 ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Brief description: **Fidelity Retirement account** Line from *Schedule A/B*: __21__ | $100.00 | ☑ $100.00 ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(12) |
| Brief description: **Cosmetology** Line from *Schedule A/B*: __27__ | $1.00 | ☑ $1.00 ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Brief description: **Child Support arrears** Line from *Schedule A/B*: __29__ | $48,000.00 | ☑ $48,000.00 ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(10)(D) |
| Brief description: **Child Support arrears** Line from *Schedule A/B*: __29__ | $880.00 | ☑ $880.00 ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(10)(D) |
| Brief description: **Hair Dryer, Marcell Dryer, Shears, Rollers and misc supplies.** Line from *Schedule A/B*: __40__ | $800.00 | ☑ $800.00 ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(6) |

**App. 196**

## Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Rachael** | **Lee** | **Griffin** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known)

☐ Check if this is an amended filing

## Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property     12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).**

1. **Do any creditors have claims secured by your property?**

   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

   ☑ Yes. Fill in all of the information below.

### Part 1:     List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|
| | $132,579.00 | $122,063.00 | $10,516.00 |

**2.1**

**Chase Mtg**
Creditor's name
**Po Box 24696**
Number     Street

**Columbus     OH     43224**
City     State     ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred **10/31/2005**

**Describe the property that secures the claim:**

**Homestead - On-going Mortgage**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)
**Conventional Real Estate Mortgage**

Last 4 digits of account number ▮ ▮ ▮ ▮

**Add the dollar value of your entries in Column A on this page. Write that number here:**

| $132,579.00 |
|---|

Official Form 106D     Schedule D: Creditors Who Have Claims Secured by Property     page 1

**App. 197**

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

| Part 1: | **Additional Page**<br>After listing any entries on this page, number them sequentially from the previous page. | *Column A*<br>**Amount of claim**<br>Do not deduct the value of collateral | *Column B*<br>**Value of collateral**<br>that supports this claim | *Column C*<br>**Unsecured portion**<br>If any |
|---|---|---|---|---|

**2.2**

**Ella Crossing HOA** _____
Creditor's name
**16690 Park Row** _____
Number    Street

_____

**Houston        TX    77084**
City              State   ZIP Code

**Who owes the debt?**   Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

Date debt was incurred _____

Describe the property that secures the claim:

**Homestead - HOA Dues**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.**   Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Last 4 digits of account number ___ ___ ___ ___

Column A: **$0.00**    Column B: **$122,063.00**

---

**2.3**

**Franklin Credit Management** _____
Creditor's name
**P.O. Box 2300** _____
Number    Street

_____

**Jersey City       NJ    07303**
City              State   ZIP Code

**Who owes the debt?**   Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

Date debt was incurred _____

Describe the property that secures the claim:

**Homestead - 2nd Lien**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.**   Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)
**2nd lien**

Last 4 digits of account number ___ ___ ___ ___

Column A: **$32,753.00**    Column B: **$122,063.00**    Column C: **$32,753.00**

---

**Add the dollar value of your entries in Column A on this page.  Write that number here:**

**$32,753.00**

Official Form 106D     Additional Page of Schedule D: Creditors Who Have Claims Secured by Property     page 2

**App. 198**

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

| | Additional Page | Column A<br>**Amount of claim**<br>Do not deduct the<br>value of collateral | Column B<br>**Value of collateral**<br>that supports this<br>claim | Column C<br>**Unsecured**<br>portion<br>If any |
|---|---|---|---|---|
| **Part 1:** | After listing any entries on this page, number them<br>sequentially from the previous page. | | | |

---

**2.4**

**Harris County MUD #83** _____
Creditor's name
**JoAnn Ramos Tax A/C** _____
Number      Street
**11500 NW Freeway, Suite 465** _____

_____

**Houston**          **TX**      **77092**
City                    State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates**
   **to a community debt**

Date debt was incurred    **2016**

**Describe the property that
secures the claim:**

**Homestead - MUD Taxes**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☑ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)
   **MUD Taxes**

**Last 4 digits of account number** ___ ___ ___ ___

Column A: **$801.82**   Column B: **$801.82**

---

**2.5**

**Harris County Tax Office** _____
Creditor's name
**PO Box 3547** _____
Number      Street

_____

**Houston**          **TX**      **77253**
City                    State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates**
   **to a community debt**

Date debt was incurred    **2017**

**Describe the property that
secures the claim:**

**Homestead - Property Taxes**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☑ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)
   **Property Taxes**

**Last 4 digits of account number** ___ ___ ___ ___

Column A: **$1,030.55**   Column B: **$1,030.55**

---

**Add the dollar value of your entries in Column A on this page. Write
that number here:**                                            **$1,832.37**

Official Form 106D          Additional Page of Schedule D: Creditors Who Have Claims Secured by Property          page 3

Debtor 1   **Rachael Lee Griffin** _____   Case number (if known) _____

| Part 1: | **Additional Page** After listing any entries on this page, number them sequentially from the previous page. | *Column A* **Amount of claim** Do not deduct the value of collateral | *Column B* **Value of collateral that supports this claim** | *Column C* **Unsecured portion** If any |

| 2.6 |

**Spring ISD Tax Office**
Creditor's name
**16717 Ella Blvd**
Number    Street
**P.O. Box 90458**

_____

**Houston        TX    77290**
City          State    ZIP Code

**Who owes the debt?**  Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

**Date debt was incurred    2016**

**Describe the property that secures the claim:**

**Homestead - School Taxes**

**As of the date you file, the claim is:**  Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.**  Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☑ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)
**School Taxes**

**Last 4 digits of account number** ___ ___ ___ ___

Column A: **$1,647.28**   Column B: **$1,647.28**

Add the dollar value of your entries in Column A on this page. Write that number here:

**$1,647.28**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:

**$168,811.65**

Official Form 106D        Additional Page of Schedule D: Creditors Who Have Claims Secured by Property        page 4

**App. 200**

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Rachael** | **Lee** | **Griffin** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known)

☐ Check if this is an
amended filing

## Official Form 106E/F

## Schedule E/F: Creditors Who Have Unsecured Claims                  12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Property* (Official Form 106A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G). Do not include any creditors with partially secured claims that are listed in *Schedule D: Creditors Who Hold Claims Secured by Property.* If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List All of Your PRIORITY Unsecured Claims |
|---|---|

1. **Do any creditors have priority unsecured claims against you?**

   ☐ No. Go to Part 2.

   ☑ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If more space is needed for priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

   (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.

| | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|
| **2.1** | | $3,775.00 | $3,775.00 | $0.00 |

**Payne & Associates, PLLC**
Priority Creditor's Name
**5225 Katy Freeway, Suite 505**
Number        Street

_____

_____

| **Houston** | **TX** | **77002** |
|---|---|---|
| City | State | ZIP Code |

Last 4 digits of account number    __ __ __ __

When was the debt incurred?    **11/29/2016**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who incurred the debt?**    Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations
☐ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☑ Other. Specify
   **Attorney fees for this case**

Debtor 1   **Rachael Lee Griffin** _____   Case number (if known) _____

| Part 1: | Your PRIORITY Unsecured Claims -- Continuation Page |
|---|---|

After listing any entries on this page, number them sequentially from the previous page.

| | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|

| 2.2 | | $100.00 | $100.00 | $0.00 |

**Payne & Associates, PLLC E/O** _____
Priority Creditor's Name
**5225 Katy Freeway, Suite 505** _____
Number        Street

_____

_____

**Houston**          **TX**     **77002** _____
City                State    ZIP Code

**Who incurred the debt?**   Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number**   __ __ __ __

**When was the debt incurred?**   _____

**As of the date you file, the claim is:**  Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
☐ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☑ Other.  Specify
   **Attorney fees for this case**

Official Form 106E/F          Schedule E/F: Creditors Who Have Unsecured Claims          page 2

**App. 202**

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

| **Part 2:** | **List All of Your NONPRIORITY Unsecured Claims** |

**3.    Do any creditors have nonpriority unsecured claims against you?**

☐    No. You have nothing to report in this part.  Submit this form to the court with your other schedules.

☑    Yes

**4.    List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.**
   If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim.  For each claim listed, identify what type of claim it is.  Do not list claims already included in Part 1.  If more than one creditor holds a particular claim, list the other creditors in Part 3.  If more space is needed for nonpriority unsecured claims, fill out the Continuation Page of Part 2.

| | **Total claim** |

---

| **4.1** | | **$464.00** |

**Central Financial Control**
Nonpriority Creditor's Name
**PO Box 66044**
Number         Street

_____

_____

**Anaheim**                        **CA**    **92816**
City                                State    ZIP Code

**Who incurred the debt?**    Check one.
☑    Debtor 1 only
☐    Debtor 2 only
☐    Debtor 1 and Debtor 2 only
☐    At least one of the debtors and another

☐    Check if this claim is for a community debt

**Is the claim subject to offset?**
☑    No
☐    Yes

**Last 4 digits of account number**    ▮ ▮ ▮ ▮
**When was the debt incurred?**    **12/2015**

**As of the date you file, the claim is:** Check all that apply.
☐    Contingent
☐    Unliquidated
☑    Disputed

**Type of NONPRIORITY unsecured claim:**
☐    Student loans
☐    Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐    Debts to pension or profit-sharing plans, and other similar debts
☑    Other.  Specify
   **Collecting for - HOUSTON NORTHWEST MEDICAL CTR**

---

| **4.2** | | **$188.00** |

**Central Financial Control**
Nonpriority Creditor's Name
**PO Box 66044**
Number         Street

_____

_____

**Anaheim**                        **CA**    **92816**
City                                State    ZIP Code

**Who incurred the debt?**    Check one.
☑    Debtor 1 only
☐    Debtor 2 only
☐    Debtor 1 and Debtor 2 only
☐    At least one of the debtors and another

☐    Check if this claim is for a community debt

**Is the claim subject to offset?**
☑    No
☐    Yes

**Last 4 digits of account number**    ▮ ▮ ▮ ▮
**When was the debt incurred?**    **10/2012**

**As of the date you file, the claim is:** Check all that apply.
☐    Contingent
☐    Unliquidated
☑    Disputed

**Type of NONPRIORITY unsecured claim:**
☐    Student loans
☐    Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐    Debts to pension or profit-sharing plans, and other similar debts
☑    Other.  Specify
   **Collecting for - HOUSTON NORTHWEST MEDICAL CTR**

---

Debtor 1    **Rachael Lee Griffin**                                          Case number (if known) _____

<table>
<tr><td>**Part 2:**</td><td>**Your NONPRIORITY Unsecured Claims -- Continuation Page**</td></tr>
</table>

After listing any entries on this page, number them sequentially from the previous page.

| | **Total claim** |
|---|---|

**4.3** | | **$126.00**

**Stellar Recovery Inc**
Nonpriority Creditor's Name
**Attn: Bankruptcy**
Number        Street
**4500 Salisbury Road Ste 105**

_____

**Jackonville**            **FL**    **32216**
City                        State     ZIP Code

**Who incurred the debt?**    Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number** ■ ■ ■ ■
**When was the debt incurred?**    12/2015

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
   **Collecting for - COMCAST**

---

**4.4** | | **$11,153.00**

**Us Dept of Ed/Great Lakes Educational Lo**
Nonpriority Creditor's Name
**2401 International**
Number        Street

_____

**Madison**            **WI**    **53704**
City                    State     ZIP Code

**Who incurred the debt?**    Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number** ■ ■ ■ ■
**When was the debt incurred?**    05/2011

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
   **Educational**

---

**4.5** | | **$412.00**

**Verizon**
Nonpriority Creditor's Name
**500 Technology Dr**
Number        Street
**Suite 500**

_____

**Weldon Spring**        **MO**    **63304**
City                        State     ZIP Code

**Who incurred the debt?**    Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number** ■ ■ ■ ■
**When was the debt incurred?**    02/2011

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
   **Unsecured**

---

Official Form 106E/F            **Schedule E/F: Creditors Who Have Unsecured Claims**            page 4

Debtor 1    **Rachael Lee Griffin**      Case number (if known) _____

| Part 4: | Add the Amounts for Each Type of Unsecured Claim |
|---|---|

6.   Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. § 159. Add the amounts for each type of unsecured claim.

**Total claim**

| Total claims from Part 1 | 6a. | **Domestic support obligations** | 6a. | $0.00 |
|---|---|---|---|---|
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. + | $3,875.00 |
| | 6e. | **Total.** Add lines 6a through 6d. | 6d. | $3,875.00 |

**Total claim**

| Total claims from Part 2 | 6f. | **Student loans** | 6f. | $0.00 |
|---|---|---|---|---|
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. + | $12,343.00 |
| | 6j. | **Total.** Add lines 6f through 6i. | 6j. | $12,343.00 |

**App. 205**

## Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Rachael** | **Lee** | **Griffin** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known)

☐ Check if this is an
amended filing

## Official Form 106G

## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1.  **Do you have any executory contracts or unexpired leases?**

   ☑ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.

   ☐ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Property* (Official Form 106A/B).

2.  **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease | State what the contract or lease is for |
|---|---|

**App. 206**

## Fill in this information to identify your case:

Debtor 1    **Rachael**          **Lee**          **Griffin**
            First Name           Middle Name      Last Name

Debtor 2
(Spouse, if filing)  First Name   Middle Name     Last Name

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known)

☐ Check if this is an
   amended filing

## Official Form 106H

## Schedule H: Your Codebtors                                                                 12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If
two married people are filing together, both are equally responsible for supplying correct information. If more space is
needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this
page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

1.  **Do you have any codebtors?**   (If you are filing a joint case, do not list either spouse as a codebtor.)

    ☑ No
    ☐ Yes

2.  **Within the last 8 years, have you lived in a community property state or territory?**  *(Community property states and territories*
    include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

    ☐ No. Go to line 3.
    ☑ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

        ☐ No
        ☑ Yes

        In which community state or territory did you live?    **Texas**        Fill in the name and current address of that person.

        **Terrence Griffin**
        Name of your spouse, former spouse, or legal equivalent

        Number       Street


        City                                 State       ZIP Code

3.  In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the
    person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the
    creditor on *Schedule D* (Official Form 106D), *Schedule E/F* (Official Form 106E/F), or *Schedule G* (Official Form 106G). Use
    *Schedule D, Schedule E/F, or Schedule G* to fill out Column 2.

        *Column 1:* **Your codebtor**                                    *Column 2:* **The creditor to whom you owe the debt**

                                                                         Check all schedules that apply:

Official Form 106H                          **Schedule H: Your Codebtors**                                        page 1

**App. 207**

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Rachael** | **Lee** | **Griffin** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known) _____

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

Official Form 106I

## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Employment

**1. Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | **Debtor 1** | **Debtor 2 or non-filing spouse** |
|---|---|---|
| **Employment status** | ☑ Employed ☐ Not employed | ☐ Employed ☐ Not employed |
| **Occupation** | Cosmetologist | |
| **Employer's name** | self employed | |
| **Employer's address** | | |
| | Number  Street | Number  Street |
| | | |
| | | |
| | City     State   Zip Code | City     State   Zip Code |
| **How long employed there?** | _____ | _____ |

### Part 2: Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | **For Debtor 1** | **For Debtor 2 or non-filing spouse** |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $0.00 | |
| 3. | Estimate and list monthly overtime pay. | 3. + | $0.00 | |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $0.00 | |

**App. 208**

| | Debtor 1 | Rachael Lee Griffin | | Case number (if known) | |
|---|---|---|---|---|---|
| | | | | For Debtor 1 | For Debtor 2 or non-filing spouse |

| | | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| | Copy line 4 here ............................................ → | | 4. | $0.00 | |
| 5. | List all payroll deductions: | | | | |
| | 5a. Tax, Medicare, and Social Security deductions | | 5a. | $0.00 | |
| | 5b. Mandatory contributions for retirement plans | | 5b. | $0.00 | |
| | 5c. Voluntary contributions for retirement plans | | 5c. | $0.00 | |
| | 5d. Required repayments of retirement fund loans | | 5d. | $0.00 | |
| | 5e. Insurance | | 5e. | $0.00 | |
| | 5f. Domestic support obligations | | 5f. | $0.00 | |
| | 5g. Union dues | | 5g. | $0.00 | |
| | 5h. Other deductions. Specify: _____ | | 5h. + | $0.00 | |
| 6. | Add the payroll deductions. Add lines 5a + 5b + 5c + 5d + 5e + 5f + 5g + 5h. | | 6. | $0.00 | |
| 7. | Calculate total monthly take-home pay. Subtract line 6 from line 4. | | 7. | $0.00 | |
| 8. | List all other income regularly received: | | | | |
| | 8a. Net income from rental property and from operating a business, profession, or farm | | 8a. | $3,320.13 | |
| | Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | | | | |
| | 8b. Interest and dividends | | 8b. | $0.00 | |
| | 8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive | | 8c. | $0.00 | |
| | Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | | | | |
| | 8d. Unemployment compensation | | 8d. | $0.00 | |
| | 8e. Social Security | | 8e. | $0.00 | |
| | 8f. Other government assistance that you regularly receive Include cash assistance and the value (if known) or any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | | 8f. | $0.00 | |
| | 8g. Pension or retirement income | | 8g. | $0.00 | |
| | 8h. Other monthly income. Specify: _____ | | 8h. + | $0.00 | |
| 9. | Add all other income. Add lines 8a + 8b + 8c + 8d + 8e + 8f + 8g + 8h. | | 9. | $3,320.13 | |
| 10. | Calculate monthly income. Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | | 10. | $3,320.13 + | = $3,320.13 |

11. State all other regular contributions to the expenses that you list in Schedule J.
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in Schedule J.

Specify: _____ 11. + $0.00

12. Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income. Write that amount on the Summary of Your Assets and Liabilities and Certain Statistical Information, if it applies.

12. $3,320.13

**Combined monthly income**

13. Do you expect an increase or decrease within the year after you file this form?

☑ No. **None.**

☐ Yes. Explain:

Debtor 1   **Rachael Lee Griffin**　　　　　　　　　　　　Case number (if known)　_____

8a.  Attached Statement (Debtor 1)

### JustNAYS

**Gross Monthly Income:**　　　　　　　　　　　　　　　　　　　　　　　$5,280.15

| Expense | Category | Amount | |
|---|---|---|---|
| Self Employment Taxes | Taxes | $660.02 | |
| Rent (chair space) | Rent | $1,000.00 | |
| Supplies | Supplies | $300.00 | |

**Total Monthly Expenses**　　　　　　　　　　　　　　　　　　　　　$1,960.02

**Net Monthly Income:**　　　　　　　　　　　　　　　　　　　　　　$3,320.13

**App. 210**

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Rachael** | **Lee** | **Griffin** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known) _____

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition
chapter 13 expenses as of the
following date:

_____
MM / DD / YYYY

## Official Form 106J

## Schedule J: Your Expenses                                                                        12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Your Household

1. **Is this a joint case?**

   ☑ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**
      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, Expenses for Separate Household of Debtor 2.

2. **Do you have dependents?**        ☐ No

   Do not list Debtor 1 and        ☑ Yes. Fill out this information
   Debtor 2.                             for each dependent.....................

   Do not state the dependents'
   names.

   | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
   |---|---|---|
   | **Daughter** | **18** | ☐ No  ☑ Yes |
   | **Son** | **15** | ☐ No  ☑ Yes |
   | **Daughter** | **8** | ☐ No  ☑ Yes |
   | **Daughter** | **6** | ☐ No  ☑ Yes |
   | **Son** | **2** | ☐ No  ☑ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**        ☑ No
      ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental Schedule J, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on Schedule I: Your Income (Official Form 106I.)

|  |  | **Your expenses** |
|---|---|---|
| 4. | **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4. _____ |
| | **If not included in line 4:** | |
| 4a. | Real estate taxes | 4a. _____ |
| 4b. | Property, homeowner's, or renter's insurance | 4b. _____ |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. _____ |
| 4d. | Homeowner's association or condominium dues | 4d. _____ $38.00 |

Official Form 106J                              Schedule J: Your Expenses                                                page 1

**App. 211**

Debtor 1    **Rachael Lee Griffin**                                          Case number (if known) _____

                                                                                    **Your expenses**
                                                                                    _____

| | | | |
|---|---|---|---|
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. | _____ |
| 6. | **Utilities:** | | |
| | 6a. Electricity, heat, natural gas | 6a. | **$260.00** |
| | 6b. Water, sewer, garbage collection | 6b. | **$38.00** |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | **$112.00** |
| | 6d. Other. Specify: _____ | 6d. | _____ |
| 7. | **Food and housekeeping supplies** | 7. | **$600.00** |
| 8. | **Childcare and children's education costs** | 8. | **$260.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | **$55.00** |
| 10. | **Personal care products and services** | 10. | **$30.00** |
| 11. | **Medical and dental expenses** | 11. | **$100.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | **$100.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | **$10.00** |
| 14. | **Charitable contributions and religious donations** | 14. | _____ |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. Life insurance | 15a. | **$67.00** |
| | 15b. Health insurance | 15b. | _____ |
| | 15c. Vehicle insurance | 15c. | **$95.00** |
| | 15d. Other insurance. Specify: _____ | 15d. | _____ |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. | _____ |
| 17. | **Installment or lease payments:** | | |
| | 17a. Car payments for Vehicle 1 | 17a. | _____ |
| | 17b. Car payments for Vehicle 2 | 17b. | _____ |
| | 17c. Other. Specify: _____ | 17c. | _____ |
| | 17d. Other. Specify: _____ | 17d. | _____ |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form 106I).** | 18. | _____ |
| 19. | **Other payments you make to support others who do not live with you.** Specify: _____ | 19. | _____ |

**App. 212**

Debtor 1  **Rachael Lee Griffin**                                    Case number (if known) _____

20. **Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.**

   20a.  Mortgages on other property                    20a.  _____

   20b.  Real estate taxes                              20b.  _____

   20c.  Property, homeowner's, or renter's insurance       20c.  _____

   20d.  Maintenance, repair, and upkeep expenses        20d.  _____

   20e.  Homeowner's association or condominium dues    20e.  _____

21. **Other.** Specify: _____   21.  + _____

22. **Calculate your monthly expenses.**

   22a.  Add lines 4 through 21.                       22a.         **$1,765.00**

   22b.  Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2.    22b.  _____

   22c.  Add line 22a and 22b.  The result is your monthly expenses.    22c.         **$1,765.00**

23. **Calculate your monthly net income.**

   23a.  Copy line 12 (your combined monthly income) from Schedule I.    23a.         **$3,320.13**

   23b.  Copy your monthly expenses from line 22c above.    23b.  −     **$1,765.00**

   23c.  Subtract your monthly expenses from your monthly income.
The result is your monthly net income.    23c.         **$1,555.13**

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.
☐ Yes. | Explain here:
**None.**

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Rachael** | **Lee** | **Griffin** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known)

☐ Check if this is an
amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new Summary and check the box at the top of this page.

| Part 1: | Summarize Your Assets |
|---|---|

**Your assets**
Value of what you own

1. *Schedule A/B: Property* (Official Form 106A/B)

    1a. Copy line 55, Total real estate, from Schedule A/B........................................................................... **$122,063.00**

    1b. Copy line 62, Total personal property, from Schedule A/B................................................................. **$61,465.83**

    1c. Copy line 63, Total of all property on Schedule A/B........................................................................... **$183,528.83**

| Part 2: | Summarize Your Liabilities |
|---|---|

**Your liabilities**
Amount you owe

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
    2a. Copy the total you listed in Column A, Amount of claim, at the bottom of the last page of Part 1 of Schedule D..... **$168,811.65**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
    3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of Schedule E/F.................................. **$3,875.00**

    3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of Schedule E/F............................ + **$12,343.00**

**Your total liabilities** **$185,029.65**

| Part 3: | Summarize Your Income and Expenses |
|---|---|

4. *Schedule I: Your Income* (Official Form 106I)
    Copy your combined monthly income from line 12 of Schedule I........................................................................... **$3,320.13**

5. *Schedule J: Your Expenses* (Official Form 106J)
    Copy your monthly expenses from line 22c of Schedule J................................................................................... **$1,765.00**

**App. 214**

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

| **Part 4:** | **Answer These Questions for Administrative and Statistical Records** |
|---|---|

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.
   ☑ Yes

7. **What kind of debt do you have?**

   ☑ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

8. From the *Statement of Your Current Monthly Income:* Copy your total current monthly income from Official Form 122A-1 Line 11; **OR,** Form 122B Line 11; **OR,** Form 122C-1 Line 14.

   | $3,980.15 |
   |---|

9. **Copy the following special categories of claims from Part 4, line 6 of** *Schedule E/F:*

   **Total claim**

   From Part 4 on *Schedule E/F,* copy the following:

   9a. Domestic support obligations. (Copy line 6a.) _____ $0.00

   9b. Taxes and certain other debts you owe the government. (Copy line 6b.) _____ $0.00

   9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) _____ $0.00

   9d. Student loans. (Copy line 6f.) _____ $0.00

   9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) _____ $0.00

   9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) + _____ $0.00

   9g. **Total.** Add lines 9a through 9f.

   | $0.00 |
   |---|

Official Form 106Sum    **Summary of Your Assets and Liabilities and Certain Statistical Information**    page 2

Fill in this information to identify your case:

| Debtor 1 | Rachael | Lee | Griffin |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | | |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known) _____

☐ Check if this is an amended filing

## Official Form 106Dec

## Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Sign Below

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

☑ No

☐ Yes. Name of person _____ Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X **/s/ Rachael Lee Griffin**                      X _____
   Rachael Lee Griffin, Debtor 1                      Signature of Debtor 2

   Date **12/04/2016**                                Date _____
       MM / DD / YYYY                                     MM / DD / YYYY

Official Form 106Dec                Declaration About an Individual Debtor's Schedules                page 1

App. 217

**Fill in this information to identify your case:**

| Debtor 1 | Rachael | Lee | Griffin |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | | |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

| Case number (if known) | _____ |
|---|---|

☐ Check if this is an amended filing

## Official Form 107

# Statement of Financial Affairs for Individuals Filing for Bankruptcy     04/16

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

| Part 1: | Give Details About Your Marital Status and Where You Lived Before |
|---|---|

1. **What is your current marital status?**
   - ☐ Married
   - ☑ Not married

2. **During the last 3 years, have you lived anywhere other than where you live now?**
   - ☑ No
   - ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

3. **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?**
   *(Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)
   - ☐ No
   - ☑ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

| Part 2: | Explain the Sources of Your Income |

**4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
☑ Yes. Fill in the details.

|  | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
|  | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions<br>and exclusions | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions<br>and exclusions |
| **From January 1 of the current year until the date you filed for bankruptcy:** | ☐ Wages, commissions, bonuses, tips<br>☑ Operating a business | $36,813.80 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | _____ |
| **For the last calendar year:**<br><br>(January 1 to December 31, **2015** )<br>                             YYYY | ☐ Wages, commissions, bonuses, tips<br>☑ Operating a business | $25,116.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | _____ |
| **For the calendar year before that:**<br><br>(January 1 to December 31, **2014** )<br>                             YYYY | ☐ Wages, commissions, bonuses, tips<br>☑ Operating a business | $27,638.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | _____ |

**5. Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of other income are alimony; child support; Social Security; unemployment; and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are in a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☑ No
☐ Yes. Fill in the details.

Official Form 107        **Statement of Financial Affairs for Individuals Filing for Bankruptcy**        page 2

**App. 218**

Debtor 1   **Rachael Lee Griffin**                                          Case number (if known) _____

| Part 3: | List Certain Payments You Made Before You Filed for Bankruptcy |
|---|---|

6.   **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☐ No.   **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,425* or more?

☐ No.  Go to line 7.

☐ Yes.  List below each creditor to whom you paid a total of $6,425* or more in one or more payments and the total amount you paid that creditor.  Do not include payments for domestic support obligations, such as child support and alimony.  Also, do not include payments to an attorney for this bankruptcy case.

* Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.

☑ Yes.   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No.  Go to line 7.

☑ Yes.  List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor.  Do not include payments for domestic support obligations, such as child support and alimony.  Also, do not include payments to an attorney for this bankruptcy case.

| | Dates of payment | Total amount paid | Amount you still owe | Was this payment for... |
|---|---|---|---|---|
| **Chase Mtg** <br> Creditor's name <br> **Po Box 24696** <br> Number     Street <br><br> **Columbus**     **OH**  **43224** <br> City                  State    ZIP Code | **9/2016** <br> **10/2016** <br> **11/2016** | **$3,447.93** | **$132,579.00** | ☑ Mortgage <br> ☐ Car <br> ☐ Credit card <br> ☐ Loan repayment <br> ☐ Suppliers or vendors <br> ☐ Other _____ |

7.   **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor.  11 U.S.C. § 101.  Include payments for domestic support obligations such as child support and alimony.

☑ No
☐ Yes.  List all payments to an insider.

**App. 219**

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

8.   **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**

Include payments on debts guaranteed or cosigned by an insider.

☑ No

☐ Yes. List all payments that benefited an insider.

---

### Part 4:    Identify Legal Actions, Repossessions, and Foreclosures

9.   **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☑ No

☐ Yes. Fill in the details.

10.  **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

☑ No. Go to line 11.

☐ Yes. Fill in the information below.

11.  **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

☑ No

☐ Yes. Fill in the details.

12.  **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

☑ No

☐ Yes

---

### Part 5:    List Certain Gifts and Contributions

13.  **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

☑ No

☐ Yes. Fill in the details for each gift.

14.  **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

☑ No

☐ Yes. Fill in the details for each gift or contribution.

---

Official Form 107          Statement of Financial Affairs for Individuals Filing for Bankruptcy          page 4

**App. 220**

Debtor 1    **Rachael Lee Griffin**                                    Case number (if known) _____

| **Part 6:** | **List Certain Losses** |
|---|---|

**15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☑ No
☐ Yes. Fill in the details.

| **Part 7:** | **List Certain Payments or Transfers** |
|---|---|

**16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**

Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required for your bankruptcy.

☐ No
☑ Yes. Fill in the details.

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **Payne & Associates, PLLC**<br>Person Who Was Paid<br><br>**5225 Katy Freeway, Suite 505**<br>Number    Street | $310 Filing Fees<br>$55 Credit Report<br>$35 Credit Counseling<br>$150 RFI<br>$50 Attorneys fees | **11/29/2016** | **$600.00** |

**Houston                    TX        77002**
City                              State      ZIP Code

_____
Email or website address

_____
Person Who Made the Payment, if Not You

**17. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**

Do not include any payment or transfer that you listed on line 16.

☑ No
☐ Yes. Fill in the details.

**18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**

Include both outright transfers and transfers made as security (such as granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☑ No
☐ Yes. Fill in the details.

**19. Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?**    (These are often called asset-protection devices.)

☑ No
☐ Yes. Fill in the details.

**App. 221**

Debtor 1    **Rachael Lee Griffin** _____    Case number (if known) _____

| **Part 8:** | **List Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units** |

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**

   Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

   ☑ No
   ☐ Yes. Fill in the details.

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

   ☐ No
   ☑ Yes. Fill in the details.

|  | Who else had access to it? | Describe the contents | Do you still have it? |
|---|---|---|---|
| **Chase Bank**<br>Name of Financial Institution | _____<br>Name | empty | ☐ No<br>☑ Yes |
| **616 FM 1960 W. Suite 100**<br>Number    Street | _____<br>Number    Street |  |  |
| **Houston      TX    77090**<br>City      State   ZIP Code | _____<br>City           State   ZIP Code |  |  |

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**
   ☑ No
   ☐ Yes. Fill in the details.

| **Part 9:** | **Identify Property You Hold or Control for Someone Else** |

23. **Do you hold or control any property that someone else owns?  Include any property you borrowed from, are storing for, or hold in trust for someone.**

   ☐ No
   ☑ Yes. Fill in the details.

|  | Where is the property? | Describe the property | Value |
|---|---|---|---|
|  |  | 2009 Mazda CX9 | $8,600.00 |
| **Darryl Bankston**<br>Owner's Name |  |  |  |
| **300 North Vista #117**<br>Number    Street | **703 Deveron**<br>Number    Street |  |  |
| **Houston      TX    77073**<br>City      State   ZIP Code | **Houston      TX    77090**<br>City           State   ZIP Code |  |  |

**App. 222**

Debtor 1    __Rachael Lee Griffin_____    Case number (if known) _____

## Part 10:    Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substance, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar item.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24.   Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

☑ No
☐ Yes. Fill in the details.

25.   Have you notified any governmental unit of any release of hazardous material?

☑ No
☐ Yes. Fill in the details.

26.   Have you been a party in any judicial or administrative proceeding under any environmental law?  Include settlements and orders.

☑ No
☐ Yes. Fill in the details.

## Part 11:    Give Details About Your Business or Connections to Any Business

27.   Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?

☑ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)
☐ A partner in a partnership
☐ An officer, director, or managing executive of a corporation
☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies.  Go to Part 12.
☑ Yes.  Check all that apply above and fill in the details below for each business.

| | | |
|---|---|---|
| **Bona Fide Beauty Salon**<br>Business Name | Describe the nature of the business<br>hair salon | Employer Identification number<br>Do not include Social Security number or ITIN. |
| **1432 FM 1960, Suite 102**<br>Number    Street | Name of accountant or bookkeeper | EIN: __ __ __ – __ __ __ __ __ __ __ __ __ |
| _____ | | Dates business existed |
| **Houston        TX    77090**<br>City              State    ZIP Code | | From    **8/2010**    To    **present** |

Official Form 107            Statement of Financial Affairs for Individuals Filing for Bankruptcy            page 7

**App. 223**

Debtor 1    **Rachael Lee Griffin**                                                                Case number (if known) _____

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business?  Include all financial institutions, creditors, or other parties.**

☑ No
☐ Yes.  Fill in the details below.

| Part 12: | Sign Below |
|---|---|

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that answers are true and correct.  I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

X **/s/ Rachael Lee Griffin**                                X _____
Rachael Lee Griffin, Debtor 1                               Signature of Debtor 2

Date ____**12/04/2016**____                                Date _____

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

☑ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

☑ No
☐ Yes.  Name of person _____   Attach the  *Bankruptcy Petition Preparer's Notice, Declaration, and Signature*  (Official Form 119).

**App. 224**

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

---

**This notice is for you if:**

- **You are an individual filing for bankruptcy,** and

- **Your debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

## The types of bankruptcy that are available to individuals

Individuals who meet the qualifications may file under one of four different chapters of the Bankruptcy Code:

- Chapter 7 -- Liqudation

- Chapter 11 -- Reorganization

- Chapter 12 -- Voluntary repayment plan for family farmers or fishermen

- Chapter 13 -- Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

## Chapter 7:  Liquidation

|   | | |
|---|------|------------------|
|   | $245 | filing fee |
|   | $75  | administrative fee |
| + | $15  | trustee surcharge |
|   | $335 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors.  The primary purpose of filing under chapter 7 is to have your debts discharged.  The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge.  For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that the even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law.  Therefore, you may still be responsible to pay:

- most taxes;

- most student loans;

- domestic support and property settlement obligations;

---

App. 225

- most fines, penalties, forfeitures, and criminal restitution obligations; and

- certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

- fraud or theft;

- fraud or defalcation while acting in breach of fiduciary capacity;

- intentional injuries that you inflicted; and

- death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A-1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A-2).

If your income is above the median for your state, you must file a second form--the *Chapter 7 Means Test Calculation* (Official Form 122A-2). The calculations on the form-- sometimes called the *Means Test*-- deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If your income is more than the median income

for your state of residence and family size, depending on the results of the *Means Test,* the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property.* Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

## Chapter 11:  Reorganization

|   |  |  |
|---|---|---|
|   | $1,167 | filing fee |
| + | $550 | administrative fee |
|   | $1,717 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

## Read These Important Warnings

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

### Chapter 12: Repayment plan for family farmers or fishermen

|   | $200 | filing fee |
|---|---|---|
| + | $75 | administrative fee |
|   | $275 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   | $235 | filing fee |
|---|---|---|
| + | $75 | administrative fee |
|   | $310 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

- domestic support obligations,
- most student loans,
- certain taxes,
- debts for fraud or theft,
- debts for fraud or defalcation while acting in a fiduciary capacity,
- most criminal fines and restitution obligations,
- certain debts that are not listed in your bankruptcy papers,
- certain debts for acts that caused death or personal injury, and
- certain long-term secured debts.

## Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and local rules of the court.

For more information about the documents and their deadlines, go to:

http://www.uscourts.gov/bkforms/bankruptcy_forms .html#procedure.

## Bankruptcy crimes have serious consequences

- If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury--either orally or in writing--in connection with a bankruptcy case, you may be fined, imprisoned, or both.

- All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

## Make sure the court has your mailing address

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together-- called a *joint case.* If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

## Understand which services you could receive from credit counseling agencies

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from:

http://justice.gov/ust/eo/hapcpa/ccde/cc_approved.html.

In Alabama and North Carolina, go to:

http://www.uscourts.gov/FederalCourts/Bankruptcy/Bankru ptcyResources/ApprovedCreditAndDebtCounselors.aspx.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

App. 228

B2030 (Form 2030) (12/15)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

In re  **Rachael Lee Griffin**                                    Case No.  _____

                                                                              Chapter   **13**   _____

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1. Pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

For legal services, I have agreed to accept................................................Fixed Fee:   _____**$3,825.00**

Prior to the filing of this statement I have received.......................................   _____**$50.00**

Balance Due..............................................................................................   _____**$3,775.00**

2. The source of the compensation paid to me was:

   ☑ Debtor                    ☐ Other (specify)

3. The source of compensation to be paid to me is:

   ☑ Debtor                    ☐ Other (specify)

4. ☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with another person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

   b. Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

**App. 229**

B2030 (Form 2030) (12/15)

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following services:

<table>
<tr><td colspan="2" align="center">CERTIFICATION</td></tr>
<tr><td colspan="2">I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.</td></tr>
<tr>
<td>__12/04/2016__<br><i>Date</i></td>
<td><b>/s/ Kyle Kenneth Payne</b><br><i>Kyle Kenneth Payne</i>    Bar No.  24083637<br>Payne & Associates, PLLC<br>5225 Katy Freeway, Suite 505<br>Houston, TX 77002<br>Phone: (713) 228-0200 / Fax: (713) 588-8750</td>
</tr>
</table>

**/s/ Rachael Lee Griffin**

*Rachael Lee Griffin*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

IN RE:   **Rachael Lee Griffin**                                    CASE NO

                                                                                   CHAPTER   **13**

## VERIFICATION OF CREDITOR MATRIX

The above named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.


Date ___12/4/2016_____          Signature ___/s/ Rachael Lee Griffin_____
                                                                                    *Rachael Lee Griffin*


Date _____          Signature _____

Attorney General of the U.S.
Department of Justice
10th & Constitution, N.W.
Washington, DC 20530

Payne & Associates, PLLC
5225 Katy Freeway, Suite 505
Houston, TX 77002


Central Financial Control
PO Box 66044
Anaheim, CA 92816

Payne & Associates, PLLC E/O
5225 Katy Freeway, Suite 505
Houston, TX 77002


Chase Mtg
Po Box 24696
Columbus, OH 43224

Spring ISD Tax Office
16717 Ella Blvd
P.O. Box 90458
Houston, TX 77290


District Counsel
Internal Revenue Service
8701 Gessner, Suite 710
Houston, TX 77074

Stellar Recovery Inc
Attn: Bankruptcy
4500 Salisbury Road Ste 105
Jackonville, FL 32216


Ella Crossing HOA
16690 Park Row
Houston, TX 77084

U.S. Attorney
Southern District of Texas
1000 Louisiana St.
Suite 2300
Houston, TX 77002


Franklin Credit Management
P.O. Box 2300
Jersey City, NJ   07303

U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002


Harris County MUD #83
JoAnn Ramos Tax A/C
11500 NW Freeway, Suite 465
Houston, TX 77092

Us Dept of Ed/Great Lakes Educa
2401 International
Madison, WI 53704


Harris County Tax Office
PO Box 3547
Houston, TX 77253

Verizon
500 Technology Dr
Suite 500
Weldon Spring, MO 63304


Internal Revenue Service
Centralized Insolvency Operatio
P.O. Box 7346
Philadelphia, PA 19101


Internal Revenue Service
Special Procedures Branch
STOP 5022 HOU
1919 Smith Street
Houston, TX 77002

<table>
<tr><td colspan="2"><b>Fill in this information to identify your case:</b></td></tr>
</table>

| | | | |
|---|---|---|---|
| Debtor 1 | **Rachael** | **Lee** | **Griffin** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS**

Case number
(if known) _____

**Check as directed in lines 17 and 21:**

According to the calculations required by this Statement:

☑ 1. Disposable income is not determined under 11 U.S.C. § 1325(b)(3).

☐ 2. Disposable income is determined under 11 U.S.C. § 1325(b)(3).

☑ 3. The commitment period is 3 years.

☐ 4. The commitment period is 5 years.

☐ Check if this is an amended filing

Official Form 122C-1

# Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

| **Part 1:** | **Calculate Your Average Monthly Income** |
|---|---|

1. **What is your marital and filing status?** Check one only.

    ☑ **Not married.** Fill out Column A, lines 2-11.

    ☐ **Married.** Fill out both Columns A and B, lines 2-11.

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $0.00 | |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse. | $0.00 | |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Do not include payments from a spouse. Do not include payments you listed on line 3. | $0.00 | |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | | |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $5,280.15 | | | | |
| Ordinary and necessary operating expenses | − $1,300.00 | − | | | |
| Net monthly income from a business, profession, or farm | $3,980.15 | | Copy here → | $3,980.15 | |

**App. 233**

Debtor 1    **Rachael Lee Griffin**                          Case number (if known) _____

|  | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
|---|---|---|

**6.    Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | | |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $0.00 | _____ | | | |
| Ordinary and necessary operating expenses | − $0.00 | − _____ | | | |
| Net monthly income from rental or other real property | $0.00 | _____ | Copy here → | $0.00 | _____ |

**7.    Interest, dividends, and royalties**                        $0.00    _____

**8.    Unemployment compensation**                        $0.00    _____

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here: ..............↓

   For you.......................................................... $0.00

   For your spouse............................................... _____

**9.    Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act.                        $0.00    _____

**10.   Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism. If necessary, list other sources on a separate page and put the total below.

_____    _____    _____

_____    _____    _____

Total amounts from separate pages, if any.    + _____    + _____

**11.   Calculate your total average monthly income.**
Add lines 2 through 10 for each column.
Then add the total for Column A to the total for Column B.

$3,980.15 + _____ = $3,980.15

**Total average monthly income**

## Part 2:    Determine How to Measure Your Deductions from Income

**12.   Copy your total average monthly income from line 11.** ..................................................... $3,980.15

**13.   Calculate the marital adjustment.** Check one:

☑  You are not married. Fill in 0 below.

☐  You are married and your spouse is filing with you. Fill in 0 below.

☐  You are married and your spouse is not filing with you.
   Fill in the amount of the income listed in line 11, Column B, that was NOT regularly paid for the household expenses of you or your dependents, such as payment of the spouse's tax liability or the spouse's support of someone other than you or your dependents.
   Below, specify the basis for excluding this income and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page.

   If this adjustment does not apply, enter 0 below.

   _____    _____

   _____    _____

   _____    + _____

   Total.............................................................    $0.00    Copy here →    − $0.00

**14.   Your current monthly income.** Subtract the total in line 13 from line 12.                        $3,980.15

Debtor 1     **Rachael Lee Griffin**                                                Case number (if known) _____

15. **Calculate your current monthly income for the year.** Follow these steps:

    15a.  Copy line 14 here  →  .................................................................................................................    $3,980.15

            Multiply line 15a by 12 (the number of months in a year).           X    12

    15b.  The result is your current monthly income for the year for this part of the form. ............................    $47,761.80

16. **Calculate the median family income that applies to you.** Follow these steps:

    16a.  Fill in the state in which you live.         **Texas**

    16b.  Fill in the number of people in your household.      **6**

    16c.  Fill in the median family income for your state and size of household.....................................................    $92,685.00
            To find a list of applicable median income amounts, go online using the link specified in the separate
            instructions for this form.  This list may also be available at the bankruptcy clerk's office.

17. **How do the lines compare?**

    17a.  ☑  Line 15b is less than or equal to line 16c.  On the top of page 1 of this form, check box 1, *Disposable income is not determined*
              *under 11 U.S.C. § 1325(b)(3).*  **Go to Part 3.**  Do NOT fill out Calculation of Your Disposable Income (Official Form 122C-2).

    17b.  ☐  Line 15b is more than line 16c.  On the top of page 1 of this form, check box 2, *Disposable income is determined under*
              *11 U.S.C. § 1325(b)(3).*  **Go to Part 3 and fill out Calculation of Your Disposable Income (Official Form 122C-2).**
              On line 39 of that form, copy your current monthly income from line 14 above.

---

| **Part 3:** | **Calculate Your Commitment Period Under 11 U.S.C. § 1325(b)(4)** |
| --- | --- |

18. **Copy your total average monthly income from line 11.** ....................................................    $3,980.15

19. **Deduct the marital adjustment if it applies.**  If you are married, your spouse is not filing with you, and you contend
    that calculating the commitment period under 11 U.S.C. § 1325(b)(4) allows you to deduct part of your spouse's
    income, copy the amount from line 13.

    19a.  If the marital adjustment does not apply, fill in 0 on line 19a. ...................................  −    $0.00

    19b.  **Subtract line 19a from line 18.**    $3,980.15

20. **Calculate your current monthly income for the year.**  Follow these steps:

    20a.  Copy line 19b ...........................................................................................................    $3,980.15

            Multiply by 12 (the number of months in a year).    X    12

    20b.  The result is your current monthly income for the year for this part of the form.    $47,761.80

    20c.  Copy the median family income for your state and size of household from line 16c. .............................    $92,685.00

21. **How do the lines compare?**

    ☑  Line 20b is less than line 20c.  Unless otherwise ordered by the court, on the top of page 1 of this form,
        check box 3, *The commitment period is 3 years.*  Go to Part 4.

    ☐  Line 20b is more than or equal to line 20c.  Unless otherwise ordered by the court, on the top of page 1
        of this form, check box 4, *The commitment period is 5 years.*  Go to Part 4.

**App. 235**

Debtor 1    **Rachael Lee Griffin**                                              Case number (if known) _____

| **Part 4:** | **Sign Below** |

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

**X** **/s/ Rachael Lee Griffin**                                         **X** _____
    Rachael Lee Griffin, Debtor 1                                            Signature of Debtor 2

   Date **12/4/2016**                                             Date _____
       MM / DD / YYYY                                                   MM / DD / YYYY

If you checked 17a, do NOT fill out or file Form 122C-2.

If you checked 17b, fill out Form 122C-2 and file it with this form.  On line 39 of that form, copy your current monthly income from line 14 above.

**App. 236**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

IN RE:                                                                §
                                                                            §
**Rachael Lee Griffin**                                          §          Case No. _____
                                                                            §
                                                                            §
                            Debtor(s)                                §          Chapter     **13**_____

## DECLARATION FOR ELECTRONIC FILING OF BANKRUPTCY PETITION, LISTS, STATEMENTS, AND SCHEDULES

## PART I: DECLARATION OF PETITIONER:

As an individual debtor in this case, or as the individual authorized to act on behalf of the corporation, partnership, or limited liability company seeking bankruptcy relief in this case, I hereby request relief as, or on behalf of, the debtor in accordance with the chapter of title 11, United States Code, specified in the petition to be filed electronically in this case. I have read the information provided in the petition, lists, statements, and schedules to be filed electronically in this case and I HEREBY DECLARE UNDER PENALTY OF PERJURY that the information provided therein, as well as the social security information disclosed in this document, is true and correct. I understand that this Declaration is to be filed with the Bankruptcy Court within five (5) business days after the petition, lists, statements, and schedules have been filed electronically. I understand that a failure to file the signed original of this Declaration will result in the dismissal of my case.

☐   *[Only include for Chapter 7 individual petitioners whose debts are primarily consumer debts]* --
    I am an individual whose debts are primarily consumer debts and who has chosen to file under chapter 7. I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each chapter, and choose to proceed under chapter 7.

☐   *[Only include if petitioner is a corporation, partnership or limited liability company]* --
    I hereby further declare under penalty of perjury that I have been authorized to file the petition, lists, statements, and schedules on behalf of the debtor in this case.

Date: __**12/4/2016**____          **/s/ Rachael Lee Griffin**_____
                                            Rachael Lee Griffin
                                            Debtor
                                            **Soc. Sec. No.   xxx-xx**████_____

## PART II: DECLARATION OF ATTORNEY:

I declare UNDER PENALTY OF PERJURY that: (1) I will give the debtor(s) a copy of all documents referenced by Part I herein which are filed with the United States Bankruptcy Court; and (2) I have informed the debtor(s), if an individual with primarily consumer debts, that he or she may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

Date: __**12/4/2016**____                         **/s/ Kyle Kenneth Payne**_____
                                                            Kyle Kenneth Payne, Attorney for Debtor

**App. 237**

United States Bankruptcy Court
Southern District of Texas

| Information to identify the case: | | | |
|---|---|---|---|
| Debtor 1 | Rachael Lee Griffin | Social Security number or ITIN   xxx-xx-6784 | **ENTERED** |
| | First Name   Middle Name   Last Name | EIN   _ _ - _ _ _ _ _ _ _ | February 23, 2022 |
| Debtor 2 | | Social Security number or ITIN  _ _ _ _ | Nathan Ochsner, Clerk |
| (Spouse, if filing) | First Name   Middle Name   Last Name | EIN   _ _ - _ _ _ _ _ _ _ | |
| United States Bankruptcy Court   Southern District of Texas | | | |
| Case number:   16-36061 | | | |

## Order of Discharge

12/18

**IT IS ORDERED:** A discharge under 11 U.S.C. § 1328(a) is granted to:

Rachael Lee Griffin
dba Bona Fide Beauty Salon

2/23/22

**By the court:** <u>Jeffrey P Norman</u>
United States Bankruptcy Judge

## Explanation of Bankruptcy Discharge in a Chapter 13 Case

This order does not close or dismiss the case.

### Creditors cannot collect discharged debts

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

### Most debts are discharged

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

### Some debts are not discharged

Examples of debts that are not discharged are:

♦ debts that are domestic support obligations;

♦ debts for most student loans;

♦ debts for certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)( C), 523(a)(1)(B), or 523(a)(1)(C) to the extent not paid in full under the plan;

TRUE COPY I CERTIFY ATTEST:
NATHAN OCHSNER, Clerk of Court
By _____
Deputy Clerk

For more information, see page 2>

Form 3180W

**Chapter 13 Discharge**

page 1

**App. 238**

App. 239

- debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

- debts for restitution, or a criminal fine, included in a sentence on debtor's criminal conviction;

- some debts which the debtors did not properly list;

- debts provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due;

- debts for certain consumer purchases made after the bankruptcy case was filed if obtaining the trustee's prior approval of incurring the debt was practicable but was not obtained;

- debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual; and

- debts for death or personal injury caused by operating a vehicle while intoxicated.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

> **This information is only a general summary of a chapter 13 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

Loan No: [redacted]                                                     Data ID:   716
Borrower: RACHAEL GRIFFIN

HOLD FOR
CHICAGO TITLE
GF [illegible]
DJM/W.L.

Return to:     LONG BEACH MORTGAGE COMPANY
               P.O. BOX 201085
               STOCKTON, CA  95202

                                                    Y886750
                                          11/08/05   200999026        $48.00

─────────────── [Space Above This Line For Recording Data] ───────────────

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on the 31st day of October, 2005.
The grantor is RACHAEL GRIFFIN AND HUSBAND,  TERRENCE TREMAYNE GRIFFIN
                                                            ("Borrower").

The trustee is MICHAEL L. RIDDLE, whose address is 717 NORTH HARWOOD, SUITE 2400, DALLAS, TEXAS
75201
                                                            ("Trustee").

The beneficiary is LONG BEACH MORTGAGE COMPANY , A CORPORATION,

which is organized and existing under the laws of the State of DELAWARE,
and whose address is 1400 SOUTH DOUGLASS ROAD, SUITE 100, ANAHEIM, CA  92806
                                                            ("Lender").

Borrower owes Lender the principal sum of ONE HUNDRED THIRTY-ONE THOUSAND TWELVE and
NO/100-----Dollars (U.S. $ 131,012.00).  This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
November 1, 2035.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to
Trustee, in trust, with power of sale, the following described property located in HARRIS County, Texas:

   LOT FIVE (5) BLOCK TWO (2) OF ELLA CROSSING, SEC. 1, AN ADDITION IN HARRIS COUNTY,
   TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN FILM CODE NO. 583137 OF
   THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

which has the address of 703 DEVERON LANE,                          HOUSTON,
                                          [Street]                       [City]
TEXAS           77090                          ("Property Address");
                [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security
Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants
and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited
variations by jurisdiction to constitute a uniform security instrument covering real property.

TEXAS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3044   03/98      (Page 1 of 5 Pages)

EXHIBIT
E



UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**App. 241**

Loan No: ▮▮▮▮▮                                                    Data ID:  716

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any

Form 3044    03/98                    (Page 3 of 5 Pages)

RP 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

**App. 242**

notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

Form 3044    03/98        *(Page 4 of 5 Pages)*

RF 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

Loan No:  █████                                    Data ID: 716

**24. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**25. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**26. Waiver of Notice of Intention to Accelerate.** Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1–4 Family Rider |
| [ ] Graduated Payment Rider | [X] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

**28. Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate] The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed conveying Property to Borrower dated or effective the same date as this Security Instrument, which Vendor's Lien has been assigned to Lender, this Security Instrument being additional security therefor.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.



...........................................(Seal)                    ...........................................(Seal)
TERRENCE TREMAYNE GRIFFIN —Borrower          RACHAEL GRIFFIN —Borrower

_____  [Space Below This Line For Acknowledgment]  _____

State of TEXAS          §
County of Harris        §

This instrument was acknowledged before me on the __31st__ day of __October_____, 20 _05_ by

RACHAEL GRIFFIN AND TERRENCE TREMAYNE GRIFFIN

                                                        _____
                                                                        Notary Public

                                                        _____
                                                                        (Printed Name)

My commission expires:_____

AURORA BROOKS
NOTARY PUBLIC
STATE OF TEXAS
My Comm Expires 10-15-2006

Loan No: ████

Borrower: RACHAEL GRIFFIN

Data ID: 716

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 31st day of October, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to LONG BEACH MORTGAGE COMPANY

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

703 DEVERON LANE
HOUSTON, TEXAS 77090
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

DECLARATIONS AND COVENANTS

(the "Declaration"). The Property is a part of a planned unit development known as

ELLA CROSSING, SECTION 1
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

MULTISTATE PUD RIDER- Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Modified by Middleberg, Riddle & Gianna

Form 3150    09/90
*(Page 1 of 2 Pages)*

Loan No: ███████                                                    Data ID:  716

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

.................................................(Seal)          .................................................(Seal)
TERRENCE TREMAYNE GRIFFIN —Borrower          RACHAEL GRIFFIN —Borrower

Form 3150    09/90    *(Page 2 of 2 Pages)*

Loan No: ▉▉▉▉                                                    Data ID:  716
Borrower:   RACHAEL GRIFFIN

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR Index — Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 31st day of October, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to LONG BEACH MORTGAGE COMPANY (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

703 DEVERON LANE
HOUSTON, TEXAS  77090
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE.   THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS.   In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of **8.05 %**.  The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **November, 2007**, and the adjustable interest rate I will pay may change on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FOUR and 99/100** percentage points (**4.99 %**) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER—LIBOR INDEX** — Single Family                          6/95
*(Page 1 of 2 Pages)*

Loan No: █████                                                    Data ID:  716

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.0500** % or less than **8.0500** %.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **ONE**  percentage point(s) **(1.00 %)** from the rate of interest I have been paying for the preceding **6** months.  My interest rate will never be greater than **14.0500** %, which is called the "Maximum Rate" or less than **8.0500** %, which is called the "Minimum Rate."

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

.............................................(Seal)             ...............................................(Seal)
TERRENCE TREMAYNE GRIFFIN —Borrower       RACHAEL GRIFFIN —Borrower



ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

NOV - 8 2005

COUNTY CLERK
HARRIS COUNTY, TEXAS

(Page 2 of 2 Pages)



I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages
are a true and correct copy of the original record filed and recorded in my office,
electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This June 24, 2025

*Teneshia Hudspeth*

**Teneshia Hudspeth, County Clerk
Harris County, Texas**

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.

11/26/2012   ER   $16.00

ASSGN
X

ER 038 - 65 - 1378

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

Loan #:



FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interests secured thereby, all liens, and any rights due or to become due thereon, to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

1EE

Said Deed of Trust dated 10/31/2005 executed by RACHEL GRIFFIN AND TERRENCE TREMAYNE GRIFFIN in the amount of $131,012.00 and recorded on 11/08/2005 as Instrument # Y886750, in Book n/a, Page n/a in the records of Real Property of HARRIS County, Texas.

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on __11 / 17__ /2012 (MM/DD/YYYY).
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact

4OR

By: _____
Kelly Mcwilliams .
VICE PRESIDENT

STATE OF LOUISIANA    PARISH OF OUACHITA
On __11 / 17__ /2012    (MM/DD/YYYY),    before    me    appeared ___Kelly Mcwilliams___ to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Eva Reese
Notary Public - State of LOUISIANA
Commission expires: Upon My Death



Document Prepared By: Robert E. Fletcher - c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To: JPMorgan Chase Bank, NA, C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683
JPCAS 18188184 -4 WAMU CJ43638271ER   T0912113708   [C] FRMTX1_JPCAS3

## EXHIBIT
# F

20120543726
# Pages 2
11/26/2012    10:36:42 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees 16.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS



I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages
are a true and correct copy of the original record filed and recorded in my office,
electronically or hard copy, as it appears on this date.

**Witness my official hand and seal of office**
**This June 24, 2025**

*Teneshia Hudspeth*

**Teneshia Hudspeth, County Clerk**
**Harris County, Texas**

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.



RP-2025-225256
06/12/2025  ER  $45.00

Page 1 of 7    Friday, July 10, 2026    County Clerk Harris County, Texas

## SUBSTITUTE TRUSTEE'S DEED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

C&S No. 44-25-00934/Conventional/Servicelink Auction
JPMorgan Chase Bank, National Association

| | |
|---|---|
| **Date of Security Instrument:** | October 31, 2005 |
| **Grantor(s):** | Rachael Griffin and husband, Terrence Tremayne Griffin |
| **Original Trustee:** | Michael L. Riddle |
| **Original Mortgagee:** | Long Beach Mortgage Company, A Corporation |
| **Recording Information:** | in Volume RP 013-89, Page 0838 and in Clerk's File No. Y886750 in the Official Public Records of Harris County, Texas |
| **Current Mortgagee:** | JPMorgan Chase Bank, National Association |

**Mortgage Servicer:**    JPMorgan Chase Bank, National Association whose address is 3415 Vision Drive, Columbus, OH 43219-6009. Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property.

| | |
|---|---|
| **Date of Sale:** | **June 03, 2025** |
| **Amount of Sale:** | **$182,000.00** |
| **Grantee/Buyer:** | **P.C.F. PROPERTIES IN TX, LLC**<br>**6046 FM 2920 RD PMB 160**<br>**SPRING TX 77379** |

**Legal Description:**    LOT FIVE (5) BLOCK TWO (2) OF ELLA CROSSING, SEC. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN FILM CODE NO. 583137 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

| | |
|---|---|
| Property Address: | 703 Deveron Lane, Houston, TX 77090 |

**Place of Sale of Property:**    In the area designated by the Harris County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where the foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the place where the Notice of Trustee's Sale was posted.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee, through the Mortgage Servicer, has appointed the Substitute Trustee and requested the Substitute Trustee to enforce the trust.

EXHIBIT
G



App. 253

RP-2025-225256

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. The Substitute Trustee sold the property to Buyer, who was the highest bidder for cash at the public auction, for the amount of the sale in the manner prescribed by law. The sale was conducted no earlier than **10:00 AM**, as set forth in the Notice of Trustee's Sale and was concluded within three hours of such time. All matters, duties and obligations of the Mortgagee were legally performed.

Substitute Trustee, subject to any matters of record, and for the amount of sale paid by Buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor, Substitute Trustee hereby sell the above referenced property AS IS without any express or implied warranties, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §51.002 and §51.009.

*Affidavit of Posting/Filing Notice of Sale is attached hereto marked as Exhibit "1" and Affidavit is attached hereto marked as Exhibit "2" is by this reference incorporated herein for all purposes.*

EXECUTED this __5th__ day of _____June_____, 2025.

Jeff Leva
Servicelink Auction Substitute Trustee

**STATE OF TEXAS**

**COUNTY OF** HARRIS_____

Before me, the undersigned Notary Public, on this day personally appeared **Jeff Leva** as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that (s)he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___5th___ day of _____June_____, 2025.

Notary Public State of __TEXAS_____

C&S No. 44-25-00934



NICOLE DURRETT
Notary Public, State of Texas
Comm. Expires 09-08-2026
Notary ID 128847355

Exhibit "1"

## AFFIDAVIT OF POSTING/FILING NOTICE OF SALE

The undersigned, having knowledge of the matters hereinafter set forth, after being duly sworn, deposes and states under oath, as follows:

"On behalf of the servicer and/or holder and/or owner of the indebtedness secured by a Deed of Trust/Security Instrument, dated October 31, 2005 executed by Rachael Griffin and husband, Terrence Tremayne Griffin to Michael L. Riddle, Trustee(s) and recorded under Vol. RP 013-89, Page 0838, or Clerk's File No. Y886750, in the real property records of HARRIS County, Texas; at least twenty-one (21) days preceding the June 03, 2025 foreclosure sale, the undersigned Substitute Trustee, did;

(i)     Post written notice ("Notice of Sale") of the proposed sale designating the County in which the property securing the above Deed of Trust/Security Instrument will be sold, at the courthouse door of each County in which the property securing the above Deed of Trust/Security Instrument is located, or as otherwise designated by the County Commissioners; and

(ii)    File a copy of said Notice of Sale in the office of the County Clerk of the County in which the sale was made."

Executed on this the ___10th___ day of _____June_____, 20_25_____.



Printed Name: ___SANDY DASIGENIS___

STATE OF TEXAS

COUNTY OF _HARRIS_____

BEFORE ME, the undersigned authority on this the ___10th___ day of ___June___ _____, 20_25_____, personally appeared _____SANDY DASIGENIS_____ known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed same in the capacity herein stated and for the purposes and consideration therein expressed.

Notary Public, State of Texas

C&M No. 44-25-00934

NICOLE DURRETT
Notary Public, State of Texas
Comm. Expires 09-08-2026
Notary ID 128847355

RP-2025-225256

Page 3 of 7    Friday, July 10, 2026    County Clerk Harris County, Texas

C&M No. 44-25-00934/ RECORD NOS

# NOTICE OF TRUSTEE'S SALE AND APPOINTMENT OF SUBSTITUTE TRUSTEE

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is: Codilis & Moody, P.C., 20405 State Highway 249, Suite 170, Houston, TX 77070**

### INSTRUMENT BEING FORECLOSED AND MORTGAGE SERVICER INFORMATION

Deed of Trust dated October 31, 2005 and recorded under Vol. RP 013-89, Page 0838, or Clerk's File No. Y886750, in the real property records of HARRIS County Texas, with Rachael Griffin and husband, Terrence Tremayne Griffin as Grantor(s) and Long Beach Mortgage Company, A Corporation as Original Mortgagee.

Deed of Trust executed by Rachael Griffin and husband, Terrence Tremayne Griffin securing payment of the indebtedness in the original principal amount of $131,012.00 and obligation therein described including but not limited to the promissory note and all modifications, renewal and extensions of the promissory note (the "Note") executed by Rachael Griffin. JPMorgan Chase Bank, National Association is the current mortgagee (the "Mortgagee") of the Note and Deed of Trust or Contract Lien.

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan. JPMorgan Chase Bank, National Association is acting as the Mortgage Servicer for the Mortgagee. JPMorgan Chase Bank, National Association, is representing the Mortgagee, whose address is: 3415 Vision Drive, Columbus, OH 43219-6009.

**Legal Description:**
LOT FIVE (5) BLOCK TWO (2) OF ELLA CROSSING, SEC. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN FILM CODE NO. 583137 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

### SALE INFORMATION

**Date of Sale: 06/03/2025**      **Earliest Time Sale Will Begin: 10:00 AM**

**Location of Sale:** The place of the sale shall be: HARRIS County Courthouse, Texas at the following location: 11,681 Square Feet area of covered concrete, being a 13,979 Square Feet area of covered concrete under the Bayou City Event Center Pavilion, save and except a 2,298 Square Feet Concession and Restroom area under said Pavilion, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court

### TERMS OF SALE

A default has occurred in the payment of said herein referenced indebtedness, and the same is now wholly due, and the Mortgagee and/or Mortgage Servicer has requested the hereinafter appointed Substitute Trustee to sell said property to the highest bidder for cash and to distribute or apply the proceeds of said sale in accordance with the terms of said Deed of Trust.

The Sale will be conducted as a public auction to the highest bidder for cash, except that Mortgagee's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust. Pursuant to the Deed of Trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold in "AS IS,"

44-25-00934
HARRIS

4839485

RP-2025-225256..SHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FILED 4/3/2025 8:43:11 AM



"WHERE IS" condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the Deed of Trust.

The sale will begin at the earliest time stated above, or within three (3) hours after that time. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

WHEREAS, in my capacity as attorney for the Mortgagee and/or Its Mortgage Servicer, and pursuant to Section 51.0076 of the Texas Property Code, I HEREBY APPOINT AND DESIGNATE Jeff Leva, Sandy Dasigenis, Patricia Poston, Megan L. Randle, Ebbie Murphy, Wayne Daughtrey, Steve Leva, Nicole Durrett, Thomas Delaney, Danya Gladney, Aaron Demuth, Codilis & Moody, P.C., or ServiceLink Auction, as Substitute Trustee.

The address for the Substitute Trustee for purposes of Section 51.0075(e) of the Texas Property Code is:
Codilis & Moody, P.C.
20405 State Highway 249, Suite 170
Houston, TX 77070
(281) 925-5200

Juanita Deaver, Attorney at Law
Codilis & Moody, P.C.
20405 State Highway 249, Suite 170
Houston, TX 77070
(281) 925-5200

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned Notary Public, on this day personally appeared Juanita Deaver as Attorney for the Mortgagee and/or Mortgage Servicer known to me or proved to me through a valid State driver's license or other official identification described as Personal Knowledge, to be the person whose name is subscribed to the foregoing instrument and acknowledge to me that he/she executed the same for the purposes and consideration therein expressed.

Executed on this the 1st day of April, 2025.

Notary Public Signature

ZOEY LAKE
Notary ID #133442620
My Commission Expires
November 10, 2025

Posted and filed by:

Printed Name: SANDY DASIGENIS

C&M No. 44-25-00934

Exhibit "2"

# AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared the undersigned affiant who, after being duly sworn, deposes and states under oath as follows:

"I am above the age of eighteen (18) years and am competent to make this affidavit and knowledgeable of the statements made in this affidavit.

At the instructions of the servicer and/or holder and/or owner of the indebtedness secured by a Deed of Trust/Security Instrument, dated October 31, 2005 executed by Rachael Griffin and husband, Terrence Tremayne Griffin to Michael L. Riddle, Trustee(s) and recorded under Vol. RP 013-89, Page 0838, or Clerk's File No. Y886750, in the real property records of HARRIS County, Texas; and based upon the information provided by or on behalf of such servicer and/or holder and/or owner of the indebtedness, demand was sent to the obligors via certified mail giving at least 20 days to cure the debt as required by Texas Property Code Sec. 51.002(d); the debt was not cured and our office sent out the written notice of the proposed sale of the real property encumbered by said Deed of Trust/Security Instrument scheduled for June 03, 2025 was mailed certified to each debtor who, according to the records of such servicer and/or holder and/or owner is obligated to pay the debt. Service of the written notice was completed on April 03, 2025. On that date, the notice was deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. April 03, 2025, the date service of the notice was completed, was a date at least twenty-one (21) days preceding the date of the scheduled sale.

To the best of the my knowledge and belief, the obligor(s) had not filed any bankruptcy proceeding pending at the time of the foreclosure sale, was/were alive at the time of the foreclosure sale, and based upon information obtained from the U.S. Defense Manpower internet military website, it is my belief that such obligor(s) is/are not in the armed services of the United States of America twelve months prior hereto or on the date of the foreclosure sale and as of the date of this Affidavit.

Signed on this 4th day of June, 2025.

Codilis & Moody, P.C.

Thomas Delaney

**STATE OF TEXAS**

**COUNTY OF HARRIS**

BEFORE ME, the undersigned authority on this day personally appeared Thomas Delaney known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed same in the capacity herein stated and for the purposes and consideration therein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME on this 4th day of June, 2025.

GABRIELLE RUIZ
Notary Public, State of Texas
Comm. Expires 10-05-2027
Notary ID 132193366

NOTARY PUBLIC in and for
THE STATE OF TEXAS

C&M No. 44-23-00954

County Clerk Harris County, Texas

RP-2025-225256

RP-2025-225256
# Pages 7
06/12/2025 09:34 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees  $45.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS



I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages
are a true and correct copy of the original record filed and recorded in my office,
electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This July 10, 2026

Teneshia Hudspeth, County Clerk
Harris County, Texas

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.



**App. 260**