## IN UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION

International Document Notice to Agent is Notice to Principal – Notice to Principal is Notice to Agent

**Rachael Griffin-El, sui juris, ex rel.**

**RACHAEL LEE GRIFFIN** — Plaintiff

v.

**Jamie Dimon, et dba**

**JPMORGAN CHASE BANK, N.A.; —** Defendants

**Civil Action No. 4:25-cv-02013**

United States Courts
Southern District of Texas
FILED

AUG 1 1 2026

Nathan Ochsner, Clerk of Court





*Moorish National Republic Federal Government Moorish Divine and National Movement of the WorldNorthwest Amexem / Northwest Africa / North America / The North Gate'*

*'Temple of the Moon and Sun'~ e o~ Societas Republicae Ea Al Mourikanos~ e The True and De Jure Natural peoples ~ Heirs of the Land*

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, WITH STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

### I. Genuine Disputes of Material Fact Exist Concerning Fraud and Misrepresentation in the 2005 Transaction

Defendants are not entitled to summary judgment under Rule 56 because genuine disputes of material fact remain concerning the representations made at closing, the specific terms of the transaction instruments, the consideration allegedly advanced, and the subsequent authority asserted by Mr.Dimon,et. alia, via his / their associated entity JPMorgan Chase to enforce the obligation.

A. What Was Represented to Plaintiff at Closing Plaintiff entered into the October 2005 transaction upon the express representation and understanding that she was buying a home through a standard mortgage loan. Plaintiff's fraud and misrepresentation claims do not rely upon mere disagreement with terminology; they center on the fact that the actual nature, legal consequences, and structural components of the transaction were materially different from what was represented to her when the transaction was consummated.

B. What the Transaction Instruments Actually State

Defendants' own documentary evidence demonstrates that the transaction involved distinct instruments, legal capacities, and entities that cannot be collapsed into a generalized assertion that Plaintiff simply obtained a alleged loan from JPMorgan Chase Bank, N.A.:

Original Lender Identification: The Deed of Trust identifies Long Beach Mortgage Company—not JPMorgan Chase Bank—as the "Lender."

Separation of Legal Concepts: The Deed of Trust states that Borrower allegedly owed Lender the principal sum of $131,012.00, while separately providing that "[t]his debt is evidenced by Borrower's note." It further specifies that the Security Instrument secures repayment of the debt evidenced by the Note. Defendants' own evidence explicitly distinguishes the alleged debt, the Note evidencing that debt, and the Deed of Trust securing it.

Nature of the Conveyance: The instrument states that Borrower "irrevocably grants and conveys to Trustee, in trust, with power of sale" the subject Harris County property.

Leasehold vs. Fee-Title Provisions: The Deed of Trust contains specific provisions addressing leaseholds and fee title. It provides that "[i]f this Security Instrument is on a leasehold," the Borrower must comply with the lease, and that "[i]f Borrower acquires fee title to the Property," the leasehold and fee title shall not merge unless Lender agrees in writing. Plaintiff disputes whether these provisions and the true legal character of the property interest conveyed were accurately disclosed at closing.

C. What JPMorgan Chase Subsequently Claims

JPMorgan Chase was not identified as the original Lender in the Deed of Trust. Defendants rely upon subsequent events and recorded instruments to establish Chase's claimed interest. The accuracy of the representations made concerning the original transaction, alongside Chase's subsequent claims of ownership, servicing authority, default, and foreclosure rights, present material factual questions that cannot be resolved in Defendants' favor at the summary-judgment stage.

## II. Defendants Have Not Eliminated the Genuine Dispute Concerning Consideration and the Alleged Debt

Defendants bear the burden under Rule 56 of establishing the factual and legal basis of the obligation they seek to enforce, including the consideration and the evidence on which they rely to prove that obligation.

A. Defendants Must Establish the Factual and Legal Basis of the Obligation

Defendants have not eliminated genuine disputes concerning whether actual, valuable consideration was advanced to support the alleged obligation, nor have they produced competent evidence establishing the complete evidentiary basis of the debt they seek to enforce.

B. Statutory Discharge Under 12 U.S.C. § 95a Is Distinct From Bankruptcy Discharge

Plaintiff's use of the term "discharge" in this action relies strictly upon the specific statutory language of 12 U.S.C. § 95a(2), which provides for "full acquittance and discharge" regarding certain payments, conveyances, transfers, assignments, or delivery of property or interests therein made pursuant to that statutory provision.

This statutory acquittance and discharge under § 95a is legally distinct from, and must not be

confused with, a discharge in bankruptcy. Defendants' reliance upon Plaintiff's prior bankruptcy proceedings does not address or resolve the separate statutory question Plaintiff raises regarding the legal effect of the transactions under 12 U.S.C. § 95a.

## III. Defendants' Own Documents Distinguish the Alleged Debt, the Note, and the Deed of Trust

Defendants cannot treat the alleged loan transaction as a single, indivisible entity. Their own moving papers and supporting exhibits confirm the existence of distinct legal instruments with separate legal effects:

The Debt: The underlying obligation alleged to be owed to the original Lender, identified separately as the principal sum of $131,012.00.

The Note: The standalone negotiable instrument that allegedly evidences the primary financial debt.

The Deed of Trust: The Security Instrument through which Borrower "grants and conveys to Trustee, in trust, with power of sale" the described property for the stated purpose of securing repayment of the debt evidenced by the Note.

Accordingly, Defendants must establish what rights they claim under each instrument and the evidentiary and legal connection between the alleged debt, the Note evidencing that debt, and the Security Instrument securing its repayment.

## IV. Genuine Disputes Remain Concerning the Transfer from the Original Lender and JPMorgan Chase's Claimed Interest

Defendants rely on a Corporate Assignment of Deed of Trust to assert JPMorgan Chase's authority to enforce the obligation. In that instrument, the FDIC—as receiver for Washington Mutual Bank and successor in interest to Long Beach Mortgage Company—purported to convey the Deed of Trust and associated interests to JPMorgan Chase Bank, N.A., while attempting to memorialize a transfer allegedly occurring in 2008.

The recorded appearance of an instrument does not establish actual, enforceable title as a matter of law.

Color of Title vs. Actual Title: "Color of title" describes an instrument or appearance that seems on its face to support a claim of title, but because of an underlying defect in authority, transfer, or title, falls short of establishing title in reality.

Defects in the Asserted Chain: Plaintiff disputes whether this assignment conveys enforceable title or merely color of title. Genuine disputes of material fact remain concerning:

1. Whether the assignor possessed the particular interest it purported to assign, including any enforceable interest in the debt and Note necessary to support the authority later asserted by Chase.

2. What specific legal interest was actually conveyed by the document.

3. Whether the underlying Note and debt properly accompanied the Deed of Trust assignment.

4. Whether the assignment confers actual enforcement authority or merely creates the superficial appearance of such rights.

**V. Statutory and Constitutional Framework Concerning Authority and Restraints**

1 U.S.C. § 204 and Non-Positive Law: Under 1 U.S.C. § 204, provisions in titles of the United States Code that have not been enacted into positive law serve as prima facie evidence of the law. Where the meaning or legal effect of a non-positive-law codification is disputed, Plaintiff relies upon the underlying Act of Congress and Statutes at Large as the authoritative source of the enacted text.

Primary Source Analysis (An Act to provide a Government for the District of Columbia, 16 Stat. 419):

Municipal Corporate Status (§ 1): Constitutes the District of Columbia as a "body corporate for municipal purposes"—expressly distinguishing the municipal entity of the District from the sovereign federal government ("United States of America").

Constitutional Limits (§ 18): Expressly subjects the legislative authority to constitutional limitations, including Article I, Section 10.

Contract Protections (§ 20): Explicitly bars the passing of ex post facto laws or laws impairing the obligation of contracts.

Judicial Jurisdiction (§§ 24, 25): Addresses the jurisdiction of justices of the peace—expressly restricting their jurisdiction where title to land is disputed—and governs the organization of judicial courts.

Preservation of Federal Law (§ 34): Explicitly preserves the full force and effect of the U.S. Constitution and applicable federal laws.

Plaintiff invokes these authorities not as a substitute for the transaction evidence, but to establish that governmental, statutory, and judicial authority must be traced to its lawful source and exercised within the limits imposed by the Constitution and the governing enactment.


**VI. Defendants Must Establish the Capacity and Authority Upon Which Their Collection and Foreclosure Actions Were Based**

Having established the governing evidentiary and structural framework, Defendants bear the burden of demonstrating the lawful capacity and authority supporting each link in the chain of enforcement.

Defendants cannot rely upon generalized assertions of corporate lineage or servicing status. Material factual disputes remain regarding the precise capacity in which each entity acted, including:

1. Original Lender Capacity: The specific legal capacity and authority of Long Beach Mortgage Company at the time of the 2005 closing.

2. Succession and Receivership Authority: The chain of succession through Washington Mutual Bank and the specific scope of rights acquired or transferred by the FDIC as receiver.

3. JPMorgan Chase's Claimed Capacity: The precise legal capacity—whether as owner, holder, master servicer, or designated agent—under which JPMorgan Chase Bank, N.A. claimed authority to demand payment, declare default, and initiate foreclosure proceedings.

4. Agency and Enforcement Conduct: The authority of third-party servicers, substitute trustees, and designated agents acting for Chase during collection and foreclosure actions.

5. Interface with Governmental Processes: Whether the private foreclosure actions and subsequent property proceedings were executed pursuant to lawful, delegable authority, The mere existence and recordation of the Corporate Assignment does not, by itself, resolve

Plaintiff's challenge to the nature and extent of the interest allegedly transferred or the authority subsequently asserted by JPMorgan Chase.

VII. The Deed of Trust's Leasehold and Fee-Title Provisions and Plaintiff's Deposition Examination Present Material Factual Disputes Concerning the Property Interest

Defendants characterize the 2005 transaction and Plaintiff's resulting property interest as a routine purchase and mortgage loan in support of their request for summary judgment. (See 2026 0717 Ltr to Pro Se Pltf Rachael Griffin-El serving MSJ & Appendix (Griffin-El).pdf). The actual Security Instrument, however, must be considered in its entirety and evaluated together with Plaintiff's sworn testimony and the explicit representations made to her at closing.

A. Contradictory Terms in the Transaction Documents
The Deed of Trust states that Plaintiff was "lawfully seised of the estate hereby conveyed" and had the right to grant and convey the Property. Yet, the exact same instrument separately contains explicit conditional provisions stating that "[i]f this Security Instrument is on a leasehold," Borrower must comply with the provisions of the lease, and that "[i] if Borrower acquires fee title to the Property," the leasehold and fee title shall not merge unless Lender agrees in writing. (See show_multidocs.pl 4.pdf).

Plaintiff does not rely upon the conditional leasehold language, standing alone, as absolute proof that a leasehold existed. Rather, Plaintiff relies upon the complete transaction documents, the representations made at closing, and the deposition examination to dispute Defendants' characterization of the nature and legal consequences of the transaction.

B. The Exact Deposition Testimony Submitted by Defendants as Exhibit B
Defendants themselves placed Plaintiff's deposition testimony into the summary-judgment record as Exhibit B. During that examination, defense counsel questioned Plaintiff directly regarding property records and ownership:

Q. "And the property records reflect that you own the house; correct?"
A. "No. The property records say I was a tenant."
Q. "So you're not aware of a warranty deed that conveyed the property from Perry Homes to you in 2005?"
A. "Not aware."
(See 2026 0717   Ltr to Pltf Rachael Griffin-El serving MSJ & Appendix (Griffin-El).pdf).

Counsel continued the examination on the following page:

Q. "Then why do you need to buy it from Perry Homes?"
A. "Well, apparently I didn't buy it."
Q. "Why did you think you needed to buy it?"
A. "Because they put me down as a tenant."
(See 2026 0717) Ltr to Pltf Rachael Griffin-El serving MSJ & Appendix (Griffin-El).pdf).

That testimony must be considered together with Plaintiff's examination concerning what she expected at closing, which Defendants separately highlighted in their own Statement of Material Facts:

Q. "But you showed up that day wanting a loan, correct?"
A. "I showed up that day at closing."
Q. "Expecting that you would have a loan, correct?"
A. "Expecting that I was buying a house."
(See 2026 0717 Ltr to Pltf Rachael Griffin-El serving MSJ & Appendix (Griffin-El).pdf).

## C. The Resulting Factual Dispute Under Rule 56

Defendants' own deposition transcript reflects Plaintiff's position concerning the characterization of the transaction and demonstrates that this position existed in the sworn record before Plaintiff's opposition to summary judgment. Defendants' own summary-judgment evidence places Plaintiff's understanding of what she was purchasing, her sworn testimony regarding the property records, and the closing instruments directly into the Rule 56 record.

When evaluated together, Defendants' evidence demonstrates the existence of genuine, unresolved material factual disputes regarding what was represented to Plaintiff at closing versus what was recorded, precluding summary judgment on Plaintiff's fraud and misrepresentation theories.

## VIII. 15 U.S.C. § 1635(f) Does Not, Without More, Dispose of Plaintiff's Independent Fraud-Based Claims

Defendants' reliance upon 15 U.S.C. § 1635(f) in their statutory TILA analysis does not dispose of Plaintiff's independent fraud and misrepresentation claims. Section 1635(f) governs the time within which the statutory right of rescission under the Truth in Lending Act (TILA) may be exercised. Plaintiff's fraud claims, however, are not pleaded solely as an exercise of a statutory TILA right of rescission. They concern alleged misrepresentations, concealment, and subsequent representations regarding the nature of the transaction, the obligation, ownership, servicing, enforcement authority, and foreclosure.

## A. Expiration of a TILA Rescission Right Does Not Resolve an Independent Fraud Claim

The distinction between TILA's statutory rescission remedy and Plaintiff's independent fraud allegations is material:

Distinct Legal Elements: Even if Defendants establish that any statutory right of rescission under § 1635(f) expired prior to the filing of this action, that statutory time-bar does not determine whether Plaintiff can establish separately pleaded common-law causes of action for fraud or misrepresentation.

Independent Governing Rules: Common-law fraud claims must be analyzed according to their own required elements, applicable limitations rules, and the evidence supporting them.

Defendants therefore cannot obtain summary judgment on an independent fraud claim merely by establishing the untimeliness of a statutory TILA claim. The Court must evaluate each cause of action under its own governing legal framework.


B. Plaintiff's Fraud Allegations Present Issues Distinct From Statutory TILA Rescission
Plaintiff's fraud theory concerns, among other matters:
1. What was represented to Plaintiff at the 2005 closing;
2. What Plaintiff understood she was purchasing;
3. What the transaction instruments actually provided;
4. The consideration supporting the alleged obligation; and
5. The representations subsequently made concerning ownership, servicing, default, enforcement authority, and foreclosure.
As demonstrated in Section VII, Defendants' own summary-judgment appendix contains Plaintiff's sworn deposition testimony that she appeared at closing "[e]xpecting that I was buying a house." (See 2026 0717 Ltr to Pltf Rachael Griffin-El serving MSJ & Appendix (Griffin-El).pdf). Defendants' Exhibit B also contains Plaintiff's testimony concerning her understanding of the property records and her statement that those records identified her as a tenant. (See 2026 0717 Ltr to Pltf Rachael Griffin-El serving MSJ & Appendix (Griffin-El).pdf). Those factual allegations and evidentiary disputes are not resolved merely by determining whether Plaintiff's statutory TILA rescission right expired under § 1635(f).


C. Defendants' Separate Challenge to Fraud Based Upon Reliance and Injury Does Not Address the Full Scope of Plaintiff's Fraud Allegations
Defendants separately challenge Plaintiff's fraud claims by arguing a lack of justifiable reliance and injury, relying specifically upon Plaintiff's deposition testimony concerning a December 2024 mortgage statement. (See 2026 0717 Ltr to Pltf Rachael Griffin-El serving MSJ & Appendix (Griffin-El).pdf). That argument, however, concerns Plaintiff's reaction to a particular document received approximately nineteen years after the October 2005 closing and does not, standing alone, resolve Plaintiff's allegations concerning representations allegedly made at the inception of the transaction.


Plaintiff's fraud allegations concern, among other matters, what was represented to Plaintiff at the 2005 closing, what Plaintiff understood she was purchasing, the nature and terms of the instruments she executed, and subsequent representations concerning ownership and enforcement authority. Defendants' own Statement of Material Facts places Plaintiff's understanding at closing directly into the record by quoting her testimony that she appeared at closing "[e]xpecting that I was buying a house." (See 2026 0717 Ltr to Pltf Rachael Griffin-El serving MSJ & Appendix (Griffin-El).pdf).


Accordingly, Plaintiff's testimony concerning whether she relied upon a particular December 2024 mortgage statement does not, by itself, establish the absence of reliance, causation, or injury as to every allegedly fraudulent representation occurring during the transaction or

subsequent enforcement history. Defendants must establish entitlement to summary judgment against the particular fraud theory and representation at issue rather than treating Plaintiff's response to the December 2024 statement as dispositive of every alleged misrepresentation.

## IX. Defendants Have Not Satisfied Their Rule 56 Burden

Under Federal Rule of Civil Procedure 56, summary judgment may be granted only where the moving party demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. The summary-judgment record presented by Defendants does not eliminate the material factual disputes identified above.

Defendants' own documents and evidence leave disputed issues concerning:

1. The representations made to Plaintiff concerning the nature of the October 2005 transaction and what Plaintiff understood she was buying;
2. The consideration allegedly advanced and the factual and legal basis of the alleged obligation;
3. The distinct relationship between the alleged debt, the Note allegedly evidencing that debt, and the Deed of Trust securing repayment;
4. The nature and legal effect of the subsequent transfer upon which JPMorgan Chase relies for its claimed interest;
5. The capacity and authority through which JPMorgan Chase and the entities acting on its behalf claimed the right to collect, declare default, and foreclose;
6. The significance of the Deed of Trust's provisions concerning the estate conveyed, leasehold interests, and acquisition of fee title when considered together with Plaintiff's sworn deposition testimony and the representations Plaintiff contends were made at closing; and
7. Whether Defendants' TILA limitations arguments and their separate reliance upon Plaintiff's testimony concerning the December 2024 mortgage statement establish entitlement to judgment on Plaintiff's independently asserted fraud and misrepresentation claims.

These are not matters that may be resolved by accepting Defendants' characterization of disputed facts or by drawing competing factual inferences in Defendants' favor. Defendants, as the parties seeking summary judgment, must establish their entitlement to judgment under Rule 56 on the claims and defenses actually presented.

## CONCLUSION

For the foregoing reasons, and based upon the genuine disputes of material fact demonstrated by Defendants' own summary-judgment evidence and the record before the Court, Plaintiff respectfully that the Court **DENY Defendants' Motion for Summary Judgment** and permit Plaintiff's disputed claims to proceed for determination on their merits.

I Respectfully, with 'Good Faith', and with Honor, demand free access to the Court by secured - Right; and with said access unhindered. By rightful due process, I submit this ' PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, WITH STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT; and demand that it be processed as it was originally intended and without tampering nor alterations made by any unauthorized persons.

Notice to the Agent is Notice to the Principal- Notice to the Principal is notice to the Agent.



Thank You,
I Am: _____
RachaelGriffin-El, Authorized Representative
Natural Person, In Propria Persona:
Ex Relatione (RACHAEL GRIFFIN)
All Rights Reserved: 1-308; U.C.C. 1-103
Quinnehtukqut Territory
C/O 709 Deveron ln. Houston Texas [77090]
Non-Domestic