# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

International Document Notice to Agent is Notice to Principal - Notice to Principal is Notice to Agent

**Rachael Griffin -El** , In Propria Persona, Sui Juris,

**Plaintiff,**

**v.**

**JPMORGAN CHASE BANK, N.A.; JAMIE DIMON;**
**FRANKLIN CREDIT MANAGEMENT CORPORATION; THOMAS J. AXON;**
**P.C.F. PROPERTIES IN TX, LLC; and ANTHONY HALARIS,**

**Defendants.**

**Civil Action No. 4:25-cv-02013**

*Moorish National Republic Federal Government Moorish Divine and National Movement of the WorldNorthwest Amexem / Northwest Africa / North America / The North Gate'*

*'Temple of the Moon and Sun'– e o– Societas Republicae Ea Al Mourikanos– e The True and De jure Natural peoples – Heirs of the Land*

## PLAINTIFF'S RESPONSE TO THE COURT'S AUGUST 4, 2026 ORDER AND NOTICE REGARDING PREVIOUSLY FILED EXHIBITS A-D

## TO MY HONORABLE COURT:

**Plaintiff Rachael Griffin-El, sui juris, respectfully submits this Response to the Court's August 4, 2026 Order concerning Defendants JPMorgan Chase Bank, N.A. ("Chase") and Jamie Dimon. Plaintiff submits this Response to clarify the allegations actually asserted in the operative First Amended Complaint and to identify previously filed Exhibits A-D containing the factual chronology underlying Plaintiff's individual claims. Plaintiff's position is that Chase and Dimon should not be dismissed from this action based upon a characterization that does not account for the allegations and factual sequence actually presented by Plaintiff. Plaintiff alleges that the subsequent foreclosure, sale, dispossession, and involvement of the remaining Defendants did not arise independently, but followed the enforcement and foreclosure activity challenged against Chase. Plaintiff is not seeking through this Response to create a new**

**theory of liability or to amend merely for that purpose. Plaintiff responds to the Court's Order by identifying allegations already contained in the First Amended Complaint and previously submitted sworn materials relevant to those allegations.**

## I. PURPOSE OF THE FIRST AMENDED COMPLAINT AND PREVIOUSLY FILED EXHIBITS A-D

**Plaintiff respectfully clarifies that Exhibits A-D were previously filed in this action in connection with Plaintiff's claims and factual allegations concerning the disputed mortgage obligation and Defendants' claimed enforcement authority. Exhibits A-D were not physically attached to the subsequently filed First Amended Complaint. The purpose of Plaintiff's First Amended Complaint was to add the additional parties whose alleged conduct arose from and followed the challenged foreclosure transaction. Plaintiff did not file the First Amended Complaint for the purpose of withdrawing, abandoning, or contradicting the previously filed sworn factual materials concerning JPMorgan Chase Bank, N.A. and Jamie Dimon. This distinction is important because Plaintiff alleges that the newly added parties did not enter the factual sequence independently of the foreclosure challenged by Plaintiff. Plaintiff alleges that their subsequent claimed interests and actions arose from the foreclosure sequence that Plaintiff attributes, in part, to the preceding conduct of Chase. The First Amended Complaint therefore added parties involved in the alleged sequence of events; Plaintiff did not intend it to erase the previously filed factual materials concerning the conduct that preceded the involvement of those additional parties. Defendants Chase and Dimon themselves recognized Plaintiff's apparent intent. Their July 17, 2026 filing states that although the First Amended Complaint procedurally replaced the Original Complaint, "Chase assumes Plaintiff meant for the First Amended Complaint to merely supplement her Original Complaint," and Defendants consequently addressed the causes of action asserted across both pleadings. (Doc. 75 at 7 n.1.) Plaintiff therefore identifies and resubmits Exhibits A-D so that the Court may consider the previously asserted factual chronology concerning Chase and Dimon when evaluating Plaintiff's claims and the subsequent events alleged against the additional Defendants. Plaintiff does not appear for, represent, or assert claims on behalf of the R L FREEMAN TRUST. Any reference to the Trust in Plaintiff's First Amended Complaint or Exhibits A-D is identified solely as part of the factual chronology relevant to Plaintiff's individual claims.**

## II. MATTERS CONTAINED IN EXHIBITS A-D RELEVANT TO THE COURT'S ORDER 1. Plaintiff's

**Pre-Foreclosure Affidavit of Dispute - Exhibit A On December 30, 2024, Plaintiff executed and transmitted an Affidavit of Dispute concerning the asserted obligation, Chase's claimed enforcement authority, and the mortgage statement styled as a Bill of Attainder. Plaintiff's characterization was not merely an objection to receiving a monthly mortgage statement. Plaintiff disputed the asserted obligation itself, the character and legal status of that obligation, the identity and authority of the party claiming creditor or collection rights, the claimed right of enforcement, and the threatened nonjudicial dispossession of Plaintiff's property. Plaintiff's characterization expressly invokes Article I, Section 9, Clause 3 of the Constitution: "No Bill of Attainder or ex post facto Law shall be passed." Plaintiff identifies this constitutional objection as part of the dispute actually presented in her pre-foreclosure Affidavit and not as a characterization created for purposes of this**

**Response. The**

Affidavit therefore establishes that Plaintiff's challenge to the asserted obligation and claimed enforcement authority existed before the default, acceleration, foreclosure proceedings, sale, and subsequent claimed transfer challenged in this action. 2. Communications Concerning Chase's Claimed Capacity - Exhibit B Plaintiff's previously submitted materials contain communications concerning Chase's claimed capacity and authority with respect to the disputed obligation. Those materials form part of Plaintiff's challenge to whether Chase possessed the legal authority it asserted before proceeding against Plaintiff's property. 3. Continued

Dispute and Subsequent Activity - Exhibit C Exhibit C documents Plaintiff's continuing dispute and her contention that the requested documentation establishing the asserted obligation and claimed enforcement authority had not been produced. Plaintiff relies upon Exhibit C as part of the chronological record demonstrating that her dispute remained pending before subsequent collection, acceleration, and foreclosure-related activity. 4. Affidavit of Fact - Notice of Error Directed to Jamie Dimon / JPMorgan Chase - Exhibit D Exhibit D documents Plaintiff's continuing pre-foreclosure dispute directed specifically to Jamie Dimon/JPMorgan Chase. Exhibit D states that Plaintiff's earlier Affidavit of Dispute and related materials were directed to Dimon by certified mail and identifies the January 10, 2025 delivery date asserted by Plaintiff, together with subsequent notices and certified-mail information. Most importantly, Plaintiff's dispute was not confined to a billing communication. Plaintiff challenged the asserted debt, the claimed enforcement authority, threatened nonjudicial dispossession, and the claimed present right to possession through an enforceable security interest. 5. Scope of Plaintiff's Pre-Foreclosure Notices Plaintiff's previously filed notices demonstrate that her dispute was not limited to the receipt or contents of a monthly mortgage statement. Plaintiff disputed the character and legal status of the asserted obligation, the mortgage statement styled as a Bill of Attainder, the identity or authority of the party claiming creditor or collection rights, the claimed enforcement authority, and the threatened nonjudicial dispossession of the property. Plaintiff identifies these statements to establish the actual subject matter, timing, and scope of her pre-foreclosure dispute.

## III. IDENTIFICATION OF ACTORS, ALLEGED MISREPRESENTATIONS, AND DISPUTED CLAIM OF

**AUTHORITY Plaintiff identifies the actors and capacities material to the controversy so that the record reflects who asserted the challenged authority, the capacity in which that authority was asserted, and the sequence through which the challenged foreclosure and subsequent claimed interests arose. Plaintiff identifies Jamie Dimon, acting in his asserted capacity as Chairman/Chief Executive Officer of JPMorgan Chase, together with the associated party JPMorgan Chase Bank, N.A., hereafter referred to for purposes of this Response as "Mr. Jamie Dimon, et alia." Plaintiff alleges that Mr. Jamie Dimon, et alia, acting through the foregoing corporate capacities and associated parties, asserted and caused to be asserted representations of creditor, servicing, enforcement, foreclosure, and property authority concerning Plaintiff and the subject land located at 703 Deveron Lane and the appurtenances and accoutrements associated therewith. Plaintiff further alleges that those asserted representations were thereafter presented and relied upon in proceedings before officers and administrators of the courts notwithstanding Plaintiff's prior Affidavits of Dispute, notices, demands for verification, and express challenge to the asserted obligation and claimed enforcement authority. Plaintiff expressly disputes and denies that Mr. Jamie Dimon, et alia, possessed or acquired any rightful trusteeship, beneficial trusteeship, fiduciary authority, or other lawful authority over Plaintiff, the subject land at 703 Deveron Lane, or the appurtenances and accoutrements associated therewith. Plaintiff further disputes that the Note, Deed of Trust, assignment, servicing relationship, or subsequent foreclosure proceedings conferred upon Mr. Jamie Dimon, et alia, any greater estate, title, interest, or authority than could lawfully be established by competent evidence. Plaintiff alleges that the asserted obligation and claimed enforcement authority had already been placed in dispute through Plaintiff's pre-foreclosure Affidavit of Dispute concerning the mortgage statement styled as a Bill of Attainder. Plaintiff contends that the challenged representations of authority therefore must be evaluated together with the notices, demands, and sworn materials that preceded the foreclosure. Plaintiff submits these matters to identify the actors, capacities, alleged representations, and chain of claimed authority actually in controversy and to distinguish those asserted corporate and administrative capacities from any lawful trusteeship, title, estate, or property authority that Plaintiff contends Defendants have failed to establish.**

## IV. THE MORTGAGE DEED OF TRUST AND THE R L FREEMAN TRUST ARE DISTINCT MATTERS

Plaintiff specifically clarifies that she did not allege that the mortgage Deed of Trust itself constituted the R L FREEMAN TRUST. The mortgage Note and Deed of Trust concern the underlying mortgage transaction challenged in Plaintiff's allegations. Separately, Plaintiff's First Amended Complaint alleged that on April 4,
2025, Plaintiff conveyed her right, title, interest, and possession in the subject property into the R L FREEMAN TRUST and identified herself as the grantor. Those are distinct factual matters. Nothing in Plaintiff's pleadings should therefore be construed as an allegation that the mortgage Deed of Trust was itself the R L FREEMAN TRUST. Moreover, Plaintiff does not purport to represent the R L FREEMAN TRUST, litigate claims belonging to the Trust, or seek relief on its behalf. References to that Trust are made only insofar as necessary to accurately state the chronology contained in Plaintiff's own pleadings and individual claims.

V. CHASE'S OWN EVIDENCE CONFIRMS THAT THE CONTROVERSY INVOLVED FORECLOSURE

ACTIVITY Chase's own evidence demonstrates that the controversy extended beyond the transmission of a monthly mortgage statement. The summary-judgment record identifies a January 14, 2025 Notice of Default and Acceleration Warning, an April 3, 2025 Notice of Acceleration and Notice of Substitute Trustee's Sale, an assignment relied upon by Chase, and the subsequent June 3, 2025 Substitute Trustee's Deed. Plaintiff's previously submitted notices, including Exhibit D, also document that Plaintiff disputed Chase-related communications and the asserted enforcement authority before the subsequent foreclosure activity. The mortgage statement or escrow statement was therefore one communication within a broader dispute, not the entire subject matter of Plaintiff's allegations. Those materials demonstrate a sequence involving asserted default, acceleration, foreclosure proceedings, sale, and the resulting transfer claimed by subsequent parties. Plaintiff respectfully submits that her allegations concerning Chase should be considered within that complete factual sequence rather than characterized as arising solely from receipt of a mortgage statement.

VI. ALLEGED MISREPRESENTATIONS, CHASE'S INITIATION OF THE CHALLENGED FORECLOSURE, AND THE RESULTING COLOR-OF-TITLE TRANSACTION Plaintiff respectfully submits that the conduct attributed to Mr. Jamie Dimon, et alia, forms part of a continuous factual chain and cannot be separated from the foreclosure transaction that followed. The sequence alleged by Plaintiff begins with the asserted obligation and the claimed creditor, servicing, and enforcement authority; continues through Plaintiff's pre-foreclosure Affidavit of Dispute concerning the mortgage statement styled as a Bill of Attainder, subsequent notices, and demands for supporting documentation; and proceeds through asserted default and acceleration activity and Chase's initiation of the challenged foreclosure. The record identified in this Response includes the January 14, 2025 Notice of Default and Acceleration Warning, the April 3, 2025 Notice of Acceleration and Notice of Substitute Trustee's Sale, the assignment relied upon by Chase, and the June 3, 2025 Substitute Trustee's Deed. Plaintiff alleges that JPMorgan Chase Bank, N.A., acting through the authority claimed by Mr. Jamie Dimon, et alia, initiated the challenged foreclosure and caused the subject land known as 703 Deveron Lane to be sold through the asserted power of sale under the Deed of Trust to P.C.F. Properties in TX, LLC. Plaintiff disputes the authority upon which that foreclosure depended and therefore challenges the resulting conveyance and subsequent claimed interest as a color-of-title transaction rather than a lawful transfer of title. Plaintiff alleges that the representations of creditor, enforcement, foreclosure, and property authority attributed to Mr. Jamie Dimon, et alia, were material to the asserted chain of authority later presented in connection with the foreclosure, the Substitute Trustee's Deed, and subsequent proceedings concerning title and possession. Plaintiff contends that those representations must be tested against the pre-foreclosure disputes and the evidence establishing, or failing to establish, the claimed right to enforce the Note and Deed of Trust. P.C.F. Properties in TX, LLC and Anthony Halaris thereafter asserted an interest in and right to possession of the subject land based upon the challenged foreclosure

**transaction. Plaintiff alleges that their claimed interest did not arise independently, but derives from the foreclosure and Deed of Trust sale initiated by Chase.**

Accordingly, Plaintiff alleges the following factual sequence: asserted obligation and claimed authority; mortgage statement styled as a Bill of Attainder; Affidavit of Dispute and subsequent notices; alleged representations of creditor and enforcement authority by Mr. Jamie Dimon, et alia; default and acceleration activity; Chase's initiation of the challenged foreclosure; Deed of Trust sale to P.C.F. Properties in TX, LLC; resulting claimed color of title; and subsequent assertion of an interest in and possession of the subject land by P.C.F. Properties in TX, LLC and Anthony Halaris. Plaintiff respectfully submits that dismissing Chase or Dimon without considering this alleged chain would remove actors whose asserted authority and representations form part of the very transaction from which the subsequent claimed title and possession interests allegedly arose.

## VII. CONSTITUTIONAL AND TREATY FRAMEWORK INVOKED BY PLAINTIFF

**Plaintiff further identifies the constitutional and treaty provisions under which she asks the Court to evaluate the challenged enforcement, foreclosure, sale, and resulting deprivation of property. Article VI - Supreme Law of the Land. Article VI declares that the Constitution, the laws of the United States made in pursuance thereof, and treaties made under the authority of the United States "shall be the supreme Law of the Land," and that judges in every State shall be bound thereby notwithstanding anything in the constitution or laws of any State to the contrary. Plaintiff invokes the Treaty of Peace and Friendship between the United States and Morocco as part of the treaty framework asserted in her pleadings. Article III, Section 2 - Judicial Power. Article III, Section 2 provides that the judicial power extends to cases in law and equity arising under the Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority. Plaintiff therefore identifies her constitutional and treaty allegations as part of the federal questions she contends are presented by this controversy. Article I, Section 9, Clause 3 - Bill of Attainder. The Constitution provides: "No Bill of Attainder or ex post facto Law shall be passed." Plaintiff's pre-foreclosure Affidavit of Dispute characterized the challenged mortgage statement as a mortgage statement styled as a Bill of Attainder, and Plaintiff preserves that characterization as part of the constitutional objection she asserts was made before foreclosure. Fifth Amendment - Due Process and Property. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law," and further provides that private property shall not "be taken for public use, without just compensation." Plaintiff alleges that the challenged foreclosure, sale, dispossession, and resulting claimed transfer deprived her of a claimed property interest after she had already disputed the asserted obligation, claimed enforcement authority, and asserted right to possession. Ninth and Tenth Amendments - Retained Rights and Reserved Powers. Plaintiff further invokes the Ninth Amendment, which provides that the enumeration of certain rights in the Constitution shall not be construed to deny or disparage others retained by the people, and the Tenth Amendment, which provides that powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. Plaintiff also identifies Public Law 856, Chapter 807, 70 Stat. 774 (Aug. 1, 1956), the Joint Resolution approving the relinquishment of the consular jurisdiction of the United States in Morocco. Plaintiff relies upon that enactment for what its text expressly establishes concerning the relinquishment by the United States of that consular jurisdiction. Plaintiff accordingly asks the Court to evaluate the asserted authority to enforce the Note and Deed of Trust, initiate foreclosure, sell the property, and produce the resulting claimed title in light of the constitutional, treaty, statutory, and evidentiary matters Plaintiff has placed in controversy.**

## VIII. CONSTITUTIONAL DUTY, DUE PROCESS, AND ACCESS TO THE COURT

Plaintiff gives notice that officers acting within the judicial process are bound by the Constitution and laws applicable to the exercise of their respective offices. Plaintiff invokes Article VI of the Constitution, including

its requirement that judicial officers of the United States and of the several States be bound by oath or affirmation to support the Constitution.

Plaintiff further invokes the Fifth Amendment guarantee of due process and respectfully asserts her right to meaningful access to the Court for the presentation of her, affidavits, exhibits, notices, and evidence according to the applicable rules of procedure.

Accordingly, Plaintiff submits her sworn materials in good faith and requests that they be received, filed, maintained, and considered in the form and for the evidentiary purpose for which they are submitted, subject to the Court's lawful authority to determine their admissibility, legal effect, and weight. Plaintiff objects to any unauthorized alteration, omission, mischaracterization, or refusal to process properly submitted materials that would impair her ability to place her claims and evidence before the Court.

Plaintiff further preserves her objection to any alleged act undertaken under color of law that she contends deprives her of rights secured by the Constitution or laws of the United States. Plaintiff reserves any remedy that may be available under applicable law upon proof of the elements required by that law.

Notice to Agent; Notice to Principal. Plaintiff further provides notice that communications delivered to an authorized agent concerning matters within the scope of that agency are intended as notice to the principal, and communications to the principal are intended as notice to its authorized agents, to the extent recognized by applicable law.

**IX. THE NOTE AND THE STATUTORY TREATMENT OF SECURITIES Plaintiff further identifies the Securities Act of 1933 as relevant to the character of the instruments underlying Defendants' claimed enforcement authority. Section 2(a)(1) of the Act, 15 U.S.C. § 77b(a)(1), defines the term "security" to include, among other instruments, "any note" and "evidence of indebtedness." Plaintiff therefore disputes any characterization of the underlying Note that fails to address the statutory treatment applicable to the particular instrument and transaction at issue. Plaintiff further notes that Section 3(a)(3), 15 U.S.C. § 77c(a)(3), identifies a particular exemption concerning a note, draft, bill of exchange, or banker's acceptance arising from a current transaction where the instrument's maturity at issuance does not exceed nine months, exclusive of days of grace, including renewals whose maturity is likewise limited. Plaintiff does not contend that the nine-month language itself automatically renders a longer-term mortgage note void. Rather, Plaintiff identifies the provision because the statutory exemption is expressly limited by the characteristics Congress specified, and Plaintiff disputes whether Defendants have established the legal character, ownership, transfer,**

and enforcement status of the particular Note upon which they rely. Accordingly, Plaintiff requests that the underlying Note, the claimed assignment or transfer thereof, and Chase's asserted enforcement authority be evaluated according to the actual instruments and applicable law rather than presumed merely from Chase's possession or servicing of the mortgage account.

**X. DISMISSAL OF CHASE OR DIMON WOULD REMOVE ALLEGED ACTORS FROM THE CHAIN OF CLAIMED AUTHORITY PRESENTED BEFORE THE COURTS Plaintiff's allegations against Chase and Dimon are not confined to communications or corporate titles. Plaintiff alleges that Mr. Jamie Dimon, et alia, asserted or caused to be asserted creditor, servicing, enforcement, foreclosure, and property authority; that Plaintiff disputed those assertions before foreclosure; and that Chase nevertheless proceeded through default and acceleration activity and initiated the challenged foreclosure. Plaintiff further alleges that the challenged foreclosure produced the Deed of Trust sale through which P.C.F. Properties in TX, LLC and Anthony Halaris subsequently asserted title and possession. Plaintiff therefore contends that the representations and claimed authority preceding the foreclosure are**

**material to the validity of the later asserted chain. The relevant controversy, as alleged by Plaintiff, concerns whether the actors who asserted authority over the subject land possessed the lawful authority they represented themselves to possess and whether the subsequent claimed title could lawfully derive from that asserted authority. Plaintiff therefore requests that Chase's and Dimon's alleged conduct be evaluated as part of the complete factual sequence presented by the First Amended Complaint and supporting record.**

**XI. JAMIE DIMON, EXHIBIT D, AND THE CAPACITY IN WHICH AUTHORITY WAS ASSERTED Plaintiff's factual allegations concerning Jamie Dimon are not based merely upon his corporate title. Plaintiff's previously filed Exhibit D was expressly directed to Jamie Dimon, Chairman of the Board of Directors/Chief Executive Officer, JPMorgan Chase & Co., and documents Plaintiff's contention that her Affidavit of Dispute and related materials were sent to him before the challenged foreclosure. Plaintiff identifies Dimon's asserted corporate capacity because Plaintiff alleges that representations of authority concerning the disputed obligation and the subject land were asserted through JPMorgan Chase and JPMorgan Chase Bank, N.A. Plaintiff therefore refers to Jamie Dimon, acting in that asserted capacity together with the associated party JPMorgan Chase Bank, N.A., as "Mr. Jamie Dimon, et alia" for purposes of identifying the actors and claimed authority challenged in this Response. Exhibit D identifies the certified-mail information and January 10, 2025 delivery date asserted by Plaintiff, together with subsequent certified-mail communications. Plaintiff emphasizes that the dispute communicated to Dimon concerned the asserted obligation, the mortgage statement styled as a Bill of Attainder, claimed enforcement authority, collection activity, threatened nonjudicial dispossession, and the claimed right to possession through an enforceable security interest. Plaintiff expressly disputes that Mr. Jamie Dimon, et alia, possessed any rightful trusteeship or other lawful authority over the subject land at 703 Deveron Lane and its associated appurtenances and accoutrements merely by reason of corporate office, servicing activity, possession of records, assignment, or assertion of rights under the Note or Deed of Trust. Plaintiff asks the Court to evaluate the actual evidence of authority, the notice provided before foreclosure, the representations subsequently presented, and the relationship of those matters to the foreclosure activity that followed.**

**XII. CONCLUSION AND REQUESTED RELIEF For the foregoing reasons, Plaintiff respectfully requests that the Court consider the allegations actually contained in the First Amended Complaint together with the previously submitted factual materials identified herein and decline to dismiss JPMorgan Chase Bank, N.A. and Jamie Dimon from this action. Plaintiff respectfully requests that the Court evaluate the controversy according to the actors, capacities, alleged representations, notices, and chain of claimed authority presented in the record, including Plaintiff's contention that**

Mr. Jamie Dimon, et alia, asserted or caused to be asserted creditor, enforcement, foreclosure, and property authority that Plaintiff had disputed before foreclosure. Plaintiff respectfully requests that the Court: 1. Consider the allegations actually asserted against JPMorgan Chase Bank, N.A. and Jamie Dimon in the First Amended Complaint and supporting record; 2. Consider Exhibits A-D for the factual matters, pre-foreclosure disputes, notices, and chronology actually contained therein, including Plaintiff's broader pre-foreclosure dispute concerning the asserted obligation, the mortgage statement styled as a Bill of Attainder, claimed enforcement authority, and threatened dispossession; 3. Consider the evidence concerning the representations of creditor, servicing, enforcement, foreclosure, and property authority attributed to Mr. Jamie Dimon, et alia; 4. Consider Chase's own evidence concerning default, acceleration, foreclosure, sale, and the subsequent Substitute Trustee's Deed; 5. Consider the relationship between Chase's initiation of the challenged foreclosure, the Deed of Trust sale to P.C.F. Properties in TX, LLC, the resulting claimed color-of-title transaction, and the subsequent asserted interests of P.C.F. Properties in TX, LLC and Antony Halaris; 6. Consider Plaintiff's express dispute concerning whether Mr. Jamie Dimon, et alia, possessed any rightful trusteeship, title, estate, fiduciary authority, or other lawful property authority over the subject land known as 703 Deveron Lane and the appurtenances and accoutrements associated therewith; and 7. Decline to dismiss

JPMorgan Chase Bank, N.A. and Jamie Dimon because Plaintiff's existing allegations and supporting record identify their alleged conduct, notice, asserted capacities, representations, and involvement in the factual sequence preceding and contributing to the challenged foreclosure, sale, claimed color-of-title transaction, and subsequent claimed interests. Dated: August 17, 2026

Respectfully submitted, Thank You,

I Am:

Rachael Griffin-El, Authorized Representative
Natural Person, In Propria Persona:
Ex Relatione (RACHAEL GRIFFIN)
All Rights Reserved: 1-308; U.C.C. 1-103
Quinnehtukqut Territory
C/O 709 Deveron ln. Houston Texas [77090]
Non-Domestic

CERTIFICATE OF SERVICE

I certify that on August 17, 2026, a true and correct copy of the foregoing and the accompanying Exhibits A-D was served upon counsel of record and all other parties entitled to service in accordance with the Federal Rules of Civil Procedure.