**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

International Document Notice to Agent is Notice to Principal - Notice to Principal is Notice to Agent

United States Courts
Southern District of Texas
FILED

SEP 08 2026

Nathan Ochsner, Clerk of Court

Rachael Griffin-El, In Propria Persona, Sui Juris,
Plaintiff,
v.
JPMORGAN CHASE BANK, N.A.; JAMIE DIMON;
FRANKLIN CREDIT MANAGEMENT CORPORATION; THOMAS J. AXON;
P.C.F. PROPERTIES IN TX, LLC; and ANTHONY HALARIS,
Defendants.

**CASE NO. 4:25-cv-02013**

**Moorish National Republic Federal Government Moorish Divine and National Movement of the World**
**Northwest Amexem / Northwest Africa / North America / The North Gate**
**'Temple of the Moon and Sun' ~ e o ~ Societas Republicae Ea Al Mourikanos ~ The True and De jure Natural peoples ~ Heirs of the Land**

| | | |
|---|---|---|
| RACHAEL GRIFFIN-EL, | § | |
| Plaintiff, | § | |
| | § | **CIVIL ACTION NO.** |
| v. | § | **4:25-cv-02013** |
| | § | |
| JPMORGAN CHASE CO., et al., | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S INACCURATE CHARACTERIZATION OF THE SCOPE OF THE COURT'S AUGUST 4, 2026 ORDER (DOC. 76)

Plaintiff Rachael Griffin-El, in propria persona, sui juris, states for the record and submits this Response for the limited purpose of clarifying the judicial record and correcting Defendant JPMorgan Chase Bank, N.A.'s ("JPMC") characterization of the scope and holdings of the Court's August 4, 2026 Order (Doc. 76), as stated in Defendant's September 1, 2026 filing (Doc. 81). Plaintiff does not ask the Court in this Response to decide anew the underlying merits of every constitutional, treaty, estate, property, or nationality issue reflected elsewhere in the record. The narrower question is what Document 76 actually analyzed and decided, and whether Defendant may attribute additional determinations to that Order that do not appear in its text.

## I. DEFENDANT ATTRIBUTES TO THE COURT A BROADER ADJUDICATION THAN APPEARS IN DOCUMENT 76

In Document 81, Defendant states that Plaintiff's filing 'rehashes the same holder-in-due-course, "color-of-title," Bill of Attainder, due-process, and treaty theories the Court already considered and rejected.' That characterization attributes determinations to the Court that do not appear in the written text of Document 76.

Document 76 addressed particular issues on particular grounds. The Court relied on judicial notice of Harris County land records and Plaintiff's bankruptcy filings in concluding that Plaintiff had not plausibly alleged that JPMC did not validly hold the deed of trust or that its asserted lien was invalid. The Court connected its disposition of Plaintiff's Fraud/UCC, Slander of Title, Quiet Title, and Defamation claims to that determination. The Court separately addressed personal jurisdiction over Jamie Dimon and Plaintiff's FDCPA, TILA, and FCRA allegations. See Doc. 76 at 5-12.

Document 76 contains no corresponding analysis or express merits holding addressing Plaintiff's Bill of Attainder argument, Plaintiff's reliance upon the Treaty of Peace and Friendship, Article 22 of that Treaty, or Plaintiff's broader constitutional and treaty-based position. The Order also does not contain a separate express holding denominated as a rejection of a 'color-of-title' theory.

Plaintiff does not ask Defendant to agree with Plaintiff's constitutional or treaty position. Plaintiff objects to Defendant representing that the Court has already adjudicated and rejected matters for which Document 76 contains no corresponding analysis or express holding. Whether Defendant disputes Plaintiff's position is one question; whether Document 76 actually adjudicated that position is another.

## II. PLAINTIFF RELIES FIRST UPON THE CONSTITUTIONAL AND TREATY AUTHORITIES ACTUALLY INVOKED

Article VI of the Constitution provides, first, that debts contracted and engagements entered into before adoption of the Constitution remain valid against the United States under the Constitution as under the Confederation. Article VI then separately provides that the Constitution, laws made in pursuance thereof, and Treaties made under the authority of the United States constitute the supreme Law of the Land.

Plaintiff therefore relies upon Article VI as part of the constitutional framework governing continuity of prior engagements and the status of Treaties made under United States authority. Plaintiff's treaty position is not presented merely as another statutory or procedural theory. It is tied to a constitutional provision that expressly addresses Treaties as part of the supreme Law of the Land.

Because Defendant's statement in Document 81 describes the Court as having already considered and rejected Plaintiff's treaty theory, the relevant record question is textual: where, in Document 76, did the Court analyze and decide that treaty issue? Plaintiff submits that no such express analysis appears in the Order.

## III. THE TREATY RECORD EXPRESSLY ADDRESSES HEIRSHIP, ESTATE PROPERTY, AND DELIVERY OF PROPERTY

Plaintiff's reliance upon the Treaty of Peace and Friendship includes Article 22, which addresses estate property and the legal position of an heir under the circumstances stated in that provision. Article 22 addresses the death of an American citizen within the country contemplated by that article, provides for consular custody of effects in the absence of an heir, and further states that where the heir is present, the property shall be delivered to the heir 'without interruption.'

Plaintiff relies upon that language for the propositions actually stated in the Treaty: recognition of an estate, recognition of an heir, custody or possession of estate effects, and delivery of property to the heir in the stated circumstances. Plaintiff does not treat heirship, estate property, territorial jurisdiction, governmental authority, corporate activity, and ownership as interchangeable concepts.

Document 76 contains no express analysis of Article 22, no discussion of the phrase 'without interruption,' and no merits determination of the effect Plaintiff attributes to that treaty provision.

Defendant therefore should not characterize those matters as already 'considered and rejected' where the written Order contains no corresponding treatment of them.

## IV. THE RECORD DISTINGUISHES DISCHARGE OF PERSONAL LIABILITY FROM JPMC'S SEPARATE ASSERTION OF CONTINUING LIEN RIGHTS

JPMC's February 13, 2025 correspondence states that if Plaintiff received a bankruptcy discharge, she is 'no longer personally obligated to repay the loan,' while separately asserting that JPMC retained a lien against the property. JPMC's own written record therefore distinguishes the asserted personal obligation, discharge of personal liability, and its separate assertion of continuing lien rights.

Those propositions are not identical. The existence of a bankruptcy discharge does not, by itself, determine every separate issue concerning the validity, ownership, derivative chain, or enforceability of a lien that JPMC asserts survived. Likewise, reliance upon bankruptcy filings as evidence concerning an asserted obligation does not, by itself, resolve every separate challenge concerning origination, fraud, assignment, title, holder status, derivative authority, or enforcement capacity.

Plaintiff therefore objects to treating the bankruptcy record as though it necessarily adjudicated the validity of every underlying transaction and every subsequently asserted property interest.

## V. SUPERSESSION OF AN EARLIER PLEADING DOES NOT ERASE THE PRE-EXISTING RECORD OF THE SAME CIVIL ACTION

Document 76 notes the superseding effect of an amended complaint upon claims or causes of action omitted from the amended pleading. That procedural effect does not state that previously filed pleadings, affidavits, notices, exhibits, certified-mail records, or other documentary materials were stricken, destroyed, or rendered nonexistent as part of the docket history.

Plaintiff commenced this civil action on May 5, 2025, and it remains Civil Action No. 4:25-cv-02013. The filing of the First Amended Complaint did not commence a different civil action. The distinction between the operative pleading and the pre-existing record of the same judicial proceeding is therefore material.

Plaintiff's Original Complaint remains a filed document in this action. It identified Plaintiff as a 'natural person, Moorish American national' and invoked constitutional provisions including Article VI. Plaintiff submitted Document 80 to clarify that previously filed materials had not been intentionally withdrawn and to identify their continuing relevance to the chronology and record.

Whether a prior filing is incorporated into the operative pleading, judicially noticeable, admissible, or properly considered at a particular stage is distinct from whether the filing exists in the docket history.

## VI. PLAINTIFF'S ASSERTED NATIONALITY AND TREATY POSITION SHOULD BE ADDRESSED ACCORDING TO THE TERMINOLOGY ACTUALLY USED IN THE RECORD

Plaintiff objects to any characterization of her constitutional and treaty-based position that substitutes a different legal, political, racial, religious, citizenship, or other status for the terminology actually used in her filings. Plaintiff's Original Complaint identifies her as a Moorish American national. Plaintiff does not use nationality, citizenship, domicile, race, religion, and person as interchangeable terms.

The record reflects distinct assertions concerning nationality, constitutional authority, treaty relations, estate interests, property interests, territorial jurisdiction, notice, and the claimed authority of

the actors involved in the controversy. This Response does not request a new merits adjudication of Plaintiff's nationality or treaty position. The narrower issue is whether Document 76 already adjudicated those matters. Plaintiff submits that its text contains no express merits analysis resolving them.

## VII. PROCEDURAL RULES DO NOT ENLARGE OR REPLACE THE GOVERNING CONSTITUTIONAL AND TREATY AUTHORITY

Plaintiff distinguishes the source of governing authority from the procedures employed in administering or adjudicating a controversy. The Constitution is the fundamental governing authority invoked by Plaintiff. Article VI expressly addresses Treaties made under the authority of the United States as part of the supreme Law of the Land.

Acts of Congress, regulations, court rules, and administrative procedures operate within the authority from which they derive. A procedural rule governing pleading, service, amendment, reconsideration, or disposition does not, by itself, define the substantive meaning or scope of a constitutional provision or treaty obligation.

Likewise, disposition of a particular claim on pleading, limitations, lien, statutory, or personal-jurisdiction grounds does not automatically constitute adjudication of every distinct constitutional or treaty question appearing elsewhere in the record. The question presented here therefore remains textual: what did Document 76 actually analyze and decide?

Defendant devotes substantial attention in Document 81 to characterizing Plaintiff's filing as a request for reconsideration under procedural rules. Plaintiff's present objection is narrower. Plaintiff asks that the Court's written Order be given the scope expressed by its own text and that Defendant's subsequent filing not add holdings or conclusions that the Court did not place in that Order.

## VIII. THE COURT'S PERSONAL-JURISDICTION DETERMINATION CONCERNING JAMIE DIMON DOES NOT, BY ITSELF, DETERMINE WHAT CORPORATE CONDUCT MAY BE ATTRIBUTABLE TO JPMC

Document 76 dismissed Jamie Dimon after concluding that Plaintiff had not alleged facts sufficient to establish general or specific personal jurisdiction over him individually in Texas. See Doc. 76 at 5-6. That determination concerns whether the Court could exercise personal jurisdiction over Mr. Dimon individually.

It is distinct from the question whether acts, communications, decisions, directives, acknowledgments, policies, or other conduct undertaken for or through JPMC by an officer, employee, or authorized agent may be attributable to JPMC. JPMC is a corporate Defendant separate from Jamie Dimon individually.

Accordingly, dismissal of Mr. Dimon for lack of personal jurisdiction does not, by itself, determine whether conduct undertaken in an alleged corporate capacity is relevant to JPMC. Plaintiff asks only that those distinct inquiries remain distinct in describing what Document 76 decided.

## IX. TERRITORY, JURISDICTION, CORPORATE ACTIVITY, ESTATE PROPERTY, AND OWNERSHIP ARE DISTINCT MATTERS

Plaintiff's filings concern real property located in Harris County, Texas, and conduct alleged to have occurred in connection with private corporate entities operating or doing business within that territory. Plaintiff does not use the terms territory, jurisdiction, government, corporation, estate, and ownership as synonyms.

Authority exercised within a territory, corporate activity conducted within a territory, control or possession of estate property, and ownership of land are separate matters. Territorial jurisdiction, subject-matter jurisdiction, personal jurisdiction, and title to property are likewise distinct inquiries.

Plaintiff identifies those distinctions because Defendant's characterization of Document 76 should not enlarge what the Court actually decided. Nothing in this section asks the Court to decide those underlying questions anew.

## X. THE WRITTEN ORDER DEFINES THE SCOPE OF THE COURT'S ACTUAL DETERMINATIONS

Plaintiff's present objection concerns the accuracy of the judicial record. Defendant's characterization of Document 76 should be measured against the language of Document 76 itself. A party's subsequent characterization of an Order cannot add findings or conclusions that the Court did not place in that Order.

Where the Court expressly analyzed and decided an issue, Document 76 reflects that determination. Where Document 76 contains no corresponding analysis or express holding resolving a constitutional, treaty, heirship, estate, nationality, or other distinct issue, Defendant should not characterize that issue as having already been 'considered and rejected.'

Plaintiff therefore submits that the August 4, 2026 Order should be given the scope expressed by its own text and no broader scope should be attributed to it through Defendant's September 1, 2026 characterization.

## CONCLUSION

For the record, Plaintiff respectfully requests that the Court evaluate Defendant's characterization of Document 76 against the actual language and holdings contained in that Order and decline to attribute to the Order determinations that do not appear in its text. Plaintiff further requests that the Court preserve the distinctions identified above, including the distinction between constitutional and treaty authority and procedural mechanisms; between discharge of personal liability and a separately asserted surviving lien; between the operative pleading and the continuing docket history; between Plaintiff's stated nationality and any substituted characterization; between personal jurisdiction over Jamie Dimon individually and conduct potentially attributable to JPMC; and between the Court's actual holdings and Defendant's subsequent description of those holdings.

Respectfully submitted,

Rachael El

Rachael Griffin-El in propria persona, sui juris All Rights Reserved – Without Prejudice – UCC 1-308
Authorized Representative / Heir of the Estate
Moorish National Republic Federal Government
C/O 709 Deveron Lane
Houston, Texas [77090]